**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

PHILBERT GORRICK,                                                          **DECLARATION OF ANN**
                                                           :               **BURTON GOETCHEUS IN**
    **Plaintiff,**                                                    **SUPPORT OF DEFENDANT'S**
                                                           :               **MOTION TO DISMISS**

      **- against -**                                           :               **CV-08-4396 (GBD)**

NEW YORK CITY TRANSIT AUTHORITY
                                                           :
    **Defendant.**
-------------------------------------------------------- x

**ANN BURTON GOETCHEUS**, pursuant to 28 U.S.C. § 1746, declares:

    1.    I am an attorney who represents the Defendant in this action and in Plaintiff's earlier disability discrimination action against Defendant, CV-07-2529.  I submit this declaration in support of the Defendant's motion, under Fed. Rule Civ. P. 12(b)(6) to dismiss Plaintiff's 2008 Complaint.

    2.    Plaintiff's 2008 Complaint, 2008-CV-4396 ("2008 federal Complaint") is attached hereto as Exh. 1.

    3.    This declaration is based upon my personal knowledge of the circumstances relating to the Defendant's obtaining and using information concerning Plaintiff's motor vehicle driver's license and automobile registration kept by the New York State Division of Motor Vehicles in the course of Defendant's conduct of its legal business as a governmental agency and upon my review of Defendant's litigation records kept in the ordinary course of its business.

    4.    Plaintiff filed a Charge of disability discrimination with the EEOC in August 2006 and a federal lawsuit alleging disability discrimination under federal, state and city law in or about April 2007 ("2007 lawsuit"), 2007-CV-2529.  A summary

judgment motion has been fully briefed by the parties and is currently *sub judice* before this Court.

5.     Defendant filed a Motion to Amend Its Answer to Assert Counterclaims before this Court in December 2007 in Plaintiff's 2007 federal lawsuit.

6.     Plaintiff filed a Charge with the EEOC in December 2007 that alleged that Defendant's motion was retaliatory.

7.     This Court denied Defendant's Motion to add counterclaims in February 2008, holding that the counterclaims lacked a common nucleus of operative fact with the disability claims in Plaintiff's 2007 federal lawsuit.

8.     Defendant filed a state claim for restitution from Plaintiff in New York County Supreme Court in or about March 2008, Index # 400672/2008, and personally served it on Plaintiff thereafter ("2008 state lawsuit").  A copy of the Verified Complaint in the 2008 state lawsuit is attached as Exh. 2 hereto.

9.     Plaintiff here has filed a motion to dismiss Defendant's state lawsuit.  A copy of that motion and its supporting papers is attached hereto as Exh. 3. (The copy of the Verified Complaint attached to Plaintiff's motion has been omitted as duplicative of Exh. 2 hereto.)

10.     The gravamen of the first Cause of Action in Plaintiff's Complaint in this action is that Defendant improperly obtained information about Plaintiff from the New York State Division of Motor Vehicles ("DMV") in or about September 2007 and disclosed that information to this court in November 2007 in Defendant's response to Plaintiff's motion to quash a subpoena served by Defendant on Plaintiff's employer, Concord Family Services, for records relating to his employment as an information

systems consultant. A copy Defendant's November 2, 2007 letter response to Plaintiff's letter motion to quash Defendant's subpoena on Concord Family Services is attached hereto as Exh. 4.  This is believed to be the November 2, 2007 disclosure referenced in Plaintiff's 2008 Complaint, Exh. 1, ¶ 11.

11.    Plaintiff also alleges other, unspecified disclosure of his DMV records. Exh. 1, ¶ 12

12.    Defendant's access to Plaintiff's DMV records was authorized by the specific terms of the Drivers' Privacy Protection Act. 18 U.S.C. § 2721(b)(1) and (4).  As Declarant wrote Plaintiff's counsel on November 7, 2007, "The use of the DMV records by the Transit Authority is permitted under this statute both because NYCTA is indisputably a government agency and also because the information has been used in connection with civil proceedings in Federal and state courts."

13.    In this November 7, 2007 letter, Declarant cited *Manso v. Santamarina & Assoc.*, 2005 U.S. Dist. LEXIS  7316, *9-19 (S.D.N.Y. Apr. 26, 2005), in which Judge Sands upheld the use of information from a motor vehicle record by a private party for purposes similar to those in the filing with the court – to raise questions as to the truth of a sworn statement by the Plaintiff.  Copies of Mr. Lichten's letter dated November 6, 2007 that raised the issue of the DPPA and Declarant's reply dated November 7, 2007 are attached as Exhs. 5 and 6 respectively hereto.

14.    Significantly, following his receipt of Declarant's letter, Plaintiff's counsel did not raise any objection to Defendant's use of DMV records before Magistrate Judge Peck in the discovery hearing on November 14, 2007, only one week later, or at any time in connection with the 2007 lawsuit.

2008-10150
#1083204

15.     Declarant, an employee of a government agency responsible for its legal defense, properly obtained Plaintiff's DMV records in connection with Defendant's defense against Plaintiff's 2007 lawsuit ("2007 lawsuit"), 2007-CV-2529, now pending before this Court.  The 2007 lawsuit was filed on or about April 2, 2007, Defendant's discovery demands were served May 25, 2007 and Plaintiff's Discovery Responses were served on or about August 15, 2007.  In his initial discovery responses, Plaintiff refused to provide any information concerning his employment or income, both currently and during his suspension by Defendant from 2000-2006.  *See* Exh. 4 hereto, Defendant's November 2, 2007 submission to this Court, *esp.* Exhs. E and F thereto.  Exh. G thereto, is Plaintiff's DMV Registration information.

16.     As detailed in Exh. 4, Defendant's November 2, 2007 submission to this Court, Plaintiff's income and employment through the period from 2000-2007 – whether as employee or as an independent contractor – were material to issues in the 2007 lawsuit – specifically, first, it was relevant evidence as to whether he is or has been "substantially impaired" in *any* major life activity, second, it is relevant to impeachment of his claims to have sought "reasonable accommodation" during the period in order to return to work at the New York City Transit Authority, and third, it is relevant to whether Plaintiff has sought to mitigate his damages at any time in that period.  This issue was not mooted by any purported restriction of damages to a recent period (as Plaintiff's counsel claimed) – a restriction that is not found in the 2007 Complaint.

17.     Plaintiff's counsel acknowledged that Plaintiff's tax returns were relevant to the main claims in the 2007 lawsuit at a discovery hearing before Magistrate Judge Peck

2008-10150
#1083204

on January 31, 2008, Tr. at 7:6-7.  The January 31, 2008 transcript is attached hereto as Exh. 7.

18.     As detailed, this information concerning Plaintiff's employment and earnings was reasonably believed to be highly relevant to Defendant's defenses to Plaintiff's claims of alleged employment disability discrimination and damages.

19.     In addition, Plaintiff's employment and earnings were also relevant to issues concerning Plaintiff's credibility – a serious consideration in the defense against any Plaintiff's claims – where, in prior, sworn testimony and in a sworn affidavit (notarized and submitted by Plaintiff's current counsel), Plaintiff had made representations regarding his lack of earnings from 2000-2004, as well as in submitting a sworn charge of disability discrimination to the EEOC.  In addition, his efforts to mitigate damages were highly relevant to any claims of damages.  In early 2007, Plaintiff declined an offer of reclassification to a position that did not require him to wear safety shoes for reasons Defendant reasonably believed to be contrived.  His long-time possession of alternative employment with far higher remuneration casts considerable doubt on the genuineness of his desire for employment with Defendant.

20.     Plaintiff's DMV records demonstrated that, during the period from 2000-2006 while he was not working for Defendant, for much of which he had sworn he had no earnings, he had owned a succession of late-model luxury automobiles.  This record cast doubt on the validity of the sworn affidavit of no earnings he had submitted to Defendant and on the credibility of his claim to wish reinstatement to employment at Defendant.

5

21.    Defendant explicitly relied on Plaintiff's affidavit in paying him a back-pay award in excess of $108,000 in or about November 2006.

22.    Plaintiff's DMV records also cast doubt on the accuracy of his sworn testimony at arbitration in 2003 that he was homeless and thus unable to receive mail anywhere other than the union hall, a critical determination that led to a decision by the arbitrator reinstating a grievance otherwise untimely under the terms of the applicable collective bargaining agreement.

23.    Defendant accessed Plaintiff's DMV information as appropriate, lawful investigation in support of legitimate and ordinary defensive interests for Defendant, a governmental agency legal department supported by public funds, carrying out its functions, in connection with its defense to Plaintiff's 2007 lawsuit.  "Legitimate and ordinary defensive interests furnish all the cause and effect needed to account for it."  *United States v. New York City Transit Auth.*, 97 F.3d 672, 678 (2d Cir. N.Y. 1996).  The DMV records substantiated Defendant's argument as to the relevance of evidence of Plaintiff's employment and income.

24.    Contrary to Plaintiff' Second and Third Causes of Action in his 2008 lawsuit, Defendant advanced its claims against Plaintiff to recover the backpay it paid in reliance on the affidavit he submitted in further support of Defendant's legitimate interests, and not in retaliation for his protected acts.  As noted in Defendant's State Complaint, Plaintiff admitted at his deposition that his affidavit was false.  *See* Exh. 2 D, Plaintiff's Tr. 130:10-16.

25.    Following the denial of Defendant's motion to add counterclaims by this Court's finding, in February 2008, that they lacked nexus to the 2007 lawsuit, Defendant

2008-10150
#1083204

has filed and served a lawsuit against Plaintiff in New York County Supreme Court, Index No. 400672/2008, to recover the backpay he obtained by fraud.

26.    An employer is not barred from taking adverse action against an employee based on after-acquired evidence of an employee's wrong-doing.  In this case, the after-acquired evidence supports a claim against Plaintiff for fraud.  "In determining appropriate remedial action [where an employer has been found to discriminate – a finding not present here], the employee's wrongdoing becomes relevant not to punish the employee, or out of concern for the relative moral worth of the parties, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 363 (1995)(holding that after-acquired evidence could be used to mitigate or eliminate certain types of damages).

27.    Plaintiff did not obtain immunity for fraudulent acts by virtue of his protected activity nor did that protected activity deprive Defendant of its lawful prerogatives, including the right to seek restitution for moneys Plaintiff wrongfully received pursuant his fraudulent affidavit.

28.    The Supreme Court, in *McKennon,* at 864, held that once an employer learns about employee wrongdoing, the employer is not required to ignore the information, "even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit."

29.    Defendant's action is not retaliatory, it is in fact action consonant with the public interest in safeguarding public funds that, when fraud is uncovered, action is taken to recover the public funds that were paid out.  "Reasonable defensive measures do not

2008-10150
#1083204

violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee and result in differential treatment." *United States v. New York City Transit Authority,* 97 F.3d 672, 677 (1996).

30.    Subsequent to November 2, 2007, Plaintiff's DMV information has been disclosed solely to this Court in connection with Plaintiff's 2007 lawsuit and to the Defendant's process server in or about March 2008 in aid of effectuation of service of Defendant's 2008 State Complaint.  Exh. 2.

31.    Both the disclosure of DMV information to this Court in November 2007, Exh. 4, and for use in effectuation of service of process were clearly in support of the litigation positions of Defendant, which is, additionally, a governmental agency, all disclosures specifically permitted by the DPPA.

Executed at Brooklyn, New York, this 11th day of June, 2008, subject to the penalties of perjury.

*/s/ Ann Burton Goetcheus*
Ann Burton Goetcheus

2008-10150
#1083204

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern                    District of                    New York

PHILBERT GORRICK,
Plaintiff,

V.

NEW YORK CITY TRANSIT AUTHORITY,
Defendant.

### SUMMONS IN A CIVIL ACTION

CASE NUMBER:    08 Civ.

# 08 CV    4396

TO: (Name and address of Defendant)

New York City Transit Authority
130 Livingston Street
Brooklyn, New York  11201

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Stuart Lichten
Schwartz, Lichten & Bright, P.C.
275 Seventh Avenue - 17th Floor
New York, New York  10001

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

DATE    MAY 0 9 2008

PERSONAL
SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 4396**

------------------------------------------------------X

PHILBERT GORRICK,                                    08 Civ.

                Plaintiff,

  - against -

NEW YORK CITY TRANSIT
AUTHORITY,

              Defendant.



COMPLAINT

PLAINTIFF DEMANDS
TRIAL BY JURY IN
THIS ACTION

------------------------------------------------------X

       Plaintiff Philbert Gorrick ("Gorrick"), by his attorneys, Schwartz, Lichten & Bright, P.C.,

complains of defendant New York City Transit Authority ("TA"), as follows:


### JURISDICTION AND VENUE

    1. This is an action brought to remedy violations of the Driver's Privacy Protection Act, 18

U.S.C. § 2721 et seq. ("DPPA"), and to remedy retaliation for protected activity under the

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); the New

York State Human Rights Law, Executive Law § 290 et seq. ("Human Rights Law"); and the

Administrative Code of the City of New York, § 8-101 et seq. ("Administrative Code").

    2. Jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 2724(a), 28 U.S.C. §§ 1331,

1343(a)(4), and 1367, and 42 U.S.C. § 12117(a).

    3. Declaratory and injunctive relief, actual and compensatory damages, and other appropriate

legal and equitable relief are sought pursuant to 18 U.S.C. § 2724(b) and 42 U.S.C. § 12117(a).



PERSONAL
SERVICE



Compensatory damages are sought pursuant to Executive Law § 297(9) and Administrative Code, § 8-502(a). Punitive damages are sought pursuant to 18 U.S.C. § 2724(b).

4. Costs and attorney fees are sought pursuant to 18 U.S.C. § 2724(b)(3); 42 U.S.C. § 12117(a); and Administrative Code, § 8-502(f).

5. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), because the unlawful practices occurred within this judicial district.

6. Plaintiff filed charges of discrimination against defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 10, 2006, and December 20, 2007. The United States Department of Justice, on March 22, 2007, issued plaintiff a notice informing him of his right to sue defendant. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

## PARTIES

7. Gorrick was employed by the TA from July 1991 until June 4, 2007, most recently as a Power Cable Maintainer.

8. Defendant is a public authority created under the laws of the State of New York to operate the New York City subway and bus system.

## FACTS

9. On March 27, 2007, Gorrick filed an action against the TA in this Court alleging that the TA discriminated against Gorrick because of his disability.

2

10. On or about September 7, 2007, the TA obtained, from the New York State Division of Motor Vehicles ("DMV"), Gorrick's date of birth; his address; his DMV identification number; the license plates, vehicle identification number, year, model, and registration expiration dates of vehicles presently and formerly owned by Gorrick; his motor vehicle registration activities; his motor vehicle insurance information; and other personal information.

11. The TA disclosed this information to this Court on November 2, 2007.

12. The TA used this information to attempt to discredit and defame Gorrick on several occasions since November 2, 2007.

13. The TA did not use this information in carrying out its function of operating the New York City subway and bus system. Gorrick has not been employed by the TA since June 4, 2007.

14. The TA did not use this information reasonably in relation to the focus of litigation.

15. On or about March 31, 2008, the TA filed an action against Gorrick in Supreme Court of the State of New York, New York County, alleging that Gorrick committed fraud in connection with his employment and his business.

16. The TA's complaint against Gorrick could have a detrimental impact on Gorrick's personal and professional reputation.

## FIRST CAUSE OF ACTION

17. The TA has knowingly obtained, disclosed, and used personal information from a motor vehicle record for an impermissible purpose. The TA has violated the DPPA.

3

18. As a result of defendant's unlawful acts, plaintiff has suffered and will continue to suffer injury unless and until this Court grants relief. Defendant engaged in these unlawful practices with willful or reckless disregard of the law.

## SECOND CAUSE OF ACTION

19. The TA filed a lawsuit against Gorrick because of his opposition to acts prohibited by the ADA. By its acts and practices described above, defendant has violated the ADA.

20. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer injury unless and until this Court grants relief. Defendant engaged in these retaliatory practices with malice and with reckless indifference to plaintiff's rights protected under Federal law.

## THIRD CAUSE OF ACTION

21. The TA filed a lawsuit against Gorrick because of his opposition to acts prohibited by the Human Rights Law. By its acts and practices described above, defendant has violated the Human Rights Law.

22. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief. Defendant willfully and maliciously engaged in these retaliaatory practices.

4

## FOURTH CAUSE OF ACTION

23.. The TA filed a lawsuit against Gorrick because of his opposition to acts prohibited by the Administrative Code. By its acts and practices described above, defendant has violated the Administrative Code.

24. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief. Defendant willfully and maliciously engaged in these retaliatory practices.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

## ON THE FIRST CAUSE OF ACTION

(a) declaring that the acts and practices complained of herein are in violation of the DPPA;

(b) enjoining and permanently restraining these violations of the DPPA;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated;

(d) directing defendant to pay plaintiff actual damages, but not less than liquidated damages in the amount of $2,500;

(e) directing defendant to pay plaintiff punitive damages;

(f) awarding plaintiff reasonable attorney's fees and the costs of this action;

(g) granting such other and further relief as this Court deems just and proper.

## ON THE SECOND CAUSE OF ACTION

(a) declaring that the acts and practices complained of herein are in violation of the ADA;

5

(b) enjoining and permanently restraining these violations of the ADA;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendant to place plaintiff in the position he would have continued to occupy but for defendant's retaliatory treatment of him;

(e) directing defendant to pay plaintiff compensatory damages and damages for his mental anguish and humiliation;

(f) awarding plaintiff reasonable attorney's fees and the costs of this action;

(g) granting such other and further relief as this Court deems just and proper;


## ON THE THIRD CAUSE OF ACTION

awarding compensatory damages in an amount not yet ascertained;


## ON THE FOURTH CAUSE OF ACTION

(a) awarding compensatory damages in an amount not yet ascertained; and

(b) awarding plaintiff reasonable attorney fees and costs of this action;

6

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all of the causes of action herein.


Dated:  New York, New York
        May 7, 2008

                                        SCHWARTZ, LICHTEN & BRIGHT, P.C.


                                        _____
                                        By:  Stuart Lichten (SL-1258)
                                        Attorneys for Plaintiff
                                        275 Seventh Avenue - 17th Floor
                                        New York, New York  10001
                                        (212) 228-6320

**SUPREME COURT OF THE CITY OF NEW YORK**
**COUNTY OF NEW YORK**
------------------------------------------------------------x

**NEW YORK CITY TRANSIT AUTHORITY,**

**Plaintiff,**

- against -

**PHILBERT GORRICK,**

**Defendant.**

------------------------------------------------------------x

**SUMMONS**

Index No.  08/400672

**TO THE ABOVE NAMED DEFENDANT**:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

complaint.

Dated: Brooklyn, New York
      March 31, 2008

**Defendant's Address**

Mr. Philbert Gorrick
166-05 Highland Avenue
Apt. 6M
Jamaica, New York 11432

**OFFICE OF MARTIN B. SCHNABEL, ESQ.**

By: _Ann Burton Goetoheus_
    ANN BURTON GOETOHEUS
      Gena Usenheimer
    Attorneys for Plaintiff
    New York City Transit Authority
    130 Livingston Street, 12th Floor
    Brooklyn, NY 11201
    718-694-3889

1047967

**SUPREME COURT OF THE CITY OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------------ x

NEW YORK CITY TRANSIT AUTHORITY,

Plaintiff,

- against -

**PHILBERT GORRICK,**

Defendant.

------------------------------------------------------------ x

<strong>VERIFIED<br>COMPLAINT</strong>

**Index No.:** 08/400672

Plaintiff, New York City Transit Authority, (hereinafter "Transit Authority"), by its

attorney, MARTIN B. SCHNABEL, Vice President and General Counsel, upon information and

belief, alleges the following as its Verified Complaint:

The Parties

1.  At all times hereinafter mentioned Plaintiff, Transit Authority, was and still is a public

benefit corporation, duly organized and existing under §§ 1200 et seq. of the Public Authorities

Law of the State of New York.

2.  Upon information and belief, Defendant was hired by the Transit Authority in 1991 and

was promoted to Power Cable Maintainer in 1993, a position in which he remained until his

October 2000 suspension.  Defendant was terminated pursuant to Civil Service Law § 71,

effective June 4, 2007.  Upon information and belief the Defendant currently resides at 166-05

Highland Avenue, Apt. 6M, Jamaica, New York 11432.

3.  Venue is proper in New York County pursuant to CPLR § 505(a) because Plaintiff's

facilities located at 2 Broadway, New York, New York, 10004 are involved in the instant action.

<u>The Facts</u>

4.  On July 19, 2006 an arbitration award was issued resolving a labor grievance between

Plaintiff Transit Authority and the Defendant, ordering that Defendant receive back pay from

May 22, 2002 to June 9, 2004.

5.  As a necessary prerequisite to receiving back pay, Defendant signed an affidavit dated

October 24, 2006, swearing that from 2000 to 2004:

> I was not employed elsewhere in any capacity and did *not derive any*
> *earnings* from any other employment, by self or otherwise, nor did I
> perform any work or services for which I was entitled to be paid now or
> at any future date, nor did I receive any unemployment insurance
> benefits, or public assistance.
> * * *
> I make this affidavit… *in order to induce the Transit Authority to make*
> *such payment*, knowing that the authority will rely thereon. (Emphasis
> added).

*See* Affidavit, annexed hereto as Exhibit "A".

6.  In reliance upon the statements in Defendant's sworn affidavit, Plaintiff remitted

$108,820.20 in back pay to Defendant for the period of his suspension from May 22, 2002 to

June 9, 2004. *See* New York City Transit Authority Payroll Check Stub, annexed hereto as

Exhibit "B".

7.  On March 27, 2007 Defendant filed a Summons and Complaint against the Transit

Authority in District Court for the Southern District of New York, *Gorrick v. New York City*

*Transit Authority,* 07-CV-2529, citing the circumstances surrounding his suspension in 2000 and

restoration in 2006, and alleging violations of the Americans with Disabilities Act of 1990, the

New York State Human Rights Law and the Administrative Code of the City of New York.

8.  During the course of discovery in the Defendant's discrimination case against Plaintiff, Plaintiff first learned that Defendant's representations regarding his lack of earnings from 2000 to 2004 in his affidavit were false.

9.  On September 25, 2007 Plaintiff issued a subpoena to Concord Family Services, Inc. ("Concord"), seeking employment information regarding the Defendant, specifically IRS Miscellaneous Income 1099 forms and/or W-2s from 1998 to the present, as well as copies of any resumes, payments, employment applications or contracts between Concord and Defendant.

10.  Concord responded to Plaintiff's subpoena producing Defendant's 1099s for the years 2002 through 2006 and contracts between Concord and the Defendant for computer consulting services from 1997 to 1998 and 2000 to the present. *See* Concord Contracts ("Contracts") annexed hereto as Exhibit "C".

11.  Defendant himself confirmed his continuous employment with Concord from 1996 to the present in his deposition testimony, annexed hereto as Exhibit "D" at 89:7-90:21, 94:25-97:19, 116:2-118:19, 129:6-130:16.

12.  The Contracts for 1997 to 1998 and 2003 to the present name Defendant, Philbert Gorrick, personally as "Contractor". Although the Contracts for the years 2000 to 2002 contain reference to Defendant's "doing business as" entity, Contemporary Technologies, Co., all the Contracts were signed by Defendant in his individual capacity. *See* Exhibit "C".

13.  It is undisputed that Concord reported its payments to Defendant to the IRS on Gorrick's personal social security number on IRS form 1099. *See* Defendant's 1099-Miscellaneous income forms, annexed hereto as Exhibit "E".

14.  Concord paid Defendant over $100,000 in each of the years for which it has produced 1099's. Specifically, the reported earnings for 2002 are $104,907.00; for 2003, $131,882.01; and

for 2004, $111,959.46. *See* Exhibit "E". Defendant's annual wage as a Power Cable Maintainer during this period was about $50,000.

15.  Pursuant to the contractual terms, Concord compensated Defendant for his consulting services at rate of $70.00 an hour, *exclusive* of costs of materials and equipment. Consequently, nearly all of Defendant's reported income on the 1099's was likely hourly wages from his business endeavors. *See* Exhibit "C".

16.  Defendant admitted that he had "earnings" in the period in question at his deposition, Exhibit "D" at 130:10-16, stating, in answer to the question, "It asks did you have any earnings," "The Transit Authority knew I had earnings. I would assume any intelligent person would assume that the Transit Authority had records that I had a dual business going, wouldn't ask me a question like this knowing that I had a dual business going and not say that it's true."

17.  Defendant's sworn assurances that he was not employed in any capacity and had no earnings between 2000 and 2004, other than from Plaintiff, are plainly false.

18.  It was reasonable of Plaintiff to seek, and rely upon, an Affidavit regarding outside employment and interim earnings prior to issuing back pay.

19.  Defendant knew or had reason to know that Plaintiff regarded his misrepresentation as important in determining whether to issue a check for "lost earnings" to Defendant, and Defendant knew that Plaintiff would act upon the basis of the fraudulent information he provided, as the Affidavit specifies: "I make this affidavit ... in order to induce the Transit Authority to make such payment, knowing that the Authority will rely thereon." *See* Exhibit "A".

20.  As compared to the Plaintiff, Defendant possessed superior knowledge regarding his employment status and non-Transit earnings between 2000 and 2004.

21.  Plaintiff's reliance upon Defendant's affidavit was reasonable.

## FIRST CAUSE OF ACTION:
### ACTUAL FRAUD

22.  Plaintiff repeats, realleges and incorporates herein by reference every allegation set forth in paragraphs 1 through 21 above.

23.  Defendant made material misrepresentations in his sworn affidavit of October 24, 2006 regarding his income in the time period from 2000 to 2004 that were knowingly false and were made with intent to deceive the Plaintiff.  Plaintiff justifiably relied upon Defendant's representations and as a result has been harmed in the amount of $108,820.20.

24.  As a result of Defendant's actual fraud perpetrated against the Plaintiff, Plaintiff seeks restitution in the amount of $108,820.20, as well as punitive damages.

## SECOND CAUSE OF ACTION:
### FRAUDULENT CONCEALMENT

25.  Plaintiff repeats, realleges and incorporates herein by reference every allegation set forth in paragraphs 1 through 24 above.

26.  Defendant concealed the material fact that he was receiving income from 2000 to 2004, information which Defendant was duty-bound to disclose in his sworn affidavit of October 24, 2006. Defendant acted with intent to defraud the Plaintiff, and Plaintiff reasonably relied upon Defendant's fraudulent representations.  Plaintiff was injured in the amount of $108,820.20.

27.  As a result of Defendant's fraudulent concealment, Plaintiff seeks restitution in the amount of $108,820.20, as well as punitive damages.

### THIRD CAUSE OF ACTION:
### UNJUST ENRICHMENT

28.    Plaintiff repeats, realleges and incorporates herein by reference every allegation set forth in paragraphs 1 through 27 above.

29.    Due to the Defendant's fraudulent activities, he was unjustly enriched by $108,820.20 at Plaintiff's expense.  Equity and good conscience militate against permitting Defendant to retain what Plaintiff now seeks to recover, and under principles of equity, Defendant should be required to disgorge this money and refund and return it to Plaintiff.

30.    Defendant has been unjustly enriched at the Plaintiff's expense and Plaintiff seeks restitution in the amount of $108,820.20, as well as punitive damages.

### FOURTH CAUSE OF ACTION:
### RESTITUTION

31.    Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 30 of the complaint as if more fully set forth at length herein.

32.    Plaintiff seeks an order of restitution by way of a judgment against the Defendant, in favor of Plaintiff for a reimbursement of the monies paid to the Defendant due to his fraudulent misrepresentation, in the amount of $108,820.20, with interest thereon.

**WHEREFORE,** Plaintiff demands judgment against Defendant, Philbert Gorrick, as follows:

a)  On the first cause of action requiring Defendant to repay the monies paid to him by Plaintiff as a result of Defendant's actual fraud, in the amount of $108,820.20, together with interest thereon and punitive damages;

b) On the second cause of action, as a result of Defendant's fraudulent concealment,

awarding Plaintiff $108,820.20 wrongfully obtained from Plaintiff through Defendant's

actual fraud, with interest thereon and punitive damages;

c) On the third cause of action requiring Defendant to disgorge the monies totaling

$108,820.20 that he was wrongfully obtained from Plaintiff, together with interest

thereon and punitive damages;

d) On the fourth cause of action requiring Defendant to refund Plaintiff $108,820.20

together with interest thereon; and

e) Granting such other and further relief as this court may deem just and proper.

Dated:    Brooklyn, New York
          March 31, 2008

                                    Yours, etc.

                                    **MARTIN B. SCHNABEL**
                                    Vice President and General Counsel
                                    **NEW YORK CITY TRANSIT AUTHORITY**
                                    Attorneys for Defendant
                                    130 Livingston Street – Room 1233
                                    Brooklyn, New York 11201
                                    (718) 694-3889

                            By:     _____
                                    **Ann Burton Goetcheus**
                                    **Gena Usenheimer**


To:    **Defendant**
Mr. Philbert Gorrick
166-05 Highland Avenue
Apt. 6M
Jamaica, New York 11432

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                         x

----------------------------------------------------------------

**NEW YORK CITY TRANSIT AUTHORITY,**                          :

                                        **Plaintiff,**        :    **Index No.** 081400672

                                   - against -               :    **VERIFICATION**

**PHILBERT GORRICK,**                                         :

                                     **Respondents.**         :

----------------------------------------------------------------  x


STATE OF NEW YORK)
                )
COUNTY OF KINGS  )


          **DAVID BOYLE**, being duly sworn, deposes and says:

          That he is an Assistant Secretary for the New York City Transit Authority, that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to his own knowledge except as to the matters therein stated to be alleged on information and belief; that as to these matters he believes them to be true; that the source of deponent's information and the grounds of his belief are the records of the New York City Transit Authority and the statements made by employees of the said New York City Transit Authority concerning the subject matter of this proceeding. This verification is made by an Assistant Secretary because the New York City Transit Authority is a public benefit corporation created by Sections 1201 et seq. of the New York Public Authorities Law.


| Sworn to before me this | |
| --- | --- |
| _31_ th day of ~~November 2004~~ _March 2008_ | |
| _Ivette Moreno_ | _David Boyle_ |
| N0TARY PUBLIC | **DAVID BOYLE** |

IVETTE MORENO
Notary Public, State of New York
No. 01MO5073381
Qualified in Kings County
Commission Expires February 24, _2011_

LABOR RELATIONS MDW    Fax:646-252-5556          Sep  5 2007 13:50    P.01

STATE OF NEW YORK
                        SS:
COUNTY OF KINGS


I _Philbert Gorrick_____ Pass No. 330899

being duly sworn deposes and says:


I was suspended from my position of _Power Cable Maintainer_____

on _October 9, 2000_____. The suspension

arose out of disciplinary charges then pending against me.  I have not

been restored to duty on_____.


During a portion of the aforesaid suspension, from:

_____2000_____ to ____2004_____

I was not employed elsewhere in any capacity and did not derive

any earnings from any other employment, by self or otherwise, nor

did I perform any work or services for which I was entitled to be

paid now or at any future date, nor did I receive any

unemployment insurance benefits, or public assistance.

I make this affidavit in connection with the Award dated July 19, 2006, which
directed that I be reimbursed for the period of my suspension

from _May 22, 2002_____ to _____June 9, 2004_____

in order to induce the Transit Authority to make such payment,

knowing that the Authority will rely thereon.


Sworn to before me this

_____24th_____ day of _October_____ of 2006

                                        _____
                                        Employee's Signature


                                        Notary Signature
                                        STUART LICHTEN
                                        NOTARY PUBLIC, STATE OF NEW YORK
                                        No. 02LI4941819
                                        QUALIFIED IN NEW YORK COUNTY
                                        CERTIFICATE FILED IN NEW YORK COUNTY
                                        COMMISSION EXPIRES JULY 25, 20_10_

## New York City Transit Authority
## Check Stub Inquiry System
## Payroll Check Stub Information

Pass Number    330899

Level 1/Level 2    TAW1

Employee Name   GORRICK, PHILBERT T

Salary

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REGULAR EARNING | | | | .00 | 108,820.20 | FED TAX (M,02) | 10,013.82 | 10,013.82 |
| PEN.GR:IF APPL | | | | 108,820.20 | 108,820.20 | SOCIAL SEC TAX | 5,840.40 | 5,840.40 |
| | | | | | | MEDICARE TAX | 1,577.89 | 1,577.89 |
| | | | | | | NEW YORK (M,02) | 5,172.80 | 5,172.80 |
| | | | | | | NY CITY    (R) | 3,075.59 | 3,075.59 |
| | | | | | | PENSION | 2,176.40 | 2,176.40 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Current | ********* | 25,680.50 | 2,176.40 | 80,963.30 | 12-09-2006 | 4404 | 80,963.30 |
| YTD | 108,820.20 | 25,680.50 | 2,176.40 | 80,963.30 | | PENSION # | |

**New York City Transit Authority**

MTA

TA W1 2900 DD   2977 29067        330899

PHILBERT T GORRICK
P.O. BOX 160026,
BROOKLYN, NY 11216

Check No.     4404

Date   12-10-2006

$      80,963.30

D 0387

ROM :CONCORD FAMILY SERVICES INC.    FAX NO. :7186382813    Jan. 16 2008 12:34PM P11

# Contract

THIS AGREEMENT is entered between Concord  Family Services (hereafter referred to as CFS) and Philbert Gorrick (hereafter referred to as the Contractor). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.  The Contractor will provide CFS with a minimum of ten (10) hours of computer consulting services per month from February 1997 through January 1998.

2.  The Contractor will provide troubleshooting, repairs and/or upgrading computer services for a period of one (1) year from the date of this agreement.

3.  CFS will pay the Contractor at a rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments supplied for the purpose of repairs and/or upgrading .

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

☐    None.

This agreement shall be govern by the laws of New York State.

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated on two (2) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be modified

ROM :CONCORD FAMILY SERVICES INC.       FAX NO. :7186382813            Jan. 16 2000 12:25PM  P12

except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on ___2/1/97_____

Concord  Family Services

By: ~~Lilan E Floyd~~
Director

Attest: _____

Philbert Gorrick

By: ~~signature~~
Contractor

Attest: _____

❖❖❖❖❖❖❖

2

# Contract

THIS AGREEMENT is entered between <u>Concord Family Services, Inc.</u> (hereafter referred to as <u>CFS</u>) and <u>Philbert T. Gorrick - Contemporary Technologies, Co.</u> (hereafter referred to as the <u>Contractor</u>). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The Contractor will provide CFS with Network Computing/Telephone Systems Consulting Services and Data/Telecommunication Cabling Services for the period February 2000 through January 2001.

2. The Contractor will provide the follow
   - Network/Telecommunication Cabling Installations and Plant Maintenance
   - Telecommunication Installation and Management.
   - Computer Networks Installation, Upgrade, Maintenance and Repairs services

   for a period of one (1) year from the date of this agreement.

3. CFS will pay the Contractor at a rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments supplied for the purpose of this agreement.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

None.

This agreement shall be govern by the laws of <u>New York State.</u>

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated on four (4) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be modified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on ——————

Concord Family Services, Inc.

By: _____

Philbert T. Gorrick

By: _____


Attest: _____

Attest: _____

ROM :CONCORD FAMILY SERVICES INC.    FAX NO. :7186382813    Jan. 16 2008 12:33PM P9

# Contract

THIS AGREEMENT is entered between <u>Concord Family Services, Inc.</u> (hereafter referred to as <u>CFS</u>) and <u>Philbert T. Gorrick - Contemporary Technologies, Co.</u> (hereafter referred to as the <u>Contractor</u>). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The Contractor will provide CFS with Network Computing/Telephone Systems Consulting Services and Data/Telecommunication Cabling Services for the period February 2001 through January 2002.

2. The Contractor will provide the follow
   - Network/Telecommunication Cabling Installations and Plant Maintenance
   - Telecommunication Installation and Management.
   - Computer Networks Installation, Upgrade, Maintenance and Repairs services

   for a period of one (1) year from the date of this agreement.

3. CFS will pay the Contractor at a rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments supplied for the purpose of this agreement.

4. The Contractor will respond upon requests by CFS to all emergencies relating to the Computer\Network and Telecommunication within four (4) hours of notification.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

None.

This agreement shall be govern by the laws of <u>New York State.</u>

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

FROM :CONCORD FAMILY SERVICES INC.    FAX NO. :7186382813    Jan. 16 2008 12:34PM P10

This agreement can be terminated on four (4) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be modified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on ——————

Concord Family Services, Inc.

By: _____

Philbert T. Gorrick

By: _____

Attest: _____

Attest: _____

# Contract

THIS AGREEMENT is entered between **Concord Family Services Inc.** (hereafter referred to as CFS) and **Philbert T. Gorrick** (hereafter referred to as the Contractor). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The contractor will provide CFS with a minimum of twenty (20) hours of consulting services per month for Computing and Network maintenance at CFS, from February 2003 through January 2005.

2. The contractor will provide troubleshooting, repairs, upgrading , computer and network equipments and servicing for the period of (2) two years from the date of this agreement.

3. CFS will pay the Contractor rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments required for the purpose of repairs, upgrade and expansion of the Computer Network

4. The Contractor will respond upon requests by CFS to all emergencies relating to the Computer/Network within eight hours notification.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

   o   None.

The agreement shall be governed by the laws of **New York State.**

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated on two (2) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be notified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on _____

Concord Family Services, Inc.

By: _____
Executive Director

Philbert T. Gorrick

By: _____
Contractor

# Contract

THIS AGREEMENT is entered between Concord Family Services Inc. (hereafter referred to as CFS) and Philbert T. Gorrick (hereafter referred to as the Contractor). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The contractor will provide CFS with a minimum of forty (40) hours of consulting services per month for Computing and Network maintenance at CFS.

2. The contractor will provide troubleshooting, repairs, upgrading, computer and network equipments and servicing for CFS.

3. CFS will pay the Contractor rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments required for the purpose of repairs, upgrade and expansion of the Computer Network

4. The Contractor will respond upon requests by CFS to all emergencies relating to the Computer/Network within eight hours notification.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

    o  None.

The agreement shall be governed by the laws of New York State.

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated by four (4) weeks written notification, provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be notified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on _____

Concord Family Services, Inc.                    Philbert T. Gorrick

By: _____                    By: _____
Executive Director                               Contractor

## Duties and Responsibilities

**Users' Technical Support**

- Provide technical support for moderately complex problems in a timely manner.
- Identifies the cause(s), research, assess, solve and take action to prevent programming and/or system problems from recurring using available resources.
- Use technical resources such as: hardware/software manuals, third party books, technical email lists, Internet newsgroups, manufacture telephone technical support lines, online help systems, etc.
- Monitor and tune software performance; perform moderately complex software trouble shooting.
- Serve as technical support to non-technical administrators, staff and vendors in the provision of all microcomputer/network support and services system wide.
- Perform in-depth technical advisement and problem resolution on Intel-based hardware and software problems including operating system(OS), file operations, local and networked printing.
- Perform moderately complex installations & troubleshoot use of CFS supported applications & clients, TCP/IP client installations e.g., Telnet, FTP, web email clients, network setup & connection (both direct & dial-up network connections).
- Perform in-depth technical advisement and problem resolution on all local area network (LAN) problems for all three sites(CFS HQ, OMH

& PS) supported network operating system (NOS) such as Windows 2003, Linux, & Sun Microsystems Solaris.

- Make recommendations for NOS servers and software. Perform installation, configuration, management and maintenance.

- Integration of new/existing computer systems into LAN environment including server, client & peripheral equipment installation/configuration and connecting the LAN environment to the Internet to facilitate Email(s), Web and VPN access.

- Troubleshoot network connectivity problems for both direct network connections and dial-up/VPN connections.

- Provide hardware support such as installation of network cards, reformatting of hard disk drives when required.

- Enforce established security procedures to mitigate or isolate the impact of network intrusions, virus attacks or other incidents from resources internally or externally.

**Database Management and Administrator**

- Work with source system subject matter experts to understand the source data structures and data item definitions.

- Monitor and track software versions, fixes, and vendor announcements.

- Tests, correct, refine changes and error to database(s)

- Established physical database access parameters.

- Defines and specifies user access levels.

- Define, plan, and implement backup/recovery strategies.

- Work close with the application developer/vendor(s) in the performance of advanced technical problem diagnostics and resolution.

## Networking

- Install and configure voice and data communication cable and hardware, e.g., workgroup switch, gateway or functional server, firewalls, using established procedures.
- Troubleshoot and perform corrective measures to resolve or avoid problems with voice or data networks.
- Corrective action may include replacement or reconfiguration of hardware, software, firmware or physical network connections. It may also involve the coordination and/or collaboration with other vendors, e.g., Verizon, Convad Communications, Fund EZ, Keltech, ADP etc...
- Use of appropriate test equipments, such as UTP cable tester, network protocol analyzer, to diagnose and isolate network problems.
- Monitor network performance with appropriate hardware and software tools.
- Install and terminate various types of standard, low-voltage communication cabling, including but not limited to, CAT 5e, Cat 6 UTP, CATV coax, fiber-optic(single-mode/multi-mode)