**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x

PHILBERT GORRICK,                                  :                  **DECLARATION OF ANN**
                                                                     **BURTON GOETCHEUS IN**
          **Plaintiff,**                               :             **SUPPORT OF DEFENDANT'S**
                                                                     **MOTION TO DISMISS**
          **- against -**                              :
                                                                        **CV-08-4396 (GBD)**
                                                   :

**NEW YORK CITY TRANSIT AUTHORITY**
                                                   :
          **Defendant.**

-------------------------------------------------------------- x


**ANN BURTON GOETCHEUS**, pursuant to 28 U.S.C. § 1746, declares:

      1.      I am an attorney who represents the Defendant in this action and in

Plaintiff's earlier disability discrimination action against Defendant, CV-07-2529.  I

submit this declaration in support of the Defendant's motion, under Fed. Rule Civ. P.

12(b)(6) to dismiss Plaintiff's 2008 Complaint.

      2.      Plaintiff's 2008 Complaint, 2008-CV-4396 ("2008 federal Complaint") is

attached hereto as Exh. 1.

      3.      This declaration is based upon my personal knowledge of the circumstances

relating to the Defendant's obtaining and using information concerning Plaintiff's motor

vehicle driver's license and automobile registration kept by the New York State Division

of Motor Vehicles in the course of Defendant's conduct of its legal business as a

governmental agency and upon my review of Defendant's litigation records kept in the

ordinary course of its business.

      4.      Plaintiff filed a Charge of disability discrimination with the EEOC in

August 2006 and a federal lawsuit alleging disability discrimination under federal, state

and city law in or about April 2007 ("2007 lawsuit"), 2007-CV-2529.  A summary

judgment motion has been fully briefed by the parties and is currently *sub judice* before this Court.

5.    Defendant filed a Motion to Amend Its Answer to Assert Counterclaims before this Court in December 2007 in Plaintiff's 2007 federal lawsuit.

6.    Plaintiff filed a Charge with the EEOC in December 2007 that alleged that Defendant's motion was retaliatory.

7.    This Court denied Defendant's Motion to add counterclaims in February 2008, holding that the counterclaims lacked a common nucleus of operative fact with the disability claims in Plaintiff's 2007 federal lawsuit.

8.    Defendant filed a state claim for restitution from Plaintiff in New York County Supreme Court in or about March 2008, Index # 400672/2008, and personally served it on Plaintiff thereafter ("2008 state lawsuit").  A copy of the Verified Complaint in the 2008 state lawsuit is attached as Exh. 2 hereto.

9.    Plaintiff here has filed a motion to dismiss Defendant's state lawsuit.  A copy of that motion and its supporting papers is attached hereto as Exh. 3. (The copy of the Verified Complaint attached to Plaintiff's motion has been omitted as duplicative of Exh. 2 hereto.)

10.    The gravamen of the first Cause of Action in Plaintiff's Complaint in this action is that Defendant improperly obtained information about Plaintiff from the New York State Division of Motor Vehicles ("DMV") in or about September 2007 and disclosed that information to this court in November 2007 in Defendant's response to Plaintiff's motion to quash a subpoena served by Defendant on Plaintiff's employer, Concord Family Services, for records relating to his employment as an information

2

systems consultant. A copy Defendant's November 2, 2007 letter response to Plaintiff's letter motion to quash Defendant's subpoena on Concord Family Services is attached hereto as Exh. 4. This is believed to be the November 2, 2007 disclosure referenced in Plaintiff's 2008 Complaint, Exh. 1, ¶ 11.

11.   Plaintiff also alleges other, unspecified disclosure of his DMV records. Exh. 1, ¶ 12

12.   Defendant's access to Plaintiff's DMV records was authorized by the specific terms of the Drivers' Privacy Protection Act. 18 U.S.C. § 2721(b)(1) and (4). As Declarant wrote Plaintiff's counsel on November 7, 2007, "The use of the DMV records by the Transit Authority is permitted under this statute both because NYCTA is indisputably a government agency and also because the information has been used in connection with civil proceedings in Federal and state courts."

13.   In this November 7, 2007 letter, Declarant cited *Manso v. Santamarina & Assoc.*, 2005 U.S. Dist. LEXIS 7316, *9-19 (S.D.N.Y. Apr. 26, 2005), in which Judge Sands upheld the use of information from a motor vehicle record by a private party for purposes similar to those in the filing with the court – to raise questions as to the truth of a sworn statement by the Plaintiff. Copies of Mr. Lichten's letter dated November 6, 2007 that raised the issue of the DPPA and Declarant's reply dated November 7, 2007 are attached as Exhs. 5 and 6 respectively hereto.

14.   Significantly, following his receipt of Declarant's letter, Plaintiff's counsel did not raise any objection to Defendant's use of DMV records before Magistrate Judge Peck in the discovery hearing on November 14, 2007, only one week later, or at any time in connection with the 2007 lawsuit.

2008-10150
#1083204

15.    Declarant, an employee of a government agency responsible for its legal defense, properly obtained Plaintiff's DMV records in connection with Defendant's defense against Plaintiff's 2007 lawsuit ("2007 lawsuit"), 2007-CV-2529, now pending before this Court.  The 2007 lawsuit was filed on or about April 2, 2007, Defendant's discovery demands were served May 25, 2007 and Plaintiff's Discovery Responses were served on or about August 15, 2007.  In his initial discovery responses, Plaintiff refused to provide any information concerning his employment or income, both currently and during his suspension by Defendant from 2000-2006.  *See* Exh. 4 hereto, Defendant's November 2, 2007 submission to this Court, *esp.* Exhs. E and F thereto.  Exh. G thereto, is Plaintiff's DMV Registration information.

16.    As detailed in Exh. 4, Defendant's November 2, 2007 submission to this Court, Plaintiff's income and employment through the period from 2000-2007 – whether as employee or as an independent contractor – were material to issues in the 2007 lawsuit – specifically, first, it was relevant evidence as to whether he is or has been "substantially impaired" in *any* major life activity, second, it is relevant to impeachment of his claims to have sought "reasonable accommodation" during the period in order to return to work at the New York City Transit Authority, and third, it is relevant to whether Plaintiff has sought to mitigate his damages at any time in that period.  This issue was not mooted by any purported restriction of damages to a recent period (as Plaintiff's counsel claimed) – a restriction that is not found in the 2007 Complaint.

17.    Plaintiff's counsel acknowledged that Plaintiff's tax returns were relevant to the main claims in the 2007 lawsuit at a discovery hearing before Magistrate Judge Peck

2008-10150
#1083204

on January 31, 2008, Tr. at 7:6-7.  The January 31, 2008 transcript is attached hereto as Exh. 7.

18.    As detailed, this information concerning Plaintiff's employment and earnings was reasonably believed to be highly relevant to Defendant's defenses to Plaintiff's claims of alleged employment disability discrimination and damages.

19.    In addition, Plaintiff's employment and earnings were also relevant to issues concerning Plaintiff's credibility – a serious consideration in the defense against any Plaintiff's claims – where, in prior, sworn testimony and in a sworn affidavit (notarized and submitted by Plaintiff's current counsel), Plaintiff had made representations regarding his lack of earnings from 2000-2004, as well as in submitting a sworn charge of disability discrimination to the EEOC.  In addition, his efforts to mitigate damages were highly relevant to any claims of damages.  In early 2007, Plaintiff declined an offer of reclassification to a position that did not require him to wear safety shoes for reasons Defendant reasonably believed to be contrived.  His long-time possession of alternative employment with far higher remuneration casts considerable doubt on the genuineness of his desire for employment with Defendant.

20.    Plaintiff's DMV records demonstrated that, during the period from 2000-2006 while he was not working for Defendant, for much of which he had sworn he had no earnings, he had owned a succession of late-model luxury automobiles.  This record cast doubt on the validity of the sworn affidavit of no earnings he had submitted to Defendant and on the credibility of his claim to wish reinstatement to employment at Defendant.

2008-10150
#1083204

21. Defendant explicitly relied on Plaintiff's affidavit in paying him a back-pay award in excess of $108,000 in or about November 2006.

22. Plaintiff's DMV records also cast doubt on the accuracy of his sworn testimony at arbitration in 2003 that he was homeless and thus unable to receive mail anywhere other than the union hall, a critical determination that led to a decision by the arbitrator reinstating a grievance otherwise untimely under the terms of the applicable collective bargaining agreement.

23. Defendant accessed Plaintiff's DMV information as appropriate, lawful investigation in support of legitimate and ordinary defensive interests for Defendant, a governmental agency legal department supported by public funds, carrying out its functions, in connection with its defense to Plaintiff's 2007 lawsuit. "Legitimate and ordinary defensive interests furnish all the cause and effect needed to account for it." *United States v. New York City Transit Auth.*, 97 F.3d 672, 678 (2d Cir. N.Y. 1996). The DMV records substantiated Defendant's argument as to the relevance of evidence of Plaintiff's employment and income.

24. Contrary to Plaintiff' Second and Third Causes of Action in his 2008 lawsuit, Defendant advanced its claims against Plaintiff to recover the backpay it paid in reliance on the affidavit he submitted in further support of Defendant's legitimate interests, and not in retaliation for his protected acts. As noted in Defendant's State Complaint, Plaintiff admitted at his deposition that his affidavit was false. *See* Exh. 2 D, Plaintiff's Tr. 130:10-16.

25. Following the denial of Defendant's motion to add counterclaims by this Court's finding, in February 2008, that they lacked nexus to the 2007 lawsuit, Defendant

2008-10150
#1083204

has filed and served a lawsuit against Plaintiff in New York County Supreme Court, Index No. 400672/2008, to recover the backpay he obtained by fraud.

26.   An employer is not barred from taking adverse action against an employee based on after-acquired evidence of an employee's wrong-doing.  In this case, the after-acquired evidence supports a claim against Plaintiff for fraud.  "In determining appropriate remedial action [where an employer has been found to discriminate – a finding not present here], the employee's wrongdoing becomes relevant not to punish the employee, or out of concern for the relative moral worth of the parties, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 363 (1995)(holding that after-acquired evidence could be used to mitigate or eliminate certain types of damages).

27.   Plaintiff did not obtain immunity for fraudulent acts by virtue of his protected activity nor did that protected activity deprive Defendant of its lawful prerogatives, including the right to seek restitution for moneys Plaintiff wrongfully received pursuant his fraudulent affidavit.

28.   The Supreme Court, in *McKennon,* at 864, held that once an employer learns about employee wrongdoing, the employer is not required to ignore the information, "even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit."

29.   Defendant's action is not retaliatory, it is in fact action consonant with the public interest in safeguarding public funds that, when fraud is uncovered, action is taken to recover the public funds that were paid out.  "Reasonable defensive measures do not

7

violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee and result in differential treatment." *United States v. New York City Transit Authority,* 97 F.3d 672, 677 (1996).

30.    Subsequent to November 2, 2007, Plaintiff's DMV information has been disclosed solely to this Court in connection with Plaintiff's 2007 lawsuit and to the Defendant's process server in or about March 2008 in aid of effectuation of service of Defendant's 2008 State Complaint.  Exh. 2.

31.    Both the disclosure of DMV information to this Court in November 2007, Exh. 4, and for use in effectuation of service of process were clearly in support of the litigation positions of Defendant, which is, additionally, a governmental agency, all disclosures specifically permitted by the DPPA.

Executed at Brooklyn, New York, this 11th day of June, 2008, subject to the penalties of perjury.

*/s/ Ann Burton Goetcheus*
Ann Burton Goetcheus

2008-10150
#1083204

%AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

PHILBERT GORRICK,
Plaintiff,

V.

NEW YORK CITY TRANSIT AUTHORITY,
Defendant.

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:    08 Civ.

# 08 CV  4396

TO: (Name and address of Defendant)

New York City Transit Authority
130 Livingston Street
Brooklyn, New York  11201

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Stuart Lichten
Schwartz, Lichten & Bright, P.C.
275 Seventh Avenue - 17th Floor
New York, New York  10001

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

MAY 0 9 2008

DATE

PERSONAL
SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**08 CV 4396**

PHILBERT GORRICK,

                Plaintiff,

  - against -

NEW YORK CITY TRANSIT
AUTHORITY,

              Defendant.

------------------------------------------------------------X

08 Civ.



COMPLAINT

RECEIVED
MAY 0 9 2008

PLAINTIFF DEMANDS
TRIAL BY JURY IN
THIS ACTION

      Plaintiff Philbert Gorrick ("Gorrick"), by his attorneys, Schwartz, Lichten & Bright, P.C.,

complains of defendant New York City Transit Authority ("TA"), as follows:

<u>JURISDICTION AND VENUE</u>

      1.  This is an action brought to remedy violations of the Driver's Privacy Protection Act, 18

U.S.C. § 2721 <u>et seq.</u> ("DPPA"), and to remedy retaliation for protected activity under the

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA"); the New

York State Human Rights Law, Executive Law § 290 <u>et seq.</u> ("Human Rights Law"); and the

Administrative Code of the City of New York, § 8-101 <u>et seq.</u> ("Administrative Code").

      2.  Jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 2724(a), 28 U.S.C. §§ 1331,

1343(a)(4), and 1367, and 42 U.S.C. § 12117(a).

      3.  Declaratory and injunctive relief, actual and compensatory damages, and other appropriate

legal and equitable relief are sought pursuant to 18 U.S.C. § 2724(b) and 42 U.S.C. § 12117(a).



PERSONAL
SERVICE



Compensatory damages are sought pursuant to Executive Law § 297(9) and Administrative Code, § 8-502(a). Punitive damages are sought pursuant to 18 U.S.C. § 2724(b).

4. Costs and attorney fees are sought pursuant to 18 U.S.C. § 2724(b)(3); 42 U.S.C. § 12117(a); and Administrative Code, § 8-502(f).

5. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), because the unlawful practices occurred within this judicial district.

6. Plaintiff filed charges of discrimination against defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 10, 2006, and December 20, 2007. The United States Department of Justice, on March 22, 2007, issued plaintiff a notice informing him of his right to sue defendant. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

## PARTIES

7. Gorrick was employed by the TA from July 1991 until June 4, 2007, most recently as a Power Cable Maintainer.

8. Defendant is a public authority created under the laws of the State of New York to operate the New York City subway and bus system.

## FACTS

9. On March 27, 2007, Gorrick filed an action against the TA in this Court alleging that the TA discriminated against Gorrick because of his disability.

2

10. On or about September 7, 2007, the TA obtained, from the New York State Division of Motor Vehicles ("DMV"), Gorrick's date of birth; his address; his DMV identification number; the license plates, vehicle identification number, year, model, and registration expiration dates of vehicles presently and formerly owned by Gorrick; his motor vehicle registration activities; his motor vehicle insurance information; and other personal information.

11. The TA disclosed this information to this Court on November 2, 2007.

12. The TA used this information to attempt to discredit and defame Gorrick on several occasions since November 2, 2007.

13. The TA did not use this information in carrying out its function of operating the New York City subway and bus system. Gorrick has not been employed by the TA since June 4, 2007.

14. The TA did not use this information reasonably in relation to the focus of litigation.

15. On or about March 31, 2008, the TA filed an action against Gorrick in Supreme Court of the State of New York, New York County, alleging that Gorrick committed fraud in connection with his employment and his business.

16. The TA's complaint against Gorrick could have a detrimental impact on Gorrick's personal and professional reputation.

## FIRST CAUSE OF ACTION

17. The TA has knowingly obtained, disclosed, and used personal information from a motor vehicle record for an impermissible purpose. The TA has violated the DPPA.

3

18. As a result of defendant's unlawful acts, plaintiff has suffered and will continue to suffer injury unless and until this Court grants relief. Defendant engaged in these unlawful practices with willful or reckless disregard of the law.

## SECOND CAUSE OF ACTION

19. The TA filed a lawsuit against Gorrick because of his opposition to acts prohibited by the ADA. By its acts and practices described above, defendant has violated the ADA.

20. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer injury unless and until this Court grants relief. Defendant engaged in these retaliatory practices with malice and with reckless indifference to plaintiff's rights protected under Federal law.

## THIRD CAUSE OF ACTION

21. The TA filed a lawsuit against Gorrick because of his opposition to acts prohibited by the Human Rights Law. By its acts and practices described above, defendant has violated the Human Rights Law.

22. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief. Defendant willfully and maliciously engaged in these retaliaatory practices.

4

FOURTH CAUSE OF ACTION

23.. The TA filed a lawsuit against Gorrick because of his opposition to acts prohibited by the Administrative Code. By its acts and practices described above, defendant has violated the Administrative Code.

24. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief. Defendant willfully and maliciously engaged in these retaliatory practices.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

ON THE FIRST CAUSE OF ACTION

(a) declaring that the acts and practices complained of herein are in violation of the DPPA;

(b) enjoining and permanently restraining these violations of the DPPA;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated;

(d) directing defendant to pay plaintiff actual damages, but not less than liquidated damages in the amount of $2,500;

(e) directing defendant to pay plaintiff punitive damages;

(f) awarding plaintiff reasonable attorney's fees and the costs of this action;

(g) granting such other and further relief as this Court deems just and proper.

ON THE SECOND CAUSE OF ACTION

(a) declaring that the acts and practices complained of herein are in violation of the ADA;

5

(b) enjoining and permanently restraining these violations of the ADA;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendant to place plaintiff in the position he would have continued to occupy but for defendant's retaliatory treatment of him;

(e) directing defendant to pay plaintiff compensatory damages and damages for his mental anguish and humiliation;

(f) awarding plaintiff reasonable attorney's fees and the costs of this action;

(g) granting such other and further relief as this Court deems just and proper;

## ON THE THIRD CAUSE OF ACTION

awarding compensatory damages in an amount not yet ascertained;

## ON THE FOURTH CAUSE OF ACTION

(a) awarding compensatory damages in an amount not yet ascertained; and

(b) awarding plaintiff reasonable attorney fees and costs of this action;

6

<u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all of the causes of action herein.

Dated:  New York, New York
May 7, 2008

SCHWARTZ, LICHTEN & BRIGHT, P.C.

By:  Stuart Lichten (SL-1258)
Attorneys for Plaintiff
275 Seventh Avenue - 17th Floor
New York, New York  10001
(212) 228-6320

7

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
NEW YORK CITY TRANSIT AUTHORITY,

Plaintiff,

- against -

PHILBERT GORRICK,

Defendant.
------------------------------------------------------------x

**SUMMONS**

Index No. 08/400672

TO THE ABOVE NAMED DEFENDANT:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

complaint.

Dated: Brooklyn, New York
      March 31, 2008

**Defendant's Address**

Mr. Philbert Gorrick
166-05 Highland Avenue
Apt. 6M
Jamaica, New York 11432

**OFFICE OF MARTIN B. SCHNABEL, ESQ.**

By: _____
    ANN BURTON GOETCHEUS
    Gena Usenheimer
Attorneys for Plaintiff
New York City Transit Authority
130 Livingston Street, 12th Floor
Brooklyn, NY 11201
718-694-3889

1047967

**SUPREME COURT OF THE CITY OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------------------- x

NEW YORK CITY TRANSIT AUTHORITY,

              **Plaintiff,**

          - against -

**PHILBERT GORRICK,**

           **Defendant.**

---------------------------------------------------------------- x

      **VERIFIED**
      **COMPLAINT**

Index No.: 08/400672

Plaintiff, New York City Transit Authority, (hereinafter "Transit Authority"), by its attorney, MARTIN B. SCHNABEL, Vice President and General Counsel, upon information and belief, alleges the following as its Verified Complaint:

<u>The Parties</u>

1.  At all times hereinafter mentioned Plaintiff, Transit Authority, was and still is a public benefit corporation, duly organized and existing under §§ 1200 et seq. of the Public Authorities Law of the State of New York.

2.  Upon information and belief, Defendant was hired by the Transit Authority in 1991 and was promoted to Power Cable Maintainer in 1993, a position in which he remained until his October 2000 suspension. Defendant was terminated pursuant to Civil Service Law § 71, effective June 4, 2007. Upon information and belief the Defendant currently resides at 166-05 Highland Avenue, Apt. 6M, Jamaica, New York 11432.

3.  Venue is proper in New York County pursuant to CPLR § 505(a) because Plaintiff's facilities located at 2 Broadway, New York, New York, 10004 are involved in the instant action.

### The Facts

4.  On July 19, 2006 an arbitration award was issued resolving a labor grievance between

Plaintiff Transit Authority and the Defendant, ordering that Defendant receive back pay from

May 22, 2002 to June 9, 2004.

5.  As a necessary prerequisite to receiving back pay, Defendant signed an affidavit dated

October 24, 2006, swearing that from 2000 to 2004:

> I was not employed elsewhere in any capacity and did *not derive any
> earnings* from any other employment, by self or otherwise, nor did I
> perform any work or services for which I was entitled to be paid now or
> at any future date, nor did I receive any unemployment insurance
> benefits, or public assistance.
> * * *
> I make this affidavit… *in order to induce the Transit Authority to make
> such payment,* knowing that the authority will rely thereon. (Emphasis
> added).

*See* Affidavit, annexed hereto as Exhibit "A".

6.  In reliance upon the statements in Defendant's sworn affidavit, Plaintiff remitted

$108,820.20 in back pay to Defendant for the period of his suspension from May 22, 2002 to

June 9, 2004. *See* New York City Transit Authority Payroll Check Stub, annexed hereto as

Exhibit "B".

7.  On March 27, 2007 Defendant filed a Summons and Complaint against the Transit

Authority in District Court for the Southern District of New York, *Gorrick v. New York City

Transit Authority,* 07-CV-2529, citing the circumstances surrounding his suspension in 2000 and

restoration in 2006, and alleging violations of the Americans with Disabilities Act of 1990, the

New York State Human Rights Law and the Administrative Code of the City of New York.

8.   During the course of discovery in the Defendant's discrimination case against Plaintiff, Plaintiff first learned that Defendant's representations regarding his lack of earnings from 2000 to 2004 in his affidavit were false.

9.   On September 25, 2007 Plaintiff issued a subpoena to Concord Family Services, Inc. ("Concord"), seeking employment information regarding the Defendant, specifically IRS Miscellaneous Income 1099 forms and/or W-2s from 1998 to the present, as well as copies of any resumes, payments, employment applications or contracts between Concord and Defendant.

10.   Concord responded to Plaintiff's subpoena producing Defendant's 1099s for the years 2002 through 2006 and contracts between Concord and the Defendant for computer consulting services from 1997 to 1998 and 2000 to the present. *See* Concord Contracts ("Contracts") annexed hereto as Exhibit "C".

11.   Defendant himself confirmed his continuous employment with Concord from 1996 to the present in his deposition testimony, annexed hereto as Exhibit "D" at 89:7-90:21, 94:25-97:19, 116:2-118:19, 129:6-130:16.

12.   The Contracts for 1997 to 1998 and 2003 to the present name Defendant, Philbert Gorrick, personally as "Contractor". Although the Contracts for the years 2000 to 2002 contain reference to Defendant's "doing business as" entity, Contemporary Technologies, Co., all the Contracts were signed by Defendant in his individual capacity. *See* Exhibit "C".

13.   It is undisputed that Concord reported its payments to Defendant to the IRS on Gorrick's personal social security number on IRS form 1099. *See* Defendant's 1099-Miscellaneous income forms, annexed hereto as Exhibit "E".

14.   Concord paid Defendant over $100,000 in each of the years for which it has produced 1099's. Specifically, the reported earnings for 2002 are $104,907.00; for 2003, $131,882.01; and

for 2004, $111,959.46. *See* Exhibit "E". Defendant's annual wage as a Power Cable Maintainer during this period was about $50,000.

15.    Pursuant to the contractual terms, Concord compensated Defendant for his consulting services at rate of $70.00 an hour, *exclusive* of costs of materials and equipment. Consequently, nearly all of Defendant's reported income on the 1099's was likely hourly wages from his business endeavors. *See* Exhibit "C".

16.    Defendant admitted that he had "earnings" in the period in question at his deposition, Exhibit "D" at 130:10-16, stating, in answer to the question, "It asks did you have any earnings," "The Transit Authority knew I had earnings. I would assume any intelligent person would assume that the Transit Authority had records that I had a dual business going, wouldn't ask me a question like this knowing that I had a dual business going and not say that it's true."

17.    Defendant's sworn assurances that he was not employed in any capacity and had no earnings between 2000 and 2004, other than from Plaintiff, are plainly false.

18.    It was reasonable of Plaintiff to seek, and rely upon, an Affidavit regarding outside employment and interim earnings prior to issuing back pay.

19.    Defendant knew or had reason to know that Plaintiff regarded his misrepresentation as important in determining whether to issue a check for "lost earnings" to Defendant, and Defendant knew that Plaintiff would act upon the basis of the fraudulent information he provided, as the Affidavit specifies: "I make this affidavit … in order to induce the Transit Authority to make such payment, knowing that the Authority will rely thereon." *See* Exhibit "A".

20.    As compared to the Plaintiff, Defendant possessed superior knowledge regarding his employment status and non-Transit earnings between 2000 and 2004.

21.   Plaintiff's reliance upon Defendant's affidavit was reasonable.

## FIRST CAUSE OF ACTION:
### ACTUAL FRAUD

22.   Plaintiff repeats, realleges and incorporates herein by reference every allegation set forth in paragraphs 1 through 21 above.

23.   Defendant made material misrepresentations in his sworn affidavit of October 24, 2006 regarding his income in the time period from 2000 to 2004 that were knowingly false and were made with intent to deceive the Plaintiff.  Plaintiff justifiably relied upon Defendant's representations and as a result has been harmed in the amount of $108,820.20.

24.   As a result of Defendant's actual fraud perpetrated against the Plaintiff, Plaintiff seeks restitution in the amount of $108,820.20, as well as punitive damages.

## SECOND CAUSE OF ACTION:
### FRAUDULENT CONCEALMENT

25.   Plaintiff repeats, realleges and incorporates herein by reference every allegation set forth in paragraphs 1 through 24 above.

26.   Defendant concealed the material fact that he was receiving income from 2000 to 2004, information which Defendant was duty-bound to disclose in his sworn affidavit of October 24, 2006. Defendant acted with intent to defraud the Plaintiff, and Plaintiff reasonably relied upon Defendant's fraudulent representations.  Plaintiff was injured in the amount of $108,820.20.

27.   As a result of Defendant's fraudulent concealment, Plaintiff seeks restitution in the amount of $108,820.20, as well as punitive damages.

## THIRD CAUSE OF ACTION:
## UNJUST ENRICHMENT

28.   Plaintiff repeats, realleges and incorporates herein by reference every allegation set forth in paragraphs 1 through 27 above.

29.   Due to the Defendant's fraudulent activities, he was unjustly enriched by $108,820.20 at Plaintiff's expense.  Equity and good conscience militate against permitting Defendant to retain what Plaintiff now seeks to recover, and under principles of equity, Defendant should be required to disgorge this money and refund and return it to Plaintiff.

30.   Defendant has been unjustly enriched at the Plaintiff's expense and Plaintiff seeks restitution in the amount of $108,820.20, as well as punitive damages.

## FOURTH CAUSE OF ACTION:
## RESTITUTION

31.   Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 30 of the complaint as if more fully set forth at length herein.

32.   Plaintiff seeks an order of restitution by way of a judgment against the Defendant, in favor of Plaintiff for a reimbursement of the monies paid to the Defendant due to his fraudulent misrepresentation, in the amount of $108,820.20, with interest thereon.


**WHEREFORE,** Plaintiff demands judgment against Defendant, Philbert Gorrick, as follows:

a) On the first cause of action requiring Defendant to repay the monies paid to him by Plaintiff as a result of Defendant's actual fraud, in the amount of $108,820.20, together with interest thereon and punitive damages;

b) On the second cause of action, as a result of Defendant's fraudulent concealment, awarding Plaintiff $108,820.20 wrongfully obtained from Plaintiff through Defendant's actual fraud, with interest thereon and punitive damages;

c) On the third cause of action requiring Defendant to disgorge the monies totaling $108,820.20 that he was wrongfully obtained from Plaintiff, together with interest thereon and punitive damages;

d) On the fourth cause of action requiring Defendant to refund Plaintiff $108,820.20 together with interest thereon; and

e) Granting such other and further relief as this court may deem just and proper.

Dated:    Brooklyn, New York
          March 31, 2008

                                   Yours, etc.

                                   **MARTIN B. SCHNABEL**
                                   Vice President and General Counsel
                                   **NEW YORK CITY TRANSIT AUTHORITY**
                                   Attorneys for Defendant
                                   130 Livingston Street – Room 1233
                                   Brooklyn, New York 11201
                                   (718) 694-3889

                    By:    _____

                                   **Ann Burton Goetcheus**
                                   **Gena Usenheimer**


To:    **Defendant**
Mr. Philbert Gorrick
166-05 Highland Avenue
Apt. 6M
Jamaica, New York 11432

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                                x
----------------------------------------------------------------------
**NEW YORK CITY TRANSIT AUTHORITY,**                          :

                **Plaintiff,**                          :    **Index No.** 081400672

          - against -                          :    **VERIFICATION**

**PHILBERT GORRICK,**                                                :

               **Respondents.**                          :

----------------------------------------------------------------------   x

STATE OF NEW YORK)
              )
COUNTY OF KINGS   )

        **DAVID BOYLE**, being duly sworn, deposes and says:

        That he is an Assistant Secretary for the New York City Transit Authority, that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to his own knowledge except as to the matters therein stated to be alleged on information and belief; that as to these matters he believes them to be true; that the source of deponent's information and the grounds of his belief are the records of the New York City Transit Authority and the statements made by employees of the said New York City Transit Authority concerning the subject matter of this proceeding. This verification is made by an Assistant Secretary because the New York City Transit Authority is a public benefit corporation created by Sections 1201 et seq. of the New York Public Authorities Law.

| | |
|---|---|
| Sworn to before me this <br> _31_ th day of ~~November 2004~~ <br> _March 2008_ <br> _Ivette Moreno_ <br> NOTARY PUBLIC | _David Boyle_ <br> **DAVID BOYLE** |

IVETTE MORENO
Notary Public, State of New York
No. 01MO5073381
Qualified in Kings County
Commission Expires February 24, 2011

LABOR RELATIONS MOU    Fax:646-252-5556        Sep  5 2007 13:50    P.01

**STATE OF NEW YORK**
                    **SS:**
**COUNTY OF KINGS**


I  Philbert Gorrick                                        Pass No. 330899

being duly sworn deposes and says:


I was suspended from my position of  Power Cable Maintainer

on  October 9, 2000                                . The suspension

arose out of disciplinary charges then pending against me.  I have not

been restored to duty en

        During a portion of the aforesaid suspension, from:

        2000                          to      2004

I was not employed elsewhere in any capacity and did not derive

any earnings from any other employment, by self or otherwise, nor

did I perform any work or services for which I was entitled to be

paid now or at any future date, nor did I receive any

unemployment insurance benefits, or public assistance.

                                    the Award dated July 19, 2006, which
        I make this affidavit in connection with my suspension to be
directed that I be
        reimbursed for the period of my suspension

from  May 22, 2002                          to      June 9, 2004

in order to induce the Transit Authority to make such payment,

knowing that the Authority will rely thereon.


Sworn to before me this

_____ 24n _____ day of  October  _____ of 2006


                                    _____
                                    Employee's Signature


                                    _____
                                    **Notary Signature**
                                    STUART LICHTEN
                                    NOTARY PUBLIC, STATE OF NEW YORK
                                    No. 02LI4941819
                                    QUALIFIED IN NEW YORK COUNTY
                                    CERTIFICATE FILED IN NEW YORK COUNTY
                                    COMMISSION EXPIRES JULY 25, 20 10

# New York City Transit Authority
## Check Stub Inquiry System
## Payroll Check Stub Information

| | |
|---|---|
| Pass Number | 330899 |
| Level 1/Level 2 | TAW1 |

**Employee Name  GORRICK, PHILBERT T**          Salary

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REGULAR EARNING | | | .00 | 108,820.20 | FED TAX  (M,02) | 10,013.82 | 10,013.82 |
| PEN.GR:IF APPL | | | 108,820.20 | 108,820.20 | SOCIAL SEC TAX | 5,840.40 | 5,840.40 |
| | | | | | MEDICARE TAX | 1,577.89 | 1,577.89 |
| | | | | | NEW YORK (M,02) | 5,172.80 | 5,172.80 |
| | | | | | NY CITY   (R) | 3,075.59 | 3,075.59 |
| | | | | | PENSION | 2,176.40 | 2,176.40 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Current | ********* | 25,680.50 | 2,176.40 | 80,963.30 | 12-09-2006 | 4404 | 80,963.30 |
| YTD | 108,820.20 | 25,680.50 | 2,176.40 | 80,963.30 | | PENSION # | |

---

**New York City Transit Authority**

MTA

TA W1 2900 DD  2977 29067        330899

PHILBERT T GORRICK
P.O. BOX 160026,
BROOKLYN, NY 11216

| | |
|---|---|
| Check No. | 4404 |
| Date | 12-10-2006 |
| $ | 80,963.30 |

**D 0387**

# Contract

THIS AGREEMENT is entered between <u>Concord  Family Services</u> (hereafter referred to as <u>CFS</u>) and <u>Philbert Gorrick</u> (hereafter referred to as the Contractor). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.   The Contractor will provide CFS with a minimum of ten (10) hours of computer consulting services per month from February 1997 through January 1998.

2.   The Contractor will provide troubleshooting, repairs and/or upgrading computer services for a period of one (1) year from the date of this agreement.

3.   CFS will pay the Contractor at a rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments supplied for the purpose of repairs and/or upgrading .

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

☐   None.

This agreement shall be govern by the laws of <u>New York State</u>.

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated on two (2) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be modified

ROM :CONCORD FAMILY SERVICES INC.      FAX NO. :7186382813         Jan. 16 2000 12:25PM P12

except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on __2/1/97__

Concord  Family Services

By: _Lila C Floyd_
Director

Attest: _____

Philbert Gorrick

By: _____
Contractor

Attest: _____

✤✤✤✤✤✤✤

2

# Contract

THIS AGREEMENT is entered between **Concord Family Services, Inc.** (hereafter referred to as **CFS**) and **Philbert T. Gorrick - Contemporary Technologies, Co.** (hereafter referred to as the **Contractor**). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The Contractor will provide CFS with Network Computing/Telephone Systems Consulting Services and Data/Telecommunication Cabling Services for the period February 2000 through January 2001.

2. The Contractor will provide the follow
   - Network/Telecommunication Cabling Installations and Plant Maintenance
   - Telecommunication Installation and Management.
   - Computer Networks Installation, Upgrade, Maintenance and Repairs services

   for a period of one (1) year from the date of this agreement.

3. CFS will pay the Contractor at a rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments supplied for the purpose of this agreement.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

None.

This agreement shall be govern by the laws of <u>New York State.</u>

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated on four (4) weeks notification provided by either party.

FROM :CONCORD FAMILY SERVICES INC.    FAX NO. :7186382813    Jan. 16 2008 12:33PM  P8

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be modified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on ——————

Concord Family Services, Inc.

By: _____

Philbert T. Gorrick

By: _____

Attest: _____

Attest: _____

ROM :CONCORD FAMILY SERVICES INC.    FAX NO. :7186382813    Jan. 16 2008 12:33PM P9

# Contract

THIS AGREEMENT is entered between **Concord Family Services, Inc.** (hereafter referred to as **CFS**) and **Philbert T. Gorrick - Contemporary Technologies, Co.** (hereafter referred to as the **Contractor**). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The Contractor will provide CFS with Network Computing/Telephone Systems Consulting Services and Data/Telecommunication Cabling Services for the period February 2001 through January 2002.

2. The Contractor will provide the follow
   - Network/Telecommunication Cabling Installations and Plant Maintenance
   - Telecommunication Installation and Management.
   - Computer Networks Installation, Upgrade, Maintenance and Repairs services

   for a period of one (1) year from the date of this agreement.

3. CFS will pay the Contractor at a rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments supplied for the purpose of this agreement.

4. The Contractor will respond upon requests by CFS to all emergencies relating to the Computer\Network and Telecommunication within four (4) hours of notification.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

None.

This agreement shall be govern by the laws of New York State.

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

FROM :CONCORD FAMILY SERVICES INC.    FAX NO. :7186382813    Jan. 16 2008 12:34PM P10

This agreement can be terminated on four (4) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be modified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on —————————

Concord Family Services, Inc.

By: _____

Philbert T. Gorrick

By: _____

Attest: _____

Attest: _____

# Contract

THIS AGREEMENT is entered between **Concord Family Services Inc.** (hereafter referred to as CFS) and **Philbert T. Gorrick** (hereafter referred to as the Contractor). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The contractor will provide CFS with a minimum of twenty (20) hours of consulting services per month for Computing and Network maintenance at CFS, from February 2003 through January 2005.

2. The contractor will provide troubleshooting, repairs, upgrading , computer and network equipments and servicing for the period of (2) two years from the date of this agreement.

3. CFS will pay the Contractor rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments required for the purpose of repairs, upgrade and expansion of the Computer Network

4. The Contractor will respond upon requests by CFS to all emergencies relating to the Computer/Network within eight hours notification.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

   o  None.

The agreement shall be governed by the laws of <u>New York State</u>.

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated on two (2) weeks notification provided by either party.

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be notified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on _____

Concord Family Services, Inc.

By: _____
Executive Director

Philbert T. Gorrick

By: _____
Contractor

# Contract

THIS AGREEMENT is entered between Concord Family Services Inc. (hereafter referred to as CFS) and Philbert T. Gorrick (hereafter referred to as the Contractor). In consideration of the mutual promises made in this agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. The contractor will provide CFS with a minimum of forty (40) hours of consulting services per month for Computing and Network maintenance at CFS.

2. The contractor will provide troubleshooting, repairs, upgrading, computer and network equipments and servicing for CFS.

3. CFS will pay the Contractor rate of $70.00 per hour for the services described in paragraph (2) and the costs of all materials and associated equipments required for the purpose of repairs, upgrade and expansion of the Computer Network

4. The Contractor will respond upon requests by CFS to all emergencies relating to the Computer/Network within eight hours notification.

The following addenda, dated the same date as this agreement, are incorporated in, and made apart of, this agreement:

   o  None.

The agreement shall be governed by the laws of New York State.

If any part of this agreement is adjudged invalid, illegal, or unenforceable, the remaining parts shall not be affected and shall remain in full force and effect.

This agreement can be terminated by four (4) weeks written notification, provided by either party.

DEC/05/2007/WED 05:16 AM                                                    P. 003

This instrument, including any attach exhibits and addenda, constitutes the entire agreement of the parties. No representations or promises have been made except those that are set out in this agreement. This agreement may not be notified except in writing signed by all the parties.

IN WITNESS WHEREOF the parties have signed this agreement under seal on _____

Concord Family Services, Inc.                          Philbert T. Gorrick

By: _____                          By: _____
Executive Director                                      Contractor

DEC/05/2007/WED 05:18 AM                                    P. 006

# Duties and Responsibilities

**Users' Technical Support**

- Provide technical support for moderately complex problems in a timely manner.
- Identifies the cause(s), research, assess, solve and take action to prevent programming and/or system problems from recurring using available resources.
- Use technical resources such as: hardware/software manuals, third party books, technical email lists, Internet newsgroups, manufacture telephone technical support lines, online help systems, etc.
- Monitor and tune software performance; perform moderately complex software trouble shooting.
- Serve as technical support to non-technical administrators, staff and vendors in the provision of all microcomputer/network support and services system wide.
- Perform in-depth technical advisement and problem resolution on Intel-based hardware and software problems including operating system(OS), file operations, local and networked printing.
- Perform moderately complex installations & troubleshoot use of CFS supported applications & clients, TCP/IP client installations e.g., Telnet, FTP, web email clients, network setup & connection (both direct & dial-up network connections).
- Perform in-depth technical advisement and problem resolution on all local area network (LAN) problems for all three sites(CFS HQ, OMH

& PS) supported network operating system (NOS) such as Windows 2003, Linux, & Sun Microsystems Solaris.

- Make recommendations for NOS servers and software. Perform installation, configuration, management and maintenance.
- Integration of new/existing computer systems into LAN environment including server, client & peripheral equipment installation/configuration and connecting the LAN environment to the Internet to facilitate Email(s), Web and VPN access.
- Troubleshoot network connectivity problems for both direct network connections and dial-up/VPN connections.
- Provide hardware support such as installation of network cards, reformatting of hard disk drives when required.
- Enforce established security procedures to mitigate or isolate the impact of network intrusions, virus attacks or other incidents from resources internally or externally.

**Database Management and Administrator**

- Work with source system subject matter experts to understand the source data structures and data item definitions.
- Monitor and track software versions, fixes, and vendor announcements.
- Tests, correct, refine changes and error to database(s)
- Established physical database access parameters.
- Defines and specifies user access levels.
- Define, plan, and implement backup/recovery strategies.

- Work close with the application developer/vendor(s) in the performance of advanced technical problem diagnostics and resolution.

## Networking

- Install and configure voice and data communication cable and hardware, e.g., workgroup switch, gateway or functional server, firewalls, using established procedures.
- Troubleshoot and perform corrective measures to resolve or avoid problems with voice or data networks.
- Corrective action may include replacement or reconfiguration of hardware, software, firmware or physical network connections. It may also involve the coordination and/or collaboration with other vendors, e.g., Verizon, Convad Communications, Fund EZ, Keltech, ADP etc...
- Use of appropriate test equipments, such as UTP cable tester, network protocol analyzer, to diagnose and isolate network problems.
- Monitor network performance with appropriate hardware and software tools.
- Install and terminate various types of standard, low-voltage communication cabling, including but not limited to, CAT 5e, Cat 6 UTP, CATV coax, fiber-optic(single-mode/multi-mode)

1

1

2    UNITED STATES DISTRICT COURT

3    EASTERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - -x

5    PHILBERT GORRICK,

6                         Plaintiff,

7             -against-

8    NEW YORK CITY TRANSIT AUTHORITY,

9                         Defendant.

- - - - - - - - - - - - - - - - - - - -x

10                         130 Livingston Street

                          Brooklyn, New York

11

                          December 13, 2007

12                         10:10 A.M.

13

14        DEPOSITION of PHILBERT GORRICK, the

15    Plaintiff in the above-entitled action,

16    held at the above time and place, taken

17    before Tracy Vasta, a Shorthand Reporter

18    and Notary Public of the State of New

19    York, pursuant to the Federal Rules of

20    Civil Procedure, Court Order and

21    stipulations between Counsel.

22

23              *        *        *

24

25

RECEIVED
MTA NYC TRANSIT
2007 DEC 20  PM 12: 04
LAW DEPARTMENT
GENERAL LAW & CONTRACTS

2

```
1
2   APPEARANCES:
3
4   SCHWARTZ, LICHTEN & BRIGHT, P.C.
5       Attorneys for Plaintiff
6       275 Seventh Avenue
7       Suite 1700
8       New York, New York 10001
9   BY: STUART LICHTEN, ESQ.
10
11  OFFICE OF THE GENERAL COUNSEL
12  NEW YORK CITY TRANSIT AUTHORITY
13      Attorneys for Defendant
14      130 Livingston Street
15      12th Floor
16      Brooklyn, New York 11201
17  BY: ANN BURTON GOETCHEUS, ESQ.
18
19  ALSO PRESENT:   GENA B. USENHEIMER, ESQ.
20              GUSTAVE RIVERA, JR. (partial)
21
22          *   *   *
23
24
25
```

4

```
1
2    P H I L B E R T   G O R R I C K, the Plaintiff
3    herein, having first been duly sworn by the
4    Notary Public, was examined and testified as
5    follows:
6    EXAMINATION BY
7    MS. GOETCHEUS:
8        THE NOTARY PUBLIC:  Please state
9        your full name and current address for
10       the record.
11       THE WITNESS:  Philbert Gorrick,
12       166 -05 Highland Avenue, Jamaica, New
13       York 11432.
14       Q    Mr. Gorrick, I'd ask you to
15   speak up both for the reporter's benefit
16   and also for mine.  I have an ear
17   infection and so I'm kind of deaf in one
18   ear these days.  As you know, I am Ann
19   Goetcheus.  I'm an attorney representing
20   the Transit Authority.  Please address
21   your testimony to the court reporter.
22   Your answers need to be vocal.  Please
23   don't just nod.  If you need to use the
24   restroom or take a rest or would like to
25   speak with your counsel, please let me
```

3

```
1
2            STIPULATIONS
3       IT IS HEREBY STIPULATED AND AGREED, by
4    and among counsel for the respective
5    parties hereto, that the filing, sealing
6    and certification of the within deposition
7    shall be and the same are hereby waived;
8       IT IS FURTHER STIPULATED AND AGREED
9    that all objections, except as to form of
10   the question, shall be reserved to the
11   time of the trial;
12      IT IS FURTHER STIPULATED AND AGREED
13   that the within deposition may be signed
14   before any Notary Public with the same
15   force and effect as if signed and sworn to
16   before the Court.
17          *   *   *
18
19
20
21
22
23
24
25
```

5

```
1            PHILBERT GORRICK
2    know.  We will try to accommodate you.
3    The only limitation is that you cannot
4    take a break while a question is pending.
5    Do you understand?
6        A    I understand that.
7        Q    If you don't hear a question,
8    say so and the court reporter or I will
9    repeat it.  If you don't understand a
10   question, please say so and I will
11   rephrase it or have the court reporter
12   read it back.  If you do not know or do
13   not remember the information necessary to
14   answer a question, please tell me so.
15       Have you taken any medications
16   in the last twenty-four hours?
17       A    No.
18       Q    Do you regularly take any
19   medication?
20       A    No.
21       Q    I'm asking about
22   non-prescription medication as well as
23   prescription medication.  Is your
24   answer -- do you take any non-prescription
25   medication?
```

2

6

PHILBERT GORRICK

2    A    Yeah, as needed, like
3    antihistamines for colds or flu's,
4    whatever. If I have a cold, I will take
5    flu medicines.
6    Q    Have you taken any in the last
7    twenty-four hours?
8    A    No.
9    Q    Are you under the influence of
10   any drugs or other substance that would
11   impair your ability to answer questions
12   here today?
13   A    Oh, no.
14   Q    If you answer my question, I
15   will assume you have heard it, understood
16   it and have given me your best
17   recollection.
18   A    Yes.
19   Q    I will be asking you questions
20   relating to your claims in this action
21   against the Transit Authority. Do you
22   understand the instructions that I have
23   just given you?
24   A    Yes.
25   Q    First I'd like to deal with some

7

PHILBERT GORRICK

2    background matters. I think you testified
3    as to your address. How long have you
4    lived at that address?
5    A    I've been living there in and
6    out for a year.
7    Q    What do you mean by "in and
8    out"?
9    A    Well, I've been staying there
10   for some time and the person who has been
11   living there recently left, so I have
12   assumed the responsibility of the
13   apartment.
14   Q    By "some time," what do you mean
15   by "some time"?
16   A    Well, I have been living there
17   now continuously for about a year.
18   Q    And where were you living prior
19   to that?
20   A    Well, I been living my sisters,
21   my cousins, friends.
22   Q    And where does your sister live?
23   A    She lived at 87-40 Wexford
24   Terrace in Jamaica Estates.
25   Q    And what is your sister's name?

8

PHILBERT GORRICK

2    A    Eva Frank.
3    Q    And who were the others that you
4    testified that you were living with?
5    A    Another sister.
6    Q    And what's her name?
7    A    Cara Dukes.
8    Q    And where did she live?
9    A    I know she lives -- she used to
10   live at Highland. That's Highland
11   Boulevard and that's in Cyprus, between
12   Jamaica -- between Brooklyn and Queens,
13   that's it.
14   Q    And what's the number?
15   A    The number, meaning?
16   Q    The house number.
17   A    It's an apartment. It's 808 --
18   I'm not quite sure. The apartment number
19   is 808.
20   Q    What's the street address?
21   A    I don't know the street address.
22   It's on Highland Boulevard.
23   Q    Between what and what?
24   A    I can't remember.
25   Q    And who else did you say you

9

PHILBERT GORRICK

2    have been living with?
3    A    That's about it.
4    Q    Prior to your current residence,
5    when did you last have a fixed abode?
6    A    2001.
7    Q    And why is that?
8    A    I couldn't afford to pay my rent
9    and my wife and I live separated.
10   Q    Are you still married?
11   A    I am still married,
12   unfortunately.
13   Q    And when did you separate?
14   A    Okay, I was asked not to -- an
15   order of protection was issued -- I can't
16   remember. Sometime in 2000-2001.
17   Q    And since that time you have not
18   lived with your wife?
19   A    No.
20   Q    What is the highest level of
21   education that you have received?
22   A    College.
23   Q    And where did you obtain it?
24   A    University of Guyana.
25   Q    Did you receive a degree?

3

10

```
1              PHILBERT GORRICK
2    A    No.
3    Q    How many years of college did
4  you attend?
5    A    Six.
6    Q    How many credits did you
7  receive?
8    A    About a hundred fifty, hundred
9  sixty.
10   Q    What was your major field of
11 study?
12   A    Electrical engineering.
13   Q    How did it happen that you did
14 not get a degree?
15   A    I was on a scholarship with
16 Guyana government and I came to America
17 and it broke the scholarship, so they
18 didn't want me to --
19   Q    Could you slow down?
20   A    I was on scholarship. Education
21 is free in Guyana and I was going to serve
22 them and I came here, I had to come here,
23 so that was it.
24   Q    How old were you when you
25 emigrated?
```

11

```
1              PHILBERT GORRICK
2    A    Seventeen years ago. I'm 42
3  now. That would be 35.
4    Q    If you're 42 now --
5    A    52.
6    Q    Oh, 52? I'm sorry, I misheard
7  you. So you were 35. You had -- I don't
8  understand the reason you didn't get a
9  degree. If you were 35 years old and had
10 been in school for -- when did you begin
11 the University of Guyana?
12   A    1982.
13   Q    And you attended for six years?
14   A    Yes.
15   Q    For six years continuously?
16   A    Continuously, yes. Well, no, we
17 don't take continuously; we have to do
18 national service. There are breaks.
19 Education is free. It's something like a
20 Peace Corps here. You attend for a period
21 of time, go in national service, and you
22 return and continue it.
23   Q    Can you explain again why it is
24 you didn't get a degree?
25   A    I was on scholarship with the
```

12

```
1              PHILBERT GORRICK
2  Guyana government and I had to migrate
3  here, so as a result --
4    Q    Why did you have to migrate
5  here?
6    A    My mother petitioned for us and
7  I had to be here.
8         MS. GOETCHEUS: I would like to
9    mark for identification as Defendant's
10   Exhibit A a document captioned "Charge
11   of Discrimination" dated August 9,
12   2006.
13        [The document was hereby marked
14   as Defendant's Exhibit A for
15   identification, as of this date.]
16   Q    All right, if you would please
17 review this document (handing).
18   A    (Perusing.) Yes.
19   Q    Do you recognize this document?
20   A    Yes.
21   Q    Is this your signature?
22   A    Yes.
23   Q    Is this charge true to the best
24 of your knowledge?
25   A    Yes.
```

13

```
1              PHILBERT GORRICK
2    Q    In the second paragraph it
3  states "In October 2000, I was suspended
4  because due to my disability I could not
5  wear new safety boots distributed by the
6  Authority. I requested reasonable
7  accommodation." What accommodation did
8  you request in October 2000?
9    A    That I be allowed to wear the
10 same footwear that I was wearing.
11   Q    Did that footwear have steel or
12 fiberglass composite toes?
13   A    No, I -- it didn't have
14 fiberglass composite toes, no.
15   Q    Did you have documentation that
16 its sole met the electrical hazard
17 standards of the Transit Authority?
18   A    No.
19   Q    Did that footwear meet other
20 stated requirements of the Transit
21 Authority for Transit Authority safety
22 shoe?
23   A    I don't understand the question.
24   Q    Okay, the charge goes on to say
25 "and for years my union and I have
```

4

14

1        PHILBERT GORRICK
2    suggested to the Authority various
3    alternatives to the Authority's boots."
4    What alternative to the Authority's boots
5    had you suggested that you were able to
6    wear?
7        A    That the boots I was wearing, I
8    was quite capable of wearing. That I was
9    wearing these boots without a problem. I
10   was never required to wear these boots
11   (indicating) other than the boots I was
12   hired with and the boots I was wearing for
13   the past nine years prior to these
14   charges.
15       Q    And did those boots comply with
16   the ANCI/OSHA standard?
17       A    We weren't aware of an ANCI/OSHA
18   standards in 1991 when I was hired.
19       Q    That's not the question. Did
20   they comply with the standard?
21       A    I don't know if there was a
22   standard.
23       Q    It then states "On August 8,
24   2006, the Authority refused to reinstate
25   me under any circumstances." What does

15

1        PHILBERT GORRICK
2    this refer to? It's the last sentence.
3        A    I -- I -- I don't understand
4    the -- I don't understand what it is.
5        Q    In your charge, you say "On
6    August 8, 2006, the Authority refused to
7    reinstate me under any circumstances." To
8    what are you referring?
9        A    I'm referring to my job.
10       Q    And what happened on August 8,
11   2006?
12       A    On August 8, 2006, despite the
13   fact that the Transit Authority was aware
14   -- was made to be aware that with my
15   medical condition, my limitations, they
16   refused to reinstate me.
17       Q    Who refused to reinstate you?
18       A    The medical assessment, the
19   doctor, including Mr. Gus Rivera, who I
20   was asked to report to during the period
21   of time the exception was take place.
22       Q    Did you go to the medical
23   department on August 8, 2006?
24       A    May have, may not. I don't
25   quite remember the dates.

16

1        PHILBERT GORRICK
2        Q    Had you, in fact, on August 8,
3    2006, gone to the cable section?
4        A    I don't know, I can't -- maybe,
5    maybe not. I don't know, I can't -- I
6    don't have any documents.
7        Q    Were you ready and able to
8    return to work on August 8, 2006?
9        A    I was -- on August 8, I was just
10   as capable of working as I was -- June --
11   the 9th of July 1991, when I was hired.
12       Q    That's not my question. My
13   question is were you ready and able to
14   return to work on August 8, 2006. It's
15   not your medical condition I'm asking
16   about. If you had been returned to
17   work --
18       A    Yes.
19       Q    -- on August 8, 2006, would you
20   have been able to return to work?
21       A    Yes, ma'am.
22       Q    Had you given notice to Concord
23   Family Services -- were you employed at
24   that time by Concord Family Services?
25       A    I was never employed by Concord

17

1        PHILBERT GORRICK
2    Family Services.
3        Q    Were you employed as a
4    contractor by Concord Family Services, Mr.
5    Gorrick?
6        A    The business I own -- no, ma'am,
7    I was never employed by Concord as a
8    contractor. I was employed by a business
9    who had a contract with Concord Family
10   Services.
11       Q    The question remains -- the
12   quibble as to who your employer in your
13   mind is, you are a -- Concord Family
14   Services obtained your services; is that
15   correct?
16       A    Obtained the services of -- no,
17   ma'am, they obtained the services of
18   Contemporary Technologies, which I happen
19   to be the owner, and as a result whatever
20   services they derived -- they derived via
21   that company doesn't mean me.
22       Q    Did you provide those services?
23       A    My company did the services.
24       Q    Did you personally provide those
25   services?

5

18

PHILBERT GORRICK

2  A    At some point, from time to
3  time, when my presence was then required.
4  Otherwise, then the services was provided
5  through the company.
6          MS. GOETCHEUS: I would like to
7      mark for identification as Defendant's
8      Exhibit B your complaint in this
9      action dated March 26, 2007.
10         [The document was hereby marked
11     as Defendant's Exhibit B for
12     identification, as of this date.]
13  Q    Do you recognize this document
14  (handing)?
15  A    (Perusing.) Yes.
16  Q    Have you seen it before?
17  A    Yes.
18  Q    Are you familiar with its
19  representations?
20  A    Yes, I'm familiar. Yes.
21  Q    Are its representations
22  accurate?
23  A    I would think so, yes.
24  Q    Turning to page three, paragraph
25  nine, it states "For several decades,

19

PHILBERT GORRICK

2  Gorrick has been diagnosed with severe
3  venous statis disease, with statis
4  dermatitis and recurrent ulcers in the
5  ankle region. Due to this disability,
6  Gorrick occasionally has difficulty
7  standing and walking, but he always has
8  been able to perform the essential
9  functions of a power cable maintainer."
10         Please describe the difficulty
11  you experienced in standing.
12  A    Are you finished reading here
13  or --
14  Q    Yes.
15  A    Oh, okay.
16  Q    I'm asking you a question.
17  Please describe the nature of the
18  difficulty you experience in standing.
19  A    I can't stand for long hours,
20  prolonged period of time, without sitting.
21  My feet swell. I have varicose veins. I
22  have a circulatory problem and my legs
23  swell. So if my legs swell, I have to
24  sit. Can't stand sustained with my legs.
25  Q    How long can you stand?

20

PHILBERT GORRICK

2  A    For eight hours, if I have to.
3  Q    When did you last experience
4  this difficulty?
5  A    Every day, if I stand in excess
6  of eight hours.
7  Q    When did you last stand in
8  excess of eight hours?
9  A    Not for a very long time.
10  Q    Do you experience this
11  difficulty when you stand for periods
12  shorter than eight hours?
13  A    Sometimes, yes.
14  Q    When did you last experience it
15  when you stood for a period shorter than
16  eight hours?
17  A    I can't remember.
18  Q    Please describe the nature of
19  the difficulty you experience in walking.
20  A    Well, walking is a problem, as
21  well, so if I have to walk persistently
22  for long periods of time, my legs would
23  swell.
24  Q    And how long a period of time
25  causes this difficulty?

21

PHILBERT GORRICK

2  A    If I have to walk for a period
3  for excess of eight hours.
4  Q    When did you last experience
5  this difficulty?
6  A    I can't remember.
7  Q    Do you experience this
8  difficulty when you walk for shorter
9  periods than eight hours?
10  A    Sometimes, yes.
11  Q    For what period have you
12  experienced this difficulty shorter than
13  eight hours?
14  A    I can't remember.
15  Q    When did you last experience
16  this difficulty?
17  A    I don't bring myself -- I can't
18  remember that. I don't bring myself --
19  because of the experience I have, I don't
20  do it. I don't push myself to the point
21  where I have to subject myself to any
22  difficulty.
23  Q    What limitation do you impose on
24  yourself on walking?
25  A    I stop when I need to.

6

22

PHILBERT GORRICK

1
2  Q    No, no, when do you stop?  What
3  limitation do you impose on yourself, on
4  your walking; limitation of distance,
5  limitation of hours?
6    A    Limitation of distance,
7  limitation of hours, limitation as to how
8  I feel.  If I feel that day my legs are
9  going to hurt me, I would stop.
10    Q    You would stop when?  After how
11  much?  How much walking can you tolerate
12  on a regular basis?
13    A    Ma'am, it depends.  It depends
14  on the terrain I'm walking, what type of
15  shoes I'm walking with, the ground I'm
16  walking on, number of things, factors.  So
17  I can't clearly tell you without some
18  definition, without some definite, I can
19  stop walking for two hours or three hours,
20  because I can walk for six hours down
21  incline, but if I have to walk on incline,
22  I can stop in an hour.  If I have to walk
23  on rugged terrain, obviously that
24  situation would vary.  So it's not a solid
25  thing.

23

PHILBERT GORRICK

1
2  Q    Let's go over the types of
3  terrain.  On rugged terrain, how long can
4  you walk?
5    A    Well, I said it depends on the
6  terrain and I would -- can't think from --
7  in abstract what the terrain might be.
8  But if it's very rugged, might be two
9  hours.  If it's smooth -- if its uphill,
10  might be an hour, half an hour.  Depends
11  on the terrain.
12    Q    When did you last experience
13  difficulty in walking?
14    A    I can't remember that.  Maybe
15  last week.  I can't tell you definite.
16    Q    I would ask that you try to give
17  me a definite time.  Did you experience
18  difficulty walking last week?
19    A    Maybe.
20    Q    Under what circumstances?
21    A    Maybe normal circumstances
22  walking.
23    Q    What are "normal circumstances"?
24  You've described different kinds of
25  terrain.  What is "normal circumstances"?

24

PHILBERT GORRICK

1
2    A    Well, walking is a normal act,
3  should be, so if I walk and I feel pain, I
4  stop.
5    Q    Okay, and you say maybe last
6  week you experienced that.  Did you
7  experience that last week?
8    A    This happens so frequently, I
9  may have experienced it last week.
10    Q    Did you?
11    A    I can't remember.
12    Q    Did you experience it this week?
13    A    I can't remember.
14    Q    How many times a month do you
15  experience it?
16    A    Four or five times a month.
17    Q    And what do you do when you
18  experience it?
19    A    Sit, elevate my legs.
20    Q    In your complaint, paragraph
21  fourteen, you claim that the Transit
22  Authority discriminated against you
23  because of disability.  What do you claim
24  were acts of discrimination?
25    A    The fact that they're asking me

25

PHILBERT GORRICK

1
2  to wear a shoe that has -- to wear shoes
3  that has injured me, and continue to
4  insist that I wear those shoes.  It's a
5  form of discrimination, the fact that they
6  knew when they hired me that I couldn't
7  possibly wear those shoes that they were
8  asking me to wear in 2000.
9    Q    Did you request accommodation?
10    A    Multiple times.  I think we said
11  that in the earlier -- in Exhibit 1 (sic).
12    Q    And what accommodation did you
13  request?
14    A    That I be allowed to wear the
15  same shoes I've been wearing for the
16  previous nine years I've been working with
17  Transit Authority.
18    Q    And when did you make that
19  request?
20    A    Multiple times, from the time I
21  was made to be disciplined for not wearing
22  the shoes that they asked me to wear in
23  2000.
24    Q    And which discipline for not
25  wearing the shoes do you refer to?

26

PHILBERT GORRICK

1
2     A     The very first one, which would
3  be -- with the very first one would be
4  sometime in -- in March or -- I think it
5  was March or April. Then the second one
6  in May. As a matter of fact, the charges
7  were withdrawn in May and then
8  reinstituted again in October. All the
9  time, I made sure -- in the seven years it
10  took to arbitrate the matter, through that
11  arbitration process, I asked for
12  reasonable accommodations.
13     Q     So what you're referring to is
14  2000? When you talk about March, April,
15  May and October, that's the year 2000?
16     A     2000, 2000.
17     Q     In your complaint, paragraph
18  seventeen, claims are asserted for mental
19  anguish and humiliation. Please describe
20  the nature of mental anguish and
21  humiliation you claim to have experienced.
22     A     I lost my wife, lost everything.
23  Lost -- the Transit Authority plastered
24  pictures of me throughout their compounds
25  and buildings, criminalizing me,

27

PHILBERT GORRICK

1
2  demonizing something that I have no
3  control over. They have -- the Transit
4  Authority has given pain to me.
5     Q     To what do you refer, this
6  plastering pictures of you?
7     A     It started 2003 or 2004, the
8  Transit Authority invited me over there to
9  collect some -- some monies or checks or
10  something to the effect. And I can't
11  remember exactly what date or for what
12  purpose, but I went over to one of the
13  locations and the guard hut had a mug shot
14  of me at the guard hut. They came down
15  and paid me in the yard, paid me on the
16  sidewalk of the building.
17     Q     At what facility did this take
18  place?
19     A     At 1114 Atlantic Avenue.
20     Q     Who gave you the pay?
21     A     One Mr. Shaw, Mr. Shaw, and one
22  -- she's MS12, I can't remember now.
23     Q     Please describe any treatment
24  you obtained for your alleged mental
25  anguish and humiliation.

28

PHILBERT GORRICK

1
2     A     I haven't received any. I
3  haven't went to go looking for any
4  treatment. I just wail and weep what I
5  have, what has been done to me. You know,
6  what they done to me, what they continue
7  to do to me. I don't think that's
8  treatable.
9     Q     I'm sorry, can you repeat that?
10     A     I am not seeking any
11  psychological help for this.
12     Q     Have you taken any medications
13  relating to your mental anguish and
14  humiliation?
15     A     No, ma'am.
16     Q     In your complaint, paragraph
17  seventeen, you assert you have suffered
18  monetary damages. Please describe the
19  monetary damages you allege you have
20  suffered.
21     A     My credit, my debts, my
22  commitments to family and friends and
23  relatives abroad, the loss of property, my
24  car, repossession of my vehicle, the loss
25  of my wife, the inability to pay my rent.

29

PHILBERT GORRICK

1
2  It's too numerous to mention, but -- it's
3  a lot.
4     Q     Well, let's go through the
5  items. You've mentioned "loss of
6  property." What property have you lost?
7     A     I made deposits on items that I
8  wanted, books, equipment for my business.
9  When it came to pay, I couldn't pay
10  because of my income. Couldn't pay my
11  rent. I support relatives abroad;
12  couldn't. Older relatives abroad.
13     Q     And you mentioned repossession
14  of a car. What car was repossessed?
15     A     Repossessed a GMC Suburban.
16     Q     When?
17     A     That was repossessed in, I
18  think, 2001.
19     Q     Did you replace the GMC Suburban
20  with another car following the --
21     A     Subsequently, yes, I had to
22  replace the car.
23     Q     What did you replace it with?
24     A     Another vehicle.
25     Q     What was that vehicle?

8

212-267-6868                                                    516-608-2400

30

PHILBERT GORRICK

1
2    A    A car. BMW.
3    Q    What model year was that BMW?
4    A    2006.
5    Q    Had you replace that vehicle,
6    that GMC Suburban, with another vehicle in
7    the interim?
8    A    Yes.
9    Q    What vehicle did you replace it
10    with in the interim?
11    A    That was a BMW, as well.
12        (At this time, Mr. Rivera
13        entered the room.)
14    Q    And what model year was that
15    BMW?
16    A    2002.
17    Q    And when did you obtain that
18    vehicle?
19    A    2004.
20    Q    After the repossession of your
21    Suburban in 2001, did you own any other
22    vehicle between then and obtaining the
23    vehicle in 2004?
24    A    Yes. My business, yes. I owned
25    one vehicle that was used specifically for

31

PHILBERT GORRICK

1
2    my business, but I couldn't keep it on the
3    road. I had to take it off and put it
4    away, that was it. That was -- I think it
5    was a Cadillac.
6    Q    And what was the model year of
7    that Cadillac?
8    A    That was a 2000.
9    Q    And when did you obtain the 2000
10    Cadillac?
11    A    1999.
12    Q    Prior to your employment by New
13    York City Transit, were you employed?
14    A    I have a business -- always have
15    a business. Prior to my employment, you
16    said? Excuse me?
17    Q    Yes, prior to your employment in
18    -- what is it, 1993?
19    A    '91.
20    Q    I'm sorry, 1991, right.
21    A    No, I started my business in
22    1996.
23    Q    My question is prior to your
24    employment by New York City Transit, were
25    you employed?

32

PHILBERT GORRICK

1
2    A    Yes.
3    Q    By whom were you employed?
4    A    Bell Security Services, Exxon
5    refinery in New Jersey, and the Daily
6    News, concurrently.
7    Q    For what dates were you employed
8    by Bell -- you were always employed by
9    Bell Security or you were employed by
10    three --
11    A    Two of them was concurrently and
12    one was --
13    Q    So there were three employers,
14    however?
15    A    Three employers, yes.
16    Q    So starting with the first, Bell
17    Security, for what dates were you employed
18    by them?
19    A    I can't remember. It's a long
20    time.
21    Q    Were you employed by them
22    immediately upon your immigration to the
23    United States?
24    A    Yes, yes, definitely.
25    Q    And what year was that?

33

PHILBERT GORRICK

1
2    A    That was '89.
3    Q    And were you employed by Bell
4    Security throughout the period prior to
5    your employment by New York City Transit?
6    A    I can't remember. I mean not --
7    I can't remember.
8    Q    What about Exxon?
9    A    Exxon up until the point I was
10    employed by Transit Authority, yes.
11    Q    And what was the nature of your
12    responsibility at Bell Security?
13    A    I was a security guard.
14    Q    What was the nature of your
15    responsibility at Exxon?
16    A    Process operator.
17    Q    Explain that. What does that
18    mean?
19    A    I made fuels.
20    Q    Say that again?
21    A    I made fuels.
22    Q    You were involved in the
23    manufacturing process for fuels; is that
24    what you mean?
25    A    Yes, ma'am.

9

34

1          PHILBERT GORRICK
2     Q     And what were your
3  responsibilities at the Daily News?
4     A     Electrician.
5     Q     I'm sorry?
6     A     Electrician.
7     Q     And what were the nature of your
8  assignments as an electrician?
9     A     Effect the maintenance and the
10 repairs of the electrical equipment at the
11 plant.
12    Q     Prior to your immigration, were
13 you employed in Guyana?
14    A     Yes.
15    Q     And what was the nature of your
16 employment in Guyana?
17    A     I teach.
18    Q     I'm sorry, you --
19    A     Taught, yes.
20    Q     You taught.  What did you teach?
21    A     Electrical principals, math.
22    Q     And what sort of institution?
23    A     Tertiary college.
24    Q     And what does that mean?
25    A     Okay, it's a college between

35

1          PHILBERT GORRICK
2  high school and university.
3     Q     For what dates were you teaching
4  electrical principals and math?
5     A     1980 to 1985.
6     Q     And what did you do from -- were
7  you employed from 1985 to your immigration
8  in 1989?
9     A     Sometime during that period, I
10 got a full scholarship for the university
11 of Guyana, so --
12    Q     For what period?
13    A     From '85 to the time I got here.
14    Q     So you were a full-time student
15 from 1985 to 1989?
16    A     Yes.
17    Q     Is that your testimony?
18    A     Yes.
19    Q     Do you have a current resume?
20    A     No.
21    Q     Do you have any resume?
22    A     No.
23    Q     When were you hired at the
24 Transit Authority?
25    A     July 29, 1981.

36

1          PHILBERT GORRICK
2     Q     In what title?
3     A     Helper, electrical helper.
4  Maintenance electrical helper C.
5          MS. GOETCHEUS:  I would like to
6     mark for identification as Defendant's
7     Exhibit C documents dated July 1991,
8     Bates number D1593 through 1601.
9          [The documents were hereby
10    marked as Defendant's Exhibit C for
11    identification, as of this date.]
12    Q     Do you recognize these documents
13 (handing)?
14    A     (Perusing.)  Yes.
15    Q     What do you recognize them to
16 be?
17    A     It seems to be my employment
18 records.
19    Q     Is this your handwriting and
20 your signatures on the pages numbered 15
21 -- well, 1593, your handwriting, and the
22 signature on 1594, 1596, 1597, 1598, 1599,
23 1600 and 1601?
24    A     (Perusing.)  Yes.
25    Q     Turning to 1594, there is an

37

1          PHILBERT GORRICK
2  entry saying that you -- your education
3  included attendance at the New York
4  Institute of Technology; is that correct?
5     A     Yes.
6     Q     When did you attend the New York
7  Institute of Technology?
8     A     I think it was '91.  I went for
9  one semester.
10    Q     And what did you take at New
11 York Institute of Technology?
12    A     I was doing -- I was trying to
13 -- I was trying to complete the degree
14 that I started in Guyana, electrical
15 engineering.
16    Q     And how far did you proceed in
17 that?
18    A     Because of constraints, I left
19 after -- I think it was one semester, two
20 semesters.
21    Q     How far from a degree were you?
22    A     Not very far.
23         MS. GOETCHEUS:  I would like to
24    mark for identification as Defendant's
25    Exhibit D -- why don't we do two at

10

212-267-6868                                      516-608-2400

38

```
1          PHILBERT GORRICK
2    once? Two job descriptions for the
3    titles of maintainer's helper group C,
4    Bates stamped D1152, and for the title
5    of light maintainer, Bates stamped
6    1150 through 1151.
7          [The documents were hereby
8    marked as Defendant's Exhibits D for
9    identification, as of this date.]
10   Q     Turning first to the job
11   description for maintainer's helper group
12   C, Bates stamped D1152, do you recognize
13   this document (handing)?
14   A     (Perusing.) Yes.
15   Q     What do you recognize it to be?
16   A     Responsibilities and
17   qualifications requirement.
18   Q     Do the duties and
19   responsibilities correspond to those you
20   performed while in that title?
21   A     Can you repeat that question?
22   Q     Do the duties and
23   responsibilities correspond to those you
24   performed while in that title?
25   A     No.
```

40

```
1          PHILBERT GORRICK
2    City Transit Authority is authorized by
3    law" -- I don't know if that was done
4    under law, but I know that on the job that
5    wasn't quite really the function, these
6    descriptions.
7    Q     What other jobs did you perform?
8    A     Information technologies, duties
9    outside of my considered duties and
10   responsibilities, they were done anyhow.
11   Q     While you were a maintainer's
12   helper group C, you were doing information
13   technology work?
14   A     Yes.
15   Q     In what section were you doing
16   that?
17   A     In the indicator section at
18   Locust Avenue.
19   Q     Locust Avenue is where?
20   A     Locust Avenue in the Bronx.
21   Q     Were you subsequently promoted
22   to the title of light maintainer?
23   A     Yes; I took that examination
24   with the department.
25   Q     When did that promotion occur?
```

39

```
1          PHILBERT GORRICK
2    Q     And in what way do they not
3    correspond?
4    A     A number of these things that
5    are listed here as a requirement doesn't
6    exist in New York City Transit system.
7    Q     Do you mean requirements or the
8    duties and responsibilities?
9    A     Duties and responsibilities.
10   Q     Which ones do not exist?
11   A     "Maintenance, installation,
12   inspection, testing, alteration, repair
13   and operation of the electrical equipment,
14   including" -- and from "including" doesn't
15   exist. "Including Mercury arc rectifiers,
16   rotary converters, high tension and low
17   tension switch gears," never did that.
18   Q     But you did do automatic relay
19   panels and circuits?
20   A     No, never did. "Power cables,"
21   yes; "power line," yes; "enclosures and
22   buildings under live and hazardous
23   conditions," not quite sure what that
24   means; but "keep necessary records," yes;
25   and "perform other duties as the New York
```

41

```
1          PHILBERT GORRICK
2    A     I can't remember. Two years or
3    three years after the position of helper.
4    Two or three years.
5    MS. GOETCHEUS:  I would like to
6    mark for identification as
7    Defendants's Exhibit E documents dated
8    August and September 1993, Bates
9    numbered D977 through 89.
10         [The documents were hereby
11   marked as Defendant's Exhibit E for
12   identification, as of this date.]
13   Q     Do you recognize these documents
14   (handing)?
15   A     (Perusing.) Yes.
16   Q     What do you recognize them to
17   be?
18   A     Appointment notices, history of
19   my title changes.
20   Q     Is this your handwriting and
21   your signatures on the pages numbered
22   D980, 981, 98 -- oh, I'm sorry, these
23   don't seem to be continuous. I'm sorry,
24   they're not continuous. Let's get the
25   numbers into the record as they appear
```

11

42

```
1           PHILBERT GORRICK
2  here. It's D977 -- I don't know how this
3  happened, D980, then D981, then D978 --
4  they're all out of order. 979, 982, 983,
5  984, 985, 986, 987, 988 and 989.
6           MR. LICHTEN: So -- sorry.
7           MS. GOETCHEUS: I guess
8       they're -- they actually -- the
9       complete series, I guess, is here. It
10      just wasn't collated in the proper
11      order.
12          MR. LICHTEN: Right.
13          MS. GOETCHEUS: Sorry about
14      that.
15      Q    However, looking at -- so let's
16  go page by page. 980, is that your
17  handwriting and your signature, the second
18  page of the --
19      A    This one (indicating)?
20      Q    If you'll turn to the second
21  page that is marked 980 --
22      A    Oh, yes, yes.
23      Q    -- is that your handwriting and
24  your signature?
25      A    It is.
```

43

```
1           PHILBERT GORRICK
2       Q    And on page 981, is that your
3  signature?
4       A    Yes, it is.
5       Q    And on 979, is that your
6  handwriting?
7       A    Yes.
8           MR. LICHTEN: No, this is 979
9       (indicating).
10      A    Oh. Yes, it is.
11      Q    So then on 979, is that your
12  handwriting?
13      A    979? Yes, it is. 978, part of
14  this is my handwriting and part of it is
15  not.
16      Q    Which part of it is your
17  handwriting?
18      A    Upper portion, above "Leave item
19  below blank."
20      Q    Okay, and 979, that's your
21  handwriting?
22      A    979? Yes, it is.
23      Q    And on 985, that's your
24  signature?
25      A    Yes, it is.
```

44

```
1           PHILBERT GORRICK
2           MR. LICHTEN: Wait, there's two
3       signatures here.
4       A    Well, "Signature of employee."
5           MS. GOETCHEUS: Well, the
6  signature that is not William Meany
7  (ph). I'm assuming Mr. Gorrick's
8  signature is Mr. Gorrick's signature.
9       Q    988, is that your signature?
10      A    No.
11      Q    989, is that your signature?
12      A    It is.
13      Q    Were you subsequently promoted
14  to the title of power cable maintainer?
15      A    Yes.
16      Q    When did that occur?
17      A    I can't remember, but if the
18  dates are here I'm sure it is -- I can't
19  remember.
20      Q    Was it shortly after you were
21  promoted to --
22      A    Light maintainer.
23      Q    -- light maintainer?
24      A    Yes.
25          MS. GOETCHEUS: I would like to
```

45

```
1           PHILBERT GORRICK
2  mark for identification as Defendant's
3  Exhibit F a job description for the
4  title power cable maintainer, Bates
5  stamped D2976 through 78.
6           [The document was hereby marked
7       as Defendant's Exhibit F for
8       identification, as of this date.]
9       Q    Do you recognize this document
10  (handing)?
11      A    (Perusing.) Yes.
12      Q    What do you recognize it to be?
13      A    This is general description of
14  my duties and responsibilities as a power
15  cable maintainer.
16      Q    Do the duties and
17  responsibilities correspond to those that
18  you performed while in that title?
19      A    Yes.
20      Q    To what physical locations were
21  you assigned during your employment at
22  Transit? Reporting location, that is to
23  say.
24      A    As a power cable maintainer or
25  as generally?
```

12

46

PHILBERT GORRICK

1
2    Q    During -- let's go through your
3    entire employment at Transit.  When you
4    were first hired, where were you assigned?
5        A    When I was first hired, I was
6    sent -- I would be assigned.  I was
7    assigned to P.S. 240 for orientation
8    training.
9        Q    And then where were you
10    assigned?
11       A    And then back, then, to 1114
12    Atlantic Avenue.
13       Q    And for how long were you
14    assigned at 1114 Atlantic Avenue?
15       A    A week.
16       Q    And then where were you
17    assigned?
18       A    100 Locust Avenue in the Bronx.
19       Q    And when were you assigned
20    there?
21       A    In '91.  I can't remember the
22    dates, but it was '91.
23       Q    Right, and until when?
24       A    Until 1990 -- I think '96.  '95,
25    '96.

47

PHILBERT GORRICK

1
2    Q    And then where were you
3    assigned?
4        A    To 1114 Atlantic Avenue.
5        Q    And how long were you assigned
6    to 1114 Atlantic Avenue?
7        A    From 1996 to 1991 -- 1999.
8        Q    And then where were you
9    assigned?
10       A    Back to 100 Locust Avenue.
11       Q    And for how long was that?
12       A    Less than a year.
13       Q    And then where were you
14    assigned?
15       A    Back to 1114 Atlantic Avenue,
16    nights.
17       Q    Did you pick your assignments?
18       A    The assignments in some
19    instances were picked.  In some they
20    weren't; I was assigned, I was sent there.
21       Q    Which assignments were not
22    picked assignments?
23       A    The first move from Atlantic
24    Avenue to Locust Avenue in '91.
25       Q    So your initial assignment upon

48

PHILBERT GORRICK

1
2    completing training?
3        A    Yeah.  I completed training,
4    went to 1114 Atlantic Avenue and then we
5    all got -- based on seniority, you're
6    assigned to where they want you to work.
7        Q    And thereafter your assignments
8    were picked assignments?
9        A    Thereafter some were picked and
10    some were given to me.
11       Q    Which ones were not picked?
12       A    Going back to 1114 Atlantic
13    Avenue.
14       Q    When?
15       A    In '95 or '96, I think it was.
16       Q    And were there any others that
17    were not picked?
18       A    Just for the record, let me
19    clarify this.  When you say "picked for an
20    assignment," because when you get your
21    site, whatever your assignment is that
22    site, because I'm talking about what the
23    place is, what shifts, and then in those
24    shifts there are also roles that you play.
25    So can you either be assigned or picked

49

PHILBERT GORRICK

1
2    into specific job operations at the sites.
3    So you can either go in the site and say
4    "I want to be in the material equipment
5    room," "I want to be in the drawing
6    office," or you might be assigned to
7    drawing office based on your seniority and
8    all these levels.  So to say "assigned," I
9    don't quite understand.
10       Q    All I'm asking about is the
11    locations.
12       A    Okay, well, the locations when I
13    went back to Locust Avenue.
14       Q    At this point, I don't know what
15    you're saying.  When you went back to
16    Locust Avenue, what year and what are you
17    talking about?  When you went back to
18    Locust Avenue, did you pick it or did you
19    not pick it?
20       A    I did not pick that.
21       Q    You did not pick it?
22       A    Going back.
23       Q    In 1999?
24       A    In '99, yes.
25       Q    Did you pick returning to

13

50

```
1          PHILBERT GORRICK
2   Atlantic Avenue?
3      A    Yes.
4      Q    Some time after that return to
5   Locust, you picked to come back to
6   Atlantic Avenue?
7      A    To come back, right.  Yes, that
8   is correct.
9          MS. GOETCHEUS:  I would like to
10     mark for identification as Defendant's
11     Exhibit G a document titled
12     Plaintiff's -- well, there's a cover
13     letter dated September 21, 2007
14     addressed to me from Stuart Lichten
15     and attached to that is Plaintiff's
16     Response to Defendant's First Set of
17     Interrogatories and Request For
18     Production of Documents.
19          [The documents were hereby
20     marked as Defendant's Exhibit G for
21     identification, as of this date.]
22     Q    Do you recognize this document
23   (handing)?
24     A    (Perusing.)  Yes.
25     Q    Did you assist in its
```

51

```
1          PHILBERT GORRICK
2   preparation?
3      A    Information was submitted from
4   me and I provided information.
5      Q    Is this your signature on the
6   verification on the last page?
7      A    Yes, it is.
8      Q    Are these responses true to the
9   best of your knowledge?
10     A    Yes.
11     Q    In your response to
12   Interrogatory No. 1, in response to the
13   request that you "identify each and every
14   person who, in your opinion, was
15   responsible in any way for any
16   discriminatory or allegedly wrongful act,"
17   you identify a number of people.
18          I would like you to identify the
19   position held or function performed and
20   describe the nature of the allegedly
21   discriminatory or wrongful act for each of
22   the persons you so identified.  The first
23   person you so identified is Gustave
24   Rivera.
25     A    Mr. Rivera did not operate in
```

52

```
1          PHILBERT GORRICK
2   good faith as required by the arbitration.
3      Q    There were three arbitrations.
4   Which arbitration do you refer to?
5      A    The first arbitration.
6      Q    In what time period are you
7   referring?
8      A    The period shortly thereafter
9   ending of the arbitration process, of that
10   arbitration process.
11     Q    2002-2003; is that correct?
12     A    I don't have the dates in front
13   of me.
14     Q    What, in particular, do you
15   allege was "not operating in good faith"?
16     A    Well, we were directed -- the
17   arbitration directed us to follow certain
18   procedures and those procedures weren't
19   adhered to.  Mr. Rivera choose to only
20   listen to what he think he needs to do and
21   not listen to -- so as a result --
22     Q    Could you please be specific?
23     A    He failed to operate in good
24   faith, failed to provide me with shoes
25   with which I could do my job.
```

53

```
1          PHILBERT GORRICK
2      Q    It was your understanding that
3   by the arbitrator's direction, he was
4   required to provide you shoes?
5      A    If it was deemed I could not
6   wear the shoes --
7      Q    I'm sorry, could you slow down?
8      A    Mr. Rivera was instructed to
9   cooperate in the process of acquiring
10   shoes if it was deemed by the independent
11   physician that I could wear shoes, of
12   which that was never the case, and
13   Mr. Rivera's position was he was adamant
14   that I should get shoes and I should be
15   wearing the specific shoes that the
16   Transit Authority wanted me to wear.
17     Q    It is your position that the
18   consultant physician found that you could
19   not wear shoes in 2002?
20     A    Wear the type of shoes that they
21   were asking me to wear, that the Transit
22   Authority is asking me to wear.
23     Q    The next name is Cassandra
24   Tillman (ph).  Please describe who is
25   Cassandra Tillman and what discriminatory
```

14

212-267-6868                                          516-608-2400

54

1        PHILBERT GORRICK
2   or wrongful act she performed.
3       A    Miss Tillman had knowledge to
4   the previous stipulation and she choose to
5   ignore the stipulation.
6       Q    What stipulation are you
7   referring to?
8       A    I'm referring to the stipulation
9   that was made in May of 2000.
10      Q    And in what way did she
11  disregard that stipulation?
12      A    By refusing to ignore the
13  contents of the stipulation.  The
14  condition the stipulation was formed, she
15  refused to acknowledge that.
16      Q    When did she do this?
17      A    I can't remember.
18      Q    Was it prior to the first
19  arbitration?
20      A    Yes, in one of the steps prior
21  to arbitration.
22      Q    Were there any later acts by Ms.
23  Tillman that you allege are discriminatory
24  or wrongful?
25      A    Not that I can remember at this

55

1   point in time.  Maybe.  I'm not quite
2   sure.
3       Q    Well, this is your opportunity
4   to provide that information, so if you
5   have any other, please provide it.
6       A    I can't remember.
7       Q    Did you have any interaction
8   with Ms. Tillman thereafter?
9       A    In the second arbitration.
10      Q    When?
11      A    When they failed to contact me
12  properly on the subsequent hearing.
13      Q    And was that in 2003?
14      A    I think it was.  I'm not quite
15  sure.
16      Q    By "the second arbitration," you
17  mean the abandonment -- the arbitration
18  concerning abandonment?
19      A    Yes.
20      Q    Were there any other instances
21  in which you allege that Cassandra Tillman
22  acted in a discriminatory or wrongful
23  manner towards you?
24      A    Not that I can remember, no.

56

1        PHILBERT GORRICK
2       Q    Vincent Valenti?
3       A    He is the -- he was the
4   superintendent at the 1114 Atlantic
5   Avenue.  He is the person who's
6   responsible for putting me out of service
7   on the 9th of October despite the
8   stipulations.
9       Q    Despite the stipulation for May
10  of 2000?
11      A    For May of 2000.
12      Q    Is there any other act that you
13  allege --
14      A    No.
15      Q    -- against him?
16      A    No.
17      Q    Norman Blumstein?
18      A    I can't remember him.
19      Q    Who is he?
20      A    I don't -- I -- he might have
21  been a -- I'm not quite sure who he is.  I
22  think he was -- I'm not quite sure.
23      Q    Do you have any idea where he
24  worked?
25      A    He worked at the cable section.

57

1        PHILBERT GORRICK
2       Q    He was a Transit Authority
3   employee?
4       A    Yes.
5       Q    Ralph Dill?
6       A    This person's name appeared in a
7   letter.  I can't remember what letter it
8   is.
9       Q    Do you recall what time period
10  the letter is from?
11      A    No.
12      Q    Was it in connection with the
13  events of 2000?
14      A    Yes.
15      Q    Did Ralph Dill have any
16  involvement in any later -- any events
17  subsequent to the 2000 events?
18      A    No.  I don't think so, no.
19      Q    Patrick McGreal?
20      A    Mr. McGreal was the director of
21  operations and we made a -- together, the
22  union on my side with me and him
23  representing the Authority, made an
24  agreement, a stipulation agreement, after
25  I produced my medical lines, that I

15

212-267-6868                                                    516-608-2400

58

PHILBERT GORRICK

1 couldn't wear those shoes. And then in
2 October, in the stipulation, the charges
3 were withdrawn and I should go back to
4 work, and I went back to work full duty
5 and I should wear my own shoes. At the
6 same time, he ask me not to pursue any
7 monetary compensation as a result of the
8 shoes that Transit issued to me on
9 September 9th that injured me. Something
10 that I should not have done, have I had me
11 do that in a good faith effort to settle
12 this matter. And on October 9th, I was
13 placed out of service despite that
14 stipulation.
15    Q    Do you allege that Mr. McGreal
16 took any other discriminatory or allegedly
17 wrongful act other than his involvement in
18 your being put out of service in October
19 of 2000?
20    A    Mr. McGreal's involvement in
21 matters that -- we had a hearing in May of
22 2000 and a stipulation was made between
23 McGreal and myself and the union that the
24 issue of shoes will be withdrawn, there

59

PHILBERT GORRICK

1 will be no shoe charges brought against
2 me, I should continue wearing the same
3 shoes. And a stipulation was signed by
4 both the Transit Authority -- Mr. McGreal
5 signed it on behalf of the Transit
6 Authority and I signed it with the union
7 and they told me that was it -- I'll be
8 back to full duty. On October 9th --
9    Q    My question is subsequent to
10 October of 2000, do you allege any
11 discriminatory or wrongful act by
12 Mr. McGreal?
13    A    Not that I -- not personally,
14 no.
15    Q    Kevin Fonseca is the next name,
16 I believe. Is that correct?
17    A    Yes. Superintendent in the
18 cable section. He followed instructions
19 of Mr. McGreal.
20    Q    Do you allege any act by Kevin
21 Fonseca subsequent to the events of
22 October 2000?
23    A    No.
24    Q    John Campbell?

60

PHILBERT GORRICK

1    A    No. He was general
2 superintendent.
3    Q    And the "no" is answering the
4 question of no allegations --
5    A    Subsequent to October 2000.
6    Q    -- subsequent to October 2000?
7    A    Yeah.
8    Q    J. Lee?
9    A    James Lee, MSII then, placed me
10 out of service as well. He was in the
11 office with Mr. Valenti.
12    Q    So you have no allegations
13 concerning Mr. Lee subsequent to October
14 of 2000?
15    A    No.
16    Q    O. Turner?
17    A    My supervisor. He witnessed
18 these proceedings.
19    Q    Do you have any allegations of
20 discriminatory or wrongful conduct by --
21 well, what allegation of wrongful conduct by Mr. Turner do you
22 make?
23    A    That he -- he was a part of the

61

PHILBERT GORRICK

1 process. He followed the instruction of
2 Mr. McGreal.
3    Q    In October of 2000?
4    A    In October 2000.
5    Q    Do you allege any act by
6 Mr. Turner --
7    A    No.
8    Q    -- subsequent to the events of
9 October 2000?
10    A    No.
11    Q    Joseph Rosas (ph)?
12    A    Rosas, yes, supervisor.
13    Q    And what wrongful act do you
14 allege against Mr. Rosas?
15    A    He -- same as Mr. Turner;
16 supervisor.
17    Q    And do you allege any act by
18 Mr. Rosas subsequent to the events of
19 October 2000?
20    A    No.
21    Q    Richard Gayle?
22    A    Richard Gayle, he worked in
23 Mr. -- I can't remember his title, what
24 his title was, but he worked in the office

16

212-267-6868                          516-608-2400

62

PHILBERT GORRICK
2  of Mr. Gus Rivera.  Mr. Gayle was asked
3  after -- I saw him on the 9th of October
4  and he asked -- he asked about as in
5  regards to my shoes, and he was aware of
6  Mr. Patrick McGreal's letter and
7  information about the stipulation and he
8  acted based on the instruction of
9  Mr. McGreal.
10     Q     And do you allege any act by
11  Mr. Gayle subsequent to that inspection in
12  October 2000?
13     A     No.
14     Q     Michelle Alexander (ph)?
15     A     Ms. Alexander was aware of Dr.
16  Svahn's determination, independent medical
17  consultant, and --
18     Q     By "Dr. Svahn's determinations,"
19  which of Dr. Svahn's determinations are
20  you referring to?
21     A     The first determination.
22     Q     And who is Michelle Alexander?
23     A     I understand she is the head of
24  the medical apartment, Medical Assessment
25  Center.

63

PHILBERT GORRICK
2     Q     Dr. Svahn's first determination
3  was in May of 2002; is that correct?
4     A     Yes.
5     Q     Do you allege any act by Dr.
6  Alexander subsequent to a determination at
7  the end of 2002?
8     A     That Ms. Alexander -- Dr.
9  Alexander, without my consent, went back
10  to Dr. Svahn for information without my --
11  for my medical information without my
12  knowledge.
13     Q     When?
14     A     Subsequent to 2000, to the first
15  determination.
16     Q     Was that in 2002?
17     A     I don't know.  I know it was
18  subsequent.
19     Q     Was it prior to your being
20  disciplined in the beginning of 2003?
21     A     I don't quite understand that
22  question.
23     Q     All right, let's put it aside
24  until we look at the documents, then.
25  Edward Eisenberg (ph)?

64

PHILBERT GORRICK
2     A     I know a medical doctor, but I
3  don't know what role he played.  Of course
4  he's following his instructions of his
5  supervisor, who is Dr. Michelle Alexander.
6     Q     Do you allege that Dr. Alexander
7  was involved in any actions subsequent to
8  the grievance -- to the events that led to
9  the grievance that was heard in the third
10  arbitration?
11     A     Can you -- I'm kind of -- I lost
12  you.
13     Q     Well, let's do a little
14  background here.
15     A     Okay.
16     Q     I think you've already testified
17  there were three arbitrations in
18  connection with grievances related to
19  shoes; is that correct?
20     A     Two.
21     Q     Well, two plus an abandonment.
22  Two substantive and one abandonment; is
23  that correct?
24     A     Yes, that's correct.
25     Q     So there's the first shoe

65

PHILBERT GORRICK
2  arbitration, substantive, correct?
3     A     Yes.
4     Q     Which resulted in the 2002; is
5  that correct?
6     A     Yes.
7     Q     There was the second
8  arbitration, which initially there was an
9  abandonment arbitration; is that correct?
10     A     The second one was based solely
11  on abandonment arbitration, that was it.
12  I don't see how that was -- I can't follow
13  you.
14     Q     Well, the arbitration that
15  resulted in a decision in 2006, what do
16  you call it?
17     A     Yeah, but it hasn't to do with
18  abandonment.  That was a completely
19  different process.
20     Q     But what grievance was
21  abandoned, was allegedly abandoned?
22     A     Okay, there was a process where
23  they needed to contact me to reopen the
24  case --
25     Q     I'm not asking you for the

17

66

1          PHILBERT GORRICK
2  substance of it. I'm asking you what
3  grievance was deemed abandoned?
4      A    The second grievance, I don't
5  know --
6      Q    Right. The second substantive
7  shoe grievance, correct.
8      A    No.
9      Q    What grievance?
10     A    To date, I don't know what the
11 grievance is about. I know they failed to
12 contact me.
13     Q    But at that abandonment
14 arbitration, was the grievance restored?
15     A    If I -- okay, if I do not
16 understand what is it that you're
17 asking -- that we are getting involved in,
18 because the simple reason, if I'm not
19 quite clear what the grievance was
20 initially, I don't know what is there to
21 restore. And my understanding of the
22 grievance is that the Transit Authority
23 couldn't contact me for some procedures
24 they want to have done with me or
25 something to that effect, and they

67

1          PHILBERT GORRICK
2  consider me -- the grievance abandoned and
3  they filed me processed.
4      Q    And then what happened?
5      A    Then what happened, I think I
6  reported back to Ms. Cassandra for a
7  hearing as to what I'll be doing next and
8  that was it. I don't understand quite
9  understand --
10     Q    And what led to --
11     A    -- if that was a grievance.
12     Q    What led to the arbitration that
13 resulted in a decision in 2006?
14     A    The Transit Authority went ahead
15 and reopened the case, since based on
16 Mr. Gus Rivera's finding that it was
17 incorporated into the case, you weren't
18 complying with the previous arbitration
19 ruling. I don't know about that.
20     Q    The determination that you
21 weren't complying with the 2002 ruling,
22 when was that determination made?
23        MR. LICHTEN: Determination by
24 whom?
25        MS. GOETCHEUS: He's just said

68

1          PHILBERT GORRICK
2  that it was a determination by Gus
3  Rivera --
4        MR. LICHTEN: Okay.
5        MS. GOETCHEUS: -- that he was
6  not complying with the 2002
7  arbitration award.
8      Q    When was that determination
9  made?
10     A    That was a year -- a year after,
11 almost a year after. I can't remember the
12 dates.
13     Q    So 2003?
14     A    Maybe 2004. It might have been
15 two years. Because this is a seven-year
16 process, so I can't quite -- I don't have
17 dates, I can't have dates.
18     Q    What I want you to answer is are
19 you alleging that Dr. Alexander performed
20 any allegedly discriminatory or wrongful
21 act subsequent to that determination that
22 you're testifying about, that
23 determination that you had not complied
24 with the 2002 arbitration?
25     A    I can't remember. I can't

69

1          PHILBERT GORRICK
2  remember. Truthfully, I can't.
3      Q    What is the most recent act by
4  Dr. Alexander that you allege is
5  discriminatory?
6      A    That Ms. -- that Dr. Alexander
7  went back to the independent vascular
8  specialist and solicited information from
9  her without my involvement.
10     Q    That's the last act by Dr.
11 Alexander?
12     A    That I'm aware of. I don't know
13 what else she may have done.
14     Q    Jean Cox (ph)?
15     A    Her name appeared on a document.
16 I don't know what that is.
17        MS. GOETCHEUS: I would like to
18 mark for identification as Defendant's
19 Exhibit H documents Bates numbered
20 D487, 488 and 489. The first is an
21 MOW bulletin numbered 98-23, Mini
22 Stand Down, the second is a
23 Maintenance of Way bulletin, 98-21A.
24        [The documents were hereby
25 marked as Defendant's Exhibit H for

18

70

PHILBERT GORRICK

1
2  identification, as of this date.]
3    Q    Have you seen these documents
4  before (handing)?
5    A    (Perusing.) No.
6    Q    Are you familiar with the
7  concept of mini stand downs?
8    A    Yes.
9    Q    And what is the purpose of a
10  mini stand down?
11    A    At safety meetings, they discuss
12  potential hazardous conditions in the
13  track work and how we can go along solving
14  these safety issues.
15    Q    Are you familiar with the
16  concept of personal protective equipment?
17    A    Yes.
18    Q    What is the purpose of personal
19  protective equipment?
20    A    To protect you.
21    Q    To protect you from what?
22    A    From hazards, potential hazards
23  that may exist around the -- in your work
24  area.
25    Q    Turning to the document 98-21,

71

PHILBERT GORRICK

1
2  D488 through 489, "Safety footwear." Have
3  you seen this document before?
4    A    No.
5    Q    Are you familiar with its
6  requirements?
7    A    I'm reading it now and -- yes.
8    MS. GOETCHEUS:    I would like to
9    mark for identification as Defendant's
10    Exhibit I a document dated 8/19/98
11    titled "Safety Equipment Checklist
12    Personal Protective Equipment," Bates
13    numbered D1436.
14    [The document was hereby marked
15    as Defendant's Exhibit I for
16    identification, as of this date.]
17    Q    Have you seen this document
18  before (handing)?
19    A    (Perusing.) Yes.
20    Q    Is this your signature?
21    A    Yes.
22    Q    Did you, in fact, have
23  1997-issued Lehigh safety boots as per MOW
24  bulletin 98-21A?
25    A    No one issued me safety boots.

72

PHILBERT GORRICK

1
2  Work shoes, I had, which I purchased.
3    Q    So you falsely certified at this
4  time that you had these boots?
5    A    I have boots, but not boots.
6  These boots were never -- Transit
7  Authority never issued boots to us, so
8  these boots -- this was -- boots were not
9  issued to me. First time I got boots
10  issued by Transit Authority is nine years
11  after I was hired. So for them to say
12  that I was issued boots, they signed I was
13  issued boots. They were never issued to
14  me.
15    Q    But you signed this, correct?
16    A    Oh, yes. I have boots. I have
17  work boots. I don't know what these
18  safety-issued boots are.
19    Q    But you signed it?
20    A    Yes. I have work boots.
21    MS. GOETCHEUS:    I would like to
22    mark for identification as Defendant's
23    Exhibit J a memo dated August 10, 1999
24    from Mark A. Yanche, Chief of
25    Operations, Maintenance of Way

73

PHILBERT GORRICK

1
2  bulletin number 99-11, "Safety
3  Footwear Distribution," Bates numbered
4  P399 through 402.
5    Just to make an observation
6  here, although the plaintiff's
7  document production has Bates numbers
8  without a prefix letter, in an effort
9  to make the record clear I'll state
10  plaintiff's Bates numbers with a P
11  prefix, if there's no objection.
12    MR. LICHTEN:    Sounds good.
13    [The documents were hereby
14    marked as Defendant's Exhibit J for
15    identification, as of this date.]
16    Q    Do you recognize this document
17  (handing)?
18    A    (Perusing.) Yes.
19    Q    What do you recognize this
20  document to be?
21    A    That the Transit Authority, for
22  the first time, were going to be issuing
23  us safety shoes.
24    Q    Where were you assigned to work
25  in September 1999?

19

74

```
 1         PHILBERT GORRICK
 2    A    Locust Avenue.
 3    Q    Did you attempt to replace your
 4 safety boots when the mobile shoe truck
 5 came to your work site in September 1999?
 6    A    Excuse me, may I ask a
 7 question"?  Replace"?
 8    Q    Did you attempt to obtain --
 9    A    Yes.
10         MR. LICHTEN:  Wait until the
11    question is asked.  What's the
12    question, "did you attempt to obtain?"
13    Q    Safety boots, when the mobile
14 shoe truck came to your work site in
15 September of 1999?
16    A    Yes.
17    Q    What happened then?
18    A    I took a pair of Oxford boots,
19 knowing of my vascular condition.
20    Q    And what happened then?
21    A    I wore the shoes.
22    Q    And what happened then?
23    A    Within a week, they opened
24 ulcers on my ankles.
25    Q    And what happened then?
```

75

```
 1         PHILBERT GORRICK
 2    A    I was out sick.
 3    Q    For how long were you out sick?
 4    A    A month or two.  Probably about
 5 a month.
 6    Q    And then what happened?  Did you
 7 eventually return to work?
 8    A    Yes.
 9    Q    And what did you do then with
10 respect to wearing safety shoes?
11    A    Wear the shoes that I'm -- wear
12 the shoes that I was wearing prior to
13 wearing these shoes, on advisement from my
14 doctor.
15    Q    And when had you obtained those
16 shoes that you were wearing that you just
17 testified that you were wearing when you
18 returned to work in 1999?
19    A    Maybe two years prior.
20    Q    In 1997?
21    A    Yes.
22    Q    And what had prompted you to
23 obtain those shoes in 1997?
24    A    Because the one I had previously
25 were worn.
```

76

```
 1         PHILBERT GORRICK
 2         MS. GOETCHEUS:  I would like to
 3    mark for identification as Defendant's
 4    Exhibit K a memo dated October 27,
 5    2000 from Kevin Fonseca,
 6    Superintendent, cable section, to John
 7    Campbell, General Superintendent, "re
 8    work shoes."  That is Bates numbered
 9    P403.
10         [The document was hereby marked
11    as Defendant's Exhibit K for
12    identification, as of this date.]
13    Q    Have you seen this document
14 before (handing)?
15    A    (Perusing.)  No.
16    Q    It was part of your document
17 production Mr. Gorrick.
18    A    No, I've never seen this.
19    Q    Calling your attention to the
20 second and third paragraphs, it states "On
21 September 21, 1999, a mobile shoe truck
22 came to Locust Avenue and issued safety
23 work shoes to the employees.  The mobile
24 truck did not carry the size shoes for
25 Philbert Gorrick and other employees with
```

77

```
 1         PHILBERT GORRICK
 2 special size shoes.  They gave Gorrick and
 3 other employees with special size shoes
 4 the address in Queens where they could go
 5 for special size shoes order."  Is that
 6 correct?
 7    A    No, that's not correct.  Okay,
 8 as far as my memory is concerned, a number
 9 of events took place.  The truck did not
10 have my size on the truck and they gave us
11 instructions to go get shoes at this
12 location.  But what happened, the truck
13 came back to deliver shoes to another
14 depot location, I think to the bus depot,
15 and there were shoes on the truck, so we
16 went there and got the shoes the next day
17 or I think the shoes were dropped off
18 there for us that day.  So we never had to
19 go to Queens, so I got Oxford shoes.
20    Q    Did you ever go to the Safegard
21 Hightest Safety Store in Queens?
22    A    Down the line, yes, I went there
23 to acquire -- to see if I can acquire or
24 fit fiberglass shoes.  That's during the
25 arbitration process, on advisement from
```

20

212-267-6868                                516-608-2400

78

1       PHILBERT GORRICK
2  Mr. Gus Rivera.
3      Q    In the period prior to October
4  27, 2000, did you ever go to -- did you go
5  to Safegard Hightest Safety Shoes?
6      A    Prior?
7      MR. LICHTEN:  Yeah, prior.
8      A    No.
9      Q    So that it is false, what Mr.
10  Fonseca has written here, "Mr. Stan told
11  me that they have called a number of times
12  from the beginning of this year to let
13  Gorrick know his shoes was in and he could
14  pick them up.  Today is Friday, October
15  27, 2000, and Mr. Stan from Safegard
16  Hightest Safety Shoes Store stated Gorrick
17  did not pick up his shoes"?
18      A    Because the shoes were already
19  issued to me.  As I said, they came back
20  the next day to issue shoes at another
21  site and the gentleman dropped off shoes
22  for me at that location.  So it was not an
23  issue for me to get the shoes.  The shoes
24  were issued to me at Locust Avenue.
25      Q    In September of 1999?

79

1       PHILBERT GORRICK
2      A    September '99, yes.
3      MS. GOETCHEUS:  I would like to
4  mark for identification as Defendant's
5  Exhibit L a memo from Peter Ingoglia,
6  I-N-G-O-G-L-I-A, Manager, labor
7  relations, to Superintendent Rodney
8  dated 3/8/2000, "re P. Gorrick PCM."
9  Bates numbered P310.
10      [The document was hereby marked
11  as Defendant's Exhibit L for
12  identification, as of this date.]
13      Q    Have you seen this document
14  before (handing)?
15      A    (Perusing.) Oh, yes.
16      Q    Are you familiar with its
17  contents?
18      A    Oh, yes.
19      Q    Did you claim in March 2000 to
20  be unable to wear Transit safety shoes?
21      A    Yes.
22      Q    What occurred to cause this memo
23  to be written?
24      A    At night I was transferred from
25  Brooklyn to 1114 Atlantic Avenue, nights.

80

1       PHILBERT GORRICK
2  Mr. Rodney saw me with my own shoes and
3  asked me if these are TA-issued shoes.  I
4  said no, they weren't.  He took me out of
5  service, had me report to Mr. Ingoglia on
6  March 8th, and I explained to Mr. Ingoglia
7  what the conditions were and he asked me
8  to get fresh doctor's lines, which I did,
9  and the issue of the shoes were that
10  proper shoes were never met.
11      Q    Were you, in fact, out sick for
12  a period following this memo?
13      A    I can't remember how it was
14  carried.
15      MS. GOETCHEUS:  I would like to
16  mark for identification as Defendant's
17  Exhibit M a document dated 3/21/2000
18  titled "Disciplinary Action
19  Notification, failure to wear safety
20  boots," Bates number D639, and as
21  Defendant's Exhibit N a stipulation
22  and agreement dated May 25, 2000,
23  Bates numbered P322.
24      [The documents were hereby
25  marked as Defendant's Exhibits M and N

81

1       PHILBERT GORRICK
2  for identification, as of this date.]
3      Q    Have you seen this document
4  before (handing)?
5      A    (Perusing.) Oh, yes.
6      Q    Is this your signature under the
7  caption "Employee appeal"?
8      A    Yes.
9      Q    Why did you write "Under
10  protest"?  Is that your writing, "Under
11  protest"?
12      A    Yes, it is.
13      Q    And what of the basis of that?
14      A    That the Transit Authority had
15  the gumption to discipline me for a
16  medical matter.
17      Q    All right, turning to the
18  stipulation and agreement, Defendant's
19  Exhibit N, is this the stipulation that
20  you have referred to previously in your
21  testimony?
22      A    (Perusing.) Yes, ma'am.
23      Q    Is this your signature over the
24  caption "Grievant"?
25      A    Yes, ma'am.

21

82

1           PHILBERT GORRICK
2     Q     Did this settlement and
3    agreement resolve Exhibit M, regarding
4    your failure to wear safety issue boots?
5     A     Yes, ma'am.
6           MS. GOETCHEUS: I would like to
7     mark for identification as Defendant's
8     Exhibit O a memo dated October 26,
9     2000, from Vincent Valenti to John
10    Campbell "re P. Gorrick, safety
11    shoes," Bates number P406.
12          [The document was hereby marked
13    as Defendant's Exhibit O for
14    identification, as of this date.]
15    Q     Have you seen this document
16   before (handing)?
17    A     (Perusing.) No, I've never seen
18   this before.
19    Q     It was produced in your document
20   production.
21          MR. LICHTEN: Is that a
22    question?
23          MS. GOETCHEUS: I'm just
24    informing him it was provided in
25    plaintiff's document production.

83

1           PHILBERT GORRICK
2     A     Not that I could remember.
3     Q     I'm sorry?
4     A     I said not that I could
5    remember. It may have, yes.
6     Q     In the second paragraph it
7    refers to a "Temporary assignment in the
8    tool shop to allow you an opportunity to
9    get shoes that comply with TA standards."
10   Were you, in fact, temporarily assigned to
11   the tool shop in or about May of 2000?
12    A     No, I was in the tool shop. The
13   temporary assignment was to work in the
14   tool shop. The rights of assignments is
15   the rights of the supervisors. There was
16   no understanding that I was made -- I was
17   on full work, full duty.
18    Q     You were on full duty from May
19   2000?
20    A     From May 2000, I'm on full duty,
21   yes, ma'am.
22    Q     And you did not work in the tool
23   shop?
24    A     I worked there as part of my
25   regular duties.

84

1           PHILBERT GORRICK
2     Q     Did you work anywhere else
3    besides the tool shop between May and
4    October 2000?
5     A     Yes.
6     Q     What was your assignment on
7    October 9, 2000?
8     A     I was supposed to be working in
9    the field that morning with Mr. Turner, O.
10   Turner. He was supervisor along with
11   Mr. Rosas, and we were supposed to be
12   working out in the field.
13    Q     By "out in the field," what was
14   the nature of the field assignment?
15    A     Maintain power cables on the
16   ground and above, overhead cables.
17    Q     Down manholes?
18    A     Down manholes, street holes.
19    Q     Subway tracks?
20    A     Subway tracks.
21    Q     Between March 2000 and October
22   2000, did you obtain footwear compliant
23   with the TA policy?
24    A     I don't understand that
25   question.

85

1           PHILBERT GORRICK
2     Q     Between March 2000 and October
3    2000, did you obtain footwear compliant
4    with the TA safety shoe policy?
5     A     I couldn't possibly do that. On
6    advice of my doctor, I couldn't possibly
7    wear the shoes that the Transit Authority
8    wanted me to wear.
9     Q     In the third paragraph, it says
10   "When MSII Lee approached him about his
11   shoes," referring to you, "he said these
12   are the shoes I want him to wear. Mr. Lee
13   then sent him down to MOW safety, where he
14   saw Mr. Gayle." Were you sent to see
15   Richard Gayle on October 9, 2000?
16    A     Yes.
17    Q     Did Mr. Gayle examine your work
18   shoes on that date?
19    A     Yes.
20          MS. GOETCHEUS: I would like to
21    mark for identification as Defendant's
22    Exhibit P a memo dated October 9, 2000
23    from Richard Gayle to John Campbell
24    "re work boots evaluation, P Gorrick,"
25    Bates numbered P409.

22

86

1        PHILBERT GORRICK
2        [The document was hereby marked
3    as Defendant's Exhibit P for
4    identification, as of this date.]
5    Q    Have you seen this document
6    before (handing)?
7    A    (Perusing.)  Yes.
8    Q    I call your attention to the
9    statement, "Upon inspection it was
10   discovered that the work boots were
11   neither steel-toed nor did he possess
12   documentation to substantiate that the
13   boots are electrical hazard footwear."
14   Did Mr. Gayle determine that your footwear
15   did not comply with New York City Transit
16   requirements?
17   A    You know, ma'am, I -- I need to
18   clarify one thing here.  You're talking
19   about requirements, the shoe requirements.
20   The shoe requirements, as I understand it,
21   there was no requirements prior to 2000.
22   So when we are talking requirements, I'm
23   getting the impression that I was hiding
24   these conditions to wear these shoes.  I'm
25   not doing that in court.  I'm not doing it

87

1        PHILBERT GORRICK
2    now.  These shoes are supposed to protect
3    me.  If these shoes are injuring me, I
4    cannot wear those.
5    Q    In terms of "safety conditions
6    when going on the track," you were aware,
7    were you not, that the Transit Authority
8    required a steel toe in its safety shoes?
9    A    Yes, ma'am.
10   Q    And that it required
11   documentation to substantiate that the
12   boot was electrical hazard footwear?
13   A    No, ma'am.
14   Q    Did Mr. Gayle inform you that he
15   had determined that your footwear did not
16   comply with New York City Transit
17   requirements?
18   A    Yes.
19   Q    Did he explain to you what
20   requirements they did not comply with?
21   A    That it had a steel toe -- that
22   it had a steel component, as stated there
23   in 2000.
24       MS. GOETCHEUS:  I would like to
25   mark for identification as Defendant's

88

1        PHILBERT GORRICK
2    Exhibit Q a memo dated October 27,
3    2000 from J. Lee, MSII, to John
4    Campbell, "re Gorrick, P.," that is
5    Bates numbered P404 through 05.
6        [The document was hereby marked
7    as Defendant's Exhibit Q for
8    identification, as of this date.]
9    Q    Have you seen this document
10   before (handing)?
11   A    (Perusing.)  Yes.
12   Q    In the fourth paragraph, it says
13   "At approximately 11:30, with the
14   supervisors whom he was assigned to for
15   the day and superintendent V. Valenti, I
16   informed Gorrick that the boots he was
17   wearing were not approved."  And the last
18   paragraph on the page, "informing him that
19   until he returns to work with approved
20   work shoes, he could not work."  Do you
21   recall that conversation?
22   A    No.
23   Q    You've testified about
24   Mr. Gayle's determination that your shoes
25   did not comply with Transit requirements;

89

1        PHILBERT GORRICK
2    is that correct?
3    A    Yes.
4    Q    Following that determination,
5    what happened next?
6    A    I was out of service.
7    Q    Were you working for Concord
8    Family Services at that time, in October
9    2000?
10   A    My business was in contract --
11   was doing business -- my business was
12   doing business with Concord Family
13   Services.
14   Q    Were you doing business with
15   other clients at that time?
16   A    Not that I recollect.
17   Q    What days of the week did you
18   provide services to Concord Family
19   Services?
20   A    Every day.  Seven days a week.
21   Q    What time of day?
22   A    Nights, days, remotely.
23   Q    How many hours per week did you
24   work, typically, for Concord Family
25   Services in October 2000?

23

212-267-6868                                                516-608-2400

90

```
1          PHILBERT GORRICK
2    A    I can't tell you offhand.
3    Q    More than ten?
4    A    Could be, yes, more.  I can't --
5    Q    More than twenty?
6    A    I can't tell you.
7    Q    Did you ever work more than
8  twenty hours per week for Concord Family
9  Services during the period prior to
10 October 9, 2000?
11   A    Yes.
12   Q    Did you ever work more than
13 thirty hours per week for Concord Family
14 Services in the period before October 9,
15 2000?
16   A    Yes.
17   Q    Did you ever work more than
18 forty hours per week for Concord Family
19 Services in the period before October 9,
20 2000?
21   A    My business might have, yes.
22   Q    By "your business might have,"
23 did some other person -- you billed
24 Concord Family Services by the hour; is
25 that correct?
```

91

```
1          PHILBERT GORRICK
2    A    Yes.
3    Q    Did individuals other than
4  yourself provide the services?
5    A    Yes.
6    Q    Who were these individuals?
7    A    Consultants that I might have
8  hired for specific skill -- with specific
9  skills.
10        MS. GOETCHEUS:  I would like to
11   mark for identification as Defendant's
12   Exhibit R a Disciplinary Action
13   Notification dated October 26, 2000,
14   Bates number D1356.
15        [The document was hereby marked
16   as Defendant's Exhibit R for
17   identification, as of this date.]
18   Q    Do you recognize this document
19 (handing)?
20   A    (Perusing.) Yes.
21   Q    And what do you recognize it to
22 be?
23   A    That the Transit Authority
24 expected me to report for work with shoes
25 that were injuring me, and since I didn't
```

92

```
1          PHILBERT GORRICK
2  do that they're saying that I failed to
3  report for work with approved safety
4  shoes.
5    Q    Did you submit a grievance
6  contesting this disciplinary action?
7    A    A grievance? No, ma'am.
8    Q    Did you appeal this disciplinary
9  action notification?
10   A    Yes.
11        MS. GOETCHEUS:  Okay, I think
12   this is probably as good as any a
13   point to take a break for lunch.
14        MR. LICHTEN:  Oh, you want to
15   break for lunch?  Okay.
16        MS. GOETCHEUS:  Well, it's ten
17   after 12:00.
18        MR. LICHTEN:  For an hour?
19        MS. GOETCHEUS:  Yeah.  Or, you
20   know, if you want to come back at
21   1:00, that's okay.
22 [Whereupon, after a luncheon recess was taken,
23 the following was had:]
24     A F T E R N O O N   S E S S I O N
25 BY MS. GOETCHEUS:
```

93

```
1          PHILBERT GORRICK
2    Q    You're still under oath, Mr.
3  Gorrick.  You understand?
4    A    I understand, yes, thank you.
5        (It shall be noted that
6  Mr. Rivera is no longer in the room.)
7        MS. GOETCHEUS:  I would like to
8    mark for identification as Defendant's
9    Exhibit S a letter dated October 26,
10   2007 from your attorney, Stuart
11   Lichten, to Magistrate Judge Peck,
12   with an attachment.
13       [The document was hereby marked
14   as Defendant's Exhibit S for
15   identification, as of this date.]
16       MR. LICHTEN:  This is a six-page
17   document?  Are there two letters?
18       MS. GOETCHEUS:  Why don't we
19   just pull off the last two pages,
20   which I think are unrelated?  They
21   just got stapled in.
22       MR. LICHTEN:  I believe it's the
23   last three pages.  Yeah, its the last
24   three pages.
25       MS. GOETCHEUS:  I see, yeah.  I
```

24

94

PHILBERT GORRICK

1
2  guess they -- so the exhibit is three
3  pages.
4      Q    Are you ready?
5      A    Yes.
6      Q    Okay, sorry.  Do you recognize
7  this letter?
8      A    Yes.
9      Q    What do you recognize it to be?
10     A    A letter from Mr. Schwartz's
11  office to the judge, Justice Peck.
12     Q    Concerning your case?
13     A    Yes.
14     Q    I call your attention to the
15  paragraph that begins on the first page,
16  stating -- the last paragraph, stating
17  "Since 1996, plaintiff has operated on his
18  own time a sole proprietorship providing
19  information technology consulting services
20  to various clients including Concord
21  Family Services, Inc., parenthesis
22  Concord, a foster care agency."  Is this
23  statement correct?
24     A    Yes.
25     Q    When did you first provide

95

PHILBERT GORRICK

1
2  services to Concord Family Services?
3      A    Sometime in 1996.
4      Q    What services did you provide
5  initially?
6      A    Advisement, oral advisement on
7  the network system, computer system.
8      Q    On what days and hours did you
9  provide these services?
10     A    Intermittently.  I can't
11  remember what days.
12     Q    Did you provide these services
13  under a written contract initially in
14  1996?
15     A    Maybe, yes.
16     Q    Maybe or yes?
17     A    I'm not quite sure.
18     Q    Did you ever provide services to
19  Concord Family Services without a written
20  contract?
21     A    Yes.
22     Q    And when was that?
23     A    1996.
24     Q    And what was the nature of your
25  understanding with Concord concerning your

96

PHILBERT GORRICK

1
2  provision of services in 1996?
3      A    That my company would provide
4  services to them and whatever their
5  information needs are, we will provide.
6      Q    And by "your company," what do
7  you mean?
8      A    Contemporary Technologies.  The
9  company that I -- my company.
10     Q    Is that a New York State
11  corporation?
12     A    It is now a New York State
13  corporation.  Now it is, yes.
14     Q    And when did it become a New
15  York State corporation?
16     A    Sometime this year or last year,
17  I think.  I'm not quite sure.
18     Q    2006 or 2007?
19     A    Yes, maybe.  I'm not quite sure.
20  I can't remember the dates.
21     Q    But up until 2006 or 2007, it
22  was not a corporation; is that correct?
23     A    Yes; it was not a corporation.
24     Q    Did there come a time when you
25  entered into a written contract with

97

PHILBERT GORRICK

1
2  Concord Family Services?
3      A    Yes.
4      Q    And when was this?
5      A    Either 1996 or shortly
6  thereafter.  Or 1996, one year or two
7  after.
8      Q    And what was the nature of the
9  agreement between you and Concord Family
10  Services under that written contract?
11     A    That my company would provide
12  services to them, IT services.
13     Q    And how would they pay you?
14     A    Hourly.
15     Q    And was there a fixed hourly
16  rate?
17     A    Yes, there was.
18     Q    And what was that?
19     A    Seventy dollars an hour.
20     Q    Did that rate depend on who
21  provided the services?
22     A    The company provided services.
23     Q    Did it depend on who was the
24  individual who provided services --
25     A    The company.

25

98

```
1          PHILBERT GORRICK
2    Q    -- via the company?
3    A    The company. The seventy
4  dollars per hour is the rate at which the
5  company charges Concord Family Service.
6  Who provided service wouldn't be relevant,
7  would it?
8    Q    Well, I'm asking you.
9    A    No.
10   Q    Regardless of the nature of the
11 services, it was charged at --
12   A    Seventy dollars an hour.
13   Q    -- seventy dollars an hour?
14   A    Yes.
15   Q    And who in 1996, besides you,
16 provided services to Concord Family
17 Services under this agreement?
18   A    Consultants that I might require
19 for specific tasks.
20   Q    We're talking about a specific
21 point in time, Mr. Gorrick. Who in
22 particular provided services? Named
23 individuals, if there are any?
24   A    There are.
25   Q    Well, then, give me their names.
```

99

```
1          PHILBERT GORRICK
2    A    There are so many, I don't know
3  where to start.
4    Q    Well, start with the ones you
5  recall.
6    A    Okay, Avery Simpson, Trevor
7  Walker, and the persons that came and
8  worked with them, so they were responsible
9  for those people.
10   Q    Who were they?
11   A    No, the persons I named would be
12 responsible for those other persons.
13   Q    And why can't you name the
14 additional people?
15   A    Because they weren't on my --
16 those persons weren't directly on my
17 employment. They were subcontracted by
18 the persons I contracted.
19   Q    And you contracted the work to
20 Avery Simpson and they subcontracted it to
21 others?
22   A    They might have brought in other
23 persons with them to do work.
24   Q    Were your subcontracts with
25 these individuals written?
```

100

```
1          PHILBERT GORRICK
2    A    No, they weren't always written.
3    Q    I didn't ask if they were
4  "always written."
5    A    No, they weren't.
6    Q    Were they ever written?
7    A    No.
8    Q    And what did you pay Avery
9  Simpson for services rendered on behalf of
10 your company to Concord Family Services?
11   A    Whatever he charged.
12   Q    And what did he charge?
13   A    Multiple -- various amounts
14 based on the nature of the job that he's
15 required to do.
16   Q    And what was the range of these
17 amounts?
18   A    Based on what was required to
19 do, $1,000, $2,000, $1,700, $100.
20   Q    Per hour?
21   A    No; these were fixed amounts
22 based on the job required to do. So if
23 the job required to do that, that's what
24 you were paid. Whatever the charge, that
25 was paid.
```

101

```
1          PHILBERT GORRICK
2    Q    Did you bill those amounts
3  separately to Concord Family Services?
4    A    No; Concord is not responsible
5  for that. I am responsible for that.
6    Q    And how did you bill fixed
7  amounts from third parties on an hourly
8  rate?
9          MR. LICHTEN: Objection;
10   confusing. But if you understand --
11   Q    Did you bill fixed charges by
12 third parties on an hourly-rate basis to
13 Concord Family Services?
14   A    Yes.
15   Q    How did you do that? How did
16 you depict them on your bills?
17   A    Based on the hours that the job
18 required -- was required to be done, those
19 were the rates. The hours were given in
20 the invoices and that was it.
21   Q    So if Avery Simpson -- you've
22 given the example that Avery Simpson might
23 charge you $1,000 for a job. You
24 translate that $1,000 charge into a number
25 of hours?
```

26

102

PHILBERT GORRICK

1
2    A    Yes.
3    Q    And how did you do that?
4    A    Divided by seventy. Divided the
5  money paid to Mr. Simpson by seventy.
6  That would give me the amount of hours, if
7  that was the example you're asking for.
8    Q    And is that how you billed Avery
9  Simpson's work?
10    A    Its how I paid Avery Simpson.
11  How I billed Concord is per my contract
12  with Concord.
13    Q    And with Trevor Walker, is that
14  also the manner in which you proceeded?
15    A    In the cases, yes.
16    Q    What about the cases you didn't
17  proceed in that manner?
18    A    In the case where Mr. Walker
19  would work individually, he got paid
20  seventy dollars an hour.
21    Q    When you paid on an hourly rate,
22  you paid the entire seventy dollars an
23  hour you got from Concord Family Services
24  to Mr. Walker or Mr. Simpson?
25    A    Yes.

103

PHILBERT GORRICK

1
2    Q    Did you report your payments to
3  Mr. Walker or Mr. Simpson to the IRS on
4  forms 1099?
5    A    They were given -- I think --
6  yes, they were given 1099s.
7    Q    By Contemporary Technologies?
8    A    By Contemporary Technologies,
9  yes.
10    Q    For what time period did these
11  two individuals provide services to
12  Contemporary Technologies?
13    A    From 1996 till now, as we speak.
14    Q    To the present?
15    A    Yes.
16    Q    Did they provide services in
17  2006?
18    A    Yes.
19    Q    Did they provide services in
20  2005?
21    A    Yes.
22    Q    Are there other individuals who
23  provided services to Contemporary
24  Technologies in 2006?
25    A    Yes, there were.

104

PHILBERT GORRICK

1
2    Q    And who were they?
3    A    Schools, foreign entities, Cisco
4  Systems, companies outside of myself,
5  other companies.
6    Q    And you billed those services to
7  Concord Family Services at a seventy
8  dollars per hour rate?
9    A    My company billed Concord Family
10  Service for the services I provide.
11  Concord Family Service had nothing to do
12  with persons I contract to do that work.
13    Q    The question I'm asking,
14  however, is I think you just testified
15  that these individuals -- and you quickly
16  went over them. Let's do it so I can
17  actually hear them. You said something
18  about Cisco Services (sic)?
19    A    Yes; a number of third-party
20  companies are involved in my business.
21    Q    What are these third parties?
22    A    Microsoft, Cisco Systems, Sun
23  Microsystems, Oracle.
24    Q    What about other individuals?
25    A    Yeah, I'm sure, but I can't

105

PHILBERT GORRICK

1
2  remember them right now. But there may be
3  individuals.
4    Q    We're talking about 2006, Mr.
5  Gorrick. Who in 2006 --
6    A    I can't --
7    MR. LICHTEN: Wait.
8    Q    -- provided services to you?
9    A    Ma'am, I can't remember. There
10  are so many. There are too many.
11    Q    Is that also true for 2005?
12    A    Yes, ma'am.
13    Q    Is that true for 2004?
14    A    Yes, ma'am.
15    Q    Is that true for 2003?
16    A    Yes, ma'am.
17    Q    2002?
18    A    Yes.
19    Q    Approximately how many hours per
20  week do you personally provide services
21  for Concord Family Services?
22    A    Ten.
23    Q    And for how long a period have
24  you provided approximately ten hours per
25  week for Concord Family Services?

106

```
 1        PHILBERT GORRICK
 2    A    From the time I've been
 3  contracting with Concord. That's an
 4  average of ten hours. May be less, could
 5  be more.
 6    Q    For what other periods did you
 7  work in the period from 1996 to October
 8  2000?
 9        MR. LICHTEN: Objection;
10    confusing.
11    Q    For what other -- well,
12  Mr. Lichten, in his letter, says --
13        MR. LICHTEN: You meant clients?
14    You said "periods."
15        MS. GOETCHEUS: I'm sorry.
16        MR. LICHTEN: You mean what
17    other clients? You said "what other
18    periods."
19        MS. GOETCHEUS: I'm sorry, I
20    meant clients, yeah. I apologize.
21    Q    For what other clients did you
22  work for in the period from 1996 to
23  October 2000?
24    A    Individuals -- individuals will
25  come to me and ask me for services.
```

108

```
 1        PHILBERT GORRICK
 2    A    Not in all cases, no.
 3    Q    In any cases?
 4    A    Just a few times. Small,
 5  insignificant amounts.
 6    Q    When did you receive payment?
 7    A    '05. And nothing in '06. They
 8  owed me money in '06.
 9    Q    Prior to 2005?
10    A    Nothing. They owe me.
11    Q    Other clients for whom you
12  worked in the period from 1996 to October
13  2000?
14    A    Not that I can remember.
15    Q    I'm sorry?
16    A    None that I can remember right
17  now.
18    Q    What other clients have you
19  worked for subsequent to October 2000?
20    A    None.
21    Q    None?
22    A    Subsequent?
23    Q    To October 2000.
24    A    Concord Family.
25    Q    I'm just trying to hear your
```

107

```
 1        PHILBERT GORRICK
 2    Q    Please give names.
 3    A    Pharmacy Lessons.
 4    Q    "Pharmacy Lessons"?
 5    A    Yes.
 6    Q    That's an entity?
 7    A    It's an entity, yes.
 8    Q    And what's the nature of its
 9  business?
10    A    Provide training for pharmacy
11  technicians.
12    Q    And what was the nature of the
13  services you provided to Pharmacy --
14    A    IT consultant. Information
15  technology consultant.
16    Q    And what period did you do that?
17    A    From 1996 to -- 1995 to last
18  year.
19    Q    By "last year," you mean 2006?
20    A    In 2006.
21    Q    And where are they located?
22    A    They were located in Jamaica,
23  Queens. They're no longer there.
24    Q    And did you receive payment from
25  Pharmacy Lessons for your services?
```

109

```
 1        PHILBERT GORRICK
 2  answer, I'm sorry.
 3    A    Subsequent means after 2000?
 4    Q    Yes, subsequent means after
 5  2000.
 6    A    I can't answer that. I don't
 7  know.
 8    Q    Did you perform services for any
 9  client other than Concord Family
10  Services --
11    A    No.
12    Q    -- and Pharmacy Lessons?
13    A    No, not that I can remember.
14    Q    I'm not asking -- sir, either --
15  did you provide services for any other
16  clients besides Concord Family Services
17  and Pharmacy Lessons subsequent to October
18  2000?
19    A    Ma'am, I can't remember. I
20  really can't.
21    Q    In the last year, in 2007, have
22  you provided services for any clients
23  other than Concord Family Services?
24    A    For paid services or unpaid
25  services? Paid services or unpaid
```

28

212-267-6868                                              516-608-2400

110

```
1           PHILBERT GORRICK
2  services?
3     Q    Paid or unpaid.
4     A    Yes, I provide service, unpaid
5  services, to churches, my church.
6     Q    What is your church?
7     A    Presentation of the Blessed
8  Virgin Mary.
9     Q    I'm sorry, could you just --
10    A    Presentation of the Blessed
11 Virgin Mary.
12    Q    And what are the nature of the
13 services you have provided to this church?
14    A    IT services.
15    Q    And the extent of the IT
16 services you have provided to this --
17    A    IT services, ma'am.  I just
18 provide IT services.  I don't --
19    Q    I mean how many hours have you
20 provided --
21    A    What is necessary.  I don't
22 know, five hours, six hours.  It's all
23 gratis.  I don't get paid for it.
24    Q    Five, six hours in the entire
25 year 2000?
```

111

```
1           PHILBERT GORRICK
2     A    Could be, maybe, yes.
3     Q    I'm asking you, sir.  This is in
4  the last year.
5     A    Yes, yes.
6     Q    In 2006, how many hours of IT
7  service did you provide to this church?
8     A    None.
9     Q    Prior to 2006, did you provide
10 IT services to this church?
11    A    Yes.
12    Q    When?
13    A    2004-2005, definitely.
14    Q    And how many hours of service
15 did you provide in 2005?
16    A    About fifteen hours.
17    Q    "Fifteen"?
18    A    Fifteen hours.
19    Q    One-five?
20    A    One-five, yes.
21    Q    And in 2000 -- you were
22 answering 2005; is that correct?
23    A    Yes.
24    Q    2004, how many hours?
25    A    I don't know.  I can't remember
```

112

```
1           PHILBERT GORRICK
2  that, how many hours it were.
3     Q    Was it more than ten?
4     A    No, I don't think so.  More than
5  ten, no.
6     Q    Prior to 2004, did you provide
7  IT services for your church, for this
8  church?
9     A    Yes.
10    Q    And when?
11    A    Recreational work, some
12 evenings, fix -- move a computer one place
13 to the next.  Half an hour, an hour.
14 Accumulatively four, five hours a year.
15    Q    What period did you provide
16 these services?
17    A    From 2000 to 2004.
18    Q    Any other unpaid provision of IT
19 consulting or other IT services?
20    A    Not that I can remember.
21    Q    So the only paying client you
22 have had for services has been Concord
23 Family Services plus some work for
24 Pharmacy Lessons?
25    A    Yes.
```

113

```
1           PHILBERT GORRICK
2     Q    Prior to your suspension in
3  October 2000, did you ever submit a dual
4  employment form to the Transit Authority?
5     A    Yes.
6     Q    To whom did you submit it?
7     A    Mr. Anthony Pogola.
8     Q    How do you spell that last name?
9     A    It's Pogola, P-O-G-O-L-A.
10    Q    And who is he?
11    A    General superintendent, cable
12 section.
13    Q    When did you submit that form?
14    A    1995.
15    Q    And at what location was that?
16    A    1114 Atlantic Avenue.
17         MS. GOETCHEUS:  I would like to
18 mark for identification as Defendant's
19 Exhibit T thirteen pages of documents
20 attached to and including a fax cover
21 sheet from John Luard, Concord Family
22 Services HR department.
23         [The document was hereby marked
24 as Defendant's Exhibit T for
25 identification, as of this date.]
```

114

```
1          PHILBERT GORRICK
2     Q    Turn to the documents that are
3  fax page number two and three, titled
4  "Contract," please.
5     A    Yes.
6     Q    Do you recognize this document?
7     A    (Perusing.) Yes.
8     Q    Is this your signature on the
9  page numbered three?
10    A    Yes.
11    Q    When was this contract executed?
12    A    There's no date on it?
13  (Perusing.)  This has to be in January of
14  2001.
15    Q    And what leads you to that
16  conclusion?
17    A    Since the period is in February
18  to January 2002.
19    Q    Are you looking at pages two and
20  three, the fax pages two and three?
21    MR. LICHTEN:  Two and three
22  (indicating).
23    A    Two and three?  Oh, oh, oh, this
24  one (indicating).
25    MR. LICHTEN:  This page and this
```

116

```
1          PHILBERT GORRICK
2     Q    When did you execute this
3  contract?
4     A    Oh, this had to be sometime in
5  January.  January of 2001.
6     Q    So prior to the period covered
7  by the contract?
8     A    Yeah.  Yes, yes.
9     Q    Prior to the period covered by
10  the contract?
11    A    Yes, yes.  A month prior, yes.
12    Q    When this contract expired in
13  January 2002, did you execute another
14  contract?
15    A    Yes, I think.  I'm not quite
16  sure.
17    Q    Did you have a contract with
18  Concord Family Services prior to this
19  contract, by which I mean the one that you
20  say was executed in January 2001?
21    A    Yes.
22    Q    Were its terms similar?
23    A    Yes.
24    Q    And when was it executed, the
25  contract prior to this one executed in
```

115

```
1          PHILBERT GORRICK
2  page (indicating).
3     A    Okay.  (Perusing.)  All right,
4  this has no date on it.  I can't tell you.
5     Q    The executive director who
6  signed this, is that Lelar Floyd (ph)?
7     A    Yes.
8     Q    Is Ms. Floyd still with Concord
9  Family Services?
10    A    I don't think so she is, no.
11    Q    In fact, did Ms. Floyd leave
12  Concord Family Services in or about
13  October 2006?
14    A    I don't know.
15    Q    This contract, however, was
16  signed prior to Ms. Floyd's departure from
17  Concord Family Services; is that correct?
18    A    That's right.
19    Q    Turning to the document's fax
20  pages four and five, titled "Contract," do
21  you recognize this document?
22    A    (Perusing.) Yes.
23    Q    Is this your signature on the
24  page numbered five?
25    A    Yes.
```

117

```
1          PHILBERT GORRICK
2  January 2001?
3     A    That had to be January 2000.
4     Q    And was there a contract prior
5  to the one that you've just testified
6  executed in January 2000?
7     A    Yes.  That would be -- we had a
8  yearly contract, yes.
9     Q    You had a yearly contract?  You
10  executed a contract in January 1999?
11    A    Yes.
12    Q    And in January 1998?
13    A    Yes.
14    Q    And in January 1997?
15    A    I'm not quite sure.
16    Q    Turning next to the document fax
17  page numbers six through eight, titled
18  "Duties and responsibilities," do you
19  recognize this document?
20    A    (Perusing.) Yes.
21    Q    What do you recognize it to be?
22    A    The services offered by my
23  company.
24    Q    When was it prepared?
25    A    This document is prepared based
```

30

118

PHILBERT GORRICK

1
2 on my company's ability to provide the
3 services, so if it's attached to one of
4 the contracts then it was modified and
5 prepared the same month or week of the
6 contract.
7    Q    I'm sorry?
8    A    The company provides services
9 based -- based on what the contract
10 requires. So if the contract requires me
11 to expand on my services, then those
12 services would be reflected in the
13 contract, on signing the contract. So
14 this document had to be prepared with this
15 contract of February 2001.
16    Q    And did you prepare this
17 document, the duties and responsibilities
18 document?
19    A    Yes. I myself, yes.
20    Q    Turning to the document's fax
21 page nine, a 1099 with "Recipient,
22 Philbert T. Gorrick, Contemporary
23 Technologies," do you recognize this
24 document?
25    A    Yes.

120

PHILBERT GORRICK

1
2 upgrades and expansion of the computer
3 network"?
4    A    Yes. If that were the case,
5 yes.
6    Q    Was it the case? Did they pay
7 you an additional amount to reimburse you
8 the cost of materials and associated
9 equipment in 2006?
10    A    If the job required me to
11 acquire materials and equipment, certainly
12 they would have to replace the cost of
13 that -- reimburse me for the cost of that
14 equipment. If it doesn't, it doesn't.
15    Q    And I'm asking you specifically
16 about 2006.
17    A    2006, yes.
18    Q    Did Concord Family Services pay
19 you an additional amount to that reported
20 in the 1099 for the cost of all materials
21 and associated equipments?
22    A    No.
23    Q    There were no -- you did not
24 purchase any materials or associated
25 equipments in 2006?

119

PHILBERT GORRICK

1
2    Q    Did Concord Family Services pay
3 you the amount stated for your services in
4 2006?
5    A    They paid the company for the
6 services, yes.
7    Q    Did Concord Family Services pay
8 you an additional amount pursuant to the
9 terms of your contract to "reimburse you
10 for the cost of all materials and associated
11 equipment supplied for the purpose of the
12 agreement"?
13    A    Reimbursement -- explain that
14 for me, 'cause I don't understand.
15    Q    If you look at the contract --
16    A    Yes.
17    Q    -- in paragraph three of both --
18 I believe both contracts.
19    A    Yeah.
20    Q    Yes, both contracts provide that
21 "CFS will pay the contractor rate of
22 seventy dollars per hour for the service
23 described in paragraph two and the cost of
24 all materials and associated equipments
25 provided for the purpose of repairs,

121

PHILBERT GORRICK

1
2    A    No equipment that I would have
3 to bill them for. Equipment that they
4 would have purchased by themselves.
5    Q    They purchased it directly?
6    A    And I was installing it. The
7 equipment that I would purchase in order
8 to do my job would be part of my seventy
9 dollars an hour. That's my tools,
10 equipment, et cetera, in my seventy
11 dollars an hour. If it requires materials
12 for cabling, wiring, stuff like that, I
13 would go and purchase it. They would give
14 me the money for that.
15    Q    But in 2006 --
16    A    That's how it goes for every
17 year.
18    Q    Well, we have discussed several
19 alternatives, so in 2006, in addition to
20 the amount that they paid you in 2006, did
21 they reimburse you under this provision
22 for reimbursing the cost of all materials
23 and associated equipments?
24    A    No, there's no reimbursement
25 other than the cost of materials. If I

31

122

PHILBERT GORRICK

1
2  purchase material, then they reimburse me
3  for the expense of purchasing materials.
4      Q    Did they in 2006?
5      A    Reimburse me?
6      Q    Yes, in 2006, that's my
7  question, for the amount in excess of the
8  amount they reported on the 1099. Does
9  the 1099 reflect the amount you were paid
10 at the rate of seventy dollars per hour by
11 Concord Family Services?
12     A    The materials that are purchased
13 are a part -- some of the materials are
14 part of the seventy dollars an hour and
15 some of the materials that are significant
16 in terms of its presence, if I supply
17 those materials, then they reimburse me
18 for the cost of those materials. So for
19 me to say they did not or they did pay me,
20 part of some of the materials are involved
21 in my 1099 and there's some equipment that
22 they just purchased themselves, so that
23 would not be part of.
24     Q    So in 2006 --
25     A    Yes.

123

PHILBERT GORRICK

1
2      Q    -- did they pay you, did they
3  reimburse you for the cost of materials
4  and associated equipments, apart from the
5  amount they paid you at the seventy
6  dollars per hour rate that is reported on
7  the 1099?
8      A    Yes, ma'am.
9      Q    Now, you mentioned some
10 third-party corporations as providers of
11 service under the contract. You mentioned
12 Microsoft. Did you obtain personal
13 services via Microsoft on behalf of
14 Concord Family Services?
15     A    No; personal service on behalf
16 of my company.
17     Q    Please explain what that answer
18 means.
19     A    In other words, if I need
20 resource -- if I need technical assistance
21 to institute a job, I will call on
22 Microsoft System to get personal
23 information from them for my benefit, for
24 my company's benefit.
25     Q    And how would you bill it to

124

PHILBERT GORRICK

1
2  Concord Family Services?
3      A    I won't bill it to Concord.
4  That's my company, for my company. I
5  don't bill for that.
6      Q    And the nature of the services
7  you obtained from Cisco on behalf of
8  Concord Family Services?
9      A    Nothing on behalf of Concord.
10 All this information I get from Cisco
11 Systems is my own benefit, and I
12 provide -- I pay Cisco Systems directly
13 and use it at Concord Family Services.
14     Q    And you do not bill Concord
15 Family Services for the cost of obtaining
16 software from Cisco?
17     A    There's no software from Cisco.
18     Q    Software from Microsoft?
19     A    There's no software from
20 Microsoft. It's technical assistance.
21     Q    And from Sun Microsystems?
22     A    Technical assistance.
23     Q    And from Oracle?
24     A    Technical assistance.
25     Q    Not software?

125

PHILBERT GORRICK

1
2      A    Not software.
3      Q    In the address block on the 1099
4  there is a reference to a "Stay Daniels."
5  Who is Stay Daniels?
6      A    Oh, she's the fiscal director.
7      Q    The fiscal director of who, of
8  what?
9      A    Concord Family Services.
10     Q    How did you come to know Ms.
11 Daniels?
12     A    At Concord Family Services.
13     Q    Did you come to know her at
14 Concord Family Services?
15     A    Concord Family Services, yes.
16     Q    How did you come to know her?
17     A    I -- they had a problem over
18 there. I was over there, someone asked if
19 I could help. I said yes, I could, and I
20 went and helped. And she, being the
21 person responsible for the fiscal aspect
22 of the company, I met her.
23     Q    Was this when you had already
24 begun working for Concord Family Services?
25     A    Yes.

32

126

1        PHILBERT GORRICK
2    Q    About when did that occur?
3    A    1990-something. Maybe '96.
4    Q    So early in your contact with
5  Concord Family Services?
6    A    Yes.
7    Q    With respect to the remaining
8  documents on fax pages ten, 11, 12 and 13,
9  do you recognize these documents?
10    A    Yes.
11    Q    Are these IRS forms 1099 that
12  Concord Family Services provided to you
13  for payments made to you in the years,
14  respectively, 2005, 2004, 2003 and 2002?
15    A    That's correct.
16    Q    And did Concord Family Services
17  pay you the amount stated for your
18  services in the stated years?
19    A    Paid the company for the
20  services, yes.
21        MS. GOETCHEUS: I would like to
22    mark for identification as Defendant's
23    Exhibit U an affidavit sworn to
24    October 24, 2006.
25        [The document was hereby marked

128

1        PHILBERT GORRICK
2  on an award.
3    Q    But in order to obtain payment;
4  is that correct?
5    A    Yes.
6        MS. GOETCHEUS: I would like to
7    mark for identification as Defendant's
8    Exhibit V a payroll check stub
9    information form dated December 10,
10    2006, Bates stamped P511.
11        [The document was hereby marked
12    as Defendant's Exhibit V for
13    identification, as of this date.]
14    Q    Do you recognize this document
15  (handing)?
16    A    (Perusing.) Yes.
17    Q    What do you recognize it to be?
18    A    This is a copy of a check that
19  was sent to me.
20    Q    Is this your signature?
21    A    Yes.
22    Q    Under what circumstances did you
23  sign this form?
24        MR. LICHTEN: I'm going to
25    object to that as calling for

127

1        PHILBERT GORRICK
2  as Defendant's Exhibit U for
3  identification, as of this date.]
4    Q    Do you recognize this document
5  (handing)?
6    A    (Perusing.) Yes.
7    Q    Is this your signature on it?
8    A    Yes.
9    Q    What led you to prepare and
10  execute this affidavit?
11    A    That I was suspended from my
12  position. At the end of arbitration
13  award, I was asked to sign this.
14    Q    For what purpose did you sign
15  this?
16    A    They asked me if I made any
17  earnings outside my employment, and that
18  was no.
19    Q    And you made this affidavit in
20  order to receive payment; is that correct?
21    A    I made this affidavit to receive
22  payment based on an award.
23    Q    In order to obtain payment by
24  the Transit Authority; is that correct?
25    A    Based on an award, yes. Based

129

1        PHILBERT GORRICK
2    attorney/client-privileged
3    information.
4        MS. GOETCHEUS: Okay. All
5    right, then.
6    Q    Turning back to Exhibit U, it
7  states "During a portion of the aforesaid
8  suspension from 2000 to 2004, I was not
9  employed elsewhere in any capacity and did
10  not derive any earnings from any other
11  employment by self or otherwise, nor did I
12  perform any work or services for which I
13  was entitled to be paid now or any future
14  date, nor did I receive any unemployment
15  insurance benefits or public assistance."
16  Is this statement true?
17    A    That is true.
18    Q    Please explain how this
19  affidavit is consistent with your earning
20  statements for the years 2002, 2003 and
21  2004 from Concord Family Services.
22    A    Concord Family Services paid my
23  business, my business operated at a loss,
24  and I was working for Con -- sorry. My
25  business operated with Concord during my

33

130

1          PHILBERT GORRICK
2   active employment with Transit Authority.
3   I depended on Transit Authority's income
4   to survive and I never got it for seven
5   years, so in fact I didn't earn any
6   income.
7      Q    But this doesn't ask that,
8   actually; does it?  It asks did you have
9   any earnings.
10     A    The Transit Authority knew I had
11  earnings.  I would assume any intelligent
12  person would assume that the Transit
13  Authority had records that I had a dual
14  business going, wouldn't ask me a question
15  like this knowing that I had a dual
16  business going and not say that it's true.
17     Q    However --
18     A    Do you understand?
19        MR. LICHTEN:  Its all right, she
20  asks the questions.
21        MS. GOETCHEUS:  I would like to
22  mark for identification as Defendant's
23  Exhibit W Plaintiff's 2006 income tax
24  return, produced by your attorney in
25  September of this year.

131

1          PHILBERT GORRICK
2        [The document was hereby marked
3   as Defendant's Exhibit W for
4   identification, as of this date.]
5      Q    Do you recognize this document
6   (handing)?
7      A    (Perusing.)  Yes I do.
8      Q    It was, in fact, filed on your
9   behalf with the tax authorities?
10     A    Yes.
11     Q    Why did you file your 2006 tax
12  return in September 2007?
13     A    That's when I filed it.
14     Q    The 2006 tax return is
15  ordinarily due in April of the year
16  following.  Why didn't you file it in
17  April of 2007?
18     A    Because I had other income --
19  other income tax issues and I talked to my
20  accountant and everything else, so I
21  waited until I cleared up all of that
22  before I filed.
23     Q    What were the nature of your
24  income tax issues with your accountant
25     A    Well, I couldn't find some

132

1          PHILBERT GORRICK
2   records, I needed some records, and since
3   I was moving all over the place, I had to
4   acquire most of them, which most of them
5   is absent from here (indicating), but I
6   had to -- I filed anyhow.
7      Q    Did you assist in the
8   preparation of this return?
9      A    I granted some information, yes.
10  Granted some information that I had.
11     Q    Is the information in the tax
12  return to the best of your knowledge?
13     A    To the best of the knowledge
14  with what I had, yes.
15     Q    Turning to page nine of the fax,
16  fax page nine --
17        MR. LICHTEN:  Fax page nine out
18  of 33?
19        MS. GOETCHEUS:  Nine out of 33,
20  yes.
21     Q    -- titled "Profit or loss from
22  business," there is an entry on line nine,
23  "Car and truck expenses," in the amount of
24  "$4,210."  What do these represent?
25     A    Payments for car insurance, et

133

1          PHILBERT GORRICK
2   cetera.  This is far from accurate 'cause,
3   as I said, some information that is given
4   here does not actually reflect what the
5   expenses were, since I was living in
6   different places.  You would assume that
7   since I rent the car, the insurance and
8   payment for the car is much more than
9   $4,000 a year.
10     Q    This is for your personal
11  automobile?
12     A    This is for automobile connected
13  to my business, yes.
14     Q    Which is your personal
15  automobile?
16     A    Its connected to my business,
17  yes.
18     Q    Do you have another automobile
19  that is your personal automobile?
20     A    No.
21     Q    It is the automobile you use for
22  personal purposes?
23     A    Yes.
24     Q    Looking at the entry on line ten
25  for "Commissions and fees, $29,116," what

34

134

PHILBERT GORRICK

1    do these represent?
2
3    A    Line ten?
4    Q    Its right below the
5    automotive --
6    A    Okay, there's a connection with
7    training -- bulk of this is training,
8    labs, books, et cetera.
9    Q    Which you obtained for your
10    personal use?
11    A    Personal development, yes.
12    Q    Turning to the entry on line 15,
13    "Insurance other than health, $2,998,"
14    what type of insurance is that?
15    A    Its equipment insurance -- most
16    of it is equipment insurance.
17    Q    What do you mean by "equipment
18    insurance"?
19    A    Well, I've got fairly expensive
20    testing equipment that I have to use and
21    in light of my -- in the line of the job,
22    and I need to insure them so in case they
23    got damaged or broken they can be
24    replaced.
25    Q    On line 17 for "Legal and

135

PHILBERT GORRICK

1
2    professional services" in the amount of
3    "$650," what was that for?
4    A    Business advisement.
5    Q    By what sort of provider?
6    A    Business provider, advisement on
7    my business.  This is connection with
8    people that provide legal services,
9    contract services, et cetera.
10    Q    In 2006, specifically, from whom
11    did you obtain services for which you paid
12    the amount of $650?
13    A    My tax preparer is one, which is
14    Mr. -- what's his name?  Its not on there.
15    And forms, legal office forms, et cetera.
16    Q    Looking at the entry on line 18,
17    "Office expense" in the amount of
18    "$9,600," what does that represent?
19    A    Equipment, furniture, tools --
20    lab equipment, tools, furniture --
21    majority is lab equipment and tools.
22    Q    Do you maintain an office?
23    A    If I maintain an office?  No, I
24    don't maintain an office.
25    Q    Where do you incur this office

136

PHILBERT GORRICK

1
2    expense, then?
3    A    From my laptop and from my car.
4    Working in my car on my laptop.
5    Q    And where do you store the
6    equipment that you insure and utilize?
7    A    In my car.
8    Q    On line 20A, there is an entry
9    for "Vehicles, machinery and equipment" in
10    the amount of "$8,988."  What does that
11    represent?
12    A    Repairs, services, accidents.
13    Q    To what?
14    A    To my car.
15    Q    And your car is your 2006 BMW;
16    is that correct?
17    A    Yes.  I had a car before 2002
18    BMW.
19    Q    In 2006, did you still own your
20    2002 BMW?
21    A    No.
22    Q    We're looking at your 2006 tax
23    returns.
24    A    Yes.
25    Q    So we're talking about this

137

PHILBERT GORRICK

1
2    $8,988 concerns repairs, you said, to
3    your --
4    A    Repairs, maintenance, services
5    to my car.
6    Q    To your 2006 BMW; is that
7    correct?
8    A    Yes, ma'am, that's correct.
9    Q    The entry on line 21 for
10    "Repairs and maintenance" in the amount of
11    "$2,018," what does that represent?
12    A    Okay, the equipment I have, I
13    have to maintain insurance -- in order to
14    maintain insurance on the equipment, I
15    have to maintain service contract on the
16    equipment I have, so that's the cost of
17    that.
18    Q    On line 22, the entry for
19    "Supplies" in the amount of "$2,611," what
20    does that represent?
21    A    That represents training,
22    materials, disks, other equipment.  All
23    sorts of equipment.
24    Q    I'm sorry?
25    A    Disks, hardware and stuff that I

35

138

PHILBERT GORRICK

1
2  need to execute my job, execute my
3  business.
4      Q      Were you reimbursed for any of
5  these costs by Concord Family Services?
6      A      Oh, no. This is connection with
7  my business, no.
8      Q      The entry on line 23, "Taxes and
9  licenses," amount of "$325," what does
10  that represent?
11     A      Car licensing, personal
12  licensing, et cetera.
13     Q      What personal licensing do you
14  obtain?
15     A      Well, I have to maintain a
16  certification from Microsoft, Cisco and
17  Sun.
18     Q      Line 24A, "Travel," in the
19  amount of "$598," what does that
20  represent?
21     A      Moving from place to place.
22     Q      Is this moving from place to
23  place for business reasons?
24     A      Business reasons.
25     Q      The entry on line 25 in the

139

PHILBERT GORRICK

1
2  amount of "$33,149," what does that
3  represent?
4      A      Gasoline.
5      Q      Utilities?
6      A      Gasoline.
7      Q      Gasoline for your motor vehicle?
8      A      For my motor vehicle.
9      Q      For your BMW?
10     A      Yes.
11     Q      Turning to the next page of the
12  Profit or Loss for Business form, fax page
13  ten, the entry on line 38 in the amount of
14  "$5,612," what does that represent?
15     A      Business materials and supplies.
16     Q      That's what the caption says.
17  What does it represent?
18     A      There are some things that I'm
19  not charging that are expendable, like
20  cables, drop cables, small cables, et
21  cetera.
22     Q      And you --
23     A      It's not billable.
24     Q      Turning to fax page three,
25  looking at line 29, "Self-employed health

140

PHILBERT GORRICK

1
2  insurance deduction," in the amount of
3  "$7,549," what does that represent?
4      A      My insurance.
5      Q      Do you carry health insurance?
6      A      I don't carry health insurance,
7  no. I can't afford it.
8      Q      Turning to fax page 28, to a
9  title "New York City 202 Unincorporated
10  Business Tax Return," and the entry on
11  line 15 for exemption, "Taxpayer operating
12  more than one business or short-period
13  taxpayer," in the amount of "$5,000," what
14  does that entry represent?
15     A      I don't know. I can't -- I
16  really can't tell you what it is.
17     Q      Did you operate more than one
18  business in 2006?
19     A      I -- I -- I can't -- I can't
20  say. I may have. I'm not quite sure.
21     Q      Did you operate your business
22  for less than the full year in 2006?
23     A      There was a short period of time
24  which I -- when I stopped.
25     Q      Well, what was the period of

141

PHILBERT GORRICK

1
2  time that you stopped in 2006?
3      A      My sister was very ill, so I had
4  to take care of her son, so I was not
5  working. The business was not working.
6      Q      What was that time period?
7      A      From January to about April,
8  May.
9      Q      And during that time, you did
10  not provide services to Concord Family
11  Service?
12     A      At that time my business
13  continued to provide services, but limited
14  services, since I was not directly
15  involved. Limited.
16     Q      Did you file an income tax
17  return for 2005?
18     A      I -- I don't know. I may have,
19  yes.
20     Q      Turning to fax page 11, the
21  Two-year Comparison Worksheet that is
22  attached there, is this an accurate
23  summary of your 2005 tax return?
24     A      I don't know, I can't -- I don't
25  have it in front of me, so I don't know.

36

212-267-6868

516-608-2400

142

PHILBERT GORRICK

1
2    Q    Do you have reason to believe
3  this is not an accurate summary of your --
4    A    No.
5    Q    -- tax year 2005?
6    A    No, I don't have reasons to
7  believe it's inaccurate.
8    Q    I'm sorry?
9    A    No, I don't have reason to
10  believe that it is inaccurate.
11    Q    In this comparison, it is
12  notable that the amount of the commission
13  and fees deduction increased substantially
14  in 2006 as compared to 2005; is that
15  correct?
16    A    Repeat that, please.
17    Q    If you look at the entry for
18  commission and fees --
19    A    Yes.
20    Q    -- in the tax year 2005, it is
21  "$2,892" --
22    A    Yes.
23    Q    -- and in the tax year 2006, it
24  is "$29,116."
25    A    Yes.

143

PHILBERT GORRICK

1
2    Q    How did that happen to increase
3  so much between 2005 and 2006?
4    A    Something happened. What
5  happened? Okay, these were -- I think
6  this was -- in 2006, I had to do a number
7  of examinations, one which -- two of which
8  I failed significantly in Nova
9  Scotia. Yeah, this has to do with the
10  Cisco exams and they were pretty
11  expensive. I didn't do very well. This
12  was for examination purpose, certification
13  purposes.
14    Q    You said you took and failed an
15  examination in 2006?
16    A    Yes. I did a number of
17  examinations and failed them because my
18  sister's illness and everything else, with
19  Cisco with Microsoft and with Sun.
20    Q    And you failed all of them?
21    A    Yes. It was pretty intense.
22    Q    Did you file an income tax
23  return for 2004?
24    A    I don't know, I may have. I'm
25  not quite sure.

144

PHILBERT GORRICK

1
2    Q    After you received back pay from
3  Transit in 2006, did you file an amended
4  2004 tax return?
5    A    I don't -- I don't think I did,
6  but I don't know. I may have.
7    Q    Did you ever file a tax return
8  in which you reported the back pay you
9  received from New York City Transit?
10    A    I don't -- I can't remember.
11    Q    Did you file an income tax
12  return for 2003?
13    A    I just -- I can't remember, no.
14  I may have, I may not, I don't know. I
15  may have. I don't have it in front of me,
16  so I don't know.
17    Q    From the time you left -- you
18  were suspended by Transit in October of
19  2000 to your filing this tax return in or
20  about September of 2007, did you file any
21  tax returns?
22    A    Yes, I filed tax returns, I
23  think, in 2000 itself. I think it's 2000
24  and -- I really can't -- I can't remember,
25  'cause I had to make an amendment. I lost

145

PHILBERT GORRICK

1
2  in 2003, 2004, 2000 -- and then because I
3  couldn't find my records, I was all over
4  the place, problem with the wife and
5  everything else, no, that wasn't possible.
6  I don't think I did.
7    MS. GOETCHEUS:  I would like to
8    mark for identification as Defendant's
9    Exhibit X, DMV, Department of Motor
10    Vehicle, records of your auto
11    ownership from 1998 to the present.
12    [The documents were hereby
13    marked as Defendant's Exhibit X for
14    identification, as of this date.]
15    MR. LICHTEN:  Okay, I'm going to
16    object to all questions asked about
17    this exhibit because I believe it was
18    unlawfully obtained, but the witness
19    can answer the questions. I have a
20    standing objection that basis.
21    Q    Is it correct that you have
22  owned a 2000 Cadillac?
23    A    Yes.
24    Q    What model?
25    A    2000 Cadillac.

37

146

PHILBERT GORRICK

1
2    Q    Well, what model of Cadillac?
3    There's more than one Cadillac; is there
4    not?
5    A    Oh, sorry, Escalade.
6    Q    Sorry?
7    A    Escalade.
8    Q    An Escalade?
9    A    Yes.
10    Q    Approximately when did you
11    purchase it?
12    A    1999.
13    Q    How much did it cost?
14    A    I can't remember.
15    Q    When did you dispose of it?
16    A    Traded it in.
17    Q    Okay.
18    A    In 1994. Sorry, 2004. For the
19    BMW.
20    Q    You say you "traded it in."
21    What did you trade it in on?
22    A    I traded it in on 2002 BMW 745.
23    Q    Which leads to my question of is
24    it correct that you have owned a 2002 BMW?
25    A    Yes.

147

PHILBERT GORRICK

1
2    Q    And what model?
3    A    2002, 745. .
4    Q    And is that a sedan or is that
5    a --
6    A    I'm kind of confused about the
7    "sedan."
8    Q    Is it an SUV?
9    A    It's a car, it's a big car.
10    It's a four-door car.
11    Q    SUV?
12    A    No, no, four-door car. It's a
13    regular car, but it's a big car.
14    Q    Approximately when did you
15    purchase it?
16    A    In November. November of 2004.
17    Q    And when did you dispose of it?
18    A    2005.
19    Q    Approximately when?
20    A    October, November.
21    Q    And is it correct that you
22    currently own a 2006 BMW?
23    A    Yes; I traded that car in for
24    that one.
25    Q    And what model is this car?

148

PHILBERT GORRICK

1
2    A    745.
3    Q    And approximately how much did
4    it cost?
5    A    Cost me $30,000, with the
6    previous car.
7    Q    And approximately when did you
8    purchase it?
9    A    October.
10    Q    Of 2005?
11    A    Yes.
12    Q    Since 2000, have you owned any
13    other vehicles?
14    A    Since 2000?
15    Q    Right.
16    A    Oh, yes.
17    Q    And what were they?
18    A    It was one -- the one that got
19    repossessed.
20    Q    The GMC?
21    A    GMC Suburban.
22    Q    And when did you obtain that
23    car?
24    A    Sometime in late 2000 or early
25    2001.

149

PHILBERT GORRICK

1
2    Q    And when was it repossessed?
3    A    Around the end of 2001.
4    Q    And what model year was it?
5    A    It was 1997. 1997 GMC Suburban.
6    Q    Now, turning to the last page of
7    the DMV records, there is an entry for a
8    "'98 Chevrolet green four-door sedan." I
9    believe "4DSD" means --
10    A    Yeah.
11    Q    Did you, at some time, own a '98
12    Chevrolet, green Chevrolet?
13    A    Yes; that was a leased vehicle.
14    Q    And for what period did you
15    lease that vehicle?
16    A    Just two years.
17    Q    For what two years?
18    A    From this is a 1998? From 1998
19    to 2000.
20    Q    Now, the record here reads
21    "Valid April 20, 2000, expires April 14,
22    2002." Does that refresh your
23    recollection as to the time period you had
24    that vehicle?
25    A    The last page, you say?

38

150

1        PHILBERT GORRICK
2    Q    Yes, in the middle of the page.
3    A    (Perusing.) Oh, no, this is one
4    of the -- no, this is not right. That was
5    a new vehicle. I got it in -- in 1997.
6    '97, September. Leased.
7    Q    Which vehicle are you referring
8    to?
9    A    I'm referring to "'98 Chevy
10   green four-door vehicle," yes. That was
11   in '97.
12   Q    And when did you -- do you still
13   own that vehicle?
14   A    It's a leased vehicle.
15   Q    And how long did you lease it
16   for?
17   A    Two years.
18   Q    From 1997 through 1999?
19   A    1999? Through 1999 or -- is it
20   two years.
21   Q    So this entry here is erroneous,
22   where it says --
23   A    No, it had to be three years.
24   From 1997 to the end of 2000.
25       MS. GOETCHEUS: Maybe we could

151

1        PHILBERT GORRICK
2    take a short break at this point?
3        [A short recess was taken from
4    2:17 p.m. to 2:26 p.m.]
5    Q    Looking back at Defendant's
6    Exhibit W, the income tax returns, on your
7    2006 return, are there any deductions to
8    payments for third-party service
9    providers?
10   A    Not as of yet, because, as I
11   said, I was unable to find a lot of
12   documents to complete it. So as I said, I
13   may have to re-file this. (Perusing.)
14   No, it's not here.
15   Q    Again turning to the page where
16   there is the 2005 comparison on fax page
17   28 of 33 -- not 28 of 33. That is not the
18   correct page, sorry. Its 11.
19   A    Okay.
20   Q    Fax page 11. Is there any
21   deduction shown for tax year 2005 for
22   payments to third-party service providers?
23   A    (Perusing.) No, not here.
24       MS. GOETCHEUS: I would like to
25   mark for identification as Defendant's

152

1        PHILBERT GORRICK
2    Exhibit Y an "Opinion and award, re
3    Mr. Philbert T. Gorrick," dated April
4    3, 2002, signed by Mashret Libowitz
5    (ph), date stamped 4/25/02, Bates
6    number D408 through 417.
7        [The document was hereby marked
8    as Defendant's Exhibit Y for
9    identification, as of this date.]
10   Q    Do you recognize this document
11   (handing)?
12   A    (Perusing.) Yes.
13   Q    What do you recognize it to be?
14   A    This is the award from Ms.
15   Libowitz, arbitrator.
16   Q    In the second paragraph of this
17   Opinion and Award, the arbitrator states
18   that "hearings were held in this matter,
19   the union was represented by Kenneth
20   Paige, that you were present at the
21   hearings and testified in your own
22   behalf"; is that correct?
23   A    That is true.
24   Q    Did you testify under oath?
25   A    Yes.

153

1        PHILBERT GORRICK
2    Q    Did witnesses present testimony
3    under oath on your behalf?
4    A    Yes.
5    Q    Did witnesses present testimony
6    under oath on behalf of the Transit
7    Authority?
8    A    Yes.
9    Q    Did your representatives
10   question Transit Authority witnesses?
11   A    Yes.
12   Q    Turning to the last page, on
13   page ten, it states that "Mr. Gorrick has
14   been unprepared for work since October 9,
15   2000, because he did not report to work
16   with authorized safety boots as required.
17   The recommended penalty of dismissal shall
18   be modified to a suspension to date."
19   Following this decision, what happened
20   next?
21   A    (Perusing.) I was directed to
22   report on D0415, I was directed to report
23   to Mr. Gus Rivera.
24   Q    And did you do so?
25   A    Yes.

39

154

PHILBERT GORRICK

1
2     Q     Were you restored to Transit
3  employment?
4     A     No.
5     Q     You've got to answer verbally,
6  sir.
7     A     No, no.
8     Q     Were you issued a Transit
9  employee pass?
10    A     No; it was taken from me.
11    Q     In May 2002, were you issued a
12 Transit Authority pass?
13    A     No.
14          MS. GOETCHEUS:  I would like to
15 mark for identification as Defendant's
16 Exhibit Z a set of documents, Bates
17 numbered P332 through 54, and as
18 Defendant's Exhibit AA a G46 and
19 Restricted Work Assessment dated May
20 13, 2002.  Bates number D1314-15.  I
21 would like to mark as Defendant's
22 Exhibit BB a document dated January
23 22, 2003 from Gustave Rivera to
24 Patrick McGreal, Bates stamped P467
25 through 503, and as Defendant's

155

PHILBERT GORRICK

1
2  Exhibit CC, the same document dated
3  January 22, 2003 from Gustave Rivera
4  to Patrick McGreal, Bates numbered
5  D1323 through 1352.
6          [The documents were hereby
7  marked as Defendant's Exhibits Z
8  through CC for identification, as of
9  this date.]
10    Q     Turning first to the document,
11 the January 22nd memo, January 22, 2003
12 memo, if you would review the chronology
13 stated in the first two pages, I'd
14 appreciate it.
15          MR. LICHTEN:  Are you talking
16 about either BB or CC?
17          MS. GOETCHEUS:  Either BB or CC.
18          MR. LICHTEN:  They're the same.
19          THE WITNESS:  They're the same
20 thing?
21          MR. LICHTEN:  Either one of
22 those.
23          THE WITNESS:  Okay great, thank
24 you.
25    A     (Perusing.)  Okay.

156

PHILBERT GORRICK

1
2     Q     Does this refresh your
3  recollection that you were ultimately --
4     A     Given a pass.
5     Q     -- issued a pass in May of 2002?
6     A     Yes.
7     Q     Turning to Exhibit Z and Exhibit
8  AA, do you recognize these documents?
9     A     (Perusing.)  Yes.
10    Q     And what do you recognize them
11 to be?
12    A     That these are documents with
13 regard to my visits at the Medical
14 Assessment Center.
15    Q     And is this your signature on
16 Exhibit AA, the document --
17    A     Yes.
18    Q     -- numbered 1314?
19          MR. LICHTEN:  Objection, because
20 there are a bunch of signatures.
21          MS. GOETCHEUS:  Well, where it
22 says "Employee's signature."
23          MR. LICHTEN:  There's two of
24 them.
25          MS. GOETCHEUS:  Yes.

157

PHILBERT GORRICK

1
2     Q     Okay, there are two employee
3  signatures.  Are these your signatures?
4     A     Yes.
5     Q     In April, May and June of 2002,
6  were you working for Concord Family
7  Services?
8     A     My business was engaged with
9  Concord Family Services, yes.
10    Q     At this time, in May of 2002,
11 did you notify Concord Family Services
12 that you would be unavailable to work for
13 them?
14    A     My business was engaged in
15 business with Concord Family Services.
16 There's no need to notify them.
17    Q     Is that no, you did not notify
18 Concord Family Services that you would be
19 unavailable to work for them?
20    A     Please rephrase the question.
21    Q     I asked you did you notify
22 Concord Family Services that you would be
23 unavailable to work for them in this
24 period in May of 2002 --
25    A     No.

158

PHILBERT GORRICK

1
2   Q    -- and if not, why not?
3   A    Because my business is engaged
4   with Concord Family Services. I am not
5   personally attached to Concord Family
6   Services. My business is involved with
7   Concord Family Services; not me.
8   Q    And how did you plan to provide
9   services to Concord Family Services had
10  Transit returned you to duty in or about
11  May 2002?
12  A    In the same way as I had 1999,
13  1996, 1998.
14  Q    However, from October 2000 until
15  May of 2002, you'd been providing services
16  in a different manner; is that correct?
17  A    No.
18  Q    After you were given a pass,
19  were you examined by the Occupational
20  Health Service department on May 13, 2002?
21  A    Yes.
22  Q    Did the doctor or the Medical
23  Services department refer you to a
24  vascular specialist, Dr. Svahn, at this
25  time?

159

PHILBERT GORRICK

1
2   A    Yes.
3   Q    Did the Medical Services
4   department give you a revisit date at the
5   time of your visit on May 13, 2000?
6   A    Yes.
7   Q    And what was that date?
8        MR. LICHTEN: 2000?
9        MS. GOETCHEUS: I'm sorry, 2002.
10  A    2002?
11  Q    2002, I stand corrected.
12  A    I can't remember, but it should
13  be here (indicating).
14  Q    If you look at 1314, down toward
15  the lower part of the page -- that's
16  Exhibit AA.
17  A    Yes.
18  Q    Go up, it's on the right-hand
19  side. It says "Revisit date."
20       MR. LICHTEN: (Indicating.)
21  A    (Perusing.) Okay, that would be
22  the 3rd of June.
23  Q    2002?
24  A    2002, yes.
25  Q    Is that correct?

160

PHILBERT GORRICK

1
2   A    That's correct.
3        MS. GOETCHEUS: I would like to
4   mark for identification as Defendant's
5   Exhibit DD a letter from Dr. Jennifer
6   Svahn to Gustave Rivera dated May 22,
7   2002, Bates number P378 through 79.
8        [The document was hereby marked
9   as Defendant's Exhibit DD for
10  identification, as of this date.]
11  Q    Were you examined by Dr. Svahn
12  on or about May 22, 2002?
13  A    Yes.
14  Q    Did she provide a copy of this
15  letter to you --
16  A    Yes.
17  Q    -- at the time of that
18  appointment?
19  A    No.
20  Q    When did you receive the letter?
21  A    A few -- a week later, in the
22  mail.
23  Q    Following your evaluation -- at
24  what address did you receive the letter?
25  A    Via the union.

161

PHILBERT GORRICK

1
2   Q    Following your evaluation by Dr.
3   Svahn, what did you do?
4   A    Reported back to Dr. Spiegel.
5   Q    Did you return to the medical
6   department on the date of June 1, 2002?
7   A    I think I did, yes.
8   Q    Do you --
9   A    I can't remember.
10       MS. GOETCHEUS: I would like to
11  mark for identification as Defendant's
12  Exhibit EE a letter dated July 2, 2002
13  from D. Smith to Gustave Rivera, Bates
14  number P417.
15       [The document was hereby marked
16  as Defendant's Exhibit EE for
17  identification, as of this date.]
18  Q    Turning back to Defendant's
19  Exhibit BB, looking at the bottom of --
20  well, it's labeled page three but it's the
21  second page of the exhibit, it's a fax
22  page number at the top, and continuing on
23  to the next page --
24  A    (Perusing.) Yes.
25  Q    -- does this refresh your

41

162

1         PHILBERT GORRICK
2    recollection as to whether you appeared
3    for the scheduled revisit date of June 3,
4    2002?
5         A    You received the defense of what
6    led up to me not returning there on June
7    the 3rd.
8         Q    I'm sorry, what are you
9    referring to? I'm not sure where you are.
10        A    Okay, if you read the
11   information prior to the issuance of the
12   pass, I was sent to 1250 Broadway to
13   collect a pass.
14        Q    But that was in early May. That
15   was prior to your going to the MAC on May
16   13, 2000 --
17        A    All the schedules that were here
18   (indicating), if I was scheduled to go, I
19   went to, so this is not accurate.
20        Q    It is your testimony that on
21   June 12, 2002, you went to the MAC for a
22   revisit?
23        A    No, no, I am saying there had to
24   be some reason why I didn't report if I
25   was scheduled for June 3, 2002.

164

1         PHILBERT GORRICK
2    letter (handing)?
3         A    (Perusing.) Yes.
4         Q    Did you assist in its
5    preparation?
6         A    Yes.
7         Q    What does it mean where it
8    states "Please be further advised that Mr.
9    Gorrick is prepared to work in the
10   capacity he was hired to work on July 29,
11   1991. His physical health condition is
12   the same as it was then"?
13        A    Nothing has -- it meant that
14   nothing has changed for me. Physically,
15   nothing has changed for me. I am the same
16   person I was then, in 1991, as I am now.
17   And anything between then, I was always
18   the same person. Nothing has changed for
19   me physically that would impede me from
20   doing my job.
21        Q    But it does not mean that you
22   could wear the required safety boots?
23        A    It doesn't mean that I was
24   wearing the required safety boots when I
25   got hired.

163

1         PHILBERT GORRICK
2         Q    Well, we've looked at the G46
3    and you saw that the revisit date was June
4    3rd, correct?
5         A    Where is the G46?
6         Q    It was AA, D1314.
7         A    (Perusing.) No, I didn't show
8    up. I think I -- I'm not quite sure why I
9    didn't show up, but I didn't show up at
10   the June 3rd one.
11        Q    Right. And you next showed up
12   on July 1st; that is correct?
13        A    I showed up on July 1st, yes.
14        Q    And on July 1st, as it states on
15   page three of five on P469 in Exhibit BB,
16   is it correct that you and "Mr. Donovan
17   Smith came to Gus Rivera's office for a
18   G46 to comply with the MAC revisit
19   appointment after leaving labor relations
20   relating to his discipline for this
21   absence without leave"?
22        A    Yes.
23        Q    And turning to Exhibit EE, which
24   is dated 7/2/2002, from D. Smith to
25   Mr. Gustave Rivera, do you recognize this

165

1         PHILBERT GORRICK
2         MR. LICHTEN: Just listen to the
3    question.
4         Q    No, no, this letter states
5    nothing with relation to your capacity to
6    wear the required safety boots; is that
7    correct?
8         A    No, ma'am, this letter doesn't
9    say anything.
10        Q    Turning to Defendant's Exhibit
11   BB, which was marked earlier, do you
12   recognize this document?
13        A    Yes.
14        Q    What do you recognize it to be?
15        A    This is from Gus Rivera to Pat
16   McGreal.
17        Q    When did you receive it?
18        A    Sometime during the course of an
19   arbitration hearing.
20        Q    With respect to handwritten
21   notes on pages Bates stamped 469 and 70,
22   the arrows, whose notes are these?
23        A    I don't know.
24        Q    They're not yours?
25        A    Oh, no.

42

212-267-6868                                                    516-608-2400

166

PHILBERT GORRICK

1        PHILBERT GORRICK
2  Q   In the entire period March 2000
3  to January 2003, did you ever obtain
4  safety shoes complying with the Transit
5  requirements that you were willing and
6  able to wear?
7  A   Can you repeat that?
8  Q   In the entire period from March
9  2000 to January 2003, did you ever obtain
10  safety shoes compliant with the Transit
11  requirements that you were willing and
12  able to wear?
13  A   I obtained shoes -- I obtained
14  shoes that's in compliance with the
15  Transit Authority requirements, but I
16  could not medically wear them.
17  Q   When did you obtain shoes that
18  were compliant with Transit requirements?
19  A   At some point during
20  arbitrator's hearing, I was required to
21  see what defects were by trying an
22  alternative shoe, a composite shoe, as
23  Mr. Rivera was referring to, and the
24  doctor says I shouldn't wear those either.
25  Q   When was that?

167

PHILBERT GORRICK

1        PHILBERT GORRICK
2  A   Sometime in 2003.
3  Q   Are you sure it was in 2003?
4  A   May have. I don't -- it's a lot
5  of things happened. I'm not sure.
6  Q   Was it in connection with a
7  revisit to Dr. Svahn that you obtained
8  those shoes?
9  A   Yes.
10      MS. GOETCHEUS: I would like to
11  mark for identification as Defendant's
12  Exhibit FF a letter from Dr. Jennifer
13  Svahn to Kenneth Paige, undated but
14  with a June 16, 2004 fax line, that is
15  Bates numbered D2359.
16      [The document was hereby marked
17  as Defendant's Exhibit FF for
18  identification, as of this date.]
19  Q   Did you visit Dr. Svahn in or
20  about June of 2004?
21  A   Yes.
22  Q   What led you to visit Dr. Svahn
23  in or about June 2004?
24  A   It was based on a letter, an
25  arbitrary letter, that was only presented

168

PHILBERT GORRICK

1        PHILBERT GORRICK
2  to me at an arbitrator hearing, saying
3  that Dr. Svahn reneged on her first
4  opinion as saying that I was able to wear
5  the shoes providing the shoes fell below
6  my ankles or well above my knee or -- just
7  below my knee or right above my ankle,
8  something to that effect, something that
9  was done without my permission or consent
10  by Dr. Mackenzie (ph) or the chief doctor,
11  medical doctor, in the MAC Center. So
12  that discovery came.
13      I then went, got the shoes that
14  she suggested without looking at me that
15  could wear, purchased those shoes and took
16  it to her office. And this is why, I
17  guess, that (indicating) was generated.
18  Q   Did the Transit Authority direct
19  you to visit Dr. Svahn?
20  A   The first time, and an opinion
21  was given that said I couldn't wear the
22  shoes. And the second opinion was
23  solicited from her and didn't involve me
24  in that process.
25  Q   I'm asking you in about June

169

PHILBERT GORRICK

1        PHILBERT GORRICK
2  2004, did the Transit Authority direct you
3  to see Dr. Svahn?
4  A   On June 2004?
5  Q   Yes.
6  A   I wouldn't know if I was
7  directed by the Transit Authority. But
8  when the discussion of alternative
9  composite shoe came up, it was suggested
10  by both party members, the arbitrator, the
11  TA lawyer, the union representative, my
12  lawyer and the Transit Authority lawyer,
13  prosecutor in the case, that I should go
14  back and see the doctor and show her the
15  shoes that we're talking about that she
16  was recommending.
17  Q   Mr. Paige was the union lawyer;
18  is that correct?
19  A   Mr. Paige was the union lawyer,
20  yes.
21  Q   Is there any indication that it
22  was sent to the Transit Authority?
23  A   No. Not here (indicating), no.
24  Q   Did you provide a copy of this
25  letter to the Transit Authority?



170

1           PHILBERT GORRICK
2    A    Yes.
3    Q    When?
4    A    I think at the very next
5  hearing, we provided it right there and
6  then to them.
7          MS. GOETCHEUS:  You've made
8  reference to an additional letter by
9  Dr. Svahn.
10         I would like to mark for
11  identification two documents as
12  Defendant's Exhibit GG.  One is a
13  letter Bates stamped 369, dated
14  November 4, 2002, from Dr. Svahn to
15  Dr. Alexander, and the second is a
16  letter dated 12/9/2002, Bates stamped
17  371, from Donovan Smith to Gustave
18  Rivera.
19         [The document was hereby marked
20         as Defendant's Exhibit GG for
21         identification, as of this date.]
22    Q    Turning first to the document
23  Bates number 369, Dr. Svahn's letter dated
24  November 4, 2002, is this the letter
25  you're referring to, that you have

171

1           PHILBERT GORRICK
2  referred to in your testimony?
3    A    (Perusing.)  Yes.
4    Q    And looking at the letter dated
5  December 9, 2002 from Donovan Smith to
6  Gustave Rivera, have you seen this letter
7  before?
8    A    (Perusing.)  Yes.  I've seen it
9  now, yes.
10    Q    And what do you recognize it to
11  be?
12    A    That we were questioning the
13  process of how this was obtained
14  (indicating).
15    Q    I'm sorry?
16    A    Mr. Donovan Smith was
17  questioning the motive of how this second
18  doctor's letter (indicating) was obtained.
19    Q    Well, I believe it says
20  "Therefore, after receiving a copy of the
21  medical opinion clarification received by
22  Transit Occupational Health Services, Mr.
23  Gorrick will review that documentation
24  with his personal doctor."
25    A    Yes.

172

1           PHILBERT GORRICK
2    Q    Who did you review it with?
3    A    Dr. Svahn.
4    Q    Was Dr. Svahn your personal
5  letter?
6    A    She gave me this letter, this
7  documentation (indicating).
8    Q    That letter was signed in 2004;
9  is that correct?
10    A    This letter is -- yes, it's
11  2004.  I went back to Dr. Svahn with
12  this --
13    Q    In 2004; is that correct?
14    A    In 2004, yes.
15    Q    That was more than a year
16  and-a-half after the date of this letter;
17  is that not correct?
18    A    Yes.
19    Q    In fact, in 2002, Dr. Svahn was
20  the consultant to the Transit Authority;
21  is that not right?
22    A    Consult -- no, she was
23  independent consultant.
24    Q    What leads you to believe that?
25    A    Arbitrator's opinion.

173

1           PHILBERT GORRICK
2    Q    I'm sorry?
3    A    The arbitrator's opinion, the
4  first arbitrator's opinion.  The opinion
5  of the first arbitrator's award.
6    Q    Was Dr. Svahn retained jointly
7  by the Transit Authority and the union in
8  2002?
9    A    I don't understand that.
10    Q    In 2002, were you referred to
11  Dr. Svahn by occupational health services?
12    A    I was -- the mechanism for
13  referring me to Dr. Svahn, I don't -- I
14  have no control over, but I understand
15  from the arbitrator that the opinion of
16  the doctor is independent of Transit
17  Authority and my doctor's -- my private
18  doctor's medical opinion.  So I would
19  assume that that cost would be shared
20  between the union and the Transit
21  Authority.  I can't safely say who was
22  ultimately responsible.  I'm saying that
23  my impression was that was an independent
24  vascular specialist.
25    Q    And then you testified when you

44

174

1       PHILBERT GORRICK
2 saw her in 2004, you saw Dr. Svahn as your
3 personal physician?
4     A    Yes, because after she treated
5 me I decided to see her as a personal
6 physician.  She offered to help me.
7     Q    In 2004?
8     A    2004, yes.
9     Q    You viewed her as your personal
10 physician at that time?
11    A    Yes.  I said she's treated me,
12 she could help me.
13    Q    Did you pay the cost of the
14 visit in 2004?
15    A    In 2004?  Yes, I paid part of
16 the cost.
17    Q    Personally?
18    A    Personally, yes.
19    Q    Who paid the remainder of the
20 cost?
21    A    I don't know.
22        MS. GOETCHEUS:  I would like to
23    mark for identification as Defendant's
24    Exhibit HH two copies of a document
25    entitled "Step Two Abandonment

175

1       PHILBERT GORRICK
2 Hearing," erroneously dated -- I
3 believe erroneously dated May 9, 2002,
4 signed by Seth Blough (ph), Bates
5 stamped P462 through 65, the second
6 copy of which is stamped "Received May
7 9, 2003, TWU grievance office."
8        [The document was hereby marked
9    as Defendant's Exhibit HH for
10    identification, as of this date.]
11    Q    Do you recognize these documents
12 (handing)?
13    A    (Perusing.)  Yes.
14    Q    What do you recognize them to
15 be?
16    A    That I failed to make a -- show
17 up to a step one hearing, an abandonment
18 hearing.
19    Q    It states that -- in the middle
20 of the entry called "Management position,"
21 it states "Grievant had previously
22 requested that all information be sent to
23 him at the TWU Local 100 union hall
24 address."  Is it correct that you had
25 requested that all mailings to you be sent

176

1       PHILBERT GORRICK
2 to the union hall address?
3     A    Yes.
4     Q    Why had you done so?
5     A    Since I would guarantee delivery
6 of my mail, because I was fluid, I wasn't
7 living in any fixed space on the board.  I
8 couldn't give them an address I would be
9 at at any time, so I thought the union
10 would be the best place.  I would be
11 notified when notices are there for me.
12        MS. GOETCHEUS:  I would like to
13    mark for identification as Defendant's
14    Exhibit II an arbitration decision
15    dated September 29, 2003, Bates
16    stamped 2964 through 72.  Actually,
17    I'll correct the date.  Apparently
18    it's September 28th, not September
19    29th.
20        [The document was hereby marked
21    as Defendant's Exhibit II for
22    identification, as of this date.]
23    Q    Do you recognize this document
24 (handing)?
25    A    (Perusing.)  Yes, I do.

177

1       PHILBERT GORRICK
2     Q    What do you recognize it to be?
3     A    This is an award for the second
4 arbitration hearing on the abandonment
5 case.
6     Q    Is it the second arbitration on
7 the abandonment case?
8     A    No, no, second -- okay, this is
9 second of three arbitration hearings.
10 This is the one on the abandonment case.
11    Q    Right.  And the abandonment case
12 was based on -- the basic disciplinary
13 action was the February 2003 discipline
14 relating to the shoes; is that correct?
15    A    Yes.
16    Q    Did you testify at this hearing?
17    A    Oh, yes.
18    Q    And you testified under oath?
19    A    Yes.
20    Q    On page two the decision states
21 "Gorrick claims that in March and February
22 2003, he was homeless."
23    A    Yes.
24    Q    "He asserts that he was living
25 in no fixed place.  He states that he

178

1          PHILBERT GORRICK
2  lived in his car and friends' homes and
3  other transient situations." Is this
4  true?
5      A    Yes, ma'am.
6      Q    And did you so testify?
7      A    Yes, ma'am.
8      Q    And how did you happen to be
9  homeless in March and February 2003?
10     A    I had a dispute with my wife and
11  I was removed from my home.
12     Q    Were you providing services to
13  Concord Family Services at this time?
14     A    My business was, yes.
15     Q    Were you being paid at the rate
16  of seventy dollars per hour for the
17  services you were providing to Concord
18  Family Services at this time?
19     A    My business was.
20     Q    Did you receive more than
21  $100,000 in payments from Concord Family
22  Services in 2003?
23     A    On behalf of my business, yes.
24     Q    Had you received more than
25  $100,000 in payments from Concord Family

180

1          PHILBERT GORRICK
2      MS. GOETCHEUS:    I would like to
3  mark for identification as Defendant's
4  Exhibit JJ an arbitration decision
5  dated July 19, 2006, Bates stamped
6  D2190 through 2201.
7      [The document was hereby marked
8  as Defendant's Exhibit JJ for
9  identification, as of this date.]
10     Q    Do you recognize this document
11  (handing)?
12     A    (Perusing.) Yes.
13     Q    What do you recognize it to be?
14     A    This is an award, a third award
15  from Ms. Libowitz, in regards to the
16  shoes.
17     Q    It's not the third award from
18  Ms. Libowitz.  She was not the arbitrator
19  in the previous arbitrations, was she?
20     A    Oh, I'm sorry.
21     Q    If you look at previous
22  arbitration --
23     A    Previous, I'm sorry.
24     Q    -- she was the arbitrator in the
25  first arbitration and in this third

179

1          PHILBERT GORRICK
2  Services in 2002?
3      A    On behalf of my business, yes.
4      Q    The effect of this decision was
5  to reinstate your appeal of your discharge
6  following your reinstatement in your 2003
7  discharge following your reinstatement in
8  2002; is that correct?
9      A    I don't understand that.
10     Q    The effect of this decision was
11  to reinstate your appeal of the
12  disciplinary action, the disciplinary
13  discharge -- of your disciplinary
14  discharge in 2003 that followed your
15  reinstatement in 2002; is that correct?
16     A    I don't quite get it.  It sounds
17  confusing to me.
18     Q    Let me take out a clause and go
19  back.
20     A    All right.
21     Q    The effect of this decision was
22  to reinstate your appeal of your 2003
23  discharge; is that correct?
24     A    Yes.
25     Q    Okay.

181

1          PHILBERT GORRICK
2  arbitration; is that correct?
3      A    Yes.
4      Q    Following this award, did there
5  come a time when you reported to Transit
6  for duty?
7      A    Yes.
8      Q    Where did you report?
9      A    1114 Atlantic Avenue.
10     Q    And what happened there?
11     A    No work available.
12     Q    And what happened then?
13     A    Superintendent told me there was
14  no work available.
15     Q    Were you given a G46?
16     A    Not at 1114 Atlantic Avenue.
17     Q    Were you referred to get a G46?
18     A    Yes.
19     Q    From 1114 -- isn't that the
20  right numbers?
21     A    1114, yes.
22     Q    Were you referred somewhere to
23  get a G46?
24     A    Yes; I went to 2 Parkway.
25     Q    That same day?

46

212-267-6868                                                     516-608-2400

182

PHILBERT GORRICK

1
2    A    Yes.
3    Q    And were you given a G46?
4    A    Yes.
5    Q    Looking at Exhibit 1, the EEOC
6    charge --
7         MR. LICHTEN: Exhibit A?
8         MS. GOETCHEUS: A. In my mind
9    it's numbered, but --
10    Q    Okay. Is this visit to 1114
11    Atlantic Avenue what you're referring to
12    as occurring on, I believe, August 8th,
13    August 9th?
14         MR. LICHTEN: 8th. August 8th.
15    Q    Is that the event that you're
16    referring to in your EEOC charge?
17    A    Yes.
18    Q    That is what you're referring to
19    is "The Authority refused to instate me
20    under any circumstances"?
21    A    Yes.
22    Q    And, in fact, you had filed this
23    charge prior to your going to the medical
24    department; is that correct?
25    A    I can't -- I can't remember

183

PHILBERT GORRICK

1
2    that.
3    Q    Well, it's filed on the 9th of
4    August. Did you go to the medical
5    department immediately after going to 1114
6    Atlantic Avenue?
7    A    This is not -- let me clarify
8    something. At some point prior to the 8th
9    of August, a couple days before, I was
10    asked -- I went to the MAC. A Dr. Ganser
11    gave me a letter addressed to Dr. Svahn,
12    asking that I provide a detailed -- she
13    provide a detailed prognosis of my medical
14    condition.
15    Q    I don't believe you got the
16    chronology right. Let's get some
17    documents.
18    A    Of course. It's kind of
19    confusing, but --
20         MR. LICHTEN: All right.
21    Q    We'll get it straight on the
22    chronology.
23         MS. GOETCHEUS: I would like to
24    mark for identification as Defendant's
25    Exhibit KK a Transit Form G46 dated

184

PHILBERT GORRICK

1
2    8/15/2006, Bates stamped D298.
3         [The document was hereby marked
4    as Defendant's Exhibit KK for
5    identification, as of this date.]
6    Q    Do you recognize this document
7    (handing)?
8    A    (Perusing.) Yes.
9    Q    And what do you recognize it to
10    be?
11    A    This is a letter from Pete
12    Ingoglia to Dr. Ganser to be seeing Dr.
13    Ganser at the MAC.
14    Q    On what date?
15    A    This is the 15th. August 15th.
16    Q    And does that refresh your
17    recollection --
18    A    Yes, yes.
19    Q    -- that you had filed your
20    charge with the EEOC before you had gone
21    to the medical department?
22    A    Yes.
23         MS. GOETCHEUS: I would like to
24    mark for identification as Defendant's
25    Exhibit LL a Restricted Work

185

PHILBERT GORRICK

1
2    Assessment form dated 8/15/2006, Bates
3    stamped D302, with an attached letter,
4    Bates D308, dated 8/15/06.
5         [The documents were hereby
6    marked as Defendant's Exhibit LL for
7    identification, as of this date.]
8    Q    Do you recognize this document?
9    A    Yes.
10    Q    What do you recognize it to be?
11    A    This is Dr. Ganser's letter
12    addressed to my doctor requesting to
13    obtain my medical condition.
14    Q    Did Dr. Ganser give you any
15    instructions?
16    A    No.
17    Q    Did he ask you to obtain
18    information from any specific physician?
19    A    No.
20    Q    Had you taken any medical
21    documentation, any recent medical
22    documentation, to this exam with Dr.
23    Ganser on August 15, 2006?
24    A    The most recent I had, yes, I
25    gave him.

47

186

```
1        PHILBERT GORRICK
2    Q    On August 15, 2006?
3    A    I'm missing -- I'm missing the
4 dates. You're asking me on my return to
5 Dr. Ganser or you're talking prior to
6 going to Dr. Ganser?
7    Q    No, I'm talking on 8/15, on this
8 G46.
9    A    Yes, I had given Dr. Ganser all
10 the medical reports I had regarding my
11 legs, and that would be the reports I got
12 from Dr. Svahn and the MAC doctors.
13   Q    There was nothing more recent
14 than the 2004 report from Dr. Svahn?
15   A    No.
16   Q    You didn't provide anything more
17 recent than the Dr. Svahn 2004 letter?
18   A    No.
19   Q    Did you provide Dr. Svahn's 2004
20 letter to Dr. Ganser?
21   A    Oh, yes, he had that. And just
22 for the record, the medical opinion of Dr.
23 Svahn at the arbitrator's hearing.
24   Q    What do you mean by "the medical
25 opinion of Dr. Svahn at the arbitrator's
```

187

```
1        PHILBERT GORRICK
2 hearing"?
3    A    Dr. Svahn testified at the
4 arbitrator's hearing.
5    Q    How did you provide that
6 testimony?
7    A    That was written into the award.
8    Q    So you provided a copy of the
9 award?
10   A    Yes, which he already had.
11       MS. GOETCHEUS: I would like to
12 mark for identification as Defendant's
13 Exhibit MM a Transit Form G46 dated
14 August 16, 2006, Bates stamped 294. I
15 would also like to mark for
16 identification as Defendant's Exhibit
17 NN a memo from Steven Perez to General
18 Superintendent Santarpia dated August
19 16, 2006, Bates stamped 1279.
20       [The document were hereby marked
21 as Defendant's Exhibits MM and NN for
22 identification, as of this date.]
23   Q    Turning first to Defendant's
24 Exhibit NN, do you recognize this document
25 (handing)?
```

188

```
1        PHILBERT GORRICK
2    A    (Perusing.) Yes.
3    Q    What do you recognize it to be?
4    A    It's a notice telling me that
5 there's no work available.
6    Q    And is this your signature --
7    A    Yes.
8    Q    -- on the employee
9 acknowledgement?
10   A    Yes.
11   Q    And the reexamination, there's
12 an entry for a reexamination of
13 "9/19/2006." What did you recognize that
14 to be? Do you recognize what that is?
15   A    That I need to go -- return to
16 the MAC.
17   Q    Prior to the reexamination, did
18 you visit Dr. Svahn? Prior to this
19 9/19/2006 revisit date, did you visit Dr.
20 Svahn?
21   A    Oh, no, oh, no. I visited Dr.
22 Svahn -- the last visit to Dr. Svahn is
23 when I was instructed by Dr. Ganser.
24   Q    On 8/16?
25   A    Yes.
```

189

```
1        PHILBERT GORRICK
2    Q    And prior to returning to the
3 MAC on 9/19/2006, did you visit Dr. Svahn?
4    A    Can't remember.
5        MS. GOETCHEUS: I would like to
6 mark for identification as Defendant's
7 Exhibit OO a letter from Dr. Svahn to
8 Dr. Ganser dated September 5, 2006,
9 Bates stamped P388 and 389.
10       [The document was hereby marked
11 as Defendant's Exhibit OO for
12 identification, as of this date.]
13   Q    Do you recognize this document
14 (handing)?
15   A    (Perusing.) Yes.
16   Q    What do you recognize it to be?
17   A    A letter from Dr. Svahn to Dr.
18 Ganser.
19   Q    And did you visit Dr. Svahn on
20 or about September 5, 2006?
21   A    Yes.
22   Q    Did Dr. Svahn give you a copy of
23 this letter?
24   A    I got one subsequent, yes.
25   Q    She mailed you a copy of this
```

48

190

PHILBERT GORRICK

1
2   letter? You say you got one subsequently?
3       A    Yes.
4       Q    How did you get one
5   subsequently?
6       A    I may have revisited her office
7   or she had mailed -- I think she had me
8   visit her office.
9       Q    Turning back to Exhibit MM, the
10  G46 dated 6/15/06, do you recognize this
11  document?
12      A    Yes.
13      Q    What do you recognize it to be?
14      A    Its a G46 that I need to take to
15  the MAC.
16      Q    And did you, in fact, take it to
17  the MAC on 9/19/2006?
18      A    Yes.
19      Q    And what was the result of that
20  examination?
21      A    It's based on this MAC
22  (indicating), the decision that they would
23  notify me with regard to my
24  reclassification.
25      Q    You were found to be "restricted

191

PHILBERT GORRICK

1
2   work, permanent"?
3       A    Permanent, yes.
4       Q    For six months, and at that
5   point you were eligible for
6   reclassification; is that correct?  Is
7   that what your testimony is?
8       A    No.
9       Q    What was your testimony?
10      A    My testimony is that it was
11  restricted permanently.
12          MS. GOETCHEUS:  Off the record.
13          [Discussion held off the record
14      during which time the requested
15      portion of the record was read.]
16      Q    Did Dr. Ganser discuss
17  reclassification with you at this
18  examination on September 19, 2006?
19      A    No.  I was pretty upset and he
20  told me he would not discuss it with me, I
21  need to discuss it with the department
22  people at the personnel department.
23      Q    I'm sorry, he said he had to
24  discuss it?
25      A    No, no, he said I would be

192

PHILBERT GORRICK

1
2   informed by people in the personnel
3   department, labor relations.
4           MS. GOETCHEUS:  I would like to
5       mark for identification as Defendant's
6       Exhibit PP a memo from Steven Perez to
7       General Superintendent Santarpia dated
8       9/19/2006, Bates stamped D1276.
9           [The document was hereby marked
10      as Defendant's Exhibit PP for
11      identification, as of this date.]
12      Q    Do you recognize this document
13  (handing)?
14      A    (Perusing.)  Yes.
15      Q    What do you recognize it to be?
16      A    A restricted duty, no work
17  available, from Mr. Santarpia.
18      Q    And is this your signature?
19      A    Yes.
20      Q    And what was the basis of your
21  protest?  Did you write the "under
22  protest" there?
23      A    Yes; that I was not sick and I
24  needed my job.  I wasn't sick.
25      Q    Subsequent to your receiving the

193

PHILBERT GORRICK

1
2   "restricted duty, no work available," did
3   you receive notice to appear for an
4   examination for reclassification?
5       A    I -- I received notice.
6       Q    And approximately when was that?
7       A    I can't remember the date.
8       Q    Turning back to Exhibit A, on
9   Exhibit A, the EEOC charge, you gave an
10  address; is that correct?
11      A    Yes.
12      Q    On Highland Avenue; is that
13  correct?
14      A    Yes.
15      Q    That is, in fact, your
16  residence; is that correct?
17      A    This is where I'm living now,
18  yes.
19      Q    And was it where you were living
20  in August of 2006 when you provided this
21  to the EEOC?
22      A    Yes.
23          MS. GOETCHEUS:  I would like to
24      mark for identification as Defendant's
25      Exhibit QQ an e-mail from Michelle

49

194

```
1           PHILBERT GORRICK
2    Bryant (ph) to Yvette Vargas (ph) "re
3    Philbert Gorrick," Bates stamped
4    D2343, dated October 26, 2006.
5         [The document was hereby marked
6    as Defendant's Exhibit QQ for
7    identification, as of this date.]
8    Q     Do you recall having the
9    conversation with Ms. Bryant that she
10   writes about in this e-mail?
11   A     Yes.
12   Q     And at least by this date you
13   were aware that a reclassification exam
14   had been set for you by October 26, 2006?
15   A     Yes.
16   Q     Did you maintain Post Office box
17   160026 in Brooklyn, New York, zip code
18   11216, in August through December of 2006?
19   A     Yes.
20   Q     When did you first obtain this
21   Post Office box?
22   A     Shortly after the fiasco with
23   the union and getting my letters to me
24   with the dismissal stuff, I thought it
25   best to get help in getting the mailbox.
```

196

```
1           PHILBERT GORRICK
2    A     November 15th, yes, I was there.
3    Q     It was held on November 15,
4    2006?
5    A     Yes.
6    Q     It had not been rescheduled?
7    A     No.
8    Q     To your recollection, it was
9    held on November 15th?
10   A     Yes, yes.
11   Q     What was the outcome of that
12   reclassification examination?
13   A     They give me a set of forms to
14   fill out, I then asked -- and the
15   personnel department asked me to sign a
16   consent giving the Transit Authority
17   permission to reclassify me.
18   Q     I'm asking you about the medical
19   exam in November of 2006. Were you found
20   eligible for reclassification during that
21   medical exam?
22   A     Nothing different than what I
23   did from the years before. Nothing to do
24   with reclassification. I just went there
25   to do a medical examination.
```

195

```
1           PHILBERT GORRICK
2    So I got the mailbox and so they would
3    send me letters not only at the union, but
4    to this box.
5    Q     And you maintained it
6    continuously from the time you obtained it
7    through at least the end of December 2006?
8    A     Today. To today, yes.
9    Q     Until present?
10   A     Yes.
11        MS. GOETCHEUS: I would like to
12   mark for identification as Defendant's
13   Exhibit RR a letter addressed to you
14   from Steven E. Perez dated November 1,
15   2006, Bates stamped D295.
16        [The document was hereby marked
17   as Defendant's Exhibit RR for
18   identification, as of this date.]
19   Q     Did you receive this letter
20   (handing)?
21   A     (Perusing.) Yes, I did.
22   Q     Did you appear for that
23   examination in or about November -- that
24   reclassification examination in or about
25   November or December of 2006?
```

197

```
1           PHILBERT GORRICK
2    Reclassification is different.
3         MS. GOETCHEUS: I would like to
4    mark for identification as Defendant's
5    Exhibit SS an RW/Reclassification
6    Title Transfer form dated December 8,
7    2006, Bates stamped 1154, and a letter
8    addressed to Mr. Gorrick from Steven
9    E. Perez dated January 16, 2007, Bates
10   stamped 1155 through 56.
11        [The documents were hereby
12   marked as Defendant's Exhibit SS for
13   identification, as of this date.]
14   Q     Do you recognize these documents
15   (handing)?
16   A     (Perusing.) Yes.
17   Q     What do you recognize them to
18   be?
19   A     A letter asking me to accept a
20   reclassification to public property
21   protection agent.
22   Q     And the first page is the
23   medical department's having found you
24   medically qualified for the title of
25   Transit property protection agent and for
```

50

198

PHILBERT GORRICK

1  station agent; is that correct?  The one
2  numbered D1154?
3  A    I see numbers in the form, yes.
4  "May be considered for" -- yes.
5  Q    And the limitations found by the
6  medical department are "Areas requiring
7  safety shoes, work on track, roadbed, any
8  New York City Transit vehicle"; is that
9  correct?
10  A    That is correct.
11  Q    Did there come a time when you
12  were processed for appointment to Transit
13  property protection agent?
14  A    I don't understand the question.
15      MS. GOETCHEUS:  I would like to
16      mark for identification as Defendant's
17      Exhibit TT documents produced by
18      plaintiff in discovery, Bates stamped
19      P507 through 510, consisting of a job
20      description for the title of Transit
21      property protection agent and a
22      partially completed form titled "New
23      York City Department of Citywide
24      Administrative Services, Division of
25

199

PHILBERT GORRICK

1  Citywide Personnel Services, Request
2  for Transfer, Redeployment and/or
3  Change of Title.
4      [The documents were hereby
5      marked as Defendant's Exhibit TT for
6      identification, as of this date.]
7  Q    Do you recognize these documents
8  (handing)?
9  A    (Perusing.)  Yes.
10  Q    How did you come to have these
11  documents?
12  A    I was asked to report by Mr. --
13  the previous gentleman, Perez, to report
14  to the Department of Personnel for
15  reclassification paperwork processing, and
16  I agreed and went ahead to do that, and
17  I'm getting they're asking me to give
18  permission to change my title.
19  Q    Who completed the handwritten
20  portion of the form on P509?
21  A    Not me.
22  Q    Were you at One Center Street or
23  were you at Transit personnel offices?
24  A    I don't know, it's so long, but
25

200

PHILBERT GORRICK

1  it was supposed to be somewhere -- I was
2  on Livingston.
3  Q    180 Livingston?
4  A    At the MAC -- yeah, 180
5  Livingston.
6  Q    And so these forms were given to
7  you there; is that correct?
8  A    Yes.
9  Q    And what happened then?
10  A    I took the forms, read them,
11  didn't quite understand what they were.  I
12  told them that I will have to take these
13  forms and get advisement on them.
14  Q    And what happened then?
15  A    I told them that I'm prepared to
16  take the job providing I don't have to
17  sign a consent that I have to transfer
18  title, I don't want to consent to that,
19  they can change my title, they can do that
20  at any time.
21  Q    During the period from your
22  suspension in October 2000 to the present,
23  have you been covered by a health benefit
24  plan at any time?
25

201

PHILBERT GORRICK

1  A    Out of my own pocket, no, I
2  don't recall any long-term benefit plans.
3  Q    Were you covered under a plan
4  during the period October 2000 to the
5  present?
6  A    No, I'm not aware of it.  No
7  communication, no correspondence, nothing
8  to the effect, so I'm not aware of any
9  coverage.
10  Q    Was your wife employed from any
11  time from the period September 2000 to the
12  present?
13  A    I don't know, my wife and I
14  separated.  We're living separate lives.
15  Q    In October of 2000, were you
16  separated from your wife?
17  A    In October of 2000?
18  Q    Yes.
19  A    No.
20  Q    Was your wife employed in
21  October of 2000?
22  A    I think she were.  I don't know,
23  I'm not quite -- I think she's
24  under-employed, not quite employed.
25

51

202

1          PHILBERT GORRICK
2    Q    Was your wife employed by the
3  New York City Police Department in October
4  of 2000?
5    A    I don't know, I can't remember.
6        MS. GOETCHEUS:  I would like to
7    mark for identification a document
8    titled "Pre-employment Application
9    Background Verification Questionnaire
10    for New York City Transit" completed
11    by Mignon Gorrick as Exhibit UU.
12        [The document was hereby marked
13    as Defendant's Exhibit UU for
14    identification, as of this date.]
15    Q    Turning to the second yellow tab
16  that I put in there, does this refresh
17  your recollection that your wife -- is
18  Mignon Gorrick your wife?
19    A    Yes.
20    Q    And is 166-40 49th Avenue,
21  apartment 4E, Jamaica, New York your
22  former marital apartment?
23    A    Yes.
24    Q    Turning to the page I have
25  tabbed, does this refresh your

203

1          PHILBERT GORRICK
2  recollection that your wife was employed
3  by the New York City Police Department
4  from November 1, 1999?
5    A    I don't know.  I don't know.
6    Q    I don't think you're on the
7  right page.  If you would turn to the page
8  that has the yellow tab on it --
9    A    Yes.
10    Q    -- it says "City of New York
11  Update Personnel Document."
12    A    Maybe, I'm not quite sure.  This
13  is my wife information; not mine.  I don't
14  know what she does.
15    Q    Were you covered under your
16  wife's health benefits at any time?
17    A    I'm not aware of it, no.
18    Q    Were you covered under COBRA
19  from Transit at any time?
20    A    What period?
21    Q    From October 2000 to the
22  present.
23    A    I don't know, Transit Authority
24  never communicated that to me.
25    Q    From COBRA, under your wife's

204

1          PHILBERT GORRICK
2  benefit plan?
3    A    No, I'm not aware of.
4    Q    Were you aware that your wife
5  accepted employment as a bus operator for
6  New York City Transit in July 2003?
7    A    First time, no.
8        MS. GOETCHEUS:  Let's take a
9    short break.
10        [A short recess was taken from
11    3:57 p.m. to 4:06 p.m.]
12        MS. GOETCHEUS:  Okay, I think I
13    am through, but holding the deposition
14    open because of the counterclaim,
15    which is in a pending status.
16        MR. LICHTEN:  All right.
17        [TIME NOTED:  4:07 P.M.]
18  _____
          PHILBERT GORRICK
19
20  _____
    Subscribed and sworn to
21  Before me this _____
    Day of _____,
22  2007.
23  _____
          Notary Public
24
25

205

1
2
3          I N D E X
WITNESS    EXAMINATION BY        PAGE
4
GORRICK    MS. GOETCHEUS      4
5
6          E X H I B I T S
7  DEFENDANT'S   DESCRIPTION        PAGE
8    A  Charge of Discrimination
       dated 8/3/06        12
9
    B  Complaint dated 3/26/07   18
10
    C  Bates D1593 through 1601  36
11
    D  Job descriptions, Bates
12     1152, 1150-1151      38
13    E  Bates D977 through 89    41
14    F  Job descriptions, Bates
       2976 through 78      45
15
    G  Letter from Mr. Lichten
16     dated 9/21/07, Plaintiff's
       Response to Interrogatories
17     and Request for Documents 50
18    H  MOW bulletin 98-23, MOW
       bulletin 98-21, MOW
19     bulletin 98-21A      69
20    I  Safety Equipment Checklist
       Bates D1436 dated 8/19/98  71
21
    J  Memo from Mark A. Yanche
22     dated 8/10/99, MOW bulletin
       99-11, Bates P399-402    73
23
    K  Memo dated 10/27/00 from
24     Kevin Fonseca to John
       Campbell, Bates P403    76
25

52

206

```
1
2                E X H I B I T S
3  DEFENDANTS    DESCRIPTION      PAGE
4     L  Memo from Peter Ingoglia
          to Superintendent Rodney
5         dated 3/8/00, Bates P310   79
6     M  Disciplinary Action
          Notification dated
7         3/21/00, Bates D639      80
8     N  Stipulation and Agreement
          dated 5/25/00, Bates P322  80
9
      O  Memo dated 10/26/00 from
10        Vincent Valenti to John
          Campbell, Bates P406      82
11
      P  Memo dated 10/9/00 from
12        Richard Gayle to John
          Campbell, Bates P409     85
13
      Q  Memo dated 10/27/00 from
14        J. Lee to John Campbell,
          Bates P404-P405          88
15
      R  Disciplinary Action
16        Notification dated
          10/26/06, Bates D1356    91
17
      S  Letter from Mr. Lichten
18        to Magistrate Judge Peck
          dated 10/26/07           93
19
      T  13-pg fax from John Luard  113
20
      U  Affidavit sworn to on
21        10/24/06               126
22    V  Payroll check stub
          information form dated
23        12/10/06, Bates P511     128
24    W  2006 income tax return    130
25
```

208

```
1
2                E X H I B I T S
3  DEFENDANTS    DESCRIPTION      PAGE
4     II Arbitration decision dated
          9/28/03, Bates 2964-72   176
5
      JJ Arbitration decision dated
6         7/19/06, Bates D2190-2201 180
7     KK Transit form G46 dated
          8/15/06, Bates D298      184
8
      LL Restricted Work Assessment
9         dated 8/15/06, Bates D302;
          and attached letter dated
10        8/15/06, Bates D308      185
11    MM Transit form G46 dated
          8/16/06, Bates 294       187
12
      NN Memo from Steven Perez
13        to GS Santarpia dated
          8/16/06, Bates 1279      187
14
      OO Letter from Dr. Svahn to
15        Dr. Ganser dated 9/5/06,
          Bates P388-389           189
16
      PP Memo from Steven Perez to
17        GS Santarpia dated
          9/19/06, Bates D1276     192
18
      QQ E-mail from Michelle Bryant
19        to Yvette Vargas dated
          10/26/06, Bates D2343    194
20
      RR Letter from Steven Perez
21        to Philbert Gorrick dated
          11/1/06, Bates D295      195
22
      SS Reclassification Title
23        Transfer form dated
          12/8/06, Bates 1154; and
24        letter from Steven Perez
          to Philbert Gorrick dated
25        1/16/07, Bates 1155-56   197
```

207

```
1
2                E X H I B I T S
3  DEFENDANT'S    DESCRIPTION      PAGE
4     X  DMV records of vehicle
          ownership 1998-present   145
5
      Y  Opinion and Award dated
6         4/3/02, Bates D408-417   152
7     Z  Bates P332-54            155
8     AA G46 and Restricted Work
          Assessment dated 8/9/06,
9         Bates D1314-15          155
10    BB Memo from Gus Rivera to
          Patrick McGreal dated
11        1/22/03, Bates P467-503  155
12    CC Memo from Gus Rivera to
          Patrick McGreal dated
13        1/22/03, Bates D1323-1352 155
14    DD Letter from Dr. Svahn to
          Gus Rivera dated 5/22/02,
15        Bates P378-79           160
16    EE Letter from Donovan Smith
          to Gus Rivera dated
17        7/2/02, Bates P417      161
18    FF Letter from Dr. Svahn to
          Ken Paige dated 6/16/04,
19        Bates D2359            167
20    GG Letter from Dr. Svahn to
          Dr. Alexander, dated
21        11/4/02, Bates 369; and
          letter from D. Smith to
22        Gus Rivera, dated
          12/9/02, Bates 371      170
23
      HH Step Two Abandonment
24        Hearing dated 5/9/03,
          Bates P462-65          175
25
```

209

```
1
2                E X H I B I T S
3  DEFENDANT'S    DESCRIPTION      PAGE
4     TT Request for Transfer,
          Redeployment and/or
5         Change of Title, Bates
          P507-510               199
6
      UU Pre-employment Application
7         Background Verification
          Questionnaire for NYC
8         Transit completed by
          Mignon Gorrick          202
9
   Ms. Goetcheus from NYCTA has retained all
10 exhibits.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

53

210

1
2
             CERTIFICATION
3
4
5      I, TRACY VASTA, a Notary Public for
6   and within the State of New York, do
7   hereby certify:
8      That the witness whose testimony as
9   herein set forth, was duly sworn by me;
10  and that the within transcript is a true
11  record of the testimony given by said
12  witness.
13     I further certify that I am not
14  related to any of the parties to this
15  action by blood or marriage, and that I am
16  in no way interested in the outcome of
17  this matter.
18     IN WITNESS WHEREOF, I have hereunto
19  set my hand this 16th day of December,
20  2007.
21
        _____
22          TRACY VASTA
23
24      *     *     *
25

211



54

| A | | | |
|---|---|---|---|
| **AA** 154:18 156:8,16 159:16 163:6 207:8 | 54:2 56:12 58:18 59:12,21 61:6,14 61:18 62:10 63:5 68:21 69:3,10 | 80:22 81:18 82:3 97:9 98:17 119:12 206:8 | **and-a-half** 172:16 **and/or** 199:3 209:4 **anguish** 26:19,20 27:25 28:13 |
| **abandoned** 65:21,21 66:3 67:2 | **acted** 55:23 62:8 **action** 1:15 6:20 18:9 80:18 91:12 92:6,9 177:13 179:12 206:6,15 210:15 | **ahead** 67:14 199:17 **Alexander** 62:14,15 62:22 63:6,8,9 64:5,6 68:19 69:4 69:6,11 170:15 207:20 | **ankle** 19:5 168:7 **ankles** 74:24 168:6 **Ann** 2:17 4:18 **answer** 5:14,24 6:11 6:14 68:18 109:2,6 123:17 145:19 154:5 |
| **abandonment** 55:18 55:19 64:21,22 65:9,11,18 66:13 174:25 175:17 177:4,7,10,11 207:23 | **actions** 64:7 **active** 130:2 | **allegation** 60:22 **allegations** 60:5,13 60:20 | **answering** 60:4 111:22 **answers** 4:22 **Anthony** 113:7 |
| **ability** 6:11 118:2 | **acts** 24:24 54:22 **adamant** 53:13 **addition** 121:19 **additional** 99:14 119:8 120:7,19 170:8 | **allege** 28:19 52:15 54:23 55:22 56:13 58:16 59:11,21 61:6,15,18 62:10 63:5 64:6 69:4 | **antihistamines** 6:3 **apart** 123:4 **apartment** 7:13 8:17,18 62:24 202:21,22 |
| **able** 14:5 16:7,13,20 19:8 166:6,12 168:4 | **address** 4:9,20 7:3,4 8:20,21 77:4 125:3 160:24 175:24 176:2,8 193:10 | **alleged** 27:24 **allegedly** 51:16,20 58:17 65:21 68:20 | **apologize** 106:20 **Apparently** 176:17 **appeal** 81:7 92:8 179:5,11,22 |
| **abode** 9:5 **above-entitled** 1:15 **abroad** 28:23 29:11 29:12 | **addressed** 50:14 183:11 185:12 195:13 197:8 | **alleging** 68:19 **allow** 83:8 **allowed** 13:9 25:14 | **appear** 41:25 193:3 195:22 **APPEARANCES** 2:2 |
| **absence** 163:21 **absent** 132:5 **abstract** 23:7 | **adhered** 52:19 **Administrative** 198:25 | **alteration** 39:12 **alternative** 14:4 166:22 169:8 | **appeared** 57:6 69:15 162:2 **Application** 202:8 209:6 |
| **accept** 197:19 **accepted** 204:5 **accidents** 136:12 | **advice** 85:6 **advised** 164:8 **advisement** 75:13 77:25 95:6,6 135:4 135:6 200:14 | **alternatives** 14:3 121:19 **amended** 144:3 **amendment** 144:25 | **appointment** 41:18 160:18 163:19 198:13 **appreciate** 155:14 |
| **accommodate** 5:2 **accommodation** 13:7,7 25:9,12 | **affidavit** 126:23 127:10,19,21 129:19 206:20 | **America** 10:16 **amount** 102:6 119:3 119:8 120:7,19 121:20 122:7,8,9 123:5 126:17 132:23 135:2,12 135:17 136:10 137:10,19 138:9 138:19 139:2,13 140:2,13 142:12 | **approached** 85:10 **approved** 88:17,19 92:3 |
| **accommodations** 26:12 | **afford** 9:8 140:7 **aforesaid** 129:7 **agency** 94:22 | | **approximately** 88:13 105:19,24 146:10 147:14,19 148:3,7 193:6 |
| **accountant** 131:20 131:24 | **agent** 197:21,25 198:2,14,22 **ago** 11:2 | **amounts** 100:13,17 100:21 101:2,7 108:5 | **April** 26:5,14 131:15,17 141:7 |
| **Accumulatively** 112:14 | **agreed** 3:3,8,12 199:17 | **ANCI/OSHA** 14:16 14:17 | |
| **accurate** 18:22 133:2 141:22 142:3 162:19 | **agreement** 57:24,24 | | |
| **acknowledge** 54:15 | | | |
| **acknowledgement** 188:9 | | | |
| **acquire** 77:23,23 120:11 132:4 | | | |
| **acquiring** 53:9 | | | |
| **act** 24:2 51:16,21 | | | |

149:21,21 152:3 157:5
**arbitrary** 167:25
**arbitrate** 26:10
**arbitration** 26:11 52:2,4,5,9,10,17 54:19,21 55:10,17 55:18 64:10 65:2,8 65:9,11,14 66:14 67:12,18 68:7,24 77:25 127:12 165:19 176:14 177:4,6,9 180:4,22 180:25 181:2 208:4,5
**arbitrations** 52:3 64:17 180:19
**arbitrator** 152:15 152:17 168:2 169:10 173:15 180:18,24
**arbitrator's** 53:3 166:20 172:25 173:3,4,5 186:23 186:25 187:4
**arc** 39:15
**area** 70:24
**Areas** 198:7
**arrows** 165:22
**aside** 63:23
**asked** 9:14 15:20 25:22 26:11 62:2,4 62:4 74:11 80:3,7 125:18 127:13,16 145:16 157:21 183:10 196:14,15 199:13
**asking** 5:21 6:19 16:15 19:16 24:25 25:8 49:10 53:21 53:22 65:25 66:2 66:17 98:8 102:7 104:13 109:14 111:3 120:15 168:25 183:12

186:4 196:18 197:19 199:18
**asks** 130:8,20
**aspect** 125:21
**assert** 28:17
**asserted** 26:18
**asserts** 177:24
**assessment** 15:18 62:24 154:19 156:14 185:2 207:8 208:8
**assigned** 45:21 46:4 46:6,7,10,14,17,19 47:3,5,9,14,20 48:6,25 49:6,8 73:24 83:10 88:14
**assignment** 47:25 48:20,21 83:7,13 84:6,14
**assignments** 34:8 47:17,18,21,22 48:7,8 83:14
**assist** 50:25 132:7 164:4
**assistance** 123:20 124:20,22,24 129:15
**associated** 119:10 119:24 120:8,21 120:24 121:23 123:4
**assume** 6:15 130:11 130:12 133:6 173:19
**assumed** 7:12
**assuming** 44:7
**Atlantic** 27:19 46:12 46:14 47:4,6,15,23 48:4,12 50:2,6 56:4 79:25 113:16 181:9,16 182:11 183:6
**attached** 50:15 113:20 118:3 141:22 158:5

185:3 208:9
**attachment** 93:12
**attempt** 74:3,8,12
**attend** 10:4 11:20 37:6
**attendance** 37:3
**attended** 11:13
**attention** 76:19 86:8 94:14
**attorney** 4:19 93:10 130:24
**Attorneys** 2:5,13
**attorney/client-pr...** 129:2
**August** 12:11 14:23 15:6,10,12,23 16:2 16:8,9,14,19 41:8 72:23 182:12,13 182:14 183:4,9 184:15 185:23 186:2 187:14,18 193:20 194:18
**authorities** 131:9
**Authority** 1:8 2:12 4:20 6:21 13:6,17 13:21,21 14:2,24 15:6,13 24:22 25:17 26:23 27:4,8 33:10 35:24 40:2 53:16,22 57:2,23 59:5,7 66:22 67:14 72:7,10 73:21 81:14 85:7 87:7 91:23 113:4 127:24 130:2,10 130:13 153:7,10 154:12 166:15 168:18 169:2,7,12 169:22,25 172:20 173:7,17,21 182:19 196:16 203:23
**Authority's** 14:3,4 130:3
**authorized** 40:2

153:16
**auto** 145:10
**automatic** 39:18
**automobile** 133:11 133:12,15,18,19 133:21
**automotive** 134:5
**available** 181:11,14 188:5 192:17 193:2
**Avenue** 2:6 4:12 27:19 40:18,19,20 46:12,14,18 47:4,6 47:10,15,24,24 48:4,13 49:13,16 49:18 50:2,6 56:5 74:2 76:22 78:24 79:25 113:16 181:9,16 182:11 183:6 193:12 202:20
**average** 106:4
**Avery** 99:6,20 100:8 101:21,22 102:8 102:10
**award** 68:7 127:13 127:22,25 128:2 152:2,14,17 173:5 177:3 180:14,14 180:17 181:4 187:7,9 207:5
**aware** 14:17 15:13 15:14 62:5,15 69:12 87:6 194:13 201:7,9 203:17 204:3,4
**A.M** 1:12

—————————
**B**
**B** 2:19 4:2 18:8,11 205:6,9 206:2 207:2 208:2 209:2
**back** 5:12 46:11 47:10,15 48:12 49:13,15,17,22

50:5,7 58:4,5 59:9
63:9 67:6 69:7
77:13 78:19 92:20
129:6 144:2,8
151:5 161:4,18
169:14 172:11
179:19 190:9
193:8
**background** 7:2
64:14 202:9 209:7
**badly** 143:8
**based** 48:5 49:7
62:8 65:10 67:15
100:14,18,22
101:17 117:25
118:9,9 127:22,25
127:25 167:24
177:12 190:21
**basic** 177:12
**basis** 22:12 81:13
101:12 145:20
192:20
**Bates** 36:8 38:4,5,12
41:8 45:4 69:19
71:12 73:3,7,10
76:8 79:9 80:20,23
82:11 85:25 88:5
91:14 128:10
152:5 154:16,20
154:24 155:4
160:7 161:13
165:21 167:15
170:13,16,23
175:4 176:15
180:5 184:2 185:2
185:4 187:14,19
189:9 192:8 194:3
195:15 197:7,9
198:19 205:10,11
205:13,14,20,22
205:24 206:5,7,8
206:10,12,14,16
206:23 207:6,7,9
207:11,13,15,17
207:19,21,22,24

208:4,6,7,9,10,11
208:13,15,17,19
208:21,23,25
209:5
**BB** 154:22 155:16
155:17 161:19
163:15 165:11
207:10
**beginning** 63:20
78:12
**begins** 94:15
**begun** 125:24
**behalf** 59:6 100:9
123:13,15 124:7,9
131:9 152:22
153:3,6 178:23
179:3
**believe** 59:17 93:22
119:18 142:2,7,10
145:17 149:9
171:19 172:24
175:3 182:12
183:15
**Bell** 32:4,8,9,16 33:3
33:12
**benefit** 4:15 123:23
123:24 124:11
200:24 201:3
204:2
**benefits** 129:15
203:16
**best** 6:16 12:23 51:9
132:12,13 176:10
194:25
**big** 147:9,13
**bill** 101:2,6,11 121:3
123:25 124:3,5,14
**billable** 139:23
**billed** 90:23 102:8
102:11 104:6,9
**bills** 101:16
**blank** 43:19
**Blessed** 110:7,10
**block** 125:3
**blood** 210:15

**Blough** 175:4
**Blumstein** 56:17
**BMW** 30:2,3,11,15
136:15,18,20
137:6 139:9
146:19,22,24
147:22
**board** 176:7
**books** 29:8 134:8
**boot** 87:12
**boots** 13:5 14:3,4,7
14:9,10,11,12,15
71:23,25 72:4,5,6
72:6,7,8,8,9,12,13
72:16,17,18,20
74:4,13,18 80:20
82:4 85:24 86:10
86:13 88:16
153:16 164:22,24
165:6
**bottom** 161:19
**Boulevard** 8:11,22
**box** 194:16,21 195:4
**break** 5:4 92:13,15
151:2 204:9
**breaks** 11:18
**BRIGHT** 2:4
**bring** 21:17,18
**Broadway** 162:12
**broke** 10:17
**broken** 134:23
**Bronx** 40:20 46:18
**Brooklyn** 1:10 2:16
8:12 79:25 194:17
**brought** 59:2 99:22
**Bryant** 194:2,9
208:18
**building** 27:16
**buildings** 26:25
39:22
**bulk** 134:7
**bulletin** 69:21,23
71:24 73:2 205:18
205:18,19,22
**bunch** 156:20

**BURTON** 2:17
**bus** 77:14 204:5
**business** 17:6,8 29:8
30:24 31:2,14,15
31:21 89:10,11,11
89:12,14 90:21,22
104:20 107:9
129:23,23,25
130:14,16 132:22
133:13,16 135:4,6
135:7 138:3,7,23
138:24 139:12,15
140:10,12,18,21
141:5,12 157:8,14
157:15 158:3,6
178:14,19,23
179:3

---

**C**

**C** 4:2 36:4,7,10 38:3
38:12 40:12
205:10
**cable** 16:3 19:9
44:14 45:4,15,24
56:25 59:19 76:6
113:11
**cables** 39:20 84:15
84:16 139:20,20
139:20
**cabling** 121:12
**Cadillac** 31:5,7,10
145:22,25 146:2,3
**call** 65:16 86:8
94:14 123:21
**called** 78:11 175:20
**calling** 76:19 128:25
**Campbell** 59:25
76:7 82:10 85:23
88:4 205:24
206:10,12,14
**capable** 14:8 16:10
**capacity** 129:9
164:10 165:5
**caption** 81:7,24
139:16

Page 4

captioned 12:10
car 28:24 29:14,14
    29:20,22 30:2
    132:23,25 133:7,8
    136:3,4,7,14,15,17
    137:5 138:11
    147:9,9,10,12,13
    147:13,23,25
    148:6,23 178:2
Cara 8:7
care 94:22 141:4
carried 80:14
carry 76:24 140:5,6
case 53:12 65:24
    67:15,17 94:12
    102:18 120:4,6
    134:22 169:13
    177:5,7,10,11
    211:3
cases 102:15,16
    108:2,3
Cassandra 53:23,25
    55:22 67:6
cause 79:22 119:14
    133:2 144:25
causes 20:25
CC 155:2,8,16,17
    207:12
Center 62:25 156:14
    168:11 199:23
certain 52:17
certainly 120:11
certification 3:6
    138:16 143:12
    210:2
certified 72:3
certify 210:7,13
cetera 121:10 133:2
    134:8 135:9,15
    138:12 139:21
CFS 119:21
change 199:4,19
    200:20 209:5
    211:5
changed 164:14,15

164:18
changes 41:19
charge 12:10,23
    13:24 15:5 100:12
    100:24 101:23,24
    182:6,16,23
    184:20 193:9
    205:8
charged 98:11
    100:11
charges 14:14 26:6
    58:3 59:2 98:5
    101:11
charging 139:19
check 128:8,18
    206:22
Checklist 71:11
    205:20
checks 27:9
Chevrolet 149:8,12
    149:12
Chevy 150:9
chief 72:24 168:10
choose 52:19 54:4
chronology 155:12
    183:16,22
church 110:5,6,13
    111:7,10 112:7,8
churches 110:5
circuits 39:19
circulatory 19:22
circumstances
    14:25 15:7 23:20
    23:21,23,25
    128:22 182:20
Cisco 104:3,18,22
    124:7,10,12,16,17
    138:16 143:10,19
City 1:8 2:12 31:13
    31:24 33:5 39:6
    40:2 86:15 87:16
    140:9 144:9 198:9
    198:24 202:3,10
    203:3,10 204:6
Citywide 198:24

199:2
Civil 1:20
claim 24:21,23
    26:21 79:19
claims 6:20 26:18
    177:21
clarification 171:21
clarify 48:19 86:18
    183:7
clause 179:18
clear 66:19 73:9
cleared 131:21
clearly 22:17
client 109:9 112:21
clients 89:15 94:20
    106:13,17,20,21
    108:11,18 109:16
    109:22
COBRA 203:18,25
code 194:17
cold 6:4
colds 6:3
collated 42:10
collect 27:9 162:13
college 9:22 10:3
    34:23,25
come 10:22 50:5,7
    92:20 96:24
    106:25 125:10,13
    125:16 181:5
    198:12 199:11
commission 142:12
    142:18 211:25
Commissions
    133:25
commitments 28:22
communicated
    203:24
communication
    201:8
companies 104:4,5
    104:20
company 17:21,23
    18:5 96:3,6,9,9
    97:11,22,25 98:2,3

98:5 100:10 104:9
    117:23 118:8
    119:5 123:16
    124:4,4 125:22
    126:19
company's 118:2
    123:24
compared 142:14
comparison 141:21
    142:11 151:16
compensation 58:8
complaint 18:8
    24:20 26:17 28:16
    205:9
complete 37:13 42:9
    151:12
completed 48:3
    198:23 199:20
    202:10 209:8
completely 65:18
completing 48:2
compliance 166:14
compliant 84:22
    85:3 166:10,18
complied 68:23
comply 14:15,20
    83:9 86:15 87:16
    87:20 88:25
    163:18
complying 67:18,21
    68:6 166:4
component 87:22
composite 13:12,14
    166:22 169:9
compounds 26:24
computer 95:7
    112:12 120:2
Con 129:24
concept 70:7,16
concerned 77:8
concerning 55:19
    60:14 94:12 95:25
concerns 137:2
conclusion 114:16
Concord 16:22,24

16:25 17:4,7,9,13
89:7,12,18,24 90:8
90:13,18,24 94:20
94:22 95:2,19,25
97:2,9 98:5,16
100:10 101:3,4,13
102:11,12,23
104:7,9,11 105:21
105:25 106:3
108:24 109:9,16
109:23 112:22
113:21 115:8,12
115:17 116:18
119:2,7 120:18
122:11 123:11
124:2,3,8,9,13,14
125:9,12,14,15,24
126:5,12,16
129:21,22,25
138:5 141:10
157:6,9,11,15,18
157:22 158:4,5,7,9
178:13,17,21,25
concurrently 32:6
32:11
condition 15:15
16:15 54:14 74:19
164:11 183:14
185:13
conditions 39:23
70:12 80:7 86:24
87:5
conduct 60:21,23
confused 147:6
confusing 101:10
106:10 179:17
183:19
connected 133:12
133:16
connection 57:12
64:18 134:6 135:7
138:6 167:6
consent 63:9 168:9
196:16 200:18,19
consider 67:2

considered 40:9
198:5
consistent 129:19
consisting 198:20
constraints 37:18
Consult 172:22
consultant 53:18
62:17 107:14,15
172:20,23
Consultants 91:7
98:18
consulting 94:19
112:19
contact 55:12 65:23
66:12,23 126:4
Contemporary
17:18 96:8 103:7,8
103:12,23 118:22
contents 54:13
79:17
contesting 92:6
continue 11:22 25:3
28:6 59:3
continued 141:13
continuing 161:22
continuous 41:23,24
continuously 7:17
11:15,16,17 195:6
contract 17:9 89:10
95:13,20 96:25
97:10 102:11
104:12 114:4,11
115:15,20 116:3,7
116:10,12,14,17
116:19,25 117:4,8
117:9,10 118:6,9
118:10,13,13,15
119:9,15 123:11
135:9 137:15
contracted 99:18,19
contracting 106:3
contractor 17:4,8
119:21
contracts 118:4
119:18,20

control 27:3 173:14
conversation 88:21
194:9
converters 39:16
cooperate 53:9
copies 174:24
copy 128:18 160:14
169:24 171:20
175:6 187:8
189:22,25
corporation 96:11
96:13,15,22,23
corporations 123:10
Corps 11:20
correct 17:15 37:4
50:8 52:11 59:17
63:3 64:19,23,24
65:2,5,9 66:7
72:15 77:6,7 89:2
90:25 94:23 96:22
111:22 115:17
126:15 127:20,24
128:4 136:16
137:7,8 142:15
145:21 146:24
147:21 151:18
152:22 158:16
159:25 160:2
163:4,12,16 165:7
169:18 172:9,13
172:17 175:24
176:17 177:14
179:8,15,23 181:2
182:24 191:6
193:10,13,16
198:2,10,11 200:8
corrected 159:11
correspond 38:19
38:23 39:3 45:17
correspondence
201:8
cost 119:10,23 120:8
120:12,13,20
121:22,25 122:18
123:3 124:15

137:16 146:13
148:4,5 173:19
174:13,16,20
costs 138:5
counsel 1:21 2:11
3:4 4:25
counterclaim
204:14
couple 183:9
course 64:3 165:18
183:18
court 1:2,20 3:16
4:21 5:8,11 86:25
cousins 7:21
cover 50:12 113:20
coverage 201:10
covered 116:6,9
200:24 201:4
203:15,18
Cox 69:14
credit 28:21
credits 10:6
criminalizing 26:25
current 4:9 9:4
35:19
currently 147:22
Cyprus 8:11

———— D ————
D 37:25 38:8 161:13
163:24 205:2,11
207:21
Daily 32:5 34:3
damaged 134:23
damages 28:18,19
Daniels 125:4,5,11
date 12:15 18:12
27:11 36:11 38:9
41:12 45:8 50:21
66:10 70:2 71:16
73:15 76:12 79:12
81:2 82:14 85:18
86:4 88:8 91:17
93:15 113:25
114:12 115:4

Page 6

127:3 128:13
129:14 131:4
145:14 152:5,9
153:18 155:9
159:4,7,19 160:10
161:6,17 162:3
163:3 167:18
170:21 172:16
175:10 176:17,22
180:9 184:5,14
185:7 187:22
188:19 189:12
192:11 193:7
194:7,12 195:18
197:13 199:7
202:14 211:4
**dated** 12:11 18:9
36:7 41:7 50:13
71:10 72:23 76:4
79:8 80:17,22 82:8
85:22 88:2 91:13
93:9 128:9 152:3
154:19,22 155:2
160:6 161:12
163:24 170:13,16
170:23 171:4
175:2,3 176:15
180:5 183:25
185:2,4 187:13,18
189:8 190:10
192:7 194:4
195:14 197:6,9
205:8,9,16,20,22
205:23 206:5,6,8,9
206:11,13,16,18
206:22 207:5,8,10
207:12,14,16,18
207:20,22,24
208:4,5,7,9,9,11
208:13,15,17,19
208:21,23,24
**dates** 15:25 32:7,17
35:3 44:18 46:22
52:12 68:12,17,17
96:20 186:4

**day** 20:5 22:8 77:16
77:18 78:20 88:15
89:20,21 181:25
204:21 210:19
211:22
**days** 4:18 89:17,20
89:22 95:8,11
183:9
**DD** 160:5,9 207:14
**deaf** 4:17
**deal** 6:25
**debts** 28:21
**decades** 18:25
**December** 1:11
128:9 171:5
194:18 195:7,25
197:6 210:19
211:4
**decided** 174:5
**decision** 65:15 67:13
153:19 176:14
177:20 179:4,10
179:21 180:4
190:22 208:4,5
**deduction** 140:2
142:13 151:21
**deductions** 151:7
**deemed** 53:5,10
66:3
**defects** 166:21
**Defendant** 1:9 2:13
**Defendants's** 41:7
**Defendant's** 12:9,14
18:7,11 36:6,10
37:24 38:8 41:11
45:2,7 50:10,16,20
69:18,25 71:9,15
72:22 73:14 76:3
76:11 79:4,11
80:16,21,25 81:18
82:7,13 85:21 86:3
87:25 88:7 91:11
91:16 93:8,14
113:18,24 126:22
127:2 128:7,12

130:22 131:3
145:8,13 151:5,25
152:8 154:15,18
154:21,25 155:7
160:4,9 161:11,16
161:18 165:10
167:11,17 170:12
170:20 174:23
175:9 176:13,21
180:3,8 183:24
184:4,24 185:6
187:12,16,21,23
189:6,11 192:5,10
193:24 194:6
195:12,17 197:4
197:12 198:17
199:6 202:13
205:7 206:3 207:3
208:3 209:3
**defense** 162:5
**definite** 22:18 23:15
23:17
**definitely** 32:24
111:13
**definition** 22:18
**degree** 9:25 10:14
11:9,24 37:13,21
**deliver** 77:13
**delivery** 176:5
**demonizing** 27:2
**department** 15:23
40:24 113:22
145:9 158:20,23
159:4 161:6
182:24 183:5
184:21 191:21,22
192:3 196:15
198:7,24 199:15
202:3 203:3
**department's**
197:23
**departure** 115:16
**depend** 97:20,23
**depended** 130:3
**depends** 22:13,13

23:5,10
**depict** 101:16
**deposition** 1:14 3:6
3:13 204:13 211:4
**deposits** 29:7
**depot** 77:14,14
**derive** 129:10
**derived** 17:20,20
**dermatitis** 19:4
**describe** 19:10,17
20:18 26:19 27:23
28:18 51:20 53:24
**described** 23:24
119:23
**description** 38:11
45:3,13 198:21
205:7 206:3 207:3
208:3 209:3
**descriptions** 38:2
40:6 205:11,14
**despite** 15:12 56:7,9
58:14
**detailed** 183:12,13
**determination**
62:16,21 63:2,6,15
67:20,22,23 68:2,8
68:21,23 88:24
89:4
**determinations**
62:18,19
**determine** 86:14
**determined** 87:15
**development** 134:11
**diagnosed** 19:2
**different** 23:24
65:19 133:6
158:16 196:22
197:2
**difficulty** 19:6,10,18
20:4,11,19,25 21:5
21:8,12,16,22
23:13,18
**Dill** 57:5,15
**direct** 168:18 169:2
**directed** 52:16,17

212-267-6868

516-608-2400

153:21,22 169:7
direction 53:3
directly 99:16 121:5
  124:12 141:14
director 57:20 115:5
  125:6,7
disability 13:4 19:5
  24:23
discharge 179:5,7
  179:13,14,23
disciplinary 80:18
  91:12 92:6,8
  177:12 179:12,12
  179:13 206:6,15
discipline 25:24
  81:15 163:20
  177:13
disciplined 25:21
  63:20
discovered 86:10
discovery 168:12
  198:19
discriminated 24:22
discrimination
  12:11 24:24 25:5
  205:8
discriminatory
  51:16,21 53:25
  54:23 55:23 58:17
  59:12 60:21,22
  68:20 69:5
discuss 70:11
  191:16,20,21,24
discussed 121:18
discussion 169:8
  191:13
disease 19:3
disks 137:22,25
dismissal 153:17
  194:24
dispose 146:15
  147:17
dispute 178:10
disregard 54:11
distance 22:4,6

distributed 13:5
Distribution 73:3
DISTRICT 1:2,3
Divided 102:4,4
Division 198:25
DMV 145:9 149:7
  207:4
doctor 15:19 64:2
  75:14 85:6 158:22
  166:24 168:10,11
  169:14 171:24
  173:16 185:12
doctors 186:12
doctor's 80:8 171:18
  173:17,18
document 12:10,13
  12:17,19 18:10,13
  38:13 45:6,9 50:11
  50:22 69:15 70:25
  71:3,10,14,17 73:7
  73:16,20 76:10,13
  76:16 79:10,13
  80:17 81:3 82:12
  82:15,19,25 86:2,5
  88:6,9 91:15,18
  93:13,17 113:23
  114:6 115:21
  117:16,19,25
  118:14,17,18,24
  126:25 127:4
  128:11,14 131:2,5
  152:7,10 154:22
  155:2,10 156:16
  160:8 161:15
  165:12 167:16
  170:19,22 174:24
  175:8 176:20,23
  180:7,10 184:3,6
  185:8 187:20,24
  189:10,13 190:11
  192:9,12 194:5
  195:16 202:7,12
  203:11
documentation
  13:15 86:12 87:11

171:23 172:7
  185:21,22
documents 16:6
  36:7,9,12 38:7
  41:7,10,13 50:18
  50:19 63:24 69:19
  69:24 70:3 73:13
  80:24 113:19
  114:2 126:8,9
  145:12 151:12
  154:16 155:6
  156:8,12 170:11
  175:11 183:17
  185:5 197:11,14
  198:18 199:5,8,12
  205:17
document's 115:19
  118:20
doing 37:12 40:12
  40:15 67:7 86:25
  86:25 89:11,12,14
  164:20
dollars 97:19 98:4
  98:12,13 102:20
  102:22 104:8
  119:22 121:9,11
  122:10,14 123:6
  178:16
Donovan 163:16
  170:17 171:5,16
  207:16
downs 70:7
Dr 62:15,18,19 63:2
  63:5,8,10 64:5,6
  68:19 69:4,6,10
  158:24 160:5,11
  161:2,4 167:7,12
  167:19,22 168:3
  168:10,19 169:3
  170:9,14,15,23
  172:3,4,11,19
  173:6,11,13 174:2
  183:10,11 184:12
  184:12 185:11,14
  185:22 186:5,6,9

186:12,14,17,19
  186:20,22,25
  187:3 188:18,19
  188:21,22,23
  189:3,7,8,17,17,19
  189:22 191:16
  207:14,18,20,20
  208:14,15
drawing 49:5,7
drop 139:20
dropped 77:17
  78:21
drugs 6:10
dual 113:3 130:13
  130:15
due 13:4 19:5
  131:15
Dukes 8:7
duly 4:3 210:9
duties 38:18,22 39:8
  39:9,25 40:8,9
  45:14,16 83:25
  117:18 118:17
duty 58:5 59:9
  83:17,18,20
  158:10 181:6
  192:16 193:2
D0415 153:22
D1152 38:4,12
D1154 198:3
D1276 192:8 208:17
D1314 163:6
D1314-15 154:20
  207:9
D1323 155:5
D1323-1352 207:13
D1356 91:14 206:16
D1436 71:13 205:20
D1593 36:8 205:10
D2190 180:6
D2190-2201 208:6
D2343 194:4 208:19
D2359 167:15
  207:19
D295 195:15 208:21

Page 8

D2976 45:5
D298 184:2 208:7
D302 185:3 208:9
D308 185:4 208:10
D408 152:6
D408-417 207:6
D487 69:20
D488 71:2
D639 80:20 206:7
D977 41:9 42:2
  205:13
D978 42:3
D980 41:22 42:3
D981 42:3

**E**
E 4:2 41:7,11 92:24
  92:24 195:14
  197:9 205:2,6,13
  206:2 207:2 208:2
  209:2
ear 4:16,18
earlier 25:11 165:11
early 126:4 148:24
  162:14
earn 130:5
earning 129:19
earnings 127:17
  129:10 130:9,11
EASTERN 1:3
education 9:21
  10:20 11:19 37:2
Edward 63:25
EE 161:12,16
  163:23 207:16
EEOC 182:5,16
  184:20 193:9,21
effect 3:15 27:10
  34:9 66:25 168:8
  179:4,10,21 201:9
effort 58:12 73:8
eight 20:2,6,8,12,16
  21:3,9,13 117:17
Eisenberg 63:25
either 48:25 49:3

97:5 109:14
  155:16,17,21
  166:24
electrical 10:12
  13:16 34:10,21
  35:4 36:3,4 37:14
  39:13 86:13 87:12
electrician 34:4,6,8
elevate 24:19
eligible 191:5
  196:20
emigrated 10:25
employed 16:23,25
  17:3,7,8 31:13,25
  32:3,7,8,9,17,21
  33:3,10 34:13 35:7
  129:9 201:11,21
  201:25 202:2
  203:2
employee 44:4 57:3
  81:7 154:9 157:2
  188:8
employees 76:23,25
  77:3
Employee's 156:22
employer 17:12
employers 32:13,15
employment 31:12
  31:15,17,24 33:5
  34:16 36:17 45:21
  46:3 99:17 113:4
  127:17 129:11
  130:2 154:3 204:5
enclosures 39:21
engaged 157:8,14
  158:3
engineering 10:12
  37:15
entered 30:13 96:25
entire 46:3 102:22
  110:24 166:2,8
entities 104:3
entitled 129:13
  174:25
entity 107:6,7

entry 37:2 132:22
  133:24 134:12
  135:16 136:8
  137:9,18 138:8,25
  139:13 140:10,14
  142:17 149:7
  150:21 175:20
  188:12
equipment 29:8
  34:10 39:13 49:4
  70:16,19 71:11,12
  119:11 120:9,11
  120:14 121:2,3,7
  121:10 122:21
  134:15,16,17,20
  135:19,20,21
  136:6,9 137:12,14
  137:16,22,23
  205:20
equipments 119:24
  120:21,25 121:23
  123:4
ERRATA 211:2
erroneous 150:21
erroneously 175:2,3
Escalade 146:5,7,8
ESQ 2:9,17,19
essential 19:8
Estates 7:24
et 121:10 132:25
  134:8 135:9,15
  138:12 139:20
Eva 8:2
evaluation 85:24
  160:23 161:2
evenings 112:12
event 182:15
events 57:13,16,17
  59:22 61:9,19 64:8
  77:9
eventually 75:7
exactly 27:11
exam 185:22 194:13
  196:19,21
examination 4:6

40:23 143:12,15
  190:20 191:18
  193:4 195:23,24
  196:12,25 205:3
examinations 143:7
  143:17
examine 85:17
examined 4:4
  158:19 160:11
example 101:22
  102:7
exams 143:10
exception 15:21
excess 20:5,8 21:3
  122:7
Excuse 31:16 74:6
execute 116:2,13
  127:10 138:2,2
executed 114:11
  116:20,24,25
  117:6,10
executive 115:5
exemption 140:11
exhibits 38:8 80:25
  155:7 187:21
  209:10
exist 39:6,10,15
  70:23
expand 118:11
expansion 120:2
expected 91:24
expendable 139:19
expense 122:3
  135:17 136:2
expenses 132:23
  133:5
expensive 134:19
  143:11
experience 19:18
  20:3,10,14,19 21:4
  21:7,15,19 23:12
  23:17 24:7,12,15
  24:18
experienced 19:11
  21:12 24:6,9 26:21

expired 116:12
expires 149:21
  211:25
explain 11:23 33:17
  87:19 119:13
  123:17 129:18
explained 80:6
extent 110:15
Exxon 32:4 33:8,9
  33:15
e-mail 193:25
  194:10 208:18

_____ F _____

F 45:3,7 92:24
  205:14
facility 27:17
fact 15:13 16:2
  24:25 25:5 26:6
  71:22 80:11 83:10
  115:11 130:5
  131:8 172:19
  182:22 190:16
  193:15
factors 22:16
failed 52:23,24
  55:12 66:11 92:2
  143:8,14,17,20
  175:16
failure 80:19 82:4
fairly 134:19
faith 52:2,15,24
  58:12
false 78:9
falsely 72:3
familiar 18:18,20
  70:6,15 71:5 79:16
family 16:23,24
  17:2,4,9,13 28:22
  89:8,12,18,24 90:8
  90:13,18,24 94:21
  95:2,19 97:2,9
  98:5,16 100:10
  101:3,13 102:23
  104:7,9,11 105:21

105:25 108:24
109:9,16,23
112:23 113:21
115:9,12,17
116:18 119:2,7
120:18 122:11
123:14 124:2,8,13
124:15 125:9,12
125:14,15,24
126:5,12,16
129:21,22 138:5
141:10 157:6,9,11
157:15,18,22
158:4,5,7,9 178:13
178:18,21,25
far 37:16,21,22 77:8
  133:2
fax 113:20 114:3,20
  115:19 117:16
  118:20 126:8
  132:15,16,17
  139:12,24 140:8
  141:20 151:16,20
  161:21 167:14
  206:19
February 114:17
  118:15 177:13,21
  178:9
Federal 1:19
feel 22:8,8 24:3
fees 133:25 142:13
  142:18
feet 19:21
fell 168:5
FF 167:12,17 207:18
fiasco 194:22
fiberglass 13:12,14
  77:24
field 10:10 84:9,12
  84:13,14
fifteen 111:16,17,18
fifty 10:8
file 131:11,16
  141:16 143:22
  144:3,7,11,20

filed 67:3 131:8,13
  131:22 132:6
  144:22 182:22
  183:3 184:19
filing 3:5 144:19
fill 196:14
find 131:25 145:3
  151:11
finding 67:16
finished 19:12
first 4:3 6:25 26:2,3
  32:16 38:10 46:4,5
  47:23 50:16 51:22
  52:5 54:18 62:21
  63:2,14 64:25
  69:20 72:9 73:22
  94:15,25 155:10
  155:13 168:3,20
  170:22 173:4,5
  180:25 187:23
  194:20 197:22
  204:7
fiscal 125:6,7,21
fit 77:24
five 24:16 110:22,24
  112:14 115:20,24
  163:15
fix 112:12
fixed 9:5 97:15
  100:21 101:6,11
  176:7 177:25
Floor 2:15
Floyd 115:6,8,11
Floyd's 115:16
flu 6:5
fluid 176:6
flu's 6:3
follow 52:17 65:12
followed 59:19 61:2
  179:14
following 29:20
  64:4 80:12 89:4
  92:23 131:16
  153:19 160:23
  161:2 179:6,7

181:4
follows 4:5
Fonseca 59:16,22
  76:5 78:10 205:24
footwear 13:10,11
  13:19 71:2 73:3
  84:22 85:3 86:13
  86:14 87:12,15
force 3:15
foreign 104:3
form 3:9 25:5 113:4
  113:13 128:9,23
  139:12 183:25
  185:2 187:13
  197:6 198:4,23
  199:21 206:22
  208:7,11,23
formed 54:14
former 202:22
forms 103:4 126:11
  135:15,15 196:13
  200:7,11,14
forth 210:9
forty 90:18
foster 94:22
found 53:18 190:25
  196:19 197:23
  198:6
four 24:16 112:14
  115:20
fourteen 24:21
fourth 88:12
four-door 147:10,12
  149:8 150:10
Frank 8:2
free 10:21 11:19
frequently 24:8
fresh 80:8
Friday 78:14
friends 7:21 28:22
  178:2
front 52:12 141:25
  144:15
fuels 33:19,21,23
full 4:9 35:10 58:5

59:9 83:17,17,18
83:20 140:22
**full-time** 35:14
**function** 40:5 51:19
**functions** 19:9
**furniture** 135:19,20
**further** 3:8,12 164:8
210:13
**future** 129:13

_____ G _____
G 4:2 50:11,20
205:15
**Ganser** 183:10
184:12,13 185:14
185:23 186:5,6,9
186:20 188:23
189:8,18 191:16
208:15
**Ganser's** 185:11
**Gasoline** 139:4,6,7
**Gayle** 61:22,23 62:2
62:11 85:14,15,17
85:23 86:14 87:14
206:12
**Gayle's** 88:24
**gears** 39:17
**GENA** 2:19
**general** 2:11 45:13
60:2 76:7 113:11
187:17 192:7
**generally** 45:25
**generated** 168:17
**gentleman** 78:21
199:14
**getting** 66:17 86:23
194:23,25 199:18
**GG** 170:12,20
207:20
**give** 23:16 98:25
102:6 107:2
121:13 159:4
176:8 185:14
189:22 196:13
199:18

**given** 6:16,23 16:22
27:4 48:10 101:19
101:22 103:5,6
133:3 156:4
158:18 168:21
181:15 182:3
186:9 200:7
210:11
**giving** 196:16
**GMC** 29:15,19 30:6
148:20,21 149:5
**go** 11:21 15:22 23:2
28:3 29:4 42:16
46:2 49:3 58:4
70:13 77:4,11,19
77:20 78:4,4
121:13 159:18
162:18 169:13
179:18 183:4
188:15
**goes** 13:24 121:16
**Goetcheus** 2:17 4:7
4:19 12:8 18:6
36:5 37:23 41:5
42:7,13 44:5,25
50:9 67:25 68:5
69:17 71:8 72:21
76:2 79:3 80:15
82:6,23 85:20
87:24 91:10 92:11
92:16,19,25 93:7
93:18,25 106:15
106:19 113:17
126:21 128:6
129:4 130:21
132:19 145:7
150:25 151:24
154:14 155:17
156:21,25 159:9
160:3 161:10
167:10 170:7
174:22 176:12
180:2 182:8
183:23 184:23
187:11 189:5

191:12 192:4
193:23 195:11
197:3 198:16
202:6 204:8,12
205:4 209:9
**going** 10:21 22:9
48:12 49:22 73:22
87:6 128:24
130:14,16 145:15
162:15 182:23
183:5 186:6
**good** 52:2,15,23
58:12 73:12 92:12
**Gorrick's** 44:7,8
**government** 10:16
12:2
**granted** 132:9,10
**gratis** 110:23
**great** 155:23
**green** 149:8,12
150:10
**grievance** 64:8,9
65:20 66:3,4,7,9
66:11,14,19,22
67:2,11 92:5,7
175:7
**grievances** 64:18
**Grievant** 81:24
175:21
**ground** 22:15 84:16
**group** 38:3,11 40:12
**GS** 208:13,17
**guarantee** 176:5
**guard** 27:13,14
33:13
**guess** 42:7,9 94:2
168:17
**gumption** 81:15
**Gus** 15:19 62:2
67:16 68:2 78:2
153:23 163:17
165:15 207:10,12
207:14,16,22
**Gustave** 2:20 51:23
154:23 155:3

160:6 161:13
163:25 170:17
171:6
**Guyana** 9:24 10:16
10:21 11:11 12:2
34:13,16 35:11
37:14
**G46** 154:18 163:2,5
163:18 181:15,17
181:23 182:3
183:25 186:8
187:13 190:10,14
207:8 208:7,11

_____ H _____
H 4:2 69:19,25
205:6,18 206:2
207:2 208:2 209:2
**half** 23:10 112:13
**hall** 175:23 176:2
**hand** 210:19
**handing** 12:17
18:14 36:13 38:13
41:14 45:10 50:23
70:4 71:18 73:17
76:14 79:14 81:4
82:16 86:6 88:10
91:19 127:5
128:15 131:6
152:11 164:2
175:12 176:24
180:11 184:7
187:25 189:14
192:13 195:20
197:15 199:9
**handwriting** 36:19
36:21 41:20 42:17
42:23 43:6,12,14
43:17,21
**handwritten** 165:20
199:20
**happen** 10:13 17:18
143:2 178:8
**happened** 15:10
42:3 67:4,5 74:17

74:20,22,25 75:6
77:12 89:5 143:4,5
153:19 167:5
181:10,12 200:10
200:15
**happens** 24:8
**hardware** 137:25
**hazard** 13:16 86:13
87:12
**hazardous** 39:22
70:12
**hazards** 70:22,22
**head** 62:23
**health** 134:13
139:25 140:5,6
158:20 164:11
171:22 173:11
200:24 203:16
**hear** 5:7 104:17
108:25
**heard** 6:15 64:9
**hearing** 55:13 58:22
67:7 165:19
166:20 168:2
170:5 175:2,17,18
177:4,16 186:23
187:2,4 207:24
**hearings** 152:18,21
177:9
**held** 1:16 51:19
152:18 191:13
196:3,9
**help** 28:11 125:19
174:6,12 194:25
**helped** 125:20
**helper** 36:3,3,4 38:3
38:11 40:12 41:3
**hereto** 3:5
**hereunto** 210:18
**HH** 174:24 175:9
207:23
**hiding** 86:23
**high** 35:2 39:16
**highest** 9:20
**Highland** 4:12 8:10

8:10,22 193:12
**Hightest** 77:21 78:5
78:16
**hired** 14:12,18
16:11 25:6 35:23
46:4,5 72:11 91:8
164:10,25
**history** 41:18
**holding** 204:13
**holes** 84:18
**home** 178:11
**homeless** 177:22
178:9
**homes** 178:2
**hour** 22:22 23:10,10
90:24 92:18 97:19
98:4,12,13 100:20
102:20,23 104:8
112:13,13 119:22
121:9,11 122:10
122:14 123:6
178:16
**hourly** 97:14,15
101:7 102:21
**hourly-rate** 101:12
**hours** 5:16 6:7
19:19 20:2,6,8,12
20:16 21:3,9,13
22:5,7,19,19,20
23:9 89:23 90:8,13
90:18 95:8 101:17
101:19,25 102:6
105:19,24 106:4
110:19,22,22,24
111:6,14,16,18,24
112:2,14
**house** 8:16
**HR** 113:22
**humiliation** 26:19
26:21 27:25 28:14
**hundred** 10:8,8
**hurt** 22:9
**hut** 27:13,14

_____
_____ **I**

**idea** 56:23
**identification** 12:9
12:15 18:7,12 36:6
36:11 37:24 38:9
41:6,12 45:2,8
50:10,21 69:18
70:2 71:9,16 72:22
73:15 76:3,12 79:4
79:12 80:16 81:2
82:7,14 85:21 86:4
87:25 88:8 91:11
91:17 93:8,15
113:18,25 126:22
127:3 128:7,13
130:22 131:4
145:8,14 151:25
152:9 154:15
155:8 160:4,10
161:11,17 167:11
167:18 170:11,21
174:23 175:10
176:13,22 180:3,9
183:24 184:5,24
185:7 187:12,16
187:22 189:6,12
192:5,11 193:24
194:7 195:12,18
197:4,13 198:17
199:7 202:7,14
**identified** 51:22,23
**identify** 51:13,17,18
**ignore** 54:5,12
**II** 176:14,21 208:4
**ill** 141:3
**illness** 143:18
**immediately** 32:22
183:5
**immigration** 32:22
34:12 35:7
**impair** 6:11
**impede** 164:19
**impose** 21:23 22:3
**impression** 86:23
173:23
**inability** 28:25

**inaccurate** 142:7,10
**incline** 22:21,21
**included** 37:3
**including** 15:19
39:14,14,15 94:20
113:20
**income** 29:10 130:3
130:6,23 131:18
131:19,24 141:16
143:22 144:11
151:6 206:24
**incorporated** 67:17
**increase** 143:2
**increased** 142:13
**incur** 135:25
**independent** 53:10
62:16 69:7 172:23
173:16,23
**indicating** 14:11
42:19 43:9 114:22
114:24 115:2
132:5 159:13,20
162:18 168:17
169:23 171:14,18
172:7 190:22
**indication** 169:21
**indicator** 40:17
**individual** 97:24
**individually** 102:19
**individuals** 91:3,6
98:23 99:25
103:11,22 104:15
104:24 105:3
106:24,24
**infection** 4:17
**influence** 6:9
**inform** 87:14
**information** 5:13
40:8,12 51:3,4
55:5 62:7 63:10,11
69:8 94:19 96:5
107:14 123:23
124:10 128:9
129:3 132:9,10,11
133:3 162:11

175:22 185:18
203:13 206:22
**informed** 88:16
192:2
**informing** 82:24
88:18
**Ingoglia** 79:5 80:5,6
184:12 206:4
**initial** 47:25
**initially** 65:8 66:20
95:5,13
**injured** 25:3 58:10
**injuring** 87:3 91:25
**insignificant** 108:5
**insist** 25:4
**inspection** 39:12
62:11 86:9
**installation** 39:11
**installing** 121:6
**instances** 47:19
55:21
**instate** 182:19
**institute** 37:4,7,11
123:21
**institution** 34:22
**instructed** 53:8
188:23
**instruction** 61:2
62:8
**instructions** 6:22
59:19 64:4 77:11
185:15
**insurance** 129:15
132:25 133:7
134:13,14,15,16
134:18 137:13,14
140:2,4,5,6
**insure** 134:22 136:6
**intelligent** 130:11
**intense** 143:21
**interaction** 55:8
**interested** 210:16
**interim** 30:7,10
**Intermittently**
95:10

**Interrogatories**
50:17 205:16
**Interrogatory** 51:12
**invited** 27:8
**invoices** 101:20
**involve** 168:23
**involved** 33:22 64:7
66:17 104:20
122:20 141:15
158:6
**involvement** 57:16
58:18,21 69:9
**IRS** 103:3 126:11
**issuance** 162:11
**issue** 58:25 78:20,23
80:9 82:4
**issued** 9:15 58:9
71:25 72:5,7,9,10
72:12,13,13 76:22
78:19,24 154:8,11
156:5
**issues** 70:14 131:19
131:24
**issuing** 73:22
**item** 43:18
**items** 29:5,7
**I-N-G-O-G-L-I-A**
79:6

---
**J**
**J** 60:9 72:23 73:14
88:3 205:21
206:14
**Jamaica** 4:12 7:24
8:12 107:22
202:21
**James** 60:10
**January** 114:13,18
116:5,5,13,20
117:2,3,6,10,12,14
141:7 154:22
155:3,11,11 166:3
166:9 197:9
**Jean** 69:14
**Jennifer** 160:5

167:12
**Jersey** 32:5
**JJ** 180:4,8 208:5
**job** 15:9 38:2,10
40:4 45:3 49:2
52:25 100:14,22
100:23 101:17,23
120:10 121:8
123:21 134:21
138:2 164:20
192:24 198:20
200:17 205:11,14
**jobs** 40:7
**John** 59:25 76:6
82:9 85:23 88:3
113:21 205:24
206:10,12,14,19
**jointly** 173:6
**Joseph** 61:12
**JR** 2:20
**judge** 93:11 94:11
206:18
**July** 16:11 35:25
36:7 161:12
163:12,13,14
164:10 180:5
204:6
**June** 16:10 157:5
159:22 161:6
162:3,6,21,25
163:3,10 167:14
167:20,23 168:25
169:4
**Justice** 94:11

---
**K**
**K** 4:2 76:4,11
205:23
**keep** 31:2 39:24
**Ken** 207:18
**Kenneth** 152:19
167:13
**Kevin** 59:16,21 76:5
205:24
**kind** 4:17 64:11

147:6 183:18
**kinds** 23:24
**KK** 183:25 184:4
208:7
**knee** 168:6,7
**knew** 25:6 130:10
**know** 4:18 5:2,12
8:9,21 14:21 16:4
16:5 28:5 40:3,4
42:2 49:14 63:17
63:17 64:2,3 66:5
66:10,11,20 67:19
69:12,16 72:17
78:13 86:17 92:20
99:2 109:7 110:22
111:25 115:14
125:10,13,16
140:15 141:18,24
141:25 143:24
144:6,14,16
165:23 169:6
174:21 199:25
201:14,23 202:5
203:5,5,14,23
**knowing** 74:19
130:15
**knowledge** 12:24
51:9 54:3 63:12
132:12,13

---
**L**
**L** 4:2 79:5,11 206:4
**lab** 135:20,21
**labeled** 161:20
**labor** 79:6 163:19
192:3
**labs** 134:8
**laptop** 136:3,4
**late** 148:24
**law** 40:3,4
**lawyer** 169:11,12,12
169:17,19
**leads** 114:15 146:23
172:24
**lease** 149:15 150:15

| | | | |
|---|---|---|---|
| leased 149:13 150:6 150:14 | 42:15 46:2 63:23 64:13 104:16 183:16 204:8 | live 7:22 8:8,10 9:9 39:22 | lot 29:3 151:11 167:4 |
| leave 43:18 115:11 163:21 | level 9:20 | lived 7:4,23 9:18 178:2 | low 39:16 |
| leaving 163:19 | levels 49:8 | lives 8:9 201:15 | lower 159:15 |
| led 64:8 67:10,12 127:9 162:6 167:22 | Libowitz 152:4,15 180:15,18 | living 7:5,11,16,18 7:20 8:4 9:2 133:5 176:7 177:24 193:17,19 201:15 | Luard 113:21 206:19 |
| Lee 60:9,10,14 85:10,12 88:3 206:14 | licenses 138:9 | | lunch 92:13,15 |
| | licensing 138:11,12 138:13 | Livingston 1:10 2:14 200:3,4,6 | luncheon 92:22 |
| left 7:11 37:18 144:17 | Lichten 2:4,9 42:6 42:12 43:8 44:2 50:14 67:23 68:4 73:12 74:10 78:7 82:21 92:14,18 93:11,16,22 101:9 105:7 106:9,12,13 106:16 114:21,25 128:24 130:19 132:17 145:15 155:15,18,21 156:19,23 159:8 159:20 165:2 182:7,14 183:20 204:16 205:15 206:17 | LLC 211:2 | —————————— |
| legal 134:25 135:8 135:15 | | Local 175:23 | **M** |
| legs 19:22,23,24 20:22 22:8 24:19 186:11 | | located 107:21,22 | M 80:17,25 82:3 206:6 |
| Lehigh 71:23 | | location 45:22 77:12 77:14 78:22 113:15 | MAC 162:15,21 163:18 168:11 183:10 184:13 186:12 188:16 189:3 190:15,17 190:21 200:5 |
| Lelar 115:6 | | locations 27:13 45:20 49:11,12 | machinery 136:9 |
| Lessons 107:3,4,25 109:12,17 112:24 | | Locust 40:18,19,20 46:18 47:10,24 49:13,16,18 50:5 74:2 76:22 78:24 | Mackenzie 168:10 |
| letter 50:13 57:7,7 57:10 62:6 73:8 93:9 94:7,10 106:12 160:5,15 160:20,24 161:12 164:2 165:4,8 167:12,24,25 169:25 170:8,13 170:16,23,24 171:4,6,18 172:5,6 172:8,10,16 183:11 184:11 185:3,11 186:17 186:20 189:7,17 189:23 190:2 195:13,19 197:7 197:19 205:15 206:17 207:14,16 207:18,20,21 208:9,14,20,24 | | long 7:3 19:19,25 20:9,22,24 23:3 32:19 46:13 47:5 47:11 75:3 105:23 150:15 199:25 | Magistrate 93:11 206:18 |
| | light 38:5 40:22 44:22,23 134:21 | | mail 160:22 176:6 |
| | limitation 5:3 21:23 22:3,4,5,6,7,7 | longer 93:6 107:23 | mailbox 194:25 195:2 |
| | limitations 15:15 198:6 | long-term 201:3 | mailed 189:25 190:7 |
| | limited 141:13,15 | look 63:24 119:15 142:17 159:14 180:21 | mailings 175:25 |
| | line 39:21 77:22 132:22 133:24 134:3,12,21,25 135:16 136:8 137:9,18 138:8,18 138:25 139:13,25 140:11 167:14 | looked 163:2 | maintain 84:15 135:22,23,24 137:13,14,15 138:15 194:16 |
| | | looking 28:3 42:15 114:19 133:24 135:16 136:22 139:25 151:5 161:19 168:14 171:4 182:5 | maintained 195:5 |
| | | | maintainer 19:9 38:5 40:22 44:14 44:22,23 45:4,15 45:24 |
| | | | maintainer's 38:3 38:11 40:11 |
| | lines 57:25 80:8 | loss 28:23,24 29:5 129:23 132:21 139:12 | maintenance 34:9 36:4 39:11 69:23 72:25 137:4,10 |
| | listed 39:5 | | major 10:10 |
| letters 93:17 194:23 195:3 | listen 52:20,21 165:2 | lost 26:22,22,23 29:6 64:11 144:25 | majority 135:21 |
| let's 23:2 29:4 41:24 | little 64:13 | | Management 175:20 |

Manager 79:6
manholes 84:17,18
manner 55:24
  102:14,17 158:16
manufacturing
  33:23
March 18:9 26:4,5
  26:14 79:19 80:6
  84:21 85:2 166:2,8
  177:21 178:9
marital 202:22
mark 12:9 18:7 36:6
  37:24 41:6 45:2
  50:10 69:18 71:9
  72:22,24 76:3 79:4
  80:16 82:7 85:21
  87:25 91:11 93:8
  113:18 126:22
  128:7 130:22
  145:8 151:25
  154:15,21 160:4
  161:11 167:11
  170:10 174:23
  176:13 180:3
  183:24 184:24
  187:12,15 189:6
  192:5 193:24
  195:12 197:4
  198:17 202:7
  205:21
marked 12:13 18:10
  36:10 38:8 41:11
  42:21 45:6 50:20
  69:25 71:14 73:14
  76:10 79:10 80:25
  82:12 86:2 88:6
  91:15 93:13
  113:23 126:25
  128:11 131:2
  145:13 152:7
  155:7 160:8
  161:15 165:11
  167:16 170:19
  175:8 176:20
  180:7 184:3 185:6

187:20 189:10
  192:9 194:5
  195:16 197:12
  199:6 202:12
marriage 210:15
married 9:10,11
Mary 110:8,11
Mashret 152:4
material 49:4 122:2
materials 119:24
  120:8,11,20,24
  121:11,22,25
  122:3,12,13,15,17
  122:18,20 123:3
  137:22 139:15
math 34:21 35:4
matter 26:6,10
  58:13 81:16
  152:18 210:17
matters 7:2 58:22
ma'am 16:21 17:6
  17:17 22:13 28:15
  33:25 81:22,25
  82:5 83:21 86:17
  87:9,13 92:7 105:9
  105:12,14,16
  109:19 110:17
  123:8 137:8 165:8
  178:5,7
McGreal 57:19,20
  58:16,24 59:5,13
  59:20 61:3 62:9
  154:24 155:4
  165:16 207:10,12
McGreal's 58:21
  62:6
mean 7:7,14 17:21
  33:6,18,24 34:24
  39:7 55:18 96:7
  106:16 107:19
  110:19 116:19
  134:17 164:7,21
  164:23 186:24
meaning 8:15
means 39:24 109:3,4

123:18 149:9
meant 106:13,20
  164:13
Meany 44:6
mechanism 173:12
medical 15:15,18,22
  16:15 57:25 62:16
  62:24,24 63:11
  64:2 81:16 156:13
  158:22 159:3
  161:5 168:11
  171:21 173:18
  182:23 183:4,13
  184:21 185:13,20
  185:21 186:10,22
  186:24 196:18,21
  196:25 197:23
  198:7
medically 166:16
  197:24
medication 5:19,22
  5:23,25
medications 5:15
  28:12
medicines 6:5
meet 13:19
meetings 70:11
members 169:10
memo 72:23 76:4
  79:5,22 80:12 82:8
  85:22 88:2 155:11
  155:12 187:17
  192:6 205:21,23
  206:4,9,11,13
  207:10,12 208:12
  208:16
memory 77:8
mental 26:18,20
  27:24 28:13
mention 29:2
mentioned 29:5,13
  123:9,11
Mercury 39:15
met 13:16 80:10
  125:22

Michelle 62:14,22
  64:5 193:25
  208:18
Microsoft 104:22
  123:12,13,22
  124:18,20 138:16
  143:19
Microsystems
  104:23 124:21
middle 150:2 175:19
Mignon 202:11,18
  209:8
migrate 12:2,4
mind 17:13 182:8
mine 4:16 203:13
mini 69:21 70:7,10
misheard 11:6
missing 186:3,3
MM 187:13,21
  190:9 208:11
mobile 74:4,13
  76:21,23
model 30:3,14 31:6
  145:24 146:2
  147:2,25 149:4
modified 118:4
  153:18
monetary 28:18,19
  58:8
money 102:5 108:8
  121:14
monies 27:9
month 24:14,16
  75:4,5 116:11
  118:5
months 191:4
morning 84:9
mother 12:6
motive 171:17
motor 139:7,8 145:9
move 47:23 112:12
moving 132:3
  138:21,22
MOW 69:21 71:23
  85:13 205:18,18

205:18,22
**MSII** 60:10 85:10
88:3
**MS12** 27:22
**mug** 27:13
**Multiple** 25:10,20
100:13

_____
**N**

N 80:21,25 81:19
92:24,24,24 205:2
206:8
**name** 4:9 7:25 8:6
53:23 57:6 59:16
69:15 99:11 113:8
135:14 211:3,4
**named** 98:22 99:11
**names** 98:25 107:2
**national** 11:18,21
**nature** 19:17 20:18
26:20 33:11,14
34:7,15 51:20
84:14 95:24 97:8
98:10 100:14
107:8,12 110:12
124:6 131:23
**necessary** 5:13
39:24 110:21
**need** 4:22,23 21:25
86:17 123:19,20
134:22 138:2
157:16 188:15
190:14 191:21
**needed** 6:2 65:23
132:2 192:24
**needs** 52:20 96:5
**neither** 86:11
**network** 95:7 120:3
**never** 14:10 16:25
17:7 39:17,20
53:12 72:6,7,13
76:18 77:18 80:10
82:17 130:4
203:24
**new** 1:3,8,10,18 2:8

2:8,12,16 4:12
13:5 31:12,24 32:5
33:5 37:3,6,10
39:6,25 86:15
87:16 96:10,12,14
140:9 144:9 150:5
194:17 198:9,23
202:3,10,21 203:3
203:10 204:6
210:6
**News** 32:6 34:3
**night** 79:24
**nights** 47:16 79:25
89:22
**nine** 14:13 18:25
25:16 72:10
118:21 132:15,16
132:17,19,22
**NN** 187:17,21,24
208:12
**nod** 4:23
**non-prescription**
5:22,24
**normal** 23:21,23,25
24:2
**Norman** 56:17
**notable** 142:12
**Notary** 1:18 3:14
4:4,8 204:23 210:5
211:24
**noted** 93:5 204:17
**notes** 165:21,22
**notice** 16:22 188:4
193:3,5
**notices** 41:18 176:11
**notification** 80:19
91:13 92:9 206:6
206:16
**notified** 176:11
**notify** 157:11,16,17
157:21 190:23
**Nova** 143:8
**November** 147:16
147:16,20 170:14
170:24 195:14,23

195:25 196:2,3,9
196:19 203:4
**number** 8:14,15,16
8:18 22:16 36:8
39:4 51:17 73:2
77:8 78:11 80:20
82:11 91:14
101:24 104:19
114:3 143:6,16
152:6 154:20
160:7 161:14,22
170:23
**numbered** 36:20
41:9,21 69:19,21
71:13 73:3 76:8
79:9 80:23 85:25
88:5 114:9 115:24
154:17 155:4
156:18 167:15
182:9 198:3
**numbers** 41:25 73:7
73:10 117:17
181:20 198:4
**numerous** 29:2
**NYC** 209:7
**NYCTA** 209:9
211:3

_____
**O**

O 4:2 60:17 82:8,13
84:9 92:24,24,24
206:9
**oath** 93:2 152:24
153:3,6 177:18
**object** 128:25
145:16
**objection** 73:11
101:9 106:9
145:20 156:19
**objections** 3:9
**observation** 73:5
**obtain** 9:23 30:17
31:9 74:8,12 75:23
84:22 85:3 123:12
127:23 128:3

135:11 138:14
148:22 166:3,9,17
185:13,17 194:20
**obtained** 17:14,16
17:17 27:24 75:15
124:7 134:9
145:18 166:13,13
167:7 171:13,18
195:6
**obtaining** 30:22
124:15
**obviously** 22:23
**occasionally** 19:6
**occupational** 158:19
171:22 173:11
**occur** 40:25 44:16
126:2
**occurred** 79:22
**occurring** 182:12
**October** 13:3,8 26:8
26:15 56:7 58:3,13
58:19 59:9,11,23
60:6,7,14 61:4,5
61:10,20 62:3,12
76:4 78:3,14 82:8
84:4,7,21 85:2,15
85:22 88:2 89:8,25
90:10,14,19 91:13
93:9 106:7,23
108:12,19,23
109:17 113:3
115:13 126:24
144:18 147:20
148:9 153:14
158:14 194:4,14
200:23 201:5,16
201:18,22 202:3
203:21
**offered** 117:22
174:6
**offhand** 90:2
**office** 2:11 49:6,7
60:12 61:25 94:11
135:15,17,22,23
135:24,25 163:17

Page 16

168:16 175:7
190:6,8 194:16,21
**offices** 199:24
**oh** 6:13 11:6 19:15
41:22 42:22 43:10
72:16 79:15,18
81:5 92:14 114:23
114:23,23 116:4
125:6 138:6 146:5
148:16 150:3
165:25 177:17
180:20 186:21
188:21,21
**okay** 9:14 13:24
19:15 24:5 34:25
43:20 49:12 64:15
65:22 66:15 68:4
77:7 92:11,15,21
94:6 99:6 115:3
129:4 134:6
137:12 143:5
145:15 146:17
151:19 155:23,25
157:2 159:21
162:10 177:8
179:25 182:10
204:12
**old** 10:24 11:9
**Older** 29:12
**once** 38:2
**ones** 39:10 48:11
99:4
**One-five** 111:19,20
**OO** 189:7,11 208:14
**open** 204:14
**opened** 74:23
**operate** 51:25 52:23
140:17,21
**operated** 94:17
129:23,25
**operating** 52:15
140:11
**operation** 39:13
**operations** 49:2
57:21 72:25

**operator** 33:16
204:5
**opinion** 51:14 152:2
152:17 168:4,20
168:22 171:21
172:25 173:3,4,4
173:15,18 186:22
186:25 207:5
**opportunity** 55:4
83:8
**Oracle** 104:23
124:23
**oral** 95:6
**order** 1:20 9:15 42:4
42:11 77:5 121:7
127:20,23 128:3
137:13
**ordinarily** 131:15
**orientation** 46:7
**outcome** 196:11
210:16
**outside** 40:9 104:4
127:17
**overhead** 84:16
**owe** 108:10
**owed** 108:8
**owned** 30:24 145:22
146:24 148:12
**owner** 17:19
**ownership** 145:11
207:4
**Oxford** 74:18 77:19

———————————
**P**

**P** 4:2 73:10 79:8
82:10 85:22,24
86:3 88:4 206:11
**page** 18:24 42:16,16
42:18,21 43:2 51:6
88:18 94:15 114:3
114:9,25 115:2,24
117:17 118:21
132:15,16,17
139:11,12,24
140:8 141:20

149:6,25 150:2
151:15,16,18,20
153:12,13 159:15
161:20,21,22,23
163:15 177:20
197:22 202:24
203:7,7 205:3,7
206:3 207:3 208:3
209:3
**pages** 36:20 41:21
93:19,23,24 94:3
113:19 114:19,20
115:20 126:8
155:13 165:21
**PAGE/LINE(S)**
211:5
**paid** 27:15,15
100:24,25 102:5
102:10,19,21,22
109:24,25 110:3
110:23 119:5
121:20 122:9
123:5 126:19
129:13,22 135:11
174:15,19 178:15
**Paige** 152:20 167:13
169:17,19 207:18
**pain** 24:3 27:4
**pair** 74:18
**panels** 39:19
**paperwork** 199:16
**paragraph** 13:2
18:24 24:20 26:17
28:16 83:6 85:9
88:12,18 94:15,16
119:17,23 152:16
**paragraphs** 76:20
**parenthesis** 94:21
**Parkway** 181:24
**part** 43:13,14,16
60:25 76:16 83:24
121:8 122:13,14
122:20,23 159:15
174:15
**partial** 2:20

**partially** 198:23
**particular** 52:14
98:22
**parties** 3:5 101:7,12
104:21 210:14
**party** 169:10
**pass** 154:9,12 156:4
156:5 158:18
162:12,13
**Pat** 165:15
**Patrick** 57:19 62:6
154:24 155:4
207:10,12
**pay** 9:8 27:20 28:25
29:9,9,10 97:13
100:8 119:2,7,21
120:6,18 122:19
123:2 124:12
126:17 144:2,8
174:13
**paying** 112:21
**payment** 107:24
108:6 127:20,22
127:23 128:3
133:8
**payments** 103:2
126:13 132:25
151:8,22 178:21
178:25
**payroll** 128:8
206:22
**PCM** 79:8
**Peace** 11:20
**Peck** 93:11 94:11
206:18
**penalty** 153:17
**pending** 5:4 204:15
**people** 51:17 99:9
99:14 135:8
191:22 192:2
**Perez** 187:17 192:6
195:14 197:9
199:14 208:12,16
208:20,24
**perform** 19:8 39:25

40:7 109:8 129:12
performed 38:20,24
    45:18 51:19 54:2
    68:19
period 11:20 15:20
    19:20 20:15,24
    21:2,11 33:4 35:9
    35:12 52:6,8 57:9
    78:3 80:12 90:9,14
    90:19 103:10
    105:23 106:7,22
    107:16 108:12
    112:15 114:17
    116:6,9 140:23,25
    141:6 149:14,23
    157:24 166:2,8
    200:22 201:5,12
    203:20
periods 20:11,22
    21:9 106:6,14,18
permanent 191:2,3
permanently 191:11
permission 168:9
    196:17 199:19
persistently 20:21
person 7:10 51:14
    51:23 56:5 90:23
    125:21 130:12
    164:16,18
personal 70:16,18
    71:12 123:12,15
    123:22 133:10,14
    133:19,22 134:10
    134:11 138:11,13
    171:24 172:4
    174:3,5,9
personally 17:24
    59:14 105:20
    158:5 174:17,18
personnel 191:22
    192:2 196:15
    199:2,15,24
    203:11
persons 51:22 99:7
    99:11,12,16,18,23

104:12
person's 57:6
Perusing 12:18
    18:15 36:14,24
    38:14 41:15 45:11
    50:24 70:5 71:19
    73:18 76:15 79:15
    81:5,22 82:17 86:7
    88:11 91:20 114:7
    114:13 115:3,22
    117:20 127:6
    128:16 131:7
    150:3 151:13,23
    152:12 153:21
    155:25 156:9
    159:21 161:24
    163:7 164:3 171:3
    171:8 175:13
    176:25 180:12
    184:8 188:2
    189:15 192:14
    195:21 197:16
    199:10
Pete 184:11
Peter 79:5 206:4
petitioned 12:6
ph 44:7 53:24 61:12
    62:14 63:25 69:14
    115:6 152:5
    168:10 175:4
    194:2,2
pharmacy 107:3,4
    107:10,13,25
    109:12,17 112:24
physical 45:20
    164:11
physically 164:14
    164:19
physician 53:11,18
    174:3,6,10 185:18
pick 47:17 49:18,19
    49:20,21,25 78:14
    78:17
picked 47:19,22
    48:8,9,11,17,19,25

50:5
pictures 26:24 27:6
place 1:16 15:21
    27:18 48:23 77:9
    112:12 132:3
    138:21,21,22,23
    145:4 176:10
    177:25
placed 58:14 60:10
places 133:6
plaintiff 1:6,15 2:5
    4:2 94:17 198:19
plaintiff's 50:12,15
    73:6,10 82:25
    130:23 205:16
plan 158:8 200:25
    201:4 204:2
plans 201:3
plant 34:11
plastered 26:23
plastering 27:6
play 48:24
played 64:3
please 4:8,20,22,25
    5:10,14 12:16
    19:10,17 20:18
    26:19 27:23 28:18
    52:22 53:24 55:6
    107:2 114:4
    123:17 129:18
    142:16 157:20
    164:8
plus 64:21 112:23
pocket 201:2
Pogola 113:7,9
point 18:2 21:20
    33:9 49:14 55:2
    92:13 98:21 151:2
    166:19 183:8
    191:5
Police 202:3 203:3
policy 84:23 85:4
portion 43:18 129:7
    191:15 199:21
position 41:3 51:19

53:13,17 127:12
    175:20
possess 86:11
possible 145:5
possibly 25:7 85:5,6
Post 194:16,21
potential 70:12,22
power 19:9 39:20,21
    44:14 45:4,14,24
    84:15
PP 192:6,10 208:16
prefix 73:8,11
preparation 51:2
    132:8 164:5
prepare 118:16
    127:9
prepared 117:24,25
    118:5,14 164:9
    200:16
preparer 135:13
prescription 5:23
presence 18:3
    122:16
present 2:19 103:14
    145:11 152:20
    153:2,5 195:9
    200:23 201:6,13
    203:22
Presentation 110:7
    110:10
presented 167:25
pretty 143:10,21
    191:19
previous 25:16 54:4
    67:18 148:6
    180:19,21,23
    199:14
previously 75:24
    81:20 175:21
Pre-employment
    202:8 209:6
principals 34:21
    35:4
prior 7:18 9:4 14:13
    31:12,15,17,23

33:4 34:12 54:18 54:20 63:19 75:12 75:19 78:3,6,7 86:21 90:9 108:9 111:9 112:6 113:2 115:16 116:6,9,11 116:18,25 117:4 162:11,15 182:23 183:8 186:5 188:17,18 189:2
**private** 173:17
**probably** 75:4 92:12
**problem** 14:9 19:22 20:20 125:17 145:4
**Procedure** 1:20
**procedures** 52:18 52:18 66:23
**proceed** 37:16 102:17
**proceeded** 102:14
**proceedings** 60:19
**process** 26:11 33:16 33:23 52:9,10 53:9 61:2 65:19,22 68:16 77:25 168:24 171:13
**processed** 67:3 198:13
**processing** 199:16
**produced** 57:25 82:19 130:24 198:18
**production** 50:18 73:7 76:17 82:20 82:25
**professional** 135:2
**Profit** 132:21 139:12
**prognosis** 183:13
**prolonged** 19:20
**promoted** 40:21 44:13,21
**promotion** 40:25
**prompted** 75:22

**proper** 42:10 80:10
**properly** 55:13
**property** 28:23 29:6 29:6 197:20,25 198:14,22
**proprietorship** 94:18
**prosecutor** 169:13
**protect** 70:20,21 87:2
**protection** 9:15 197:21,25 198:14 198:22
**protective** 70:16,19 71:12
**protest** 81:10,11 192:21,22
**provide** 17:22,24 52:24 53:4 55:5,6 89:18 91:4 94:25 95:4,9,12,18 96:3 96:5 97:11 103:11 103:16,19 104:10 105:20 107:10 109:15 110:4,18 111:7,9,15 112:6 112:15 118:2 119:20 124:12 135:8 141:10,13 158:8 160:14 169:24 183:12,13 186:16,19 187:5
**provided** 18:4 51:4 82:24 97:21,22,24 98:6,16,22 103:23 105:8,24 107:13 109:22 110:13,16 110:20 119:25 126:12 170:5 187:8 193:20
**provider** 135:5,6
**providers** 123:10 151:9,22
**provides** 118:8
**providing** 94:18

158:15 168:5 178:12,17 200:17
**provision** 96:2 112:18 121:21
**psychological** 28:11
**public** 1:18 3:14 4:4 4:8 129:15 197:20 204:23 210:5 211:24
**pull** 93:19
**purchase** 120:24 121:7,13 122:2 146:11 147:15 148:8
**purchased** 72:2 121:4,5 122:12,22 168:15
**purchasing** 122:3
**purpose** 27:12 70:9 70:18 119:11,25 127:14 143:12
**purposes** 133:22 143:13
**pursuant** 1:19 119:8
**pursue** 58:7
**push** 21:20
**put** 31:3 58:19 63:23 202:16
**putting** 56:6
**P-O-G-O-L-A** 113:9
**P.C** 2:4
**p.m** 151:4,4 204:11 204:11,17
**P.S** 46:7
**P310** 79:9 206:5
**P322** 80:23 206:8
**P332** 154:17
**P332-54** 207:7
**P378** 160:7
**P378-79** 207:15
**P388** 189:9
**P388-389** 208:15
**P399** 73:4
**P399-402** 205:22
**P403** 76:9 205:24

**P404** 88:5
**P404-P405** 206:14
**P406** 82:11 206:10
**P409** 85:25 206:12
**P417** 161:14 207:17
**P462** 175:5
**P462-65** 207:24
**P467** 154:24
**P467-503** 207:11
**P469** 163:15
**P507** 198:20
**P507-510** 209:5
**P509** 199:21
**P511** 128:10 206:23

---

**Q**

**QQ** 193:25 194:6 208:18
**qualifications** 38:17
**qualified** 197:24
**Queens** 8:12 77:4,19 77:21 107:23
**question** 3:10 5:4,7 5:10,14 6:14 13:23 14:19 16:12,13 17:11 19:16 31:23 38:21 59:10 60:5 63:22 74:7,11,12 82:22 84:25 104:13 122:7 130:14 146:23 153:10 157:20 165:3 198:15
**questioning** 171:12 171:17
**Questionnaire** 202:9 209:7
**questions** 6:11,19 130:20 145:16,19
**quibble** 17:12
**quickly** 104:15
**quite** 8:18 14:8 15:25 39:23 40:5 49:9 55:2,15 56:21 56:22 63:21 66:19

| | | | |
|---|---|---|---|
| 67:8 68:16 95:17<br>96:17,19 116:15<br>117:15 140:20<br>143:25 163:8<br>179:16 200:12<br>201:24,25 203:12<br>―――――――<br>**R**<br>R 4:2,2,2 91:12,16<br>92:24 206:15<br>**Ralph** 57:5,15<br>**range** 100:16<br>**rate** 97:16,20 98:4<br>101:8 102:21<br>104:8 119:21<br>122:10 123:6<br>178:15<br>**rates** 101:19<br>**read** 5:12 162:10<br>191:15 200:11<br>**reading** 19:12 71:7<br>**reads** 149:20<br>**ready** 16:7,13 94:4<br>**really** 40:5 109:20<br>140:16 144:24<br>**reason** 11:8 66:18<br>142:2,9 162:24<br>211:5<br>**reasonable** 13:6<br>26:12<br>**reasons** 138:23,24<br>142:6<br>**recall** 57:9 88:21<br>99:5 194:8 201:3<br>**receive** 9:25 10:7<br>107:24 108:6<br>127:20,21 129:14<br>160:20,24 165:17<br>178:20 193:3<br>195:19<br>**received** 9:21 28:2<br>144:2,9 162:5<br>171:21 175:6<br>178:24 193:5<br>**receiving** 171:20 | 192:25<br>**recess** 92:22 151:3<br>204:10<br>**Recipient** 118:21<br>**reclassification**<br>190:24 191:6,17<br>193:4 194:13<br>195:24 196:12,20<br>196:24 197:2,20<br>199:16 208:22<br>**reclassify** 196:17<br>**recognize** 12:19<br>18:13 36:12,15<br>38:12,15 41:13,16<br>45:9,12 50:22<br>73:16,19 91:18,21<br>94:6,9 114:6<br>115:21 117:19,21<br>118:23 126:9<br>127:4 128:14,17<br>131:5 152:10,13<br>156:8,10 163:25<br>165:12,14 171:10<br>175:11,14 176:23<br>177:2 180:10,13<br>184:6,9 185:8,10<br>187:24 188:3,13<br>188:14 189:13,16<br>190:10,13 192:12<br>192:15 197:14,17<br>199:8<br>**recollect** 89:16<br>**recollection** 6:17<br>149:23 156:3<br>162:2 184:17<br>196:8 202:17<br>203:2<br>**recommended**<br>153:17<br>**recommending**<br>169:16<br>**record** 4:10 41:25<br>48:18 73:9 149:20<br>186:22 191:12,13<br>191:15 210:11 | **records** 36:18 39:24<br>130:13 132:2,2<br>145:3,10 149:7<br>207:4<br>**Recreational** 112:11<br>**rectifiers** 39:15<br>**recurrent** 19:4<br>**Redeployment**<br>199:3 209:4<br>**reexamination**<br>188:11,12,17<br>**refer** 15:2 25:25<br>27:5 52:4 158:23<br>**reference** 125:4<br>170:8<br>**referred** 81:20<br>171:2 173:10<br>181:17,22<br>**referring** 15:8,9<br>26:13 52:7 54:7,8<br>62:20 85:11 150:7<br>150:9 162:9<br>166:23 170:25<br>173:13 182:11,16<br>182:18<br>**refers** 83:7<br>**refinery** 32:5<br>**reflect** 122:9 133:4<br>**reflected** 118:12<br>**refresh** 149:22<br>156:2 161:25<br>184:16 202:16,25<br>**refused** 14:24 15:6<br>15:16,17 54:15<br>182:19<br>**refusing** 54:12<br>**regard** 156:13<br>190:23<br>**regarding** 82:3<br>186:10<br>**Regardless** 98:10<br>**regards** 62:5 180:15<br>**region** 19:5<br>**regular** 22:12 83:25<br>147:13 | **regularly** 5:18<br>**reimburse** 119:9<br>120:7,13 121:21<br>122:2,5,17 123:3<br>**reimbursed** 138:4<br>**reimbursement**<br>119:13 121:24<br>**reimbursing** 121:22<br>**reinstate** 14:24 15:7<br>15:16,17 179:5,11<br>179:22<br>**reinstatement** 179:6<br>179:7,15<br>**reinstituted** 26:8<br>**related** 64:18<br>210:14<br>**relating** 6:20 28:13<br>163:20 177:14<br>**relation** 165:5<br>**relations** 79:7<br>163:19 192:3<br>**relatives** 28:23<br>29:11,12<br>**relay** 39:18<br>**relevant** 98:6<br>**remainder** 174:19<br>**remaining** 126:7<br>**remains** 17:11<br>**remember** 5:13 8:24<br>9:16 15:25 20:17<br>21:6,14,18 23:14<br>24:11,13 27:11,22<br>32:19 33:6,7 41:2<br>44:17,19 46:21<br>54:17,25 55:7,25<br>56:18 57:7 61:24<br>68:11,25 69:2<br>80:13 83:2,5 95:11<br>96:20 105:2,9<br>108:14,16 109:13<br>109:19 111:25<br>112:20 144:10,13<br>144:24 146:14<br>159:12 161:9<br>182:25 189:4 |

193:7 202:5
**remotely** 89:22
**removed** 178:11
**rendered** 100:9
**reneged** 168:3
**rent** 9:8 28:25 29:11
    133:7
**reopen** 65:23
**reopened** 67:15
**repair** 39:12
**repairs** 34:10
    119:25 136:12
    137:2,4,10
**repeat** 5:9 28:9
    38:21 142:16
    166:7
**rephrase** 5:11
    157:20
**replace** 29:19,22,23
    30:5,9 74:3,7
    120:12
**replaced** 134:24
**report** 15:20 80:5
    91:24 92:3 103:2
    153:15,22,22
    162:24 181:8
    186:14 199:13,14
**reported** 67:6
    120:19 122:8
    123:6 144:8 161:4
    181:5
**reporter** 1:17 4:21
    5:8,11
**reporter's** 4:15
**Reporting** 45:22
    211:2
**reports** 186:10,11
**repossessed** 29:14
    29:15,17 148:19
    149:2
**repossession** 28:24
    29:13 30:20
**represent** 132:24
    134:2 135:18
    136:11 137:11,20

138:10,20 139:3
139:14,17 140:3
140:14
**representations**
    18:19,21
**representative**
    169:11
**representatives**
    153:9
**represented** 152:19
**representing** 4:19
    57:23
**represents** 137:21
**request** 13:8 25:9,13
    25:19 50:17 51:13
    199:2 205:17
    209:4
**requested** 13:6
    175:22,25 191:14
**requesting** 185:12
**require** 98:18
**required** 14:10 18:3
    52:2 53:4 87:8,10
    100:15,18,22,23
    101:18,18 120:10
    153:16 164:22,24
    165:6 166:20
**requirement** 38:17
    39:5
**requirements** 13:20
    39:7 71:6 86:16,19
    86:19,20,21,22
    87:17,20 88:25
    166:5,11,15,18
**requires** 118:10,10
    121:11
**requiring** 198:7
**rescheduled** 196:6
**reserved** 3:10
**residence** 9:4
    193:16
**resolve** 82:3
**resource** 123:20
**respect** 75:10 126:7
    165:20

**respective** 3:4
**respectively** 126:14
**response** 50:16
    51:11,12 205:16
**responses** 51:8
**responsibilities** 34:3
    38:16,19,23 39:8,9
    40:10 45:14,17
    117:18 118:17
**responsibility** 7:12
    33:12,15
**responsible** 51:15
    56:6 99:8,12 101:4
    101:5 125:21
    173:22
**rest** 4:24
**restore** 66:21
**restored** 66:14
    154:2
**restricted** 154:19
    184:25 190:25
    191:11 192:16
    193:2 207:8 208:8
**restroom** 4:24
**result** 12:3 17:19
    52:21 58:8 190:19
**resulted** 65:4,15
    67:13
**resume** 35:19,21
**retained** 173:6
    209:9
**return** 11:22 16:8
    16:14,20 50:4 75:7
    130:24 131:12,14
    132:8,12 140:10
    141:17,23 143:23
    144:4,7,12,19
    151:7 161:5 186:4
    188:15 206:24
**returned** 16:16
    75:18 158:10
**returning** 49:25
    162:6 189:2
**returns** 88:19
    136:23 144:21,22

151:6
**review** 12:17 155:12
    171:23 172:2
**revisit** 159:4,19
    162:3,22 163:3,18
    167:7 188:19
**revisited** 190:6
**re-file** 151:13
**Richard** 61:22,23
    85:15,23 206:12
**right** 12:16 31:20
    42:12 46:23 50:7
    63:23 66:6 81:17
    105:2 108:16
    115:3,18 129:5
    130:19 134:4
    148:15 150:4
    163:11 168:7
    170:5 172:21
    177:11 179:20
    181:20 183:16,20
    203:7 204:16
**rights** 83:14,15
**right-hand** 159:18
**Rivera** 2:20 15:19
    30:12 51:24,25
    52:19 53:8 62:2
    68:3 78:2 93:6
    153:23 154:23
    155:3 160:6
    161:13 163:25
    165:15 166:23
    170:18 171:6
    207:10,12,14,16
    207:22
**Rivera's** 53:13
    67:16 163:17
**road** 31:3
**roadbed** 198:8
**Rodney** 79:7 80:2
    206:4
**role** 64:3
**roles** 48:24
**room** 30:13 49:5
    93:6

| | | | |
|---|---|---|---|
| **Rosas** 61:12,13,15 | 162:25 | 162:12 169:22 | **shared** 173:19 |
| 61:19 84:11 | **schedules** 162:17 | 175:22,25 | **Shaw** 27:21,21 |
| **rotary** 39:16 | **scholarship** 10:15 | **sentence** 15:2 | **sheet** 113:21 211:2 |
| **RR** 195:13,17 | 10:17,20 11:25 | **separate** 9:13 | **shifts** 48:23,24 |
| 208:20 | 35:10 | 201:15 | **shoe** 13:22 25:2 59:2 |
| **rugged** 22:23 23:3,8 | **school** 11:10 35:2 | **separated** 9:9 | 64:25 66:7 74:4,14 |
| **Rules** 1:19 | **Schools** 104:3 | 201:15,17 | 76:21 85:4 86:19 |
| **ruling** 67:19,21 | **SCHWARTZ** 2:4 | **separately** 101:3 | 86:20 166:22,22 |
| **RW/Reclassificati...** | **Schwartz's** 94:10 | **September** 41:8 | 169:9 |
| 197:5 | **Scotia** 143:9 | 50:13 58:10 73:25 | **shoes** 22:15 25:2,4,7 |
| | **sealing** 3:5 | 74:5,15 76:21 | 25:15,22,25 52:24 |
| **―――――S―――――** | **second** 13:2 26:5 | 78:25 79:2 130:25 | 53:4,6,10,11,14,15 |
| **S** 92:24,24,24 93:9 | 42:17,20 55:10,17 | 131:12 144:20 | 53:19,20 58:2,6,9 |
| 93:14 205:6 206:2 | 65:7,10 66:4,6 | 150:6 176:15,18 | 58:25 59:4 62:5 |
| 206:17 207:2 | 69:22 76:20 83:6 | 176:18 189:8,20 | 64:19 72:2 73:23 |
| 208:2 209:2 | 152:16 161:21 | 191:18 201:12 | 74:21 75:10,11,12 |
| **Safegard** 77:20 78:5 | 168:22 170:15 | **series** 42:9 | 75:13,16,23 76:8 |
| 78:15 | 171:17 175:5 | **serve** 10:21 | 76:23,24 77:2,3,5 |
| **safely** 173:21 | 177:3,6,8,9 202:15 | **service** 11:18,21 | 77:11,13,15,16,17 |
| **safety** 13:5,21 70:11 | **section** 16:3 40:15 | 56:6 58:14,19 | 77:19,24 78:5,13 |
| 70:14 71:2,11,23 | 40:17 56:25 59:19 | 60:11 80:5 89:6 | 78:16,17,18,20,21 |
| 71:25 73:2,23 74:4 | 76:6 113:12 | 98:5,6 104:10,11 | 78:23,23 79:20 |
| 74:13 75:10 76:22 | **security** 32:4,9,17 | 110:4 111:7,14 | 80:2,3,9,10 82:11 |
| 77:21 78:5,16 | 33:4,12,13 | 119:22 123:11,15 | 83:9 85:7,11,12,18 |
| 79:20 80:19 82:4 | **sedan** 147:4,7 149:8 | 137:15 141:11 | 86:24 87:2,3,8 |
| 82:10 85:4,13 87:5 | **see** 65:12 77:23 | 151:8,22 158:20 | 88:20,24 91:24 |
| 87:8 92:3 153:16 | 85:14 93:25 | **set** 50:16 154:16 | 92:4 166:4,10,13 |
| 164:22,24 165:6 | 166:21 169:3,14 | 194:14 196:13 | 166:14,17 167:8 |
| 166:4,10 198:8 | 174:5 198:4 | 210:9,19 | 168:5,5,13,15,22 |
| 205:20 | **seeing** 184:12 | **Seth** 175:4 | 169:15 177:14 |
| **safety-issued** 72:18 | **seeking** 28:10 | **settle** 58:12 | 180:16 198:8 |
| **Santarpia** 187:18 | **seen** 18:16 70:3, 71:3 | **settlement** 82:2 | **shop** 83:8,11,12,14 |
| 192:7,17 208:13 | 71:17 76:13,18 | **seven** 26:9 89:20 | 83:23 84:3 |
| 208:17 | 79:13 81:3 82:15 | 130:4 | **short** 140:23 151:2 |
| **saw** 62:3 80:2 85:14 | 82:17 86:5 88:9 | **seventeen** 11:2 | 151:3 204:9,10 |
| 163:3 174:2,2 | 171:6,8 | 26:18 28:17 | **shorter** 20:12,15 |
| **saying** 37:2 49:15 | **self** 129:11 | **Seventh** 2:6 | 21:8,12 |
| 92:2 162:23 168:2 | **Self-employed** | **seventy** 97:19 98:3 | **Shorthand** 1:17 |
| 168:4 173:22 | 139:25 | 98:12,13 102:4,5 | **shortly** 44:20 52:8 |
| **says** 85:9 88:12 | **semester** 37:9,19 | 102:20,22 104:7 | 97:5 194:22 |
| 106:12 139:16 | **semesters** 37:20 | 119:22 121:8,10 | **short-period** 140:12 |
| 150:22 156:22 | **send** 195:3 | 122:10,14 123:5 | **shot** 27:13 |
| 159:19 166:24 | **seniority** 48:5 49:7 | 178:16 | **show** 163:7,9,9 |
| 171:19 203:10 | **sent** 46:6 47:20 | **seven-year** 68:15 | 169:14 175:16 |
| **scheduled** 162:3,18 | 85:13,14 128:19 | **severe** 19:2 | **showed** 163:11,13 |

shown 151:21
sic 25:11 104:18
sick 75:2,3 80:11
    192:23,24
side 57:22 159:19
sidewalk 27:16
sign 127:13,14
    128:23 196:15
    200:18
signature 12:21
    36:22 42:17,24
    43:3,24 44:4,6,8,8
    44:9,11 51:5 71:20
    81:6,23 114:8
    115:23 127:7
    128:20 156:15,22
    188:6 192:18
signatures 36:20
    41:21 44:3 156:20
    157:3,3
signed 3:13,15 59:4
    59:6,7 72:12,15,19
    115:6,16 152:4
    172:8 175:4
significant 122:15
significantly 143:8
signing 118:13
similar 116:22
simple 66:18
Simpson 99:6,20
    100:9 101:21,22
    102:5,10,24 103:3
Simpson's 102:9
sir 109:14 111:3
    154:6
sister 7:22 8:5 141:3
sisters 7:20
sister's 7:25 143:18
sit 19:24 24:19
site 48:21,22 49:3
    74:5,14 78:21
sites 49:2
sitting 19:20
situation 22:24
situations 178:3

six 10:5 11:13,15
    22:20 110:22,24
    117:17 191:4
sixty 10:9
six-page 93:16
size 76:24 77:2,3,5
    77:10
skill 91:8
skills 91:9
slow 10:19 53:7
small 108:4 139:20
Smith 161:13
    163:17,24 170:17
    171:5,16 207:16
    207:21
smooth 23:9
software 124:16,17
    124:18,19,25
    125:2
sole 13:16 94:18
solely 65:10
solicited 69:8
    168:23
solid 22:24
solving 70:13
son 141:4
sorry 11:6 28:9
    31:20 34:5,18
    41:22,23 42:6,13
    53:7 83:3 94:6
    106:15,19 108:15
    109:2 110:9 118:7
    129:24 137:24
    142:8 146:5,6,18
    151:18 159:9
    162:8 171:15
    173:2 180:20,23
    191:23
sort 34:22 135:5
sorts 137:23
sounds 73:12 179:16
space 176:7
speak 4:15,25
    103:13
special 77:2,3,5

specialist 69:8
    158:24 173:24
specific 49:2 52:22
    53:15 91:8,8 98:19
    98:20 185:18
specifically 30:25
    120:15 135:10
spell 113:8
Spiegel 161:4
SS 197:5,12 208:22
stamped 38:4,5,12
    45:5 128:10 152:5
    154:24 165:21
    170:13,16 175:5,6
    176:16 180:5
    184:2 185:3
    187:14,19 189:9
    192:8 194:3
    195:15 197:7,10
    198:19
Stan 78:10,15
stand 19:19,24,25
    20:5,7,11 69:22
    70:7,10 159:11
standard 14:16,20
    14:22
standards 13:17
    14:18 83:9
standing 19:7,11,18
    145:20
stapled 93:21
start 99:3,4
started 27:7 31:21
    37:14
starting 32:16
state 1:18 4:8 73:9
    96:10,12,15 210:6
stated 13:20 78:16
    87:22 119:3
    126:17,18 155:13
statement 86:9
    94:23 129:16
statements 129:20
states 1:2 13:3 14:23
    18:25 32:23 76:20

129:7 152:17
    153:13 163:14
    164:8 165:4
    175:19,21 177:20
    177:25
stating 94:16,16
station 198:2
statis 19:3,3
status 204:15
Stay 125:4,5
staying 7:9
steel 13:11 87:8,21
    87:22
steel-toed 86:11
step 174:25 175:17
    207:23
steps 54:20
Steven 187:17 192:6
    195:14 197:8
    208:12,16,20,24
STIPULATED 3:3
    3:8,12
stipulation 54:4,5,6
    54:8,11,13,14 56:9
    57:24 58:3,15,23
    59:4 62:7 80:21
    81:18,19 206:8
stipulations 1:21 3:2
    56:8
stood 20:15
stop 21:25 22:2,9,10
    22:19,22 24:4
stopped 140:24
    141:2
store 77:21 78:16
    136:5
straight 183:21
street 1:10 2:14 8:20
    8:21 84:18 199:23
Stuart 2:9 50:14
    93:10
stub 128:8 206:22
student 35:14
study 10:11
stuff 121:12 137:25

194:24
subcontracted
 99:17,20
subcontracts 99:24
subject 21:21
submit 92:5 113:3,6
 113:13
submitted 51:3
Subscribed 204:20
 211:21
subsequent 55:13
 57:17 59:10,22
 60:6,7,14 61:9,19
 62:11 63:6,14,18
 64:7 68:21 108:19
 108:22 109:3,4,17
 189:24 192:25
subsequently 29:21
 40:21 44:13 190:2
 190:5
substance 6:10 66:2
substantially 142:13
substantiate 86:12
 87:11
substantive 64:22
 65:2 66:6
Suburban 29:15,19
 30:6,21 148:21
 149:5
Subway 84:19,20
suffered 28:17,20
suggested 14:2,5
 168:14 169:9
Suite 2:7
summary 141:23
 142:3
Sun 104:22 124:21
 138:17 143:19
superintendent 56:4
 59:18 60:3 76:6,7
 79:7 88:15 113:11
 181:13 187:18
 192:7 206:4
supervisor 60:18
 61:13,17 64:5

84:10
supervisors 83:15
 88:14
supplied 119:11
supplies 137:19
 139:15
supply 122:16
support 29:11
supposed 84:8,11
 87:2 200:2
sure 8:18 26:9 39:23
 44:18 55:3,16
 56:21,22 95:17
 96:17,19 104:25
 116:16 117:15
 140:20 143:25
 162:9 163:8 167:3
 167:5 203:12
survive 130:4
suspended 13:3
 127:11 144:18
suspension 113:2
 129:8 153:18
 200:23
sustained 19:24
SUV 147:8,11
Svahn 63:10 158:24
 160:6,11 161:3
 167:7,13,19,22
 168:3,19 169:3
 170:9,14 172:3,4
 172:11,19 173:6
 173:11,13 174:2
 183:11 186:12,14
 186:17,23,25
 187:3 188:18,20
 188:22,22 189:3,7
 189:17,19,22
 207:14,18,20
 208:14
Svahn's 62:16,18,19
 63:2 170:23
 186:19
swell 19:21,23,23
 20:23

switch 39:17
sworn 3:15 4:3
 126:23 204:20
 206:20 210:9
 211:21
system 39:6 95:7,7
 123:22
Systems 104:4,22
 124:11,12
_____
          T
T 4:2 92:24 113:19
 113:24 118:22
 152:3 205:6 206:2
 206:19 207:2
 208:2 209:2
TA 83:9 84:23 85:4
 169:11
tab 202:15 203:8
tabbed 202:25
take 4:24 5:4,18,24
 6:4 11:17 15:21
 27:17 31:3 37:10
 92:13 141:4 151:2
 179:18 190:14,16
 200:13,17 204:8
taken 1:16 5:15 6:6
 28:12 92:22 151:3
 154:10 185:20
 204:10
talk 26:14
talked 131:19
talking 48:22 49:17
 86:18,22 98:20
 105:4 136:25
 155:15 169:15
 186:5,7
tasks 98:19
taught 34:19,20
tax 130:23 131:9,11
 131:14,19,24
 132:11 135:13
 136:22 140:10
 141:16,23 142:5
 142:20,23 143:22

144:4,7,11,19,21
 144:22 151:6,21
 206:24
Taxes 138:8
taxpayer 140:11,13
TA-issued 80:3
teach 34:17,20
teaching 35:3
technical 123:20
 124:20,22,24
technicians 107:11
technologies 17:18
 40:8 96:8 103:7,8
 103:12,24 118:23
technology 37:4,7
 37:11 40:13 94:19
 107:15
tell 5:14 22:17 23:15
 90:2,6 115:4
 140:16
telling 188:4
temporarily 83:10
temporary 83:7,13
ten 90:3 92:16
 105:22,24 106:4
 112:3,5 126:8
 133:24 134:3
 139:13 153:13
tension 39:16,17
terms 87:5 116:22
 119:9,10 122:16
Terrace 7:24
terrain 22:14,23
 23:3,3,6,7,11,25
Tertiary 34:23
testified 4:4 7:2 8:4
 64:16 75:17 88:23
 104:14 117:5
 152:21 173:25
 177:18 187:3
testify 152:24
 177:16 178:6
testifying 68:22
testimony 4:21
 35:17 81:21 153:2

153:5 162:20
171:2 187:6 191:7
191:9,10 210:8,11
**testing** 39:12 134:20
**thank** 93:4 155:23
**thing** 22:25 86:18
155:20
**things** 22:16 39:4
139:18 167:5
**think** 7:2 18:23 23:6
25:10 26:4 28:7
29:18 31:4 37:8,19
46:24 48:15 52:20
55:15 56:22 57:18
64:16 67:5 77:14
77:17 92:11 93:20
96:17 103:5
104:14 112:4
115:10 116:15
143:5 144:5,23,23
145:6 161:7 163:8
170:4 190:7
201:23,24 203:6
204:12
**third** 64:9 76:20
85:9 101:7,12
104:21 180:14,17
180:25
**third-party** 104:19
123:10 151:8,22
**thirteen** 113:19
**thirty** 90:13
**thought** 176:9
194:24
**three** 18:24 22:19
32:10,13,15 41:3,4
52:3 64:17 93:23
93:24 94:2 114:3,9
114:20,20,21,23
119:17 139:24
150:23 161:20
163:15 177:9
**till** 103:13
**Tillman** 53:24,25
54:3,23 55:9,22

**time** 1:16 3:11 7:10
7:14,15 9:17 11:21
15:21 16:24 18:2,3
19:20 20:9,22,24
23:17 25:20 26:9
30:12 32:20 35:13
50:4 52:6 55:2
57:9 58:7 72:4,9
73:22 89:8,15,21
94:18 96:24 98:21
103:10 106:2
140:23 141:2,6,9
141:12 144:17
149:11,23 157:10
158:25 159:5
160:17 168:20
174:10 176:9
178:13,18 181:5
191:14 195:6
198:12 200:21,25
201:12 203:16,19
204:7,17
**times** 24:14,16
25:10,20 78:11
108:4
**title** 36:2 38:4,20,24
40:22 41:19 44:14
45:4,18 61:24,25
140:9 197:6,24
198:21 199:4,19
200:19,20 208:22
209:5
**titled** 50:11 71:11
80:18 114:3
115:20 117:17
132:21 198:23
202:8
**titles** 38:3
**today** 6:12 78:14
195:8,8
**toe** 87:8,21
**toes** 13:12,14
**told** 59:8 78:10
181:13 191:20
200:13,16

**tolerate** 22:11
**tool** 83:8,11,12,14
83:22 84:3
**tools** 121:9 135:19
135:20,21
**top** 161:22
**track** 70:13 87:6
198:8
**tracks** 84:19,20
**Tracy** 1:17 210:5,22
**trade** 146:21
**traded** 146:16,20,22
147:23
**training** 46:8 48:2,3
107:10 134:7,7
137:21
**transcript** 210:10
**transfer** 197:6 199:3
200:18 208:23
209:4
**transferred** 79:24
**transient** 178:3
**Transit** 1:8 2:12
4:20 6:21 13:17,20
13:21 15:13 24:21
25:17 26:23 27:3,8
31:13,24 33:5,10
35:24 39:6 40:2
45:22 46:3 53:16
53:21 57:2 58:9
59:5,6 66:22 67:14
72:6,10 73:21
79:20 81:14 85:7
86:15 87:7,16
88:25 91:23 113:4
127:24 130:2,3,10
130:12 144:3,9,18
153:6,10 154:2,8
154:12 158:10
166:4,10,15,18
168:18 169:2,7,12
169:22,25 171:22
172:20 173:7,16
173:20 181:5
183:25 187:13

196:16 197:25
198:9,13,21
199:24 202:10
203:19,23 204:6
208:7,11 209:8
**translate** 101:24
**Travel** 138:18
**treatable** 28:8
**treated** 174:4,11
**treatment** 27:23
28:4
**Trevor** 99:6 102:13
**trial** 3:11
**truck** 74:4,14 76:21
76:24 77:9,10,12
77:15 132:23
**true** 12:23 51:8
105:11,13,15
129:16,17 130:16
152:23 178:4
210:10
**Truthfully** 69:2
**try** 5:2 23:16
**trying** 37:12,13
108:25 166:21
**TT** 198:18 199:6
209:4
**turn** 42:20 114:2
203:7
**Turner** 60:17,23
61:7,16 84:9,10
**turning** 18:24 36:25
38:10 70:25 81:17
115:19 117:16
118:20 129:6
132:15 134:12
139:11,24 140:8
141:20 149:6
151:15 153:12
155:10 156:7
161:18 163:23
165:10 170:22
187:23 190:9
193:8 202:15,24
**twenty** 90:5,8

twenty-four 5:16
6:7
two 22:19 23:8
32:11 37:19,25
38:2 41:2,4 44:2
64:20,21,22 68:15
75:4,19 93:17,19
97:6 103:11 114:3
114:19,20,21,23
119:23 143:7
149:16,17 150:17
150:20 155:13
156:23 157:2
170:11 174:24,25
177:20 207:23
Two-year 141:21
TWU 175:7,23
type 22:14 53:20
134:14
types 23:2
typically 89:24

_____

**U**

U 126:23 127:2
129:6 206:20
ulcers 19:4 74:24
ultimately 156:3
173:22
unable 79:20 151:11
unavailable 157:12
157:19,23
undated 167:13
understand 5:5,6,9
6:22 11:8 13:23
15:3,4 49:9 62:23
63:21 66:16 67:8,9
84:24 86:20 93:3,4
101:10 119:14
130:18 173:9,14
179:9 198:15
200:12
understanding 53:2
66:21 83:16 95:25
understood 6:15
under-employed

201:25
unemployment
129:14
unfortunately 9:12
Unincorporated
140:9
union 13:25 57:22
58:24 59:7 152:19
160:25 169:11,17
169:19 173:7,20
175:23 176:2,9
194:23 195:3
United 1:2 32:23
university 9:24
11:11 35:2,10
unlawfully 145:18
unpaid 109:24,25
110:3,4 112:18
unprepared 153:14
unrelated 93:20
Update 203:11
upgrades 120:2
uphill 23:9
Upper 43:18
upset 191:19
use 4:23 124:13
133:21 134:10,20
USENHEIMER
2:19
Utilities 139:5
utilize 136:6
UU 202:11,13 209:6

_____

**V**

v 88:15 128:8,12
206:22 211:3
Valenti 56:2 60:12
82:9 88:15 206:10
Valid 149:21
Vargas 194:2
208:19
varicose 19:21
various 14:2 94:20
100:13
vary 22:24

vascular 69:7 74:19
158:24 173:24
Vasta 1:17 210:5,22
vehicle 28:24 29:24
29:25 30:5,6,9,18
30:22,23,25 139:7
139:8 145:10
149:13,15,24
150:5,7,10,13,14
198:9 207:4
vehicles 136:9
148:13
veins 19:21
venous 19:3
verbally 154:5
verification 51:6
202:9 209:7
VERITEXT/NEW
211:2
viewed 174:9
Vincent 56:2 82:9
206:10
Virgin 110:8,11
visit 159:5 167:19
167:22 168:19
174:14 182:10
188:18,19,22
189:3,19 190:8
visited 188:21
visits 156:13
vocal 4:22

_____

**W**

W 130:23 131:3
151:6 206:24
wail 28:4
Wait 44:2 74:10
105:7
waited 131:21
waived 3:7
walk 20:21 21:2,8
22:20,21,22 23:4
24:3
Walker 99:7 102:13
102:18,24 103:3

walking 19:7 20:19
20:20 21:24 22:4
22:11,14,15,16,19
23:13,18,22 24:2
want 10:18 48:6
49:4,5 66:24 68:18
85:12 92:14,20
200:19
wanted 29:8 53:16
85:8
wasn't 40:5 42:10
145:5 176:6
192:24
way 39:2 51:15
54:10 69:23 72:25
158:12 210:16
wear 13:5,9 14:6,10
25:2,2,4,7,8,14,22
53:6,11,16,19,20
53:21,22 58:2,6
75:11,11 79:20
80:19 82:4 85:7,8
85:12 86:24 87:4
164:22 165:6
166:6,12,16,24
168:4,15,21
wearing 13:10 14:7
14:8,9,12 25:15,21
25:25 53:15 59:3
75:10,12,13,16,17
88:17 164:24
week 23:15,18 24:6
24:7,9,12 46:15
74:23 89:17,20,23
90:8,13,18 105:20
105:25 118:5
160:21
weep 28:4
went 27:12 28:3
37:8 48:4 49:13,15
49:17 58:5 63:9
67:14 69:7 77:16
77:22 104:16
125:20 162:19,21
168:13 172:11

181:24 183:10
196:24 199:17
**weren't** 14:17 47:20
52:18 67:17,21
80:4 99:15,16
100:2,5
**Wexford** 7:23
**We'll** 183:21
**we're** 98:20 105:4
136:22,25 169:15
201:15
**we've** 163:2
**WHEREOF** 210:18
**wife** 9:9,18 26:22
28:25 145:4
178:10 201:11,14
201:17,21 202:2
202:17,18 203:2
203:13 204:4
**wife's** 203:16,25
**William** 44:6
**willing** 166:5,11
**wiring** 121:12
**withdrawn** 26:7
58:4,25
**witness** 4:11 145:18
155:19,23 205:3
210:8,12,18 211:4
**witnessed** 60:18
**witnesses** 153:2,5,10
**words** 123:19
**wore** 74:21
**work** 16:8,14,17,20
40:13 48:6 58:5,5
70:13,23 72:2,17
72:20 73:24 74:5
74:14 75:7,18 76:8
76:23 83:13,17,22
84:2 85:17,24
86:10 88:19,20,20
89:24 90:7,12,17
91:24 92:3 99:19
99:23 102:9,19
104:12 106:7,22
112:11,23 129:12

153:14,15 154:19
157:12,19,23
164:9,10 181:11
181:14 184:25
188:5 191:2
192:16 193:2
198:8 207:8 208:8
**worked** 56:24,25
61:23,25 83:24
99:8 108:12,19
**working** 16:10
25:16 84:8,12 89:7
125:24 129:24
136:4 141:5,5
157:6
**Worksheet** 141:21
**worn** 75:25
**wouldn't** 98:6
130:14 169:6
**write** 81:9 192:21
**writes** 194:10
**writing** 81:10
**written** 78:10 79:23
95:13,19 96:25
97:10 99:25 100:2
100:4,6 187:7
**wrongful** 51:16,21
54:2,24 55:23
58:18 59:12 60:21
60:23 61:14 68:20

_____
**X**
_____
**x** 1:4,9 145:9,13
205:2,6 206:2
207:2,4 208:2
209:2

_____
**Y**
_____
**Y** 152:2,8 207:5
**Yanche** 72:24
205:21
**yard** 27:15
**yeah** 6:2 48:3 60:8
65:17 78:7 92:19
93:23,25 104:25

106:20 116:8
119:19 143:9
149:10 200:5
**year** 7:6,17 26:15
30:3,14 31:6 32:25
47:12 49:16 68:10
68:10,11 78:12
96:16,16 97:6
107:18,19 109:21
110:25 111:4
112:14 121:17
130:25 131:15
133:9 140:22
142:5,20,23 149:4
151:21 172:15
**yearly** 117:8,9
**years** 10:3 11:2,9,13
11:15 13:25 14:13
25:16 26:9 41:2,3
41:4 68:15 72:10
75:19 126:13,18
129:20 130:5
149:16,17 150:17
150:20,23 196:23
**yellow** 202:15 203:8
**York** 1:3,8,10,19
2:8,8,12,16 4:13
31:13,24 33:5 37:3
37:6,11 39:6,25
86:15 87:16 96:10
96:12,15 140:9
144:9 194:17
198:9,24 202:3,10
202:21 203:3,10
204:6 210:6 211:2
**Yvette** 194:2 208:19

_____
**Z**
_____
**Z** 154:16 155:7
156:7 207:7
**zip** 194:17

_____
**$**
_____
**$1,000** 100:19
101:23,24

**$1,700** 100:19
**$100** 100:19
**$100,000** 178:21,25
**$2,000** 100:19
**$2,018** 137:11
**$2,611** 137:19
**$2,892** 142:21
**$2,998** 134:13
**$29,116** 133:25
142:24
**$30,000** 148:5
**$325** 138:9
**$33,149** 139:2
**$4,000** 133:9
**$4,210** 132:24
**$5,000** 140:13
**$5,612** 139:14
**$598** 138:19
**$650** 135:3,12
**$7,549** 140:3
**$8,988** 136:10 137:2
**$9,600** 135:18

_____
**0**
_____
**05** 4:12 88:5 108:7
**06** 108:7,8

_____
**1**
_____
**1** 25:11 51:12 161:6
182:5 195:14
203:4
**1st** 163:12,13,14
**1/16/07** 208:25
**1/22/03** 207:11,13
**1:00** 92:21
**10** 72:23 128:9
**10/24/06** 206:21
**10/26/00** 206:9,16
**10/26/06** 208:19
**10/26/07** 206:18
**10/27/00** 205:23
206:13
**10/9/00** 206:11
**10:10** 1:12
**100** 46:18 47:10

**175**:23
**10001** 2:8
**1099** 103:4 118:21
  120:20 122:8,9,21
  123:7 125:3
  126:11
**1099s** 103:6
**11** 126:8 141:20
  151:18,20
**11/1/06** 208:21
**11/4/02** 207:21
**11:30** 88:13
**1114** 27:19 46:11,14
  47:4,6,15 48:4,12
  56:4 79:25 113:16
  181:9,16,19,21
  182:10 183:5
**11201** 2:16
**11216** 194:18
**113** 206:19
**11432** 4:13
**1150** 38:6
**1150-1151** 205:12
**1151** 38:6
**1152** 205:12
**1154** 197:7 208:23
**1155** 197:10
**1155-56** 208:25
**12** 126:8 162:21
  205:8
**12th** 2:15
**12/10/06** 206:23
**12/8/06** 208:23
**12/9/02** 207:22
**12/9/2002** 170:16
**12:00** 92:17
**1250** 162:12
**126** 206:21
**1279** 187:19 208:13
**128** 206:23
**13** 1:11 126:8
  154:20 158:20
  159:5 162:16
  211:4
**13-pg** 206:19

**130** 1:10 2:14
  206:24
**1314** 156:18 159:14
**1352** 155:5
**14** 149:21
**145** 207:4
**15** 36:20 134:12
  140:11 185:23
  186:2 196:3
**15th** 184:15,15
  196:2,9
**152** 207:6
**155** 207:7,9,11,13
**1593** 36:21
**1594** 36:22,25
**1596** 36:22
**1597** 36:22
**1598** 36:22
**1599** 36:22
**16** 167:14 187:14,19
  197:9
**16th** 210:19
**160** 207:15
**1600** 36:23
**160026** 194:17
**1601** 36:8,23 205:10
**161** 207:17
**166** 4:12
**166-40** 202:20
**167** 207:19
**17** 134:25
**170** 207:22
**1700** 2:7
**175** 207:24
**176** 208:4
**18** 135:16 205:9
**180** 200:4,5 208:6
**184** 208:7
**185** 208:10
**187** 208:11,13
**189** 208:15
**19** 180:5 191:18
**192** 208:17
**194** 208:19
**195** 208:21

**197** 208:25
**1980** 35:5
**1981** 35:25
**1982** 11:12
**1985** 35:5,7,15
**1989** 35:8,15
**199** 209:5
**1990** 46:24
**1990-something**
  126:3
**1991** 14:18 16:11
  31:20 36:7 47:7
  164:11,16
**1993** 31:18 41:8
**1994** 146:18
**1995** 107:17 113:14
**1996** 31:22 47:7
  94:17 95:3,14,23
  96:2 97:5,6 98:15
  103:13 106:7,22
  107:17 108:12
  158:13
**1997** 75:20,23
  117:14 149:5,5
  150:5,18,24
**1997-issued** 71:23
**1998** 117:12 145:11
  149:18,18 158:13
**1998-present** 207:4
**1999** 31:11 47:7
  49:23 72:23 73:25
  74:5,15 75:18
  76:21 78:25
  117:10 146:12
  150:18,19,19
  158:12 203:4

_____

**2**
_____

**2** 161:12 181:24
**2:17** 151:4
**2:26** 151:4
**20** 149:21
**20A** 136:8
**2000** 13:3,8 25:8,23
  26:14,15,16,16

**31**:8,9 54:9 56:10
  56:11 57:13,17
  58:20,23 59:11,23
  60:6,7,15 61:4,5
  61:10,20 62:12
  63:14 76:5 78:4,15
  79:19 80:22 82:9
  83:11,19,20 84:4,7
  84:21,22 85:2,3,15
  85:22 86:21 87:23
  88:3 89:9,25 90:10
  90:15,20 91:13
  106:8,23 108:13
  108:19,23 109:3,5
  109:18 110:25
  111:21 112:17
  113:3 117:3,6
  129:8 144:19,23
  144:23 145:2,22
  145:25 148:12,14
  148:24 149:19,21
  150:24 153:15
  158:14 159:5,8
  162:16 166:2,9
  200:23 201:5,12
  201:16,18,22
  202:4 203:21
**2000-2001** 9:16
**2001** 9:6 29:18
  30:21 114:14
  116:5,20 117:2
  118:15 148:25
  149:3
**2002** 30:16 53:19
  63:3,7,16 65:4
  67:21 68:6,24
  105:17 114:18
  116:13 126:14
  129:20 136:17,20
  146:22,24 147:3
  149:22 152:4
  154:11,20 156:5
  157:5,10,24
  158:11,15,20
  159:9,10,11,23,24

| | | | |
|---|---|---|---|
| 160:7,12 161:6,12 | 130:23 131:11,14 | **3** | **510** 198:20 |
| 162:4,21,25 | 135:10 136:15,19 | **3** 152:4 162:3,25 | **52** 11:5,6 |
| 170:14,24 171:5 | 136:22 137:6 | **3rd** 159:22 162:7 | **54** 154:17 |
| 172:19 173:8,10 | 140:18,22 141:2 | 163:4,10 | **56** 197:10 |
| 175:3 179:2,8,15 | 142:14,23 143:3,6 | **3/21/00** 206:7 | |
| **2002-2003** 52:11 | 143:15 144:3 | **3/21/2000** 80:17 | **6** |
| **2003** 27:7 55:14 | 147:22 151:7 | **3/26/07** 205:9 | **6/15/06** 190:10 |
| 63:20 68:13 | 180:5 185:23 | **3/8/00** 206:5 | **6/16/04** 207:18 |
| 105:15 126:14 | 186:2 187:14,19 | **3/8/2000** 79:8 | **65** 175:5 |
| 129:20 144:12 | 189:8,20 191:18 | **3:57** 204:11 | **69** 205:19 |
| 145:2 154:23 | 193:20 194:4,14 | **33** 132:18,19 151:17 | |
| 155:3,11 166:3,9 | 194:18 195:7,15 | 151:17 | **7** |
| 167:2,3 175:7 | 195:25 196:4,19 | **35** 11:3,7,9 | **7/19/06** 208:6 |
| 176:15 177:13,22 | 197:7 206:24 | **36** 205:10 | **7/2/02** 207:17 |
| 178:9,22 179:6,14 | **2007** 1:11 18:9 | **369** 170:13,23 | **7/2/2002** 163:24 |
| 179:22 204:6 | 50:13 93:10 96:18 | 207:21 | **70** 165:21 |
| **2004** 27:7 30:19,23 | 96:21 109:21 | **371** 170:17 207:22 | **71** 205:20 |
| 68:14 105:13 | 131:12,17 144:20 | **38** 139:13 205:12 | **72** 176:16 |
| 111:24 112:6,17 | 197:9 204:22 | **389** 189:9 | **73** 205:22 |
| 126:14 129:8,21 | 210:20 211:4,22 | | **745** 146:22 147:3 |
| 143:23 144:4 | **202** 140:9 209:8 | **4** | 148:2 |
| 145:2 146:18 | **21** 50:13 76:21 | **4** 170:14,24 205:4 | **76** 205:24 |
| 147:16 167:14,20 | 137:9 | **4DSD** 149:9 | **78** 45:5 205:14 |
| 167:23 169:2,4 | **22** 137:18 154:23 | **4E** 202:21 | **79** 160:7 206:5 |
| 172:8,11,13,14 | 155:3,11 160:6,12 | **4/25/02** 152:5 | |
| 174:2,7,8,14,15 | **22nd** 155:11 | **4/3/02** 207:6 | **8** |
| 186:14,17,19 | **2201** 180:6 | **4:06** 204:11 | **8** 14:23 15:6,10,12 |
| **2004-2005** 111:13 | **23** 138:8 | **4:07** 204:17 | 15:23 16:2,8,9,14 |
| **2005** 103:20 105:11 | **24** 126:24 | **402** 73:4 | 16:19 197:6 |
| 108:9 111:15,22 | **24A** 138:18 | **41** 205:13 | **8th** 80:6 182:12,14 |
| 126:14 141:17,23 | **240** 46:7 | **417** 152:6 | 182:14 183:8 |
| 142:5,14,20 143:3 | **25** 80:22 138:25 | **42** 11:2,4 | **8/10/99** 205:22 |
| 147:18 148:10 | **26** 18:9 82:8 91:13 | **45** 205:14 | **8/15** 186:7 |
| 151:16,21 | 93:9 194:4,14 | **469** 165:21 | **8/15/06** 185:4 208:7 |
| **2006** 12:12 14:24 | **27** 76:4 78:4,15 88:2 | **488** 69:20 | 208:9,10 |
| 15:6,11,12,23 16:3 | **275** 2:6 | **489** 69:20 71:2 | **8/15/2006** 184:2 |
| 16:8,14,19 30:4 | **28** 140:8 151:17,17 | **49th** 202:20 | 185:2 |
| 65:15 67:13 96:18 | **28th** 176:18 | | **8/16** 188:24 |
| 96:21 103:17,24 | **29** 35:25 139:25 | **5** | **8/16/06** 208:11,13 |
| 105:4,5 107:19,20 | 164:10 176:15 | **5** 189:8,20 | **8/19/98** 71:10 |
| 111:6,9 115:13 | **29th** 176:19 | **5/22/02** 207:14 | 205:20 |
| 119:4 120:9,16,17 | **294** 187:14 208:11 | **5/25/00** 206:8 | **8/9/06** 205:8 207:8 |
| 120:25 121:15,19 | **2964** 176:16 | **5/9/03** 207:24 | **80** 206:7,8 |
| 121:20 122:4,6,24 | **2964-72** 208:4 | **50** 205:17 | **808** 8:17,19 |
| 126:24 128:10 | **2976** 205:14 | **503** 154:25 | **82** 206:10 |

| | | | |
|---|---|---|---|
| **85** 35:13 206:12<br>**87-40** 7:23<br>**88** 206:14<br>**89** 33:2 41:9 205:13 | **988** 42:5 44:9<br>**989** 42:5 44:11<br>**99** 49:24 79:2<br>**99-11** 73:2 205:22 | | |
| **9**<br>**9** 12:11 84:7 85:15<br>  85:22 90:10,14,19<br>  153:14 171:5<br>  175:3,7<br>**9th** 16:11 56:7 58:10<br>  58:13 59:9 62:3<br>  182:13 183:3<br>**9/19/06** 208:17<br>**9/19/2006** 188:13,19<br>  189:3 190:17<br>  192:8<br>**9/21/07** 205:16<br>**9/28/03** 208:4<br>**9/5/06** 208:15<br>**91** 31:19 37:8 46:21<br>  46:22 47:24<br>  206:16<br>**93** 206:18<br>**95** 46:24 48:15<br>**96** 46:24,25 48:15<br>  126:3<br>**97** 150:6,11<br>**978** 43:13<br>**979** 42:4 43:5,8,11<br>  43:13,20,22<br>**98** 41:22 149:8,11<br>  150:9<br>**98-21** 70:25 205:18<br>**98-21A** 69:23 71:24<br>  205:19<br>**98-23** 69:21 205:18<br>**980** 42:16,21<br>**981** 41:22 43:2<br>**982** 42:4<br>**983** 42:4<br>**984** 42:5<br>**985** 42:5 43:23<br>**986** 42:5<br>**987** 42:5 | | | |

DEC/05/2007/WED 05:20 AM                                                                        P. 013

☐ Corrected (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone number | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| CONCORD FAMILY SERVICES, INC | $ | **2002** | |
| | 2 Royalties | Form 1099-MISC | |
| 1221 BEDFORD FAMILY SERVICES,INC | $ | | |
| BROOKLYN          NY 11216 | 3 Other income | 4 Federal income tax withheld | Copy B |
| (718) 398-3499   STAY DANIELS | $ | $ | For Recipient |
| PAYER'S Federal identification number | RECIPIENT'S Identification number | 5 Fishing boat proceeds | 6 Med & health care payments | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| 11-3012742 | 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 | $ | $ | |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | |
| PHILBERT T. GORRICK | | $ 104907.00 | $ | |
| CONTEMPORARY TECHNOLOGY | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ | 10 Crop insurance proceeds | |
| Street address (including apartment number) | | | $ | |
| 166-40 89TH AVENUE | | 11 | 12 | |
| City          State  ZIP code | | | | |
| JAMAICA        NY   11432 | | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
| Account number (optional) | | $ | $ | |
| 15 | | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| | | $ | | $ |

| BAA Form 1099-MISC | (Keep for your records.) | Department of the Treasury — Internal Revenue Service |
|---|---|---|

- - - - - - - - - - - - - - - - - - - - - - - - - - - CUT HERE - - - - - - - - - - - - - - - - - - - - - - - - - -

☐ Void  ☐ Corrected

| PAYER'S name, street address, city, state, ZIP code, and telephone number | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| CONCORD FAMILY SERVICES, INC | $ | **2002** | |
| | 2 Royalties | Form 1099-MISC | |
| 1221 BEDFORD FAMILY SERVICES,INC | $ | | |
| BROOKLYN          NY 11216 | 3 Other income | 4 Federal income tax withheld | Copy C For Payer |
| | $ | $ | |
| PAYER'S Federal identification number | RECIPIENT'S Identification number | 5 Fishing boat proceeds | 6 Med & health care payments | For Privacy Act and Paperwork Reduction Act Notice, see the 2002 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| 11-3012742 | 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 | $ | $ | |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | |
| PHILBERT T. GORRICK | | $ 104907.00 | $ | |
| CONTEMPORARY TECHNOLOGY | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ | 10 Crop insurance proceeds | |
| Street address (including apartment number) | | | | |
| 166-40 89TH AVENUE | | 11 | 12 | |
| City          State  ZIP code | | | | |
| JAMAICA        NY   11432 | | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
| Account number (optional)    2nd TIN Not. ☐ | | $ | $ | |
| 15 | | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| | | $ | | $ |
| | | $ | | $ |

| BAA Form 1099-MISC | | Department of the Treasury — Internal Revenue Service |
|---|---|---|

- - - - - - - - - - - - - - - - - - - - - - - - - - - CUT HERE - - - - - - - - - - - - - - - - - - - - - - - - - -

☐ Void  ☐ Corrected

| PAYER'S name, street address, city, state, ZIP code, and telephone number | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| CONCORD FAMILY SERVICES, INC | $ | **2002** | |
| | 2 Royalties | Form 1099-MISC | |
| 1221 BEDFORD FAMILY SERVICES,INC | $ | | |
| BROOKLYN          NY 11216 | 3 Other income | 4 Federal income tax withheld | Copy 1 For State Tax Department |
| | $ | $ | |
| PAYER'S Federal identification number | RECIPIENT'S Identification number | 5 Fishing boat proceeds | 6 Med & health care payments | |
| 11-3012742 | 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 | $ | $ | |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | |
| PHILBERT T. GORRICK | | $ 104907.00 | $ | |
| CONTEMPORARY TECHNOLOGY | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ | 10 Crop insurance proceeds | |
| Street address (including apartment number) | | | $ | |
| 166-40 89TH AVENUE | | 11 | 12 | |
| City          State  ZIP code | | | | |
| JAMAICA        NY   11432 | | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
| Account number (optional) | | $ | | |
| 15 | | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| | | $ | | $ |

| BAA Form 1099-MISC | FOWA0302  07/26/02 | Department of the Treasury — Internal Revenue Service |
|---|---|---|

DEC/05/2007/WED 05:19 AM                                                                 P. 012

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone number | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| CONCORD FAMILY SERVICES, INC<br>1221 BEDFORD AVENUE<br>BROOKLYN            NY 11216<br>(718) 398-3499   STAY DANIELS | $<br>2 Royalties<br>$<br>3 Other income<br>$ | **2003**<br>Form 1099-MISC<br>4 Federal income tax withheld<br>$ | **Copy B**<br>**For Recipient** |

PAYER'S Federal identification number | RECIPIENT'S identification number
11-3012742 | 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

| RECIPIENT'S name | 5 Fishing boat proceeds | 6 Med & health care payments | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
|---|---|---|---|
| PHILBERT T. GORRICK<br>CONTEMOPRARY TECHNOLOGY | $<br>7 Nonemployee compensation<br>$            131882.01 | $<br>8 Substitute payments in lieu of dividends or interest<br>$ | |

Street address (including apartment number)
166-40 89TH STREET

9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐    10 Crop insurance proceeds $

City            State  ZIP code
JAMAICA         NY 11432

Account number (optional)    11        12

16    13 Excess golden parachute payments    14 Gross proceeds paid to an attorney

16 State tax withheld    17 State/Payer's state no.    18 State income
$    $
$    $

BAA Form 1099-MISC    (Keep for your records.)    Department of the Treasury — Internal Revenue Service

- - - - - - - - - - - - - - - - - - - - - - - CUT HERE - - - - - - - - - - - - - - - - - - - - - - -

☐ VOID    ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone number | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| CONCORD FAMILY SERVICES, INC<br>1221 BEDFORD AVENUE<br>BROOKLYN            NY 11216 | $<br>2 Royalties<br>$<br>3 Other income<br>$ | **2003**<br>Form 1099-MISC<br>4 Federal income tax withheld<br>$ | **Copy C**<br>**For Payer** |

PAYER'S Federal identification number | RECIPIENT'S identification number
11-3012742 | 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

| RECIPIENT'S name | 5 Fishing boat proceeds | 6 Med & health care payments | For Privacy Act and Paperwork Reduction Act Notice, see the 2003 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
|---|---|---|---|
| PHILBERT T. GORRICK<br>CONTEMOPRARY TECHNOLOGY | $<br>7 Nonemployee compensation<br>$            131882.01 | $<br>8 Substitute payments in lieu of dividends or interest<br>$ | |

Street address (including apartment number)
166-40 89TH STREET

9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐    10 Crop insurance proceeds $

City            State  ZIP code
JAMAICA         NY 11432

Account number (optional)    2nd TIN not.    11        12

15    13 Excess golden parachute payments    14 Gross proceeds paid to an attorney

16 State tax withheld    17 State/Payer's state no.    16 State income
$    $
$    $

BAA Form 1099-MISC    Department of the Treasury — Internal Revenue Service

- - - - - - - - - - - - - - - - - - - - - - - CUT HERE - - - - - - - - - - - - - - - - - - - - - - -

☐ VOID    ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone number | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| CONCORD FAMILY SERVICES, INC<br>1221 BEDFORD AVENUE<br>BROOKLYN            NY 11216 | $<br>2 Royalties<br>$<br>3 Other income<br>$ | **2003**<br>Form 1099-MISC<br>4 Federal income tax withheld<br>$ | **Copy 1**<br>**For State Tax Department** |

PAYER'S Federal identification number | RECIPIENT'S identification number
11-3012742 | 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

| RECIPIENT'S name | 5 Fishing boat proceeds | 6 Med & health care payments | |
|---|---|---|---|
| PHILBERT T. GORRICK<br>CONTEMOPRARY TECHNOLOGY | $<br>7 Nonemployee compensation<br>$            131882.01 | $<br>8 Substitute payments in lieu of dividends or interest<br>$ | |

Street address (including apartment number)
166-40 89TH STREET

9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐    10 Crop insurance proceeds $

City            State  ZIP code
JAMAICA         NY 11432

Account number (optional)    11        12

15    13 Excess golden parachute payments    14 Gross proceeds paid to an attorney

16 State tax withheld    17 State/Payer's state no.    18 State income
$    $
$    $

BAA Form 1099-MISC    FDWA0302  05/28/03    Department of the Treasury — Internal Revenue Service

DEC/05/2007/WED 05:19 AM

P. 011

---

☐ CORRECTED (if checked)

**PAYER'S name, street address, city, state, ZIP code, and telephone number**
CONCORD FAMILY SERVICES, INC

1221 BEDFORD AVENUE
BROOKLYN                    NY 11216
(718) 398-3499    STAY DANIELS

| 1 Rents | OMB No. 1545-0115 | **Miscellaneous Income** |
| $ | **2004** | |
| 2 Royalties | Form 1099-MISC    FDWA0302 10/22/04 | |
| $ | | |
| 3 Other income | 4 Federal income tax withheld | **Copy B For Recipient** |
| $ | $ | |

**PAYER'S Federal identification number** 11-3012742    **RECIPIENT'S identification number** 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

| 5 Fishing boat proceeds | 6 Med & health care payments | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| $ | $ | |
| 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | |
| $    111959.46 | $ | |

**RECIPIENT'S name**
PHILBERT T. GORRICK
CONTEMPORARY TECHNOLOGY

**Street address (including apartment number)**
166-40 89TH STREET

| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| 11 | 12 | |

**City** JAMAICA    **State** NY    **ZIP code** 11432

| 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
| **Account number (optional)** | |
| | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| 15 | $ | | $ |
| | $ | | $ |

BAA Form 1099-MISC    (Keep for your records.)    Department of the Treasury — Internal Revenue Service

---

☐ VOID    ☐ CORRECTED

**PAYER'S name, street address, city, state, ZIP code, and telephone number**
CONCORD FAMILY SERVICES, INC

1221 BEDFORD AVENUE
BROOKLYN                    NY 11216

| 1 Rents | OMB No. 1545-0115 | **Miscellaneous Income** |
| $ | **2004** | |
| 2 Royalties | Form 1099-MISC | |
| $ | | |
| 3 Other income | 4 Federal income tax withheld | **Copy C For Payer** |
| $ | $ | |

**PAYER'S Federal identification number** 11-3012742    **RECIPIENT'S identification number** 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

| 5 Fishing boat proceeds | 6 Med & health care payments | For Privacy Act and Paperwork Reduction Act Notice, see the 2004 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| $ | $ | |
| 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | |
| $    111959.46 | $ | |

**RECIPIENT'S name**
PHILBERT T. GORRICK
CONTEMPORARY TECHNOLOGY

**Street address (including apartment number)**
166-40 89TH STREET

| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| 11 | 12 | |

**City** JAMAICA    **State** NY    **ZIP code** 11432

| **Account number (optional)** | 2nd TIN not. ☐ |
| 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
| | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| 15 | $ | | $ |

BAA Form 1099-MISC    FDWA0302 10/22/04    Department of the Treasury — Internal Revenue Service

---

☐ VOID    ☐ CORRECTED

**PAYER'S name, street address, city, state, ZIP code, and telephone number**
CONCORD FAMILY SERVICES, INC

1221 BEDFORD AVENUE
BROOKLYN                    NY 11216

| 1 Rents | OMB No. 1545-0115 | **Miscellaneous Income** |
| $ | **2004** | |
| 2 Royalties | Form 1099-MISC | |
| $ | | |
| 3 Other income | 4 Federal income tax withheld | **Copy 1 For State Tax Department** |
| $ | $ | |

**PAYER'S Federal identification number** 11-3012742    **RECIPIENT'S identification number** 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

| 5 Fishing boat proceeds | 6 Med & health care payments |
| $ | $ |
| 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest |
| $    111959.46 | $ |

**RECIPIENT'S name**
PHILBERT T. GORRICK
CONTEMPORARY TECHNOLOGY

**Street address (including apartment number)**
166-40 89TH STREET

| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ |
| 11 | 12 |

**City** JAMAICA    **State** NY    **ZIP code** 11432

| **Account number (optional)** | |
| 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
| | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
| 15 | $ | | $ |
| | $ | | $ |

BAA Form 1099-MISC    FDWA0302 10/22/04    Department of the Treasury — Internal Revenue Service

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X

NEW YORK CITY TRANSIT AUTHORITY,                    Index No. 400672/08

               Plaintiff,

                                                    NOTICE OF MOTION

   - against -

PHILBERT GORRICK,

               Defendant.

-----------------------------------------------------------------------X

      **PLEASE TAKE NOTICE** that, upon the Complaint, the Affirmation of Stuart Lichten,

the Declaration of Kenneth Page, and all prior proceedings had herein, defendant Philbert Gorrick

will move this Court, at the Courthouse thereof located at 60 Centre Street, New York, New York,

at the Motion Support Part, Room 130, on June 18, 2008 at 9:30 o'clock in the forenoon of that

day, for an Order dismissing the Complaint, pursuant to CPLR § 3211(a)(1), (2), (5), and (7),

upon the grounds that a defense is founded upon documentary evidence, the Court has not

jurisdiction of the subject matter of the causes of action, the causes of action may not be

maintained because of arbitration and award, and the pleading fails to state a cause of action, and

granting such other and further relief as this Court deems just, proper, and equitable.

Dated: New York, New York
      May 8, 2008

                                     _____
                                     Stuart Lichten
                                     SCHWARTZ, LICHTEN & BRIGHT, P.C.
                                     Attorneys for Defendant
                                     275 Seventh Avenue - 17th Floor
                                     New York, New York  10001
                                     (212) 228-6320

TO:   Ann Burton Goetcheus, Esq.
      NEW YORK CITY TRANSIT AUTHORITY
      130 Livingston Street - Room 1233
      Brooklyn, New York  11201
      (718) 694-3889

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

NEW YORK CITY TRANSIT AUTHORITY,                    Index No. 400672/08

            Plaintiff,

    - against -                                         AFFIRMATION

PHILBERT GORRICK,

            Defendant.

-------------------------------------------------------------------X

    STUART LICHTEN, an attorney duly admitted to practice law in the State of New York and the attorney of record for defendant, affirms to be true, under the penalties of perjury and pursuant to CPLR § 2106, the following:

    1. I am a member of the law firm of Schwartz, Lichten & Bright, P.C., which represents defendant in this action. I submit this Affirmation in support of defendant's motion to dismiss the Complaint.

    2. Attached as Exhibit A is the Complaint in this action.

    3. Attached as Exhibit B is an Order of the United States District Court for the Southern District of New York in Gorrick v. New York City Transit Authority, 07 Civ. 2529 (GBD), dated February 25, 2008.

    4. Attached as Exhibit C is a Disciplinary Action Notification issued by plaintiff New York City Transit Authority ("TA") to defendant Philbert Gorrick ("Gorrick"), dated February 5, 2003.

5. Attached as Exhibit D is a copy of a letter from the TA to Gorrick regarding reclassification examination, dated September 27, 2006.

6 Attached as Exhibit E is a copy of a letter from the TA to Gorrick regarding notice of termination, dated May 18, 2007.


Dated: New York, New York
   May 7, 2008

STUART LICHTEN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

GORRICK                                                              ORDER   FEB 0 5 2008

                                    Plaintiff,                       07 Civ. 02529 (GBD)

                    -against-

NEW YORK CITY TRANSIT AUTHORITY

                                    Defendant.
---------------------------------------------------------------x

GEORGE B. DANIELS, District Judge:

       On March 27, 2007, Plaintiff filed a complaint alleging discrimination on the basis of

disability. On December 12, 2007, Defendant filed a motion seeking leave to amend its answer

and to add three counterclaims for fraudulent misrepresentation, fraudulent concealment, and

unjust enrichment under New York common law. Defendant alleges that it received newly

discovered information on December 4, 2007, which reveals that Plaintiff defrauded Defendant

out of $108,820.20 by misrepresenting and concealing his income from other employment in

order to obtain an award of back pay.  Plaintiff opposes the motion.

       For this Court to exercise supplemental jurisdiction, "[t]he state and federal claims must

derive from a common nucleus of operative fact." United Mine Workers of America v. Gibbs

383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966). "In determining whether two disputes arise from

a 'common nucleus of operative fact,' [the Second Circuit] ha[s] traditionally asked whether 'the

facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim

necessarily brought the facts underlying the state claim before the court.'" Achtman v. Kirby,

McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting Lyndonville Sav. Bank &

Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (internal citations omitted)). "It has

consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's
right." Gibbs, 388 U.S. at 726.

Defendant's proposed counterclaims allege fraud in a union grievance that was decided in
plaintiff's favor via labor arbitration in June 2006, arising from plaintiff's suspension for
disciplinary charges. The counterclaims arise from a separate and unrelated set of facts than
plaintiff's claim of disability discrimination in the case before this Court. Thus, the separate
claims do not arise out of a common nucleus of operative fact.

Defendant's motion to amend its answer and add counterclaims is denied.


Dated: New York, New York                    SO ORDERED:
        February 5, 2008

                                             *George B. Daniels*
                                             GEORGE B. DANIELS
                                             United States District Judge

# DISCIPLINARY ACTION NOTIFICATION

New York City Transit Authority

*Electrical*
Department

03 2901 0002
(D.A.R. #)

NAME *Philbert Gorrick*   PASS *330899*   TITLE *PCM*

LOCATION *100 Locust Avenue*   JOB NO. *PW7701*   HOURS *8a-4p* RDO *Sun/Sa*

REPORTED BY *Gustavo Rivera*   TITLE *Director, Safety*   DATE *2/5/03*

RULES VIOLATED *2b 4a 4b 90. Bulletin 99-11 MW2 SR#2.01.019* SUSPENDED *10 1 9 1 00*
*Opinion and Award in DAN # 00-2901-0110*

STATEMENT OF FACTS
*You have failed to comply with the Tripartite Arbitration Board's Opinion and Awar*
*in DAN # 00-2901-0110.*

DECISION *Dismissal*

*C. Tillman* (signature)   TITLE *ASA*   DATE *2/5/03*
Supervisor's Signature

EMPLOYEE NOTIFIED _____   UNION NOTIFIED _____
Signature                    Date              Signature                  Date

## EMPLOYEE ACCEPTANCE

I accept the above decision_____   Date _____
Employee Signature

Union Representative _____   Date _____

*Recieved on 2/13/03 M. Ramos*

## EMPLOYEE APPEAL

APPEAL OF THIS NOTIFICATION MUST BE MADE WITHIN FIVE DAYS OF RECEIPT OF NOTIFICATION

I **do not** accept the above decision and request a meeting *For Philbert Gorrick* *2/1.*
Employee Signature   *Milton Ramos* *2/13*
Union Representative   Date

Date Step I Meeting Scheduled _____   Acknowledgment of _____

## STEP 1 MEETING HELD

Date *10/10/03*

DECISION *Charges and penalty sustained.*

Responsibility Center Head/Designee *C. Tillman*   Date *10/10/03*

APPEAL MUST BE MADE WITHIN FIVE DAYS OF RECEIPT OF STEP 1 DECISION

I accept this above Step I decision:                I appeal this Step I decision: *10/10/C2*
_____                          _____
Employee Signature      Date                        Employee Signature      Date *10/10/03*
_____                          _____
Union Representative    Date                        Union Representative    Date

Date Step II Meeting Scheduled _____   Acknowledgment of _____

**EMPLOYEE MUST EITHER ACCEPT OR APPEAL THE ABOVE DECISIONS WITHIN THE TIME LIMITS SET.
FAILURE TO DO SO WILL RESULT IN IMPLEMENTATION OF THE DECISION.**

EMPLOYEE ACKNOWLEDGMENT OF   { NOTIFICATION _____
                              { STEP 1 _____

58-67-4305 (3/92)

Brooklyn, NY 11201          President

 **New York City Transit**

September 27, 2006

Philbert Gorrick # 330899 (Electrical)
Title: Power Cable Maintainer
166-05 Highland Ave.
Jamaica, N.Y. 11432

Re: Reclassification Examination
    Civil Service Law – Section 73

Certified Mail – Return Receipt Requested
Certified Mail # 7002-2030-0001-0939-4057

Dear Mr. Gorrick:

New York City Transit's records indicate that you received a permanent restricted work status on **September 19, 2006**. As a result of this permanent condition you have been unable to perform the full duties of your position.

You are hereby notified, pursuant to NYCT *Restricted Work* Policy (P/I No. 4.20.2), that Transit has scheduled a "**Reclassification**" examination for you on **October 13, 2006 @ 10:00 A.M. at MAC #1**, 180 Livingston Street, Brooklyn, New York, 11201.

You are hereby ordered to report to **Room 1264 at 370 Jay Street promptly at 9:00A.M. on October 13, 2006**, to receive a G-46 form. Your contact will be either Ms. Bryant or I. From Room 1264, you will need to report to MAC #1 by 10:00 A.M. Upon completion of your exam, you are hereby directed to report to Ms. Bryant or me in Room 1264 at 370 Jay Street.

Sincerely Yours,

Stephen E. Perez

Stephen E. Perez
Manager, Office of Employee Support & Safety
(718) 243-4145

Cc: J. Crisci
    M. Santarpia
    Union
    Employee's File

D 2464

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman

64-01-2617 3/01

 **New York City Transit**

Philbert Gorrick # 330899
P.O. Box 160026
Brooklyn, N.Y. 11216

May 18, 2007

*Via Regular & Certified Mail*

Regular and Certified Mail – Return Receipt Requested
Certified Mail #: 7006-3450-0000-2640-0087

Re: Notice of Termination – One Year Continuous Absence

Dear Mr. Gorrick:

On <u>September 19, 2006</u> you received a permanent restricted work status. Subsequently a reclassification examination was held on <u>November 15, 2006</u>, you were found medically qualified to perform the duties of a Transit Property Protection Agent. You were notified that the next Transit Property Protection Agent class was scheduled for <u>Monday, February 26, 2007</u>. However, you did not complete and return the "education and experience" forms, and thus, you did not fulfill the New York City Department of Citywide Service's requirement for reclassification and therefore, prevented the Reclassification Process from proceeding. Since, as of this date, you have not fulfilled the requirements for reclassification, this letter is to notify you that, pursuant to §73 of the Civil Service Law and/or the collective bargaining agreement and Transit's Restricted Duty Policy/Instruction, your employment is being terminated, effective <u>June 4, 2007.</u>

Under the Civil Service Law, you may, within one year of the termination of your disability, to the extent you are able to perform the essential duties of your position with or without a reasonable accommodation, make application for a medical examination to seek restoration of employment. If certified to be physically and mentally fit to perform the essential duties of your former position, with or without a reasonable accommodation, you will be reinstated to your former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field in your former department or agency. If no appropriate vacancy exists to which such reinstatement may be made, or if the workload does not warrant the filling of such vacancy, your name will be placed on a preferred list for your former position in your former department or agency and you will be eligible for reinstatement for a period of up to four years. In the event that you are reinstated to a position in a grade lower than that of your former position, your name will be placed on the preferred eligible list for your former position or any similar position in your former department or agency.

Application for a medical examination must be made in writing, addressed to the Medical Director, MTA New York City Transit, 180 Livingston Plaza, Brooklyn, N.Y. 11201 indicating when your disability terminated, and stating that you are physically and mentally fit to perform the duties of your position.

Sincerely,

Stephen E. Perez, Manager
Office of Employee Support & Safety, MOW

cc: J. Crisci
    M Santarpia
    Union
    Employee's File

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman

D 0501

9909
AC

 **New York City Transit**

718 694-3889



November 2, 2007

**BY OVERNIGHT DELIVERY**

The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 110007

Re: *Gorrick v. New York City Transit Authority, et al* 07 CV 2529 (GBD)

Dear Judge Daniels:

We represent the Defendant in the above-captioned suit. I write in response to Plaintiff's counsel's letter requesting an informal conference to resolve a discovery dispute concerning a subpoena that was served by Defendant upon a third party, Concord Family Services, that has employed (and may currently employ) Mr. Gorrick, apparently in the role of an information technology consultant. The information requested is relevant to determination of Plaintiff's standing as a person with a disability within the meaning of the ADA, to alleged damages and to issues with respect to Plaintiff's credibility.

The disputed subpoena is attached as Exh. A hereto. According to Mr. Gorrick's tax return for 2006, which also included information regarding his 2005 income as well, Concord Family Services was the sole source of his gross income, which exceeded $100,000, in both 2005 and 2006, and provided this information to IRS on 1099 forms. This tax return is attached as Exhibit B, see fax p. 11. I attach Plaintiff's Complaint as Exh. C. Plaintiff, who was hired by NYC Transit in July 1991 as a Power Cable Maintainer Helper, was subsequently promoted to Power Cable Maintainer, and last worked for NYC Transit in October 2000 when he was suspended for his failure to obtain OSHA compliant safety footwear required for his performance of the essential functions of his job. The annual wage for his job in 2004 was approximately $52,000.

In its Discovery Requests, attached as Exh. D, Interrogatory no. 15 and Document Request no. 9, Defendant requested information concerning "each and every job, full time or part time, including self-employment that [Plaintiff] held from the suspension of [his] employment by the New York City Transit Authority in October 2000 to the present," as well as requesting, as Document Request no. 11, copies of his tax returns from 1999 to the present. Plaintiff initially refused to provide any of this information or documents and, after some discussion between counsel about his tax records, agreed to provide, in addition to a copy of Plaintiff's 2006 tax return, a release for the records associated with

2007-9909
#1020305-

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman

58-01-5504 4/07

his 2005 financing of a 2006 BMW.[1]  Plaintiff's discovery responses are attached as Exh. E, and the Goetcheus letters dated September 5, 2007 and August 30, 2007 to Stuart Lichten as Exh. F

Plaintiff's counsel's statement in his letter to this Court that "[a]s Plaintiff is only seeking backpay since 2006, the parties resolved [the] dispute [concerning his tax returns since 2000] by agreeing that plaintiff only would have to provide his 2006 tax return," is incorrect in two respects. First, in his Complaint, which has not been amended, Plaintiff alleges discrimination beginning in October 2000 and asserts a claim for damages relating to "all earnings he would have received but for defendant's discriminatory treatment, including but not limited to wages, bonuses, pensions, and other lost benefits," without limitation of time.  Further, Plaintiff stated that he would provide his 2006 tax return as a response to the document request and Defendant agreed to resolve the dispute regarding the *remaining* tax returns without raising the discovery dispute to this Court if Plaintiff would provide a release for the records of his 2005 application for financing for his 2006 BMW.  *See* Exh. F.  Plaintiff did indeed provide that release along with the 2006 tax return and Defendant has obtained some records concerning that financing.[2]

The alleged "limitation" of the damages demanded played no role in Defendant's proposal to compromise on the tax returns.  [It should be noted that Plaintiff's 2006 tax return is dated September 10, 2007 – four days prior to its being faxed to Defendant by his counsel.]  We have received no proof of this return having been filed with IRS, and no copy of the 1099's from Concord Family Services were provided.

Plaintiff's 2006 tax return declared income for 2005 and 2006 from a single source, Concord Family Services.  Although Plaintiff's counsel now describes him as having "since 1996 . . . operated, on his own time, a sole proprietorship providing information technology consulting services to various clients, including Concord Family Service, Inc.," Plaintiff, who has not worked for Defendant since October 2000, described himself as homeless in 2003 in an arbitration (see Exh. H, page 2), and, in October 2006, provided Defendant an affidavit that stated that, from 2000 to 2004, "I was not employed elsewhere in any capacity and did not derive any earnings from any other employment, by self or otherwise, nor did I perform any work or services for which I was entitled to be paid now or at any future date, nor did I receive any unemployment insurance benefits, or public assistance.  I make this affidavit in connection with the Award dated July 19, 2006, which directed that I be reimbursed for the period of my suspension from May 22, 2002 to June 9, 2004 in order to induce the Transit Authority to make such payment, knowing that the Authority will rely thereon." This affidavit is attached as Exh. I.[3]

---

[1]     Mr. Gorrick's DMV records, attached as Exh. G, show that he has owned a series of late model luxury cars, including a 2000 Cadillac, a 2002 BMW and a 2006 BMW that was purchased in July 2005.

[2]     The "employer" listed on the record is a non-existent corporation called "Philbert Corp." with a phone number that reverse listings state belongs to a Joseph Wilson at the same address as Plaintiff's apparent current residence, 166-05 Highland Avenue, Jamaica, NY.  Curiously, Plaintiff took leave for death of a family member named Joseph Wilson in 1995.  D1964-65.  It is also the number Plaintiff listed as his emergency contact number in 1998.  D2762.

[3]     Mr. Lichten not only notarized Plaintiff's signature on this affidavit, he forwarded it to New York City Transit on Plaintiff's behalf, knowing that Defendant would rely on the representations in the affidavit in making payment of the approximately two years of backpay ordered by the Arbitrator.  Income earned by Plaintiff during the period in question would have been a set-off against the amount of backpay owed to the Plaintiff.  Plaintiff received $108,820.20 gross, $80,963.30 net, in payment of the 2006 award of two years back pay following his submission of this affidavit.

2007-9909
#1020305

Further, Defendant made no agreement with Plaintiff concerning its discovery demands regarding his employment nor with regard to seeking information from third parties. Whether or not Plaintiff *claims* damages from October 2000 to August 2006 or not, his actions to mitigate damages in that period, during which he was not working for Defendant, through employment for others or self-employment, are directly relevant to any calculation of damages against Defendant, as well as determination of liability. Whether Plaintiff is disabled within the meaning of the ADA is a serious question as his inability to wear OSHA compliant safety shoes is scarcely a "substantial limitation of a major life activity," and does not limit him from a broad range of jobs, but only those jobs that require wearing such footwear. In fact, Defendant offered, and Plaintiff refused, another position at the same hourly wage. See *Burton v. Metropolitan Transportation Authority*, 244 F. Supp. 2d 252; 2003 U.S. Dist. LEXIS 2314; (S.D.N.Y. 2003), (Chin, J.)(evidence of employment in other jobs directly relevant to determination of whether Plaintiff was disabled within the meaning of the ADA.)

Further, there are issues regarding Plaintiff's credibility in view of his affidavit of no income in the period from October 2000 through 2004, his 2003 claim of homelessness at arbitration, and his purchase and ownership of late model luxury automobiles in the period from 2000-2006.

The subpoena served on Concord Family Services requested information "concerning Philbert Gorrick including but not limited to resumes, payments, vouchers, employment applications or proposals, 1099's and/or W-2's for the period from 1998 to the present." The 1998 date was based on Plaintiff having registered a New York Fictitious Business Name for a firm called "Contemporary Technologies Company" in 1999. Defendant conjectured that this DBA filing indicated that Plaintiff might have already had a going concern in 1998 – while in fact, per Mr. Lichten, his outside employment actually began earlier, in 1996. It is worth noting, that, although repeatedly notified of the NYCTA requirement that employees must file and obtain permission for dual employment, Mr. Gorrick never did so.

Defendant primarily seeks records from Concord Family Services, but, having been informed in a telephone conversation with a Concord staff member that financial records had been destroyed during a water leak, it does not wish to foreclose the possibility of deposing a representative of the agency with knowledge. Defendant has no desire to impair Plaintiff's conduct of his business – his success negates findings of damages against Defendant even if, as it certainly disputes, it were liable for discrimination. However, in order to mount an effective defense to the claims brought by Plaintiff, Defendant is entitled to obtain reliable, relevant information concerning his employment, by self-employment or otherwise, and the income he has received from it.

Defendant respectfully requests the Court to deny Plaintiff's request to quash the subpoena on Concord Family Services for his records and, indeed, to "so order" the subpoena and order Plaintiff to provide a release for his IRS records.

Sincerely yours,

Ann Burton Goetcheus
Executive Agency Counsel

3

2007-9909
#1020305

**BY OVERNIGHT MAIL**

cc:    Stuart Lichten
       Schwartz, Lichten & Bright PC
       Attorney for Plaintiff
       275 Seventh Avenue - Suite 1700
       New York, N.Y. 10001

       Joffrey H. Hill, Esq.
       Attorney for Concord Family Services
       Hill & Sias-Hill
       1185 Morris Avenue Suite 301
       Union, NJ 07083

4

2007-9909
#1020305

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

**PHILBERT GORRICK,**

**Plaintiff,**

**SUBPOENA IN A CIVIL CASE**

v.

CASE NUMBER: [1] 2007-1051

**NEW YORK CITY TRANSIT AUTHORITY,**

**Defendant.**

TO:    Custodian of Records, Concord Family Services, Inc., 1221 Bedford Avenue, Brooklyn, NY 11216
(718) 398-3499

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| 130 Livingston Street, 12th floor, Brooklyn, NY 11201 | November 21, 2007 10:00 am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All notes, records and correspondence concerning Philbert Gorrick including but not limited to resumes, payments, vouchers, employment applications or proposals, 1099's and/or W-2's for the period from 1998 to the present.

| PLACE | DATE AND TIME |
|---|---|
| 130 Livingston Street – 12th Floor | October 22, 2007 |
| Brooklyn, New York 11201 | 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Ann Burton Goetcheus, Esq., Atty. for Defendants, 130 Livingston Street, 1233-p, Brooklyn, New York 11201   718-694-3889 | September 25, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

*Ann Burton Goetcheus*

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number.

2007-9909
-#1008260

# SCHWARTZ, LICHTEN & BRIGHT, PC
**Attorneys at Law**

275 Seventh Avenue, 17th Floor
New York, New York  10001
tel: 212 228 6320
fax: 212 358 1353

Arthur Z. Schwartz*
Stuart Lichten
Daniel R. Bright
*Also admitted in Pennsylvania

## Facsimile transmission

DATE: _____ 9/14/07 _____

TO: _____ Ann Burth Goetchus, Esq _____

FAX No: _____ (718) 694-4020 _____

FROM:  _____ Arthur Z. Schwartz, Esq.

  __✓__ Stuart Lichten, Esq.

  _____ Daniel R. Bright, Esq.

Number of pages (including cover): _____

Hard copy  __✓__ will  ____ will not  follow.

COMMENTS: _____

_____

_____

_____

_____

_____

The information contained in this fax message is intended only for the personal and confidential
use of the recipient(s) named above. This message may be an attorney-client communication and
as such is privileged and confidential. If the reader of this message is not the intended recipient or
an agent responsible for delivering it to the intended recipient, you are hereby notified that you
have received this document in error and that any review, dissemination, distribution, or copying
of this message is strictly prohibited. If you have received this communication in error, please notify
us immediately by telephone and return the original message to us by mail. Thank you.

# SLB SCHWARTZ, LICHTEN & BRIGHT PC
### Attorneys at Law

275 Seventh Avenue  Suite 1700
New York, New York 10001
Phone 212 228 6320  Facsimile 212 358 1353

Arthur Z Schwartz*
**Stuart Lichten**
**Daniel R Bright**
*Also admitted in Pennsylvania

September 14, 2007

**BY FAX AND U.S. MAIL**

Ann Burton Goetcheus, Esq.
Executive Agency Counsel
N.Y.C. Transit Authority
130 Livingston Street - Room 1233
New York, New York  11201

Re:   Gorrick v. New York City Transit Auth.
      07 Civ. 2529 (GBD)

Dear Ms. Goetcheus:

Enclosed is a copy of plaintiff's 2006 tax returns.

Very truly yours,

Stuart Lichten

Enclosures

# 1040 U.S. Individual Income Tax Return 2006 (99) IRS Use Only - Do not write or staple in this space.

OMB No. 1545-0074

For the year Jan. 1-Dec. 31, 2006, or other tax year beginning ___, 2006, ending ___, 20___

**Label** (See instructions on page 16.) Use the IRS label. Otherwise, please print or type.

Your first name and initial: **PHILBERT** Last name: **GORICK**

Your social security number: **072 76 8370**

If a joint return, spouse's first name and initial ___ Last name ___

Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 16. **166-05 HIGHLAND AVE** Apt. no. **6M**

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16. **JAMAICA, NY 11432**

▲ You must enter your SSN(s) above ▲

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 16) ▶ ☐ You ☐ Spouse

**Filing Status**
Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 17)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☐ Spouse

Boxes checked on 6a and 6b: **1**

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 19) |
|---|---|---|---|
| INTERNAL REVENUE SERVICE | | | |
| W & I FIELD ASSISTANCE | | | |
| BROOKLYN NY 11201 | | | |
| SEP 12 20 | | | |

If more than four dependents, see page 19.

No. of children on 6c who:
• lived with you ___
• did not live with you due to divorce or separation (see page 20) ___

Dependents on 6c not entered above ___

Add numbers on lines above ▶ **1**

d Total number of exemptions claimed

RECEIVED 14211

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 23.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | |
|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 |
| 8a | Taxable interest. Attach Schedule B if required | 8a **110.** |
| b | Tax-exempt interest. Do not include on line 8a | 8b |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a |
| b | Qualified dividends (see page 23) | 9b |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 |
| 11 | Alimony received | 11 |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 **33094.** |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 **-2405.** |
| 14 | Other gains or (losses). Attach Form 4797 | 14 |
| 15a | IRA distributions ___ 15a ___ b Taxable amount | 15b |
| 16a | Pensions and annuities ___ 16a ___ b Taxable amount | 16b |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 |
| 18 | Farm income or (loss). Attach Schedule F | 18 |
| 19 | Unemployment compensation | 19 |
| 20a | Social security benefits ___ 20a ___ b Taxable amount (see page 27) | 20b |
| 21 | Other income. List type and amount (see page 29) ___ | 21 |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 **30799.** |

**Adjusted Gross Income**

| | | |
|---|---|---|
| 23 | Archer MSA deduction. Attach Form 8853 | 23 |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 |
| 25 | Health savings account deduction. Attach Form 8889 | 25 |
| 26 | Moving expenses. Attach Form 3903 | 26 |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 **2338.** |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 |
| 29 | Self-employed health insurance deduction (see page 29) | 29 **7549.** |
| 30 | Penalty on early withdrawal of savings | 30 |
| 31a | Alimony paid  b Recipient's SSN ▶ ___ : ___ | 31a |
| 32 | IRA deduction (see page 31) | 32 |
| 33 | Student loan interest deduction (see page 33) | 33 |
| 34 | Jury duty pay you gave to your employer | 34 |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 |
| 36 | Add lines 23 through 31a and 32 through 35 | 36 **9887.** |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | 37 **20912.** |

610C-01 03-11-07

LHA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 80.

Form **1040** (2006)

Form 1040 (2006)  PHILBERT GORICK  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  Page 2

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | 38 | 20912. |
| Standard Deduction for— | 39a | Check if: ☐ You were born before January 2, 1942, ☐ Blind. ☐ Spouse was born before January 2, 1942, ☐ Blind. Total boxes checked ▶ 39a | | |
| ● People who checked any box on line 39a or 39b or who can be claimed as a dependent | b | If your spouse itemizes on a separate return or you were a dual-status alien, see page 34 and check here ▶ 39b ☐ | | |
| | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 40 | 7143. |
| | 41 | Subtract line 40 from line 38 | 41 | 13769. |
| ● All others: | 42 | If line 38 is over $112,875, or you provided housing to a person displaced by Hurricane Katrina, see page 36. Otherwise, multiply $3,300 by the total number of exemptions claimed on line 6d | 42 | 3300. |
| Single or Married filing separately, $5,150 | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 10469. |
| | 44 | Tax. Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | 44 | 1194. |
| Married filing jointly or Qualifying widow(er), $10,300 | 45 | Alternative minimum tax. Attach Form 6251 | 45 | |
| | 46 | Add lines 44 and 45 ▶ | 46 | 1194. |
| Head of household, $7,550 | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | |
| | 49 | Credit for the elderly or the disabled. Attach Schedule R | 49 | |
| | 50 | Education credits. Attach Form 8863 | 50 | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | |
| | 52 | Residential energy credits. Attach Form 5695 | 52 | |
| | 53 | Child tax credit (see page 42). Attach Form 8901 if required | 53 | |
| | 54 | Credits from: a ☐ Form 8396 b ☐ Form 8839 c ☐ Form 8859 | 54 | |
| | 55 | Other credits: a ☐ Form 3800 b ☐ Form 8801 c ☐ Form | 55 | |
| | 56 | Add lines 47 through 55. These are your total credits | 56 | |
| | 57 | Subtract line 56 from line 46. If line 56 is more than line 46, enter -0- ▶ | 57 | 1194. |
| **Other Taxes** | 58 | Self-employment tax. Attach Schedule SE | 58 | 4676. |
| | 59 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 59 | |
| | 60 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 60 | |
| | 61 | Advance earned income credit payments from Form(s) W-2, box 9 | 61 | |
| | 62 | Household employment taxes. Attach Schedule H | 62 | |
| | 63 | Add lines 57 through 62. This is your total tax ▶ | 63 | 5870. |
| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | |
| | 65 | 2006 estimated tax payments and amount applied from 2005 return | 65 | |
| If you have a qualifying child, attach Schedule EIC. | 66a | Earned income credit (EIC) | 66a | |
| | b | Nontaxable combat pay election ▶ 66b | | |
| | 67 | Excess social security and tier 1 RRTA tax withheld (see page 60) | 67 | |
| | 68 | Additional child tax credit. Attach Form 8812 | 68 | |
| | 69 | Amount paid with request for extension to file (see page 60) | 69 | |
| | 70 | Payments from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 | 70 | |
| | 71 | Credit for federal telephone excise tax paid. Attach Form 8913 if required | 71 | 30. |
| | 72 | Add lines 64, 65, 66a, and 67 through 71. These are your total payments ▶ | 72 | 30. |
| **Refund** Direct deposit? See page 61 and fill in 74b, 74c, and 74d, or Form 8888. | 73 | If line 72 is more than line 63, subtract line 63 from line 72. This is the amount you overpaid | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | 74a | |
| | | ▶ b Routing number  ▶ c Type: ☐ Checking ☐ Savings  ▶ d Account number | | |
| | 75 | Amount of line 73 you want applied to your 2007 estimated tax ▶ 75 | | |
| **Amount You Owe** | 76 | Amount you owe. Subtract line 72 from line 63. For details on how to pay, see page 62 ▶ | 76 | 6118. |
| | 77 | Estimated tax penalty (see page 62) | 77 | 278. |
| **Third Party Designee** | | Do you want to allow another person to discuss this return with the IRS (see page 63)? ☐ Yes. Complete the following. ☐ No. Designee's name ▶ Phone no. ▶ Personal identification number (PIN) ▶ | | |

**Sign Here**
Joint return? See page 17. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature | Date | Your occupation NETWORK CONSULTANT | Daytime phone number

Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation

**Paid Preparer's Use Only**
Preparer's signature ▶ | Date 09/10/07 | Check if self-employed ☐ | Preparer's SSN or PTIN P00645698
Firm's name (or yours if self-employed), address, and ZIP code ▶ JOHN TURIS ENTERPRISES INC | EIN 11-2973690
4713-18 AVENUE N | Phone no. (718) 692-2010
BROOKLYN NY 11234

610-102
11-7-06

Form **2210**

Department of the Treasury
Internal Revenue Service

### Underpayment of
### Estimated Tax by Individuals, Estates, and Trusts

► See separate instructions.
► Attach to Form 1040, 1040A, 1040NR, 1040NR-EZ, or 1041.

OMB No. 1545-0140

**2006**
Attachment
Sequence No. 06

Name(s) shown on tax return

PHILBERT GORICK

Identifying number

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

## Do You Have To File Form 2210?

| | | |
|---|---|---|
| Complete lines 1 through 7 below. Is line 7 less than $1,000? | **Yes** → | Do not file Form 2210. You do not owe a penalty. |

↓ **No**

| | | |
|---|---|---|
| Complete lines 8 and 9 below. Is line 6 equal to or more than line 9? | **Yes** → | You do not owe a penalty. Do not file Form 2210 (but if box E below applies, you must file page 1 of Form 2210). |

↓ **No**

| | | |
|---|---|---|
| You may owe a penalty. Does any box in Part II below apply? | **Yes** → | You must file Form 2210. Does box B, C, or D apply? |

↓ **No**                                    ↓ **No**    ↓ **Yes** → You must figure your penalty.

| | |
|---|---|
| Do not file Form 2210. You are not required to figure your penalty because the IRS will figure it and send you a bill for any unpaid amount. If you want to figure it, you may use Part III or Part IV as a worksheet and enter your penalty amount on your tax return, but do not file Form 2210. | You are not required to figure your penalty because the IRS will figure it and send you a bill for any unpaid amount. If you want to figure it, you may use Part III or Part IV as a worksheet and enter your penalty amount on your tax return, but file only page 1 of Form 2210. |

### Part I | Required Annual Payment (see page 2 of the instructions)

| | | | |
|---|---|---|---|
| 1 | Enter your 2006 tax after credits from Form 1040, line 57 (or comparable line of your return) | **1** | 1194. |
| 2 | Other taxes, including self-employment tax (see page 3 of the instructions) | **2** | 4676. |
| 3 | Refundable credits. Enter the total of your earned income credit, additional child tax credit, credit for federal tax paid on fuels, and health coverage tax credit | **3** | ( ) |
| 4 | Current year tax. Combine lines 1, 2, and 3. If less than $1,000, see page 3 of the instructions | **4** | 5870. |
| 5 | Multiply line 4 by 90% (.90) ............ **5** | 5283. | | |
| 6 | Withholding taxes. Do not include estimated tax payments. See page 3 of the instructions | **6** | |
| 7 | Subtract line 6 from line 4. If less than $1,000, you do not owe a penalty; do not file Form 2210 | **7** | 5870. |
| 8 | Maximum required annual payment based on prior year's tax (see page 3 of the instructions) | **8** | 16136. |
| 9 | Required annual payment. Enter the smaller of line 5 or line 8 | **9** | 5283. |

**Next:** Is line 9 more than line 6?

☐ **No.** You do not owe a penalty. Do not file Form 2210 unless box E below applies.

☒ **Yes.** You may owe a penalty, but do not file Form 2210 unless one or more boxes in Part II below applies.
- If box B, C, or D applies, you must figure your penalty and file Form 2210.
- If box A or E (or both) applies, file only page 1 of Form 2210. You are not required to figure your penalty; the IRS will figure it and send you a bill for any unpaid amount. If you want to figure your penalty, you may use Part III or Part IV as a worksheet and enter your penalty on your tax return, but file only page 1 of Form 2210.

### Part II | Reasons for Filing. Check applicable boxes. If none apply, do not file Form 2210.

A ☐ You request a waiver (see page 2 of the instructions) of your entire penalty. You must check this box and file page 1 of Form 2210, but you are not required to figure your penalty.

B ☐ You request a waiver (see page 2 of the instructions) of part of your penalty. You must figure your penalty and waiver amount and file Form 2210.

C ☐ Your income varied during the year and your penalty is reduced or eliminated when figured using the annualized income installment method. You must figure the penalty using Schedule AI and file Form 2210.

D ☐ Your penalty is lower when figured by treating the federal income tax withheld from your wages as paid on the dates it was actually withheld, instead of in equal amounts on the payment due dates. You must figure your penalty and file Form 2210.

E ☐ You filed or are filing a joint return for either 2005 or 2006, but not for both years, and line 8 above is smaller than line 5 above. You must file page 1 of Form 2210, but you are not required to figure your penalty (unless box B, C, or D applies).

LHA   For Paperwork Reduction Act Notice, see page 7 of separate instructions.

Form **2210** (2006)

812 501
01-02-07

7

Form 2210 (2006)                                                                                      Page 2

## Part III  Short Method

**You may use the short method if:**
- You made no estimated tax payments (or your only payments were withheld federal income tax), or
- You paid estimated tax in equal amounts on your due dates.

**You must use the regular method (Part IV) instead of the short method if:**
- You made any estimated tax payments late,
- You checked box C or D in Part II, or
- You are filing Form 1040NR or 1040NR-EZ and you did not receive wages as an employee subject to U.S. income tax withholding.

**Note:** *If any payment was made earlier than the due date, you may use the short method, but using it may cause you to pay a larger penalty than the regular method. If the payment was only a few days early, the difference is likely to be small.*

| TIP | *You do not need to file Form 2210 unless you checked a box in Part II on page 1.* |
|-----|------|

| | | | |
|---|---|---|---|
| 10 | Enter the amount from Form 2210, line 9 | **10** | 5283. |
| 11 | Enter the amount, if any, from Form 2210, line 6 ........ **11** | | |
| 12 | Enter the total amount, if any, of estimated tax payments you made ......... **12** | | |
| 13 | Add lines 11 and 12 | **13** | |
| 14 | Total underpayment for year. Subtract line 13 from line 10. If zero or less, stop here; you do not owe the penalty. Do not file Form 2210 unless you checked box E on page 1 | **14** | 5283. |
| 15 | Multiply line 14 by .05258 (use the factor shown in the instructions if you are eligible for Hurricane Katrina relief) | **15** | 278. |
| 16 | • If the amount on line 14 was paid on or after 4/15/07, enter -0-. • If the amount on line 14 was paid before 4/15/07, make the following computation to find the amount to enter on line 16. | | |
| | Amount on line 14  X  Number of days paid before 4/15/07  X  .00022 ......... | **16** | 0. |
| 17 | Penalty. Subtract line 16 from line 15. Enter the result here and on Form 1040, line 77; Form 1040A, line 48; Form 1040NR, line 75; Form 1040NR-EZ, line 27; or Form 1041, line 26 ▶ | **17** | 278. |

Form **2210** (2006)

81 502
01 80-07
19170910  800981  GOR8370          2006.06010  GORICK, PHILBERT          GOR83701

OMB No. 1545-0074

# SCHEDULES A&B
## (Form 1040)

Department of the Treasury
Internal Revenue Service  (99)

## Schedule A - Itemized Deductions
### (Schedule B is on page 2)
▶ Attach to Form 1040.   ▶ See Instructions for Schedules A&B (Form 1040).

**2006**
Attachment
Sequence No. 07

Name(s) shown on Form 1040

Your social security number

PHILBERT GORICK

072 76 8370

| | | | | |
|---|---|---|---|---|
| **Medical and Dental Expenses** | | Caution. Do not include expenses reimbursed or paid by others. | | |
| | 1 | Medical and dental expenses (see page A-1) | 1 | |
| | 2 | Enter amount from Form 1040, line 38 | 2 | |
| | 3 | Multiply line 2 by 7.5% (.075) | 3 | |
| | 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | 4 | |
| **Taxes You Paid** (See page A-3.) | 5 | State and local income taxes ............ See Statement 1 | 5 | 3763. |
| | 6 | Real estate taxes (see page A-3) | 6 | |
| | 7 | Personal property taxes | 7 | |
| | 8 | Other taxes. List type and amount ▶ | 8 | |
| | 9 | Add lines 5 through 8 | 9 | 3763. |
| **Interest You Paid** (See page A-3.) Note. Personal interest is not deductible. | 10 | Home mortgage interest and points reported to you on Form 1098 | 10 | |
| | 11 | Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see page A-3 and show that person's name, identifying no., and address ▶ | 11 | |
| | 12 | Points not reported to you on Form 1098 | 12 | |
| | 13 | Investment interest. Attach Form 4952 if required. (See page A-4.) | 13 | |
| | 14 | Add lines 10 through 13 | 14 | |
| **Gifts to Charity** If you made a gift and got a benefit for it, see page A-4. | 15 | Gifts by cash or check. | 15 | 2880. |
| | 16 | Other than by cash or check. If any gift of $250 or more, see page A-5. You must attach Form 8283 if over $500 ........ See Statement 2 | 16 | 500. |
| | 17 | Carryover from prior year | 17 | |
| | 18 | Add lines 15 through 17 | 18 | 3380. |
| **Casualty and Theft Losses** | 19 | Casualty or theft loss(es). Attach Form 4684. (See page A-6.) | 19 | |
| **Job Expenses and Certain Miscellaneous Deductions** (See page A-6.) | 20 | Unreimbursed employee expenses - job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. (See page A-6.) ▶ | 20 | |
| | 21 | Tax preparation fees | 21 | |
| | 22 | Other expenses - investment, safe deposit box, etc. List type and amount ▶ | 22 | |
| | 23 | Add lines 20 through 22 | 23 | |
| | 24 | Enter amount from Form 1040, line 38 | 24 | |
| | 25 | Multiply line 24 by 2% (.02) | 25 | |
| | 26 | Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- | 26 | |
| **Other Miscellaneous Deductions** | 27 | Other - from list on page A-7. List type and amount ▶ | 27 | |
| **Total Itemized Deductions** | 28 | Is Form 1040, line 38, over $150,500 (over $75,250 if married filing separately)? [X] No. Your deduction is not limited. Add the amounts in the far right column for lines 4 through 27. Also, enter this amount on Form 1040, line 40. ▶ [ ] Yes. Your deduction may be limited. See page A-7 for the amount to enter. | 28 | 7141. |
| | 29 | If you elect to itemize deductions even though they are less than your standard deduction, check here ▶ [ ] | | |

LHA   For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule A (Form 1040) 2006

619501
11-1-06

9

Schedules A&B (Form 1040) 2006

OMB No. 1545-0074     Page **2**

Name(s) shown on Form 1040. Do not enter name and social security number if shown on page 1.

Your social security number

PHILBERT GORICK     072 76 8370

## Schedule B – Interest and Ordinary Dividends

Attachment Sequence No. 08

| | | | | Amount |
|---|---|---|---|---|
| **Part I** Interest | 1 | List name of payer. If any interest is from a seller-financed mortgage and the buyer used the property as a personal residence, see page B-1 and list this interest first. Also, show that buyer's social security number and address ▶ _____ | | |
| | | FCU | | 110. |
| Note: If you received a Form 1099-INT, Form 1099-OID, or substitute statement from a brokerage firm, list the firm's name as the payer and enter the total interest shown on that form. | | | **1** | |
| | 2 | Add the amounts on line 1 | **2** | 110. |
| | 3 | Excludable interest on series EE and I U.S. savings bonds issued after 1989. Attach Form 8815 | **3** | |
| | 4 | Subtract line 3 from line 2. Enter the result here and on Form 1040, line 8a ▶ | **4** | 110. |

Note. If line 4 is over $1,500, you must complete Part III.

| | | | | Amount |
|---|---|---|---|---|
| **Part II** Ordinary Dividends | 5 | List name of payer ▶ | | |
| Note: If you received a Form 1099-DIV or substitute statement from a brokerage firm, list the firm's name as the payer and enter the ordinary dividends shown on that form. | | | **5** | |
| | 6 | Add the amounts on line 5. Enter the total here and on Form 1040, line 9a ▶ | **6** | |

Note. If line 6 is over $1,500, you must complete Part III.

| **Part III** Foreign Accounts and Trusts | You must complete this part if you (a) had over $1,500 of taxable interest or ordinary dividends; or (b) had a foreign account; or (c) received a distribution from, or were a grantor of, or a transferor to, a foreign trust. | Yes | No |
|---|---|---|---|
| | 7a At any time during 2006, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? | | X |
| | b If "Yes," enter the name of the foreign country ▶ | | |
| | 8 During 2006, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If "Yes," you may have to file Form 3520. See page B-2 | | X |

02/501 11-10-06

LHA For Paperwork Reduction Act Notice, see Form 1040 instructions.     Schedule B (Form 1040) 2006

19170910 800981 GOR8370     2006.06010 GORICK, PHILBERT     GOR83701

# SCHEDULE C
## (Form 1040)
Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
(Sole Proprietorship)
▶ Partnerships, joint ventures, etc., must file Form 1065 or 1065-B.
▶ Attach to Form 1040, 1040NR, or 1041. ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No. **09**

Name of proprietor: PHILBERT GORICK

Social security number (SSN): 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

**A** Principal business or profession, including product or service (see page C-2)
NETWORK CONSULTANT

**B** Enter code from pages C-8, 9, 10 ▶ 541510

**C** Business name. If no separate business name, leave blank.
1099 FROM CONCORD SERVICES

**D** Employer ID number (EIN), if any
11-3012742

**E** Business address (including suite or room no.) ▶ 1221 BEDFORD AVE
City, town or post office, state, and ZIP code BROOKLYN NY 11216

**F** Accounting method: (1) [X] Cash (2) [ ] Accrual (3) [ ] Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2006? If "No," see page C-3 for limit on losses ........... [X] Yes [ ] No

**H** If you started or acquired this business during 2006, check here ........... ▶ [ ]

## Part I   Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here ........... ▶ [ ] | 1 | 102969. |
| 2 | Returns and allowances ........... | 2 | |
| 3 | Subtract line 2 from line 1 ........... | 3 | 102969. |
| 4 | Cost of goods sold (from line 42 on page 2) ........... | 4 | 5612. |
| 5 | Gross profit. Subtract line 4 from line 3 ........... | 5 | 97357. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see page C-3) ........... | 6 | |
| 7 | Gross income. Add lines 5 and 6 ........... ▶ | 7 | 97357. |

## Part II   Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | | 18 | Office expense | | 18 | 9600. |
| 9 | Car and truck expenses (see page C-4) | 9 | 4210. | 19 | Pension and profit-sharing plans | | 19 | |
| 10 | Commissions and fees | 10 | 29116. | 20 | Rent or lease (see page C-5): | | | |
| 11 | Contract labor (see page C-4) | 11 | | a | Vehicles, machinery, and equipment | | 20a | 8988. |
| 12 | Depletion | 12 | | b | Other business property | | 20b | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | 13 | | 21 | Repairs and maintenance | | 21 | 2018. |
| | | | | 22 | Supplies (not included in Part III) | | 22 | 261. |
| | | | | 23 | Taxes and licenses | | 23 | 325. |
| 14 | Employee benefit programs (other than on line 19) | 14 | | 24 | Travel, meals, and entertainment: | | | |
| | | | | a | Travel | | 24a | 598. |
| 15 | Insurance (other than health) | 15 | 2998. | b | Deductible meals and entertainment (see page C-6) | | 24b | |
| 16 | Interest: | | | 25 | Utilities | | 25 | 3149. |
| a | Mortgage (paid to banks, etc.) | 16a | | 26 | Wages (less employment credits) | | 26 | |
| b | Other | 16b | | 27 | Other expenses (from line 48 on page 2) | | 27 | |
| 17 | Legal and professional services | 17 | 650. | | | | | |

| | | | |
|---|---|---|---|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns ........... ▶ | 28 | 64263. |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 ........... | 29 | 33094. |
| 30 | Expenses for business use of your home. Attach Form 8829 ........... | 30 | |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | | |

● If a profit, enter on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.

● If a loss, you must go to line 32.

| | |
|---|---|
| 31 | 33094. |

**32** If you have a loss, check the box that describes your investment in this activity (see page C-6).

● If you checked 32a, enter the loss on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3.

● If you checked 32b, you must attach Form 6198. Your loss may be limited.

32a [ ] All investment is at risk.
32b [ ] Some investment is not at risk.

LHA  For Paperwork Reduction Act Notice, see page C-8 of the instructions.

Schedule C (Form 1040) 2006

620-01 11-03-06

Schedule C (Form 1040) 2006   PHILBERT GORICK                                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  Page 2

| **Part III** | **Cost of Goods Sold** (see page C-7) |
|---|---|

**33** Method(s) used to value closing inventory:  a ☐ Cost   b ☐ Lower of cost or market   c ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation .................................................................................................................... ☐ Yes  ☐ No

**35** Inventory at beginning of year. If different from last year's closing inventory, attach explanation ............ | **35** | |

**36** Purchases less cost of items withdrawn for personal use ..................................................................... | **36** | |

**37** Cost of labor. Do not include any amounts paid to yourself ................................................................ | **37** | |

**38** Materials and supplies ........................................................................................................................ | **38** | 5612. |

**39** Other costs............................................................................................................................................ | **39** | |

**40** Add lines 35 through 39 ...................................................................................................................... | **40** | 5612. |

**41** Inventory at end of year ....................................................................................................................... | **41** | |

**42** Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 .................. | **42** | 5612. |

| **Part IV** | **Information on Your Vehicle.** Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562. |

**43** When did you place your vehicle in service for business purposes? (month, day, year)  ▶  /  /  .

**44** Of the total number of miles you drove your vehicle during 2006, enter the number of miles you used your vehicle for:

  **a** Business _____   **b** Commuting _____   **c** Other _____

**45** Do you (or your spouse) have another vehicle available for personal use?....................................................... ☐ Yes  ☐ No

**46** Was your vehicle available for personal use during off-duty hours? .............................................................. ☐ Yes  ☐ No

**47 a** Do you have evidence to support your deduction?............................................................................. ☐ Yes  ☐ No
  **b** If "Yes," is the evidence written?................................................................................................... ☐ Yes  ☐ No

| **Part V** | **Other Expenses.** List below business expenses not included on lines 8-26 or line 30. |

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**48** Total other expenses. Enter here and on page 1, line 27 ...................................................................... | **48** | |

020-02/ 11-03-06                                                                            Schedule C (Form 1040) 2006

19170910 800981 GOR8370            2006.06010 GORICK, PHILBERT              GOR8370 L

# Schedule C - Two-Year Comparison Worksheet

# 2006

Business Name:
1099 FROM CONCORD SERVICES

| Description | Tax Year 2005 | Tax Year 2006 | Increase (Decrease) |
|---|---|---|---|
| **INCOME** | | | |
| Gross receipts or sales | 102089. | 102969. | 880. |
| Less: Cost of goods sold | 4323. | 5612. | 1289. |
| Gross profit | 97766. | 97357. | -409. |
| Gross income | 97766. | 97357. | -409. |
| **EXPENSES** | | | |
| Car and truck expenses | 3763. | 4210. | 447. |
| Commissions and fees | 2892. | 29116. | 26224. |
| Insurance | 2799. | 2998. | 199. |
| Legal and professional services | 650. | 650. | 0. |
| Office expense | 9600. | 9600. | 0. |
| Rent/lease-Veh, machinery, & equip | 8988. | 8988. | 0. |
| Repairs and maintenance | 1866. | 2018. | 152. |
| Supplies | 0. | 2611. | 2611. |
| Taxes and licenses | 275. | 325. | 50. |
| Travel | 0. | 598. | 598. |
| Utilities | 3047. | 3149. | 102. |
| Total expenses | 33880. | 64263. | 30383. |
| Net profit or (loss) | 63886. | 33094. | -30792. |

010-38 08-01-06

19170910 800981 GOR8370          2006.06010 GORICK, PHILBERT          GOR8370 L

**SCHEDULE D
(Form 1040)**

Department of the Treasury
Internal Revenue Service   (99)

Name(s) shown on return

# Capital Gains and Losses

▶ Attach to Form 1040 or Form 1040NR.   ▶ See Instructions for Schedule D (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No. **12**

Your social security number

PHILBERT GORICK                                                        072 76 8370

## Part I  Short-Term Capital Gains and Losses - Assets Held One Year or Less

| | (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) Gain or (loss). Subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | |
|---|---|---|---|---|
| 2 | Enter your short-term totals, if any, from Schedule D-1, line 2 | **2** | | |
| 3 | Total short-term sales price amounts. Add lines 1 and 2 in column (d) | **3** | | |
| 4 | Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 | | **4** | |
| 5 | Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | | **5** | |
| 6 | Short-term capital loss carryover. Enter the amount, if any, from line 10 of your Capital Loss Carryover Worksheet in the instructions | | **6** ( | ) |
| 7 | Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) | | **7** | |

## Part II  Long-Term Capital Gains and Losses - Assets Held More Than One Year

| | (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) Gain or (loss). Subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 8 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | |
|---|---|---|---|---|
| 9 | Enter your long-term totals, if any, from Schedule D-1, line 9 | **9** | | |
| 10 | Total long-term sales price amounts. Add lines 8 and 9 in column (d) | **10** | | |
| 11 | Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 | | **11** | |
| 12 | Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | | **12** | |
| 13 | Capital gain distributions | | **13** | |
| 14 | Long-term capital loss carryover. Enter the amount, if any, from line 15 of your Capital Loss Carryover Worksheet in the instructions | | **14** ( | 2405. ) |
| 15 | Net long-term capital gain or (loss). Combine lines 8 through 14 in column (f). Then go to Part III on page 2 | | **15** | -2405. |

LHA  For Paperwork Reduction Act Notice, see Form 1040 or Form 1040NR instructions.

Schedule D (Form 1040) 2006

619511/11-10-06

19170910  800981  GOR8370          2006.06010 GORICK, PHILBERT          GOR83701

Schedule D (Form 1040) 2006    PHILBERT GORICK                                    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  Page 2

| **Part III** | **Summary** |
| --- | --- |

| | | |
| --- | --- | --- |
| 16 | Combine lines 7 and 15 and enter the result. If line 16 is a loss, skip lines 17 through 20, and go to line 21. If a gain, enter the gain on Form 1040, line 13, or Form 1040NR, line 14. Then go to line 17 below .......... | **16** | −2405. |
| 17 | Are lines 15 and 16 both gains? <br> ☐ Yes. Go to line 18. <br> ☐ No. Skip lines 18 through 21, and go to line 22. | | |
| 18 | Enter the amount, if any, from line 7 of the 28% Rate Gain Worksheet on page D-8 of the instructions ................................................................ ▶ | **18** | |
| 19 | Enter the amount, if any, from line 18 of the Unrecaptured Section 1250 Gain Worksheet on page D-9 of the instructions ................................................ ▶ | **19** | |
| 20 | Are lines 18 and 19 both zero or blank? <br> ☐ **Yes.** Complete Form 1040 through line 43, or Form 1040NR through line 40. Then complete the **Qualified Dividends and Capital Gain Tax Worksheet** on page 38 of the instructions for Form 1040 (or in the instructions for Form 1040NR). Do not complete lines 21 and 22 below. <br> ☐ **No.** Complete Form 1040 through line 43, or Form 1040NR through line 40. Then complete the **Schedule D Tax Worksheet** on page D-10 of the instructions. Do not complete lines 21 and 22 below. | | |
| 21 | If line 16 is a loss, enter here and on Form 1040, line 13, or Form 1040NR, line 14, the smaller of: <br> • The loss on line 16 or <br> • ($3,000), or if married filing separately, ($1,500) <br><br> **Note.** When figuring which amount is smaller, treat both amounts as positive numbers. | **21** | ( 2405.) |
| 22 | Do you have qualified dividends on Form 1040, line 9b, or Form 1040NR, line 10b? <br> ☐ **Yes.** Complete Form 1040 through line 43, or Form 1040NR through line 40. Then complete the **Qualified Dividends and Capital Gain Tax Worksheet** on page 38 of the instructions for Form 1040 (or in the Instructions for Form 1040NR). <br> ☒ **No.** Complete the rest of Form 1040 or Form 1040NR. | | |

Schedule D (Form 1040) 2006

SCHEDULE SE
(Form 1040)

Department of the Treasury
Internal Revenue Service    (99)

OMB No. 1545-0074

**2006**

Attachment
Sequence No. **17**

# Self-Employment Tax

▶ Attach to Form 1040.  ▶ See Instructions for Schedule SE (Form 1040).

Name of person with self-employment income (as shown on Form 1040)

**PHILBERT GORICK**

Social security number of person with self-employment income ▶ 072 76 8370

## Who Must File Schedule SE

You must file Schedule SE if:

- You had net earnings from self-employment from other than church employee income (line 4 of Short Schedule SE or line 4c of Long Schedule SE) of $400 or more, or
- You had church employee income of $108.28 or more. Income from services you performed as a minister or a member of a religious order is not church employee income (see page SE-1).

**Note.** Even if you had a loss or a small amount of income from self-employment, it may be to your benefit to file Schedule SE and use either "optional method" in Part II of Long Schedule SE (see page SE-3).

**Exception.** If your only self-employment income was from earnings as a minister, member of a religious order, or Christian Science practitioner and you filed Form 4361 and received IRS approval not to be taxed on those earnings, do not file Schedule SE. Instead, write "Exempt-Form 4361" on Form 1040, line 58.

## May I Use Short Schedule SE or Must I Use Long Schedule SE?

Note. Use this flowchart only if you must file Schedule SE. If unsure, see Who Must File Schedule SE, above.



## Section A—Short Schedule SE. Caution. Read above to see if you can use Short Schedule SE.

| | | |
|---|---|---|
| 1  Net farm profit or (loss) from Schedule F, line 36, and farm partnerships, Schedule K-1 (Form 1065), box 14, code A | 1 | |
| 2  Net profit or (loss) from Schedule C, line 31; Schedule C-EZ, line 3; Schedule K-1 (Form 1065), box 14, code A (other than farming); and Schedule K-1 (Form 1065-B), box 9, code J1. Ministers and members of religious orders, see page SE-1 for amounts to report on this line. See page SE-3 for other income to report  Stmt 3 | 2 | 33094. |
| 3  Combine lines 1 and 2 | 3 | 33094. |
| 4  Net earnings from self-employment. Multiply line 3 by 92.35% (.9235). If less than $400, do not file this schedule; you do not owe self-employment tax  ▶ | 4 | 30562. |
| 5  Self-employment tax. If the amount on line 4 is: <br> • $94,200 or less, multiply line 4 by 15.3% (.153). Enter the result here and on Form 1040, line 58. <br> • More than $94,200, multiply line 4 by 2.9% (.029). Then, add $11,680.80 to the result. Enter the total here and on Form 1040, line 58. | 5 | 4676. |
| 6  Deduction for one-half of self-employment tax. Multiply line 5 by 50% (.5). Enter the result here and on Form 1040, line 27 . . . . . . . . | 6 | 2338. |

LHA  For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule SE (Form 1040) 2006

02-4501
10 24-06

| Schedule A | State and Local Income Taxes | Statement | 1 |
|---|---|---|---|

| Description | Amount |
|---|---|
| New York Prior Year Balance Due and Extension Payments | 3763. |
| Total to Schedule A, line 5 | 3763. |

| Schedule A | Contributions Other Than Cash or Check | Statement | 2 |
|---|---|---|---|

| Description | Amount 100% Limit | Amount 50% Limit | Amount 30% Limit | Amount 20% Limit |
|---|---|---|---|---|
| SALVATION ARMY | | 500. | | |
| Subtotals | | 500. | | |
| Total to Schedule A, line 16 | | | | 500. |

| Schedule SE | Non-Farm Income | Statement | 3 |
|---|---|---|---|

| Description | Amount |
|---|---|
| NETWORK CONSULTANT | 33094. |
| Total to Schedule SE, line 2 | 33094. |

New York State Department of Taxation and Finance

# Cover Sheet for Form IT-201
## Resident Income Tax Return
New York State ● New York City ● Yonkers

2006    **IT-201**

*For office use only*

This is the cover sheet of your return. For your return to be complete you must include this cover sheet with all four pages of Form IT-201 and all required attachments.

| Taxpayer name and address | Software vendor code |
|---|---|
| | 1019 |

| Your social security number | Spouse's social security number |
|---|---|
| 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 | |

| Your first name and m.i. | Your last name |
|---|---|
| PHILBERT | GORICK |

| Spouse's first name and m.i. | Spouse's last name |
|---|---|
| | |

| Mailing address (number and street or rural route) | Apartment number |
|---|---|
| 166-05 HIGHLAND AVE | 6M |

| City, village or post office | State | ZIP code |
|---|---|---|
| JAMAICA | NY | 11432 |

### Summary of return data

| | |
|---|---|
| Federal adjusted gross income | 20912. |
| Total NYS adjusted gross income | 20912. |
| Total New York State tax withheld | |
| Total New York City tax withheld | |
| Total Yonkers tax withheld | |
| Amount to be refunded to you | |
| Amount you owe | 873. |





661000
11 24-06

Staple check or money order here.

0731061019

**File this original scannable cover sheet with all four pages of your tax return.**

0731061019

**2006**

New York State Department of Taxation and Finance

# Resident Income Tax Return (long form)

New York State • New York City • Yonkers

For the full year January 1, 2006, through December 31, 2006, or fiscal year beginning ...

**IT-201**

For help completing your return, see the combined instr., Form IT-150/201-I, or the IT-RP-1 resident packet instr.   and ending ...

**Important: You must enter your social security number(s) in the boxes to the right.**

Your first name and middle initial | Your last name (for a joint return, enter spouse's name on line below)

**PHILBERT** | **GORICK**

Spouse's first name and middle initial | Spouse's last name

▼ Your social security number

**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**

▼ Spouse's social security number

Mailing address (see instructions, page 77) (number and street or rural route)

**166-05 HIGHLAND AVE**

Apartment number

**6M**

New York State county of residence

●

City, village, or post office | State | ZIP code

**JAMAICA** | **NY** | **11432**

School district name

**Brooklyn**

Permanent home address (see instructions, page 77) (number and street or rural route)

Apartment number

School district code number ... **071**

City, village, or post office | State | ZIP code

**NY**

Decedent information: | Taxpayer's date of death | Spouse's date of death
●                       | ●

**(A) Filing status -** mark an X in one box

- ① X Single
- ② Married filing joint return (enter spouse's social security number above)
- ③ Married filing separate return (enter spouse's social security number above)
- ④ Head of household (with qualifying person)
- ⑤ Qualifying widow(er) with dependent child

**(B)** Did you itemize your deductions on your 2006 federal income tax return? ..... Yes **X** No

**(C)** Can you be claimed as a dependent on another taxpayer's federal return? ..... Yes   No **X**

**(D)** If you do not need a NYS income tax forms packet mailed to you next year, mark an X in the box (see page 78). ..

**(E)** Did you or your spouse maintain living quarters in NYC during 2006 (see page 78)? Yes **X**   No

**(F)** NYC residents and NYC part-year residents only (see page 79):
 (1) Number of months you lived in NY City in 2006 .......... ● **12**
 (2) Number of months your spouse lived in NY City in 2006 ...... ●

**(G)** Enter your 2-digit special condition code number if applicable (see page 79). .......... ●

If applicable, also enter your second 2-digit special condition code number. .......... ●

### Federal income and adjustments

Only full-year NY State residents may file this form. For lines 1 through 18 below, enter your income items and total adjustments as they appear on your federal return (see page 80). Also see page 80 instructions for showing a loss.

| | | Dollars |
|---|---|---|
| 1 Wages, salaries, tips, etc. ................... | 1. | |
| 2 Taxable interest income ...... ............... | 2. | 110. |
| 3 Ordinary dividends ........... | 3. | |
| 4 Taxable refunds, credits, or offsets of state and local income taxes (also enter on line 25 on page 2) .......... | 4. | |
| 5 Alimony received ......... | 5. | |
| 6 Business income or loss (attach a copy of federal Schedule C or C-EZ, Form 1040) ........................ | 6. | 33094. |
| 7 Capital gain or loss (if required, attach a copy of federal Schedule D, Form 1040) ............................ | 7. | -2405. |
| 8 Other gains or losses (attach a copy of federal Form 4797) ........................... | 8. | |
| 9 Taxable amount of IRA distributions. If received as a beneficiary, mark an X in the box .......................... | 9. | |
| 10 Taxable amount of pensions and annuities. If received as a beneficiary, mark an X in the box .......... | 10. | |
| 11 Rental real estate, royalties, partnerships, S corporations, trusts, etc. (attach copy of federal Schedule E, Form 1040) ..... | 11. | |
| 12 Farm income or loss (attach a copy of federal Schedule F, Form 1040) ........................... | 12. | |
| 13 Unemployment compensation ........................... | 13. | |
| 14 Taxable amount of social security benefits (also enter on line 27 on page 2) ........................... | 14. | |
| 15 Other income (see page 80)  Identify: | 15. | |
| 16 Add lines 1 through 15 ........................... | 16. | 30799. |
| 17 Total federal adjustments to income (see page 80)  Identify:  **See Statement 1** | 17. | 9887. |
| 18 Subtract line 17 from line 16. This is your federal adjusted gross income. ................................... | 18. | 20912. |

*(continued on page 2)*

00-001
11 13-06

You must file all four pages of this original scannable return with the Tax Department.



2011061019

Page 2 of 4 IT-201 (2006)

▼ Enter your social security number
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

Dollars

| | | |
|---|---|---|
| 19 Enter the amount from line 18 on page 1. This is your federal adjusted gross income. ............. | 19. | 20912. |

**New York additions** *(see page 81)*

| | | |
|---|---|---|
| 20 Interest income on state and local bonds and obligations (but not those of NY State or its local governments) ... | 20. | |
| 21 Public employee 414(h) retirement contributions from your wage and tax statements *(see page 82)* ......... | 21. | |
| 22 New York's 529 college savings program distributions *(see page 82)* .................................. | 22. | |
| 23 Other (see page 83) *Identify:* | 23. | |
| 24 Add lines 19 through 23 | 24. | 20912. |

**New York subtractions** *(see page 86)*

| | | |
|---|---|---|
| 25 Taxable refunds, credits, or offsets of state and local income taxes *(from line 4 on page 1)* | 25. | |
| 26 Pensions of NYS and local governments and the federal government *(see pg. 86)* | 26. | |
| 27 Taxable amount of social security benefits *(from line 14 on page 1)* ...... | 27. | |
| 28 Interest income on U.S. government bonds .................................. | 28. | |
| 29 Pension and annuity income exclusion *(see page 86)* ..................... | 29. | |
| 30 New York's 529 college savings program deduction / earnings ........... | 30. | |
| 31 Other (see page 87) *Identify:* | 31. | |
| 32 Add lines 25 through 31 | 32. | |
| 33 Subtract line 32 from line 24. This is your New York adjusted gross income. ...................... | 33. | 20912. |

**Standard deduction or itemized deduction** *(see page 92)*

| | | |
|---|---|---|
| 34 Enter your standard deduction *(from the table below)* or your itemized deduction *(from the worksheet below)*. Mark an X in the appropriate box:   • **X** Standard ... or ...  •  Itemized | 34. | 7500. |
| 35 Subtract line 34 from line 33 *(if line 34 is more than line 33, leave blank)* | 35. | 13412. |
| 36 Dependent exemptions (not the same as total federal exemptions; *see page 94)* ................... | 36. | |
| 37 Subtract line 36 from line 35. This is your taxable income. ....................................... | 37. | 13412. |

─────── or ───────

**New York State standard deduction table**

| Filing status | Standard deduction - enter on line 34 above. |
|---|---|
| ① Single and you marked item C on page 1 Yes ......... $ 3,000 | |
| ① Single and you marked item C on page 1 No ........... 7,500 | |
| ② Married filing joint return ...... 15,000 | |
| ③ Married filing separate return ...... 7,500 | |
| ④ Head of household (with qualifying person) ...... 10,500 | |
| ⑤ Qualifying widow(er) with dependent child ...... 15,000 | |

**New York State itemized deduction worksheet**

| | | |
|---|---|---|
| a Medical and dental expenses *(from federal Sch. A, line 4)* ... | a. | |
| b Taxes you paid *(from federal Schedule A, line 9)* ........... | b. | 3763. |
| c Interest you paid *(from federal Schedule A, line 14)* ...... | c. | |
| d Gifts to charity *(from federal Schedule A, line 18)* ........ | d. | 3380. |
| e Casualty and theft losses *(from federal Sch. A, line 19)* ...... | e. | |
| f Job expenses and most other miscellaneous deductions *(from federal Schedule A, line 26)* ........... | f. | |
| g Other miscellaneous deductions *(from federal Schedule A, line 27)* ................................ | g. | |
| h Enter amount from federal Schedule A, line 28 ........ | h. | 7143. |
| i State, local, and foreign income taxes and other subtraction adjustments *(see page 92)* ........................ | i. | 3763. |
| j Subtract line i from line h ......................... | j. | 3380. |
| k Addition adjustments *(see page 93)* ........................... | k. | |
| l Add lines j and k .............................. | l. | 3380. |
| m Itemized deduction adjustment *(see page 94)* ........... | m. | |
| n Subtract line m from line l ........................ | n. | 3380. |
| o College tuition itemized deduction *(see Form IT-272)* ... | o. | |
| p Add lines n and o. This is your New York State itemized deduction; enter on line 34 above. ........... | p. | 3380. |

*(continued on page 3)*

68-002
11 20-06

You must file all four pages of this original scannable return with the Tax Department.


2012061019

Name(s) as shown on page 1
**PHILBERT GORICK**

▼ Enter your social security number
**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**

IT-201 (2006) Page 3 of 4

| Tax computation, credits, and other taxes | (see page 95) | | Dollars |
|---|---|---|---|

38 Enter the amount from line 37 on page 2. This is your taxable income. ..... 38.    **13412.**

39 New York State tax on line 38 amount (see page 95 and Tax Computation on page 54) ..... 39.    **585.**

40 New York State household credit (from table 1, 2, or 3 on pages 95 and 96) ..... 40.    40.

41 Resident credit (attach Form IT-112-R or IT-112-C, or both; see page 96) ..... 41.

42 Other New York State nonrefundable credits (from Form IT-201-ATT, line 7; attach form) ..... 42.

43 Add lines 40, 41, and 42 ..... 43.    **40.**

44 Subtract line 43 from line 39 (if line 43 is more than line 39, leave blank) ..... 44.    **545.**

45 Net other New York State taxes (from Form IT-201-ATT, line 30; attach form) ..... 45.

46 Add lines 44 and 45. This is the total of your New York State taxes. ..... 46.    **545.**

| New York City and Yonkers taxes, credits, and tax surcharges |
|---|

47 New York City resident tax on line 38 amount (see page 96) ..... 47.    **399.** ◄ New York City (NYC) and Yonkers residents only: See instructions beginning on page 96 for figuring NYC and Yonkers taxes, credits and tax surcharges.

48 New York City household credit (from table 4, 5, or 6 on page 97) ..... 48.

49 Subtract line 48 from line 47 (if line 48 is more than line 47, leave blank) 49.    **399.**

50 Part-year New York City resident tax (attach Form IT-360.1) ..... 50.

51 Other New York City taxes (from Form IT-201-ATT, line 34; attach form) ... 51.

52 Add lines 49, 50, and 51 ..... 52.    **399.**

53 NY City nonrefundable credits (from Form IT-201-ATT, line 10; attach form) ..... 53.

54 Subtract line 53 from line 52 (if line 53 is more than line 52, leave blank) 54.    **399.**

55 Yonkers resident income tax surcharge (see page 98) ..... 55.

56 Yonkers nonresident earnings tax (attach Form Y-203) ..... 56.

57 Part-year Yonkers resident income tax surcharge (attach Form IT-360.1) ... 57.

58 Add lines 54 through 57. This is the total of your New York City and Yonkers taxes / surcharges. ..... 58.    **399.**

59 | Sales or use tax |   See the instructions beginning on page 66. Do not leave line 59 blank. ..... 59.    **0.**

| Voluntary contributions | (whole dollar amounts only; see page 99) |
|---|

60a Return a Gift to Wildlife ..... 60a.

60b Missing/Exploited Children Fund ..... 60b.

60c Breast Cancer Research Fund ..... 60c.

60d Alzheimer's Fund ..... 60d.

60e Olympic Fund ($2 or $4; see page 99) ..... 60e.

60f Prostate Cancer Research Fund ..... 60f.

60g WTC Memorial Fund ..... 60g.

60 Add lines 60a through 60g. This is your total voluntary contributions. ..... 60.

61 Add lines 46, 58, 59, and 60. This is your total New York State, New York City, and Yonkers taxes, sales or use tax, and voluntary contributions. ..... 61.    **944.**

(continued on page 4)

6n8003
11-15-06

**You must file all four pages of this original scannable return with the Tax Department.**



2013061019

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

| | | Dollars |
|---|---|---|
| 82 | Enter the amount from line 61 on page 3. This is your total New York State, New York City, and Yonkers taxes, sales or use tax, and voluntary contributions. .......................... 62. | 944. |

## Payments and refundable credits   (see page 100)

| | | | |
|---|---|---|---|
| 63 | Empire State child credit (attach new Form IT-213) .................... | 63. | |
| 64 | NY State child and dependent care credit (attach Form IT-216) ........ | 64. | |
| 65 | NY State earned income credit (attach Form IT-215 or IT-209) ........ | 65. | |
| 66 | NY State noncustodial parent EIC (attach new Form IT-209) .......... | 66. | |
| 67 | Real property tax credit (attach Form IT-214) .................... | 67. | |
| 68 | College tuition credit (attach Form IT-272) ...................... | 68. | |
| 69 | NY City school tax credit (also complete (F) on page 1; see page 101) ...... | 69. | 115. |
| 70 | NY City earned income credit (attach Form IT-215 or IT-209) ........ | 70. | |
| 71 | Other refundable credits (from Form IT-201-ATT, line 18; attach form) | 71. | |
| 72 | Total New York State tax withheld .......................... | 72. | |
| 73 | Total New York City tax withheld .......................... | 73. | |
| 74 | Total Yonkers tax withheld .......................... | 74. | |
| 75 | Total estimated tax payments / Amount paid with Form IT-370 .......... | 75. | |
| 76 | Add lines 63 through 75. This is the total of your payments .......................... | 76. | 115. |

Forms IT-2 and/or IT-1099-R must be completed and attached to your return instead of federal Forms W-2 and/or 1099-R.

Staple them (and any other applicable forms) to the top of this page 4.

See Step 11 on page 108 for the proper assembly of your four-page return and all attachments.

## Your refund / amount overpaid   (see page 103)

| | | | |
|---|---|---|---|
| 77 | If line 76 is more than line 62, subtract line 62 from line 76 .......................... | | 77. |
| 78 | Amount of line 77 that you want refunded to you (for Direct Deposit, see Account information on line 82) | Refund | 78. |
| 79 | Estimated tax only Amount of line 77 that you want applied to your 2007 estimated tax. (Do not include any amount that you claimed as a refund on line 78.) ........ | 79. | |

## Amount you owe   (see page 104)

| | | | |
|---|---|---|---|
| 80 | If line 76 is less than line 62, subtract line 76 from line 62. (For Payment options, see page 104; for electronic funds withdrawal, see Account information on line 82 below) ........ | Owe | 80. | 873. |
| 81 | Estimated tax penalty (include this amount on line 80, or reduce the overpayment on line 77. See page 104.) ............... 81. | | 44. |

## Account information   (see page 105)

Electronic funds withdrawal effective date:

You can choose to have your refund directly deposited into your bank account. Or, you can have the amount of any New York State tax you owe automatically withdrawn from your bank account. See the instructions on page 105 and fill in lines 82, and 82a, b, and c.

82 Mark one box: ● Refund - Direct Deposit ⋮ or ⋮ ● Owe –

a Routing number: ●

b Account number: ●

c Type: ● Checking ⋮ Savings

Sign your return below

(complete the following) No

Third-party designee: Do you want to allow another person to discuss this return with the Tax Dept? (see page 107) ...... Yes

Designee's name       Designee's phone number       Personal identification number (PIN) ............

Paid preparer's use only       Sign your return here

Preparer's signature ▶       Your signature ▶

▼ Preparer's SSN or PTIN       ● Employer identification number   Your occupation: ● NETWORK CONSULTANT
P00645698       11-2973690       Spouse's signature (if joint return)

Firm's name (or yours, if self-employed)

JOHN TURIS ENTERPRISES INC       Mark an X if self-employed:       Spouse's occupation (if joint return)

Address
4713-15 AVENUE N       Date       Date
BROOKLYN NY 11234       09-10-2007       ▼ Daytime phone number

Mail your completed return and any attachments to:

86-004
IT 80-06

STATE PROCESSING CENTER
PO BOX 61000
ALBANY NY 12261-0001

You must file all four pages of this original scannable return with the Tax Department.

2014061019



New York State Department of Taxation and Finance

2006

# Underpayment of Estimated Income Tax By Individuals and Fiduciaries

New York State • New York City • Yonkers

**IT-2105.9**

For January 1 - December 31, 2006, or fiscal year

beginning _____ ending _____ 2006

Identification number (SSN or EIN)

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

Name(s) as shown on return

PHILBERT GORICK

## Part 1 - All filers must complete this part (see Instructions, Form IT-2105.9-I, for assistance)

| | | | |
|---|---|---|---|
| 1 Total tax from your 2006 return before withholding and estimated tax payments (caution: see instructions) | | 1. | 944. |
| 2 Empire State child credit (from Form IT-150, line 38, or Form IT-201, line 63) | 2. | | |
| 3 NY State child and dependent care credit (from Form IT-150, line 39, or Form IT-201, line 64) | 3. | | |
| 4 NY State earned income credit (EIC) (from Form IT-150, line 40, or Form IT-201, line 65) | 4. | | |
| 5 NY State noncustodial parent EIC (from Form IT-150, line 41, or Form IT-201, line 66) | 5. | | |
| 6 Real property tax credit (from Form IT-150, line 42 or Form IT-201, line 67) | 6. | | |
| 7 College tuition credit (from Form IT-150, line 43; or Form IT-201, line 68) | 7. | | |
| 8 NY City school tax credit (from Form IT-150, line 44; Form IT-201, line 69; or Form IT-203, line 70) | 8. | 115. | |
| 9 NY City earned income credit (from Form IT-150, line 45; or Form IT-201, line 70) | 9. | | |
| 10 Other refundable credits (from Form IT-201, line 71, Form IT-203, line 61; or Form IT-205, line 33) | 10. | | |
| 11 Add lines 2 through 10 | | 11. | 115. |
| 12 Current year tax (subtract line 11 from line 1) | | 12. | 829. |
| 13 Multiply line 12 by 90% (.90) | 13. | 746. | |
| 14 Income taxes withheld from Form IT-150, lines 46, 47, and 48; Form IT-201, lines 72, 73, and 74; Form IT-203, lines 62, 63, and 64; or Form IT-205, lines 34, 35, and 36 | | 14. | 829. |
| 15 Subtract line 14 from line 12. If the result is less than $300, do not complete the rest of this form (see instructions) | | 15. | 3763. |
| 16 Enter your 2005 tax (caution: see instructions) | | 16. | 746. |
| 17 Enter the smaller of line 13 or line 16 | | 17. | |

## Part 2 - Short method for figuring the penalty - Complete lines 18 through 24 if you paid withholding tax and/or paid four equal estimated tax installments (on the due dates), or if you made no payments of estimated tax. Otherwise, you must complete Part 3 - Regular method.

| | | | |
|---|---|---|---|
| 18 Enter the amount from line 14 above | | 18. | |
| 19 Enter the total amount of estimated tax payments you made | | 19. | |
| 20 Add lines 18 and 19 | | 20. | 746. |
| 21 Total underpayment for year. Subtract line 20 from line 17 (if zero or less, you do not owe the penalty) | | 21. | 44. |
| 22 Multiply line 21 by .05920 and enter the result | | 22. | |
| 23 If the amount on line 21 was paid on or after April 15, 2007, enter 0. If the amount on line 21 was paid before April 15, 2007, make the following computation to find the amount to enter on this line: Amount on line 21 ____ x number of days paid before April 15, 2007 ____ x .00024 = | | 23. | 0. |
| 24 Penalty. Subtract line 23 from line 22. Enter here and on Form IT-150, line 55; Form IT-201, line 81; Form IT-203, line 71 or Form IT-205, line 42 | | 24. | 44. |

## Part 3 - Regular method - Schedule A - Figuring your underpayment (Schedule B is on page 2)

| Payment due dates | | A 4/15/06 | B 6/15/06 | C 9/15/06 | D 1/15/07 |
|---|---|---|---|---|---|
| 25 Required Installments. Enter ¼ of line 17 in each column. (If you used the annualized income installment method, see instructions) | 25. | | | | |
| 26 Estimated tax paid and tax withheld (see inst) | 26. | | | | |
| Complete lines 27 through 29, one column at a time, starting in column A. | | | | | |
| 27 Overpayment or underpayment from prior period | 27. | | | | |
| 28 If line 27 is an overpayment, add lines 26 and 27; if line 27 is an underpayment, subtract line 27 from line 26 | 28. | | | | |
| 29 Underpayment (subtract line 28 from line 25) or overpayment (subtract line 25 from line 28) | 29. | | | | |

008091
01-11-07

Please file this original scannable form with the Tax Department.



0591061019

IT-2105.9 (2006) (page 2)

## Part 3 - Regular method - Schedule B - Figuring the penalty

| Payment due dates | A 4/15/06 | B 6/15/06 | C 9/15/06 | D 1/15/07 |
|---|---|---|---|---|
| 30 Amount of underpayment *(from line 29)*   30. | | | | |

**First installment (April 15 - June 15, 2006)**

31 April 15 - June 15 = $\frac{61}{365}$ x 8% = .01336

or          or

April 15 -     = ___ x 8% = .

$\frac{}{365}$          31.

32 Multiply line 30, column A by line 31   32.

**Second installment (June 15 - September 15, 2006)**

33 June 15 - June 30     = $\frac{15}{365}$   x   8%   =   .00328

July 1 - September 15   = $\frac{71}{365}$   x   9%   =   $\begin{array}{c}.01898\\.02226\end{array}$ Total

or

June 15 -     = ___   x   8%   =   .

$\frac{}{365}$

July 1 -     = ___   x   9%   =   .

$\frac{}{365}$     .     Total 33.

34 Multiply line 30, column B by line 33 ..................................   34.

**Third installment (September 15, 2006 - January 15, 2007)**

35 September 15 - January 15     = $\frac{122}{365}$   x   9%   =   .03007

or          or

September 15 -     = ___   x   9%   =   .

$\frac{}{365}$          35.

36 Multiply line 30, column C by line 35 ..........................................   36.

**Fourth installment (January 15 - April 15, 2007)**

37 January 15 - April 15     = $\frac{90}{365}$   x   9%   =   .02218

or          or

January 15 -     = ___   x   9%   =   .

$\frac{}{365}$          37.

38 Multiply line 30, column D by line 37 ...........................................................   38.

39 Penalty. Add lines 32, 34, 36, and 38. Enter here and on Form IT-150, line 55; Form IT-201, line 81;
Form IT-203, line 71; or Form IT-205, line 42 ..................................................   39.

**Attach both pages of this form to the back of your New York State return.**



0592061019

PHILBERT GORICK

---

| NY IT-201 | Federal Adjustments to Income | Statement 1 |
|---|---|---|

| Description | Amount |
|---|---|
| One-Half of SE Tax | 2338. |
| Self-Employed Health Insurance | 7549. |
| Total to Form IT-201, line 17 | 9887. |

# SCHEDULE C
### (Form 1040)

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
### (Sole Proprietorship)
▶ Partnerships, joint ventures, etc., must file Form 1065 or 1065-B.
▶ Attach to Form 1040, 1040NR, or 1041. ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

## 2006

Attachment
Sequence No. **09**

Name of proprietor
**PHILBERT GORICK**

Social security number (SSN)
**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**

A  Principal business or profession, including product or service (see page C-2)
**NETWORK CONSULTANT**

B Enter code from pages C-8, 9, & 10
▶ **541510**

C  Business name. If no separate business name, leave blank.
**1099 FROM CONCORD SERVICES**

D Employer ID number (EIN), if any
**11-3012742**

E  Business address (including suite or room no.) ▶ **1221 BEDFORD AVE**
City, town or post office, state, and ZIP code  **BROOKLYN NY 11216**

F  Accounting method: (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ▶

G  Did you "materially participate" in the operation of this business during 2006? If "No," see page C-3 for limit on losses ........... [X] Yes [ ] No

H  If you started or acquired this business during 2006, check here ............ ▶ [ ]

## Part I  Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here ▶ [ ]  | **1** 102969. |
| 2 | Returns and allowances | **2** |
| 3 | Subtract line 2 from line 1 | **3** 102969. |
| 4 | Cost of goods sold (from line 42 on page 2) | **4** 5612. |
| 5 | Gross profit. Subtract line 4 from line 3 | **5** 97357. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see page C-3) | **6** |
| 7 | Gross income. Add lines 5 and 6 ▶ | **7** 97357. |

## Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|---:|---|---|---:|
| 8 | Advertising | **8** | 18 | Office expense | **18** 9600. |
| 9 | Car and truck expenses (see page C-3) | **9** 4210. | 19 | Pension and profit-sharing plans | **19** |
| 10 | Commissions and fees | **10** 29116. | 20 | Rent or lease (see page C-5): | |
| 11 | Contract labor (see page C-4) | **11** | a | Vehicles, machinery, and equipment | **20a** 8918. |
| 12 | Depletion | **12** | b | Other business property | **20b** |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | **13** | 21 | Repairs and maintenance | **21** 2038. |
| | | | 22 | Supplies (not included in Part III) | **22** 2611. |
| | | | 23 | Taxes and licenses | **23** 335. |
| 14 | Employee benefit programs (other than on line 19) | **14** | 24 | Travel, meals, and entertainment: | |
| | | | a | Travel | **24a** 598. |
| 15 | Insurance (other than health) | **15** 2998. | b | Deductible meals and entertainment (see page C-6) | **24b** |
| 16 | Interest: | | 25 | Utilities | **25** 3149. |
| a | Mortgage (paid to banks, etc.) | **16a** | 26 | Wages (less employment credits) | **26** |
| b | Other | **16b** | 27 | Other expenses (from line 48 on page 2) | **27** |
| 17 | Legal and professional services | **17** 650. | | | |

| | | |
|---|---|---:|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns ▶ | **28** 64213. |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | **29** 33094. |
| 30 | Expenses for business use of your home. Attach Form 8829 | **30** |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | |
| | • If a profit, enter on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | **31** 33094. |
| | • If a loss, you must go to line 32. | |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6). | |
| | • If you checked 32a, enter the loss on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | 32a [ ] All investment is at risk. |
| | • If you checked 32b, you must attach Form 6198. Your loss may be limited. | 32b [ ] Some investment is not at risk. |

LHA  For Paperwork Reduction Act Notice, see page C-8 of the instructions.  Schedule C (Form 1040) 2006

620001 11-03-06

Schedule C (Form 1040) 2006   PHILBERT GORICK                                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  Page 2

**Part III | Cost of Goods Sold** (see page C-7)

33  Method(s) used to value closing inventory:  a ☐ Cost   b ☐ Lower of cost or market   c ☐ Other (attach explanation)

34  Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation ....... ☐ Yes  ☐ No

| | | |
|---|---|---|
| 35 Inventory at beginning of year. If different from last year's closing inventory, attach explanation | 35 | |
| 36 Purchases less cost of items withdrawn for personal use | 36 | |
| 37 Cost of labor. Do not include any amounts paid to yourself | 37 | |
| 38 Materials and supplies | 38 | 5612. |
| 39 Other costs | 39 | |
| 40 Add lines 35 through 39 | 40 | 5612. |
| 41 Inventory at end of year | 41 | |
| 42 Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 | 42 | 5612. |

**Part IV | Information on Your Vehicle.** Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562.

43  When did you place your vehicle in service for business purposes? (month, day, year)  ▶  /  /  .

44  Of the total number of miles you drove your vehicle during 2006, enter the number of miles you used your vehicle for:
a  Business _____  b  Commuting _____  c  Other _____

45  Do you (or your spouse) have another vehicle available for personal use? ........ ☐ Yes  ☐ No

46  Was your vehicle available for personal use during off-duty hours? ........ ☐ Yes  ☐ No

47 a  Do you have evidence to support your deduction? ........ ☐ Yes  ☐ No
   b  If "Yes," is the evidence written? ........ ☐ Yes  ☐ No

**Part V | Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 48 Total other expenses. Enter here and on page 1, line 27 | 48 |

6-0002/ 11-03-06

Schedule C (Form 1040) 2006

**SCHEDULE D**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service    (99)

Name(s) shown on return

# Capital Gains and Losses

▶ **Attach to Form 1040 or Form 1040NR.**    ▶ **See Instructions for Schedule D (Form 1040).**

OMB No. 1545-0074

## 2006

Attachment
Sequence No. **12**

Your social security number

PHILBERT GORICK     072 76 8370

## Part I  Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| **1** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| **2** Enter your short-term totals, if any, from Schedule D-1, line 2 ............... | **2** | | |
| **3** Total short-term sales price amounts. Add lines 1 and 2 in column (d) ............... | **3** | | |
| **4** Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 | | **4** | |
| **5** Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | | **5** | |
| **6** Short-term capital loss carryover. Enter the amount, if any, from line 10 of your Capital Loss Carryover Worksheet in the instructions ............... | | **6** | ( ) |
| **7** Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) | | **7** | |

## Part II  Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| **8** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| **9** Enter your long-term totals, if any, from Schedule D-1, line 9 ............... | **9** | | |
| **10** Total long-term sales price amounts. Add lines 8 and 9 in column (d) ............... | **10** | | |
| **11** Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 | | **11** | |
| **12** Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | | **12** | |
| **13** Capital gain distributions | | **13** | |
| **14** Long-term capital loss carryover. Enter the amount, if any, from line 15 of your Capital Loss Carryover Worksheet in the instructions | | **14** | ( 2405. ) |
| **15** Net long-term capital gain or (loss). Combine lines 8 through 14 in column (f). Then go to Part III on page 2 | | **15** | -2405. |

LHA   For Paperwork Reduction Act Notice, see Form 1040 or Form 1040NR instructions.

Schedule D (Form 1040) 2006

Schedule D (Form 1040) 2006 PHILBERT GORICK                 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 Page 2

| Part III | Summary |
| --- | --- |

| | | | |
| --- | --- | --- | --- |
| 16 | Combine lines 7 and 15 and enter the result. If line 16 is a loss, skip lines 17 through 20, and go to line 21. If a gain, enter the gain on Form 1040, line 13, or Form 1040NR, line 14. Then go to line 17 below ..................................................................................................... | 16 | -2405. |
| 17 | Are lines 15 and 16 both gains?<br>☐ Yes. Go to line 18.<br>☐ No. Skip lines 18 through 21, and go to line 22. | | |
| 18 | Enter the amount, if any, from line 7 of the 28% Rate Gain Worksheet on page D-8 of the instructions ........................................................................................ ▶ | 18 | |
| 19 | Enter the amount, if any, from line 18 of the Unrecaptured Section 1250 Gain Worksheet on page D-9 of the instructions ........................................................................... ▶ | 19 | |
| 20 | Are lines 18 and 19 both zero or blank?<br>☐ Yes. Complete Form 1040 through line 43, or Form 1040NR through line 40. Then complete the Qualified Dividends and Capital Gain Tax Worksheet on page 38 of the Instructions for Form 1040 (or in the Instructions for Form 1040NR). Do not complete lines 21 and 22 below.<br>☐ No. Complete Form 1040 through line 43, or Form 1040NR through line 40. Then complete the Schedule D Tax Worksheet on page D-10 of the instructions. Do not complete lines 21 and 22 below. | | |
| 21 | If line 16 is a loss, enter here and on Form 1040, line 13, or Form 1040NR, line 14, the smaller of:<br><br>• The loss on line 16 or<br>• ($3,000), or if married filing separately, ($1,500) } .................................................... | 21 ( | 2405.) |
| | Note. When figuring which amount is smaller, treat both amounts as positive numbers. | | |
| 22 | Do you have qualified dividends on Form 1040, line 9b, or Form 1040NR, line 10b?<br>☐ Yes. Complete Form 1040 through line 43, or Form 1040NR through line 40. Then complete the Qualified Dividends and Capital Gain Tax Worksheet on page 38 of the Instructions for Form 1040 (or in the Instructions for Form 1040NR).<br>☒ No. Complete the rest of Form 1040 or Form 1040NR. | | |

Schedule D (Form 1040) 2006

620512 11-10-06

# N Y C UNINCORPORATED BUSINESS TAX RETURN
## FOR INDIVIDUALS, ESTATES AND TRUSTS

**FINANCE**
**NEW ● YORK**
THE CITY OF NEW YORK
DEPARTMENT OF FINANCE
nyc.gov/finance

**202**

▲ DO NOT WRITE IN THIS SPACE - FOR OFFICIAL USE ONLY ▲

**2006**

For CALENDAR YEAR 2006 or FISCAL YEAR beginning _____ , 2006 and ending _____

Amended return ● __ Final return ● __  — Check box if you have ceased operations. Attach copy of your entire federal Form 1040 and statement show- 10 disposition of business property.

Check "yes" if you claim any 9/11/01-related federal tax benefits (see inst.) ● ___ YES

Check "yes" if electing books and records allocation (see instructions) ● ___ YES

First name and initial _____ Last name
► **PHILBERT GORICK**

Business name
**PHILBERT GORRICK**

Business address (number and street)
**166-05 HIGHLAND AVE**

City and State
**JAMAICA NY** ZIP Code **11432**

Business Telephone Number

Date business began (mm/dd/yy)
**01-01-01**

INDIVIDUALS ENTER SOCIAL SECURITY NUMBER
**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**

ESTATES AND TRUSTS ENTER EMPLOYER IDENTIFICATION NUMBER

NEW YORK STATE SALES TAX ID NUMBER - ENTER 9, 10 OR 11 DIGITS

BUSINESS CODE NUMBER —►
FROM FEDERAL SCHEDULE C **541510**

## SCHEDULE A | Computation of Tax

BEGIN WITH SCHEDULE B ON PAGE 2. COMPLETE ALL OTHER SCHEDULES, THEN TRANSFER APPLICABLE AMOUNTS TO SCHEDULE A.

Payment Enclosed

| | | | |
|---|---|---|---|
| A. | Payment ● Pay amount shown on line 31 - Make check payable to: *NYC Department of Finance* | ● | |
| 1. | Business income (from page 2, Schedule B, line 28) | ● 1. | 33094. |
| 2. | Business allocation percentage: check method used to allocate - if not allocating, enter 100% | 2. | 100.00 % |
|  | ● __ formula (from Schedule C, line 5) __ separate books and records (omit % & attach sch.) ● | | |
| 3. | If line 2 is less than 100%, enter income or loss on NYC real property (see instructions) | ● 3. | |
| 4. | Balance (line 1 less line 3) | ● 4. | |
| 5. | Multiply line 4 by the business allocation percentage on line 2 | ● 5. | |
| 6. | Amount from line 3 (NYC real property income and gain not subject to allocation) (see instructions) | ● 6. | |
| 7. | Investment income (from page 2, Schedule B, line 27b) | ● 7. | |
| 8. | Investment allocation percentage (from page 3, Schedule D, line 2) ● 8. | % | |
| 9. | Multiply line 7 by the investment allocation percentage from line 8 (see instructions) | ● 9. | |
| 10. | Total before NOL deduction (sum of lines 5, 6 and 9 or line 1 and line 9) (see instructions for line 2) | ● 10. | 33074. |
| 11. | Deduct: NYC net operating loss deduction (from page 4, Schedule E, line 8) (see instructions) | ● 11. | |
| 12. | Balance before allowance for taxpayer's services (line 10 less line 11) | ● 12. | 33074. |
| 13. | Less: allowance for taxpayer's services - do not enter more than 20% of line 12 or $5,000, whichever is less | ● 13. | 5000. |
| 14. | Balance before exemption (line 12 less line 13) | ● 14. | 28074. |
| 15. | Less: exemption - $5,000 (taxpayer operating more than one business or short period taxpayer, see instructions) | ● 15. | 5000. |
| 16. | Taxable income (line 14 less line 15) (see instructions) | ● 16. | 23074. |
| 17. | TAX: 4% of amount on line 16 | ● 17. | 924. |
| 18. | Add: Sales tax addback (see instructions) | ● 18. | |
| 19. | Total tax before business tax credit (add line 17 and line 18) | ● 19. | 924. |
| 20. | Less: business tax credit (select the applicable credit condition from the Business Tax Credit Computation schedule on page 2 and enter amount) | ● 20. | 924. |
| 21. | UNINCORPORATED BUSINESS TAX (line 19 less line 20) (see instructions) | ● 21. | 0. |
| 22a. | Credits from Form NYC-114.5 (attach form) (see instructions) | ● 22a. | |
| 22b. | Credits from Form NYC-114.6 (attach form) (see instructions) | ● 22b. | |
| 22c. | Credits from Form NYC-114.8 (attach form) (see instructions) | ● 22c. | |
| 22d. | Credits from Form NYC-114.9, line 11 (attach form) (see instructions) | ● 22d. | |
| 23. | Net tax after credits (line 21 less sum of lines 22a, 22b, 22c and 22d) | ● 23. | 0. |
| 24. | Payment of estimated Unincorporated Business Tax, including carryover credit from preceding year and payment with extension, NYC-62 | ● 24. | |
| 25 | If line 23 is larger than line 24, enter balance due | ● 25. | |
| 26. | If line 23 is smaller than line 24, enter overpayment | ● 26. | |
| 27a. | Interest (see instructions) | 27a. | |
| 27b. | Additional charges (see instructions) | 27b. | |
| 27c. | Penalty for underpayment of estimated tax (attach form NYC-221) | ● 27c. | |
| 28 | Total of lines 27a, 27b and 27c | ● 28. | |
| 29. | Net overpayment (line 26 less line 28) (see instructions) | ● 29. | |
| 30. | Amount of line 29 to be: (a) Refunded | ● 30a. | |
|  | (b) Credited to 2007 Estimated Tax on Form NYC-5UBTI | ● 30b. | |
| 31. | Total remittance due (see instructions) Enter payment amount on line A above | ● 31. | |
| 32. | NYC Rent from Schedule C part 1, or rent deducted on federal return. (THIS LINE MUST BE COMPLETED). | ● 32. | 8988. |
| 33. | Gross receipts or sales from federal return | ● 33. | 102969. |

Form NYC-202 2006            Page 2

Name **PHILBERT GORICK**        SSN/EIN **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**

**SCHEDULE B** | Computation of Total Income - IF ALLOCATING BY SEPARATE BOOKS AND RECORDS, ENTER THE ALLOCATED AMOUNTS

**Part 1** | Items of business income, gain, loss or deduction

| | | |
|---|---|---|
| 1. | Net profit (or loss) from business, farming or professions as reported for federal tax purposes from federal Schedule C, C-EZ or F (Form 1040) (see instructions) | 1.   33094. |
| 2. | If entering income from more than one federal Schedule C, C-EZ or F (Form 1040), check this box ...... 2. Enter the number of Schedules C, C-EZ or F attached: ➡ | |
| 3. | Gain (or loss) from sale of business personal property or business real property (attach federal Schedule D or Form 4797) 3. | |
| 4. | Net amount of rental or royalty income from business personal property or business real property (attach federal Schedule E) (see instructions) | 4. |
| 5. | Other business income (or loss) (attach schedule) (see instructions) | 5. |
| 6. | Total federal income (or loss) (combine lines 1 through 5) | 6.   33094. |
| 7. | Subtract net income or gain (or add net loss) from rental, sale or exchange of real property situated outside New York City, if included in line 3 or 4 above (attach schedule) (see instructions) | 7. |
| 8. | Total income before New York City modifications (combine lines 6 and 7) | 8.   33094. |

**Part 2** | New York City modifications (see instructions for Schedule B, part 2)

**ADDITIONS**

| | | |
|---|---|---|
| 9. | All income taxes and Unincorporated Business Taxes | 9. |
| 10a. | Sales and use tax credit | 10a. |
| 10b. | Relocation credits | 10b. |
| 10c. | Expenses related to exempt income | 10c. |
| 10d. | Depreciation adjustments (attach Form NYC-399 and/or NYC-399Z) | 10d. |
| 10e. | Real estate additions (see instructions) | 10e. |
| 11. | Other additions (attach schedule) (see instructions) | 11. |
| 12. | Total additions (add lines 9 through 11) | 12. |

**SUBTRACTIONS**

| | | |
|---|---|---|
| 13. | All income tax and Unincorporated Business Tax refunds (included in part 1) | 13. |
| 14. | Sales and use tax refunds from vendors or NY State (included in part 1 and also included on page 1, Schedule A, line 18) | 14. |
| 15. | Wages and salaries subject to federal jobs credit (attach federal Form 5884 or 8884) | 15. |
| 16. | Depreciation adjustment (attach Form NYC-399 and/or NYC-399Z) | 16. |
| 17. | Exempt income included in part 1 (attach schedule) | 17. |
| 18. | 50% of dividends (see instructions) | 18. |
| 19. | Real estate subtractions (see instructions) | 19. |
| 20. | Other subtractions (attach schedule) (see instructions) | 20. |
| 21. | Total subtractions (add lines 13 through 20) | 21. |
| 22. | NYC modifications (combine lines 12 and 21) | 22. |
| 23. | Total income (combine lines 8 and 22) (see instructions) | 23.   33094. |
| 24. | Less: Charitable contributions (not to exceed 5% of line 23) (see instructions) | 24. |
| 25. | Balance (line 23 less line 24) | 25.   33094. |
| 26. | Investment income - (complete lines a through g below) (see instructions) | |
| | (a) Dividends from stocks held for investment | 26a. |
| | (b) Interest from investment capital (include non-exempt governmental obligations) (itemize on rider) | 26b. |
| | (c) Net capital gain (loss) from sales or exchanges of securities held for investment | 26c. |
| | (d) Income from assets included on line 3 of Schedule D | 26d. |
| | (e) Add lines 26a through 26d inclusive | 26e. |
| | (f) Deductions directly or indirectly attributable to investment capital | 26f. |
| | (g) Interest on bank accounts included in income reported on line 26d | 26g. |
| 27a. | Investment income (line 26e less line 26f) | 27a. |
| 27b. | Investment income to be allocated (enter on pg 1, Sch A, line 7) (see instructions) | 27b. |
| 28. | BUSINESS INCOME (line 25 less line 27b) (enter here and transfer amount to pg 1, Sch. A, line 1) | 28.   33094. |

**Business Tax Credit Computation**

1. If the amount on page 1, line 19, is $1,800 or less, your credit on line 20 is the entire amount of tax on line 19. (NO TAX WILL BE DUE.)

2. If the amount on page 1, line 19, is $3,200 or over, no credit is allowed. Enter "0" on line 20.

3. If the amount on page 1, line 19, is over $1,800 but less than $3,200, your credit is computed by the following formula:

amount on pg. 1, line 19 X ( ($3,200 minus tax on line 19) / $1,400 ) = _____ your credit

60220605

Form NYC-202 2006
Page 3

Name **PHILBERT GORICK**     SSN / EIN 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

## ALLOCATION OF BUSINESS INCOME

Taxpayers who carry on business both inside and outside New York City should complete Schedule C, Parts 1, 2 and 3 (below). Attach separate schedule if allocating by separate books and records. See "Highlights of Recent Tax Law Changes for Unincorporated Businesses." On Schedule A, line 2, check method used to allocate and enter percentage from Part 3, line 5 rounded to the nearest one hundredth of a percentage point. Taxpayers who do not carry on business both inside and outside New York City should omit Schedule C, Parts 1 and 2 (below), enter 100% on Part 3, line 5 and enter 100% on Schedule A, line 2.

### SCHEDULE C | Complete this schedule if business is carried on both inside and outside New York City

**Part 1** | List location of each place of business INSIDE New York City, nature of activities at each location (manufacturing, sales office, executive office, public warehouse, contractor, converter, etc.), and number of employees, their wages, salaries and duties at each location.

| Complete Address | Rent | Nature of Activities | Number of Employees | Wages, Salaries, etc. | Duties |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total ............▶ | | | | | |

**Part 2** | List location of each place of business OUTSIDE New York City, nature of activities at each location (manufacturing, sales office, executive office, public warehouse, contractor, converter, etc.), and number of employees, their wages, salaries and duties at each location.

| Complete Address | Rent | Nature of Activities | Number of Employees | Wages, Salaries, etc. | Duties |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total ............▶ | | | | | |

**Part 3** | Formula Basis Allocation of Income

| DESCRIPTION OF ITEMS USED AS FACTORS | | COLUMN A - NEW YORK CITY | COLUMN B - EVERYWHERE | COLUMN C PERCENTAGE IN NEW YORK CITY (COLUMN A DIVIDED BY COLUMN B) |
|---|---|---|---|---|
| 1. Average value of the real and tangible personal property of the business (see instructions) | | | | |
| a. Business real property owned | 1a. | | | |
| b. Business real property rented from others (rent x 8) | 1b. | | | |
| c. Business tangible personal property owned | 1c. | | | |
| d. Business tangible personal property rented from others (rent x 8) | 1d. | | | |
| e. Total of lines 1a through 1d | 1e. | | | % |
| 2. Wages, salaries and other personal service compensation paid to employees during the year | 2. | | | % |
| 3a. Gross sales of merchandise or charges for services during the year | 3a. | | | % |
| 3b. Optional additional gross income factor for manufacturers (enter amount from line 3a, see instructions) | 3b. | | | % |
| 4. Sum of percentages in column C | 4. | | | % |
| 5. BUSINESS ALLOCATION PERCENTAGE (divide total percentage (line 4) by 3 or actual number of percentages used if more or less than 3) round to the nearest one hundredth of a percentage point and enter here and transfer to page 1, Schedule A, line 2) | 5. | | | % |
| 6. IS ANY PLACE OF BUSINESS LISTED IN PARTS 1 AND 2 LOCATED IN YOUR HOME? ......... | | | YES | NO |
| 7. DID YOU CLAIM A DEDUCTION FOR EXPENSES OF AN OFFICE IN YOUR HOME? ......... | | | YES | NO |

0.453 1/12-02-06

### SCHEDULE D | Investment Capital and Allocation and Cash Election

| A DESCRIPTION OF INVESTMENT LIST EACH STOCK AND SECURITY (USE RIDER IF NECESSARY) | B No. of Shares or Amount of Securities | C Average Value | D Liabilities Attributable to Investment Capital | E Net Average Value (column C minus column D) | F Issuer's Allocation Percentage | G Value Allocated to NYC (column E x column F) |
|---|---|---|---|---|---|---|
| | | | | | % | |
| | | | | | | |
| | | | | | | |
| 1. Totals (including items on rider) ....▶ | | | | | | |
| 2. Investment allocation percentage (line 1G divided by line 1E, round to the nearest one hundredth of a percentage point) | | | | | % | |
| 3. Cash - (To treat cash as investment capital, you must include it on this line) ............▶ | | | | | | |
| 4. Investment capital | | | | | | |

0230605     **ATTACH FEDERAL SCHEDULE C OR SCHEDULE C-EZ, FORM 1040 TO THIS RETURN**

Form NYC-202 2006          Page 4

Name PHILBERT GORICK          SSN / EIN 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

## SCHEDULE E | New York City Net Operating Loss Carryforward Deduction

COMPLETE A SEPARATE SCHEDULE FOR EACH LOSS YEAR. ATTACH A DETAILED SCHEDULE FOR EACH APPLICABLE LINE.

1. Enter allocated NYC net operating loss amount incurred for loss year ended: _____-___-___ .................. 1. _____
2. Enter amount of line 1 previously absorbed by year ended: _____-___-___ .......... 2. _____
3. Enter amount of line 1 previously absorbed by year ended: _____-___-___ .......... 3. _____
4. Enter amount of line 1 previously absorbed by year ended: _____-___-___ .......... 4. _____
5. Add lines 2, 3 and 4 plus any additional year(s) ................................................ 5. _____
6. Subtract line 5 from line 1 ................................................................................ 6. _____
7. Enter amount from page 1, Schedule A, line 10 ................................................ 7. _____
8. Enter the lesser of line 6 or 7. This is your net operating loss deduction. Enter here and transfer
   amount to page 1, Schedule A, line 11 .............................................................. 8. _____

## SCHEDULE F | The following information must be entered for this return to be complete.

1. Nature of business or profession: NETWORK CONSULTANT
2. Did you file a New York City Unincorporated Business Tax Return for the following years:

   2004   X YES   __ NO
   2005   X YES   __ NO
   If "NO," state reason: _____

3. Enter home address: 166-05 HIGHLAND AVE Apt. No. 6M
   JAMAICA NY                    ZIP Code: 11432

4. If business terminated during the current taxable year, state date terminated. (mm/dd/yy) ...... _____
   (Attach a statement showing disposition of business property.)

5. Has the Internal Revenue Service or the New York State Department of Taxation and Finance increased or decreased any
   taxable income (loss) reported in any tax period, or are you currently being audited? __ YES X NO   MM/DD/YY     MM/DD/YY
   If "YES", by whom? __ Internal Revenue Service     State period(s): Beg.: _____ End.: _____
                 __ New York State Department of Taxation and Finance   State period(s): Beg.: _____ End.: _____
6. Has Form NYC-115 (Report of Federal/State Change in Taxable Income) been filed? ............ __ YES X NO
7. Did you calculate a depreciation deduction by the application of the federal Accelerated Cost Recovery System (ACRS)? ... __ YES X NO
8. Were you a participant in a "Safe Harbor Leasing" transaction during the period covered by this return? ...................... __ YES X NO

| PREPAYMENTS CLAIMED ON SCHEDULE A, LINE 24 | DATE | AMOUNT | TWELVE DIGIT TRANSACTION ID CODE |
|---|---|---|---|
| A. Payment with declaration, Form NYC-5UBTI (1) ...................... | | | |
| B. Payment with Notice of Estimated Tax Due (2) ...................... | | | |
| C. Payment with Notice of Estimated Tax Due (3) ...................... | | | |
| D. Payment with Notice of Estimated Tax Due (4) ...................... | | | |
| E. Payment with extension, Form NYC-62 ...................... | | | |
| F. Overpayment credited from preceding year ...................... | | | |
| G. TOTAL of A, B, C, D, E, F and amount from Form NYC-114.9, line 14 (enter on Schedule A, line 24) | | | |

## CERTIFICATION

I hereby certify that this return, including any accompanying rider, is, to the best of my knowledge and belief, true, correct and complete. I authorize the Department of Finance to discuss this return with the preparer listed below. (see instructions) __ YES

SIGN HERE ▶ Signature of taxpayer: _____ Title: _____ Date: _____ MM/DD/YY

Preparer's Social Security Number or PTIN
P00645698

PREPARER'S USE ONLY ▶ Preparer's signature: _____ Preparer's printed name: _____ Date: 09-10-07 MM/DD/YY

Firm's Employer Identification Number
11-2973690

JOHN TURIS ENTERPRISES INC
4713-15 AVENUE N
BROOKLYN NY 11234
● Firm's name ▲ Address ▲ ZIP Code

Check if self-employed __

Attach copy of federal Form 1040, Schedule C or Schedule C-EZ. If this is a final return, attach an entire copy of federal Form 1040.

To receive proper credit, you must enter your correct Social Security Number or Employer Identification Number on your tax return and remittance.

Make remittance payable to the order of: NYC DEPARTMENT OF FINANCE. Payment must be made in U.S. dollars, drawn on a U.S. bank.

MAILING INSTRUCTIONS ⟶

| RETURNS WITH REMITTANCES | RETURNS CLAIMING REFUNDS | ALL OTHER RETURNS |
|---|---|---|
| NYC DEPARTMENT OF FINANCE | NYC DEPARTMENT OF FINANCE | NYC DEPARTMENT OF FINANCE |
| P.O. BOX 5040 | P.O. BOX 5050 | P.O. BOX 5060 |
| KINGSTON, NY 12402-5040 | KINGSTON, NY 12402-5050 | KINGSTON, NY 12402-5060 |

The due date for the calendar year 2006 is on or before April 18, 2007. For fiscal years beginning in 2006, file on or before the 15th day of the fourth month following the close of your fiscal year.

60340605
00-332 12-02-06

# SCHEDULE C
## (Form 1040)

De partment of the Treasury
In ernal Revenue Service (99)

# Profit or Loss From Business
## (Sole Proprietorship)

▶ Partnerships, joint ventures, etc., must file Form 1065 or 1065-B.

▶ Attach to Form 1040, 1040NR, or 1041.    ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No. 09

Name of proprietor: PHILBERT GORICK

Social security number (SSN): 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

| A | Principal business or profession, including product or service (see page C-2) | B Enter code from pages C-8, 9, & 10 |
|---|---|---|
| | NETWORK CONSULTANT | ▶ 541510 |

| C | Business name. If no separate business name, leave blank. | D Employer ID number (EIN), if any |
|---|---|---|
| | 1099 FROM CONCORD SERVICES | 11-3012742 |

| E | Business address (including suite or room no.) ▶ 1221 BEDFORD AVE |
|---|---|
| | City, town or post office, state, and ZIP code ▶ BROOKLYN NY 11216 |

F Accounting method:  (1) [X] Cash   (2) ☐ Accrual   (3) ☐ Other (specify) ▶ _____

G Did you "materially participate" in the operation of this business during 2006? If "No," see page C-3 for limit on losses  [X] Yes  ☐ No

H If you started or acquired this business during 2006, check here  ▶ ☐

## Part I  Income

| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here  ▶ ☐ | 1 | 102969. |
|---|---|---|---|
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | 102969. |
| 4 | Cost of goods sold (from line 42 on page 2) | 4 | 5612. |
| 5 | Gross profit. Subtract line 4 from line 3 | 5 | 97357. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see page C-3) | 6 | |
| 7 | Gross income. Add lines 5 and 6  ▶ | 7 | 97357. |

## Part II  Expenses. Enter expenses for business use of your home only on line 30.

| 8 | Advertising | 8 | | 18 | Office expense | 18 | 9600. |
|---|---|---|---|---|---|---|---|
| 9 | Car and truck expenses (see page C-4) | 9 | 4210. | 19 | Pension and profit-sharing plans | 19 | |
| 10 | Commissions and fees | 10 | 29116. | 20 | Rent or lease (see page C-5): | | |
| 11 | Contract labor (see page C-4) | 11 | | a | Vehicles, machinery, and equipment | 20a | 8988. |
| 12 | Depletion | 12 | | b | Other business property | 20b | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | 13 | | 21 | Repairs and maintenance | 21 | 2018. |
| | | | | 22 | Supplies (not included in Part III) | 22 | 2611. |
| | | | | 23 | Taxes and licenses | 23 | 325. |
| 14 | Employee benefit programs (other than on line 19) | 14 | | 24 | Travel, meals, and entertainment: | | |
| 15 | Insurance (other than health) | 15 | 2998. | a | Travel | 24a | 598. |
| 16 | Interest: | | | b | Deductible meals and entertainment (see page C-6) | 24b | |
| a | Mortgage (paid to banks, etc.) | 16a | | 25 | Utilities | 25 | 3149. |
| b | Other | 16b | | 26 | Wages (less employment credits) | 26 | |
| 17 | Legal and professional services | 17 | 650. | 27 | Other expenses (from line 48 on page 2) | 27 | |

| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns  ▶ | 28 | 64263. |
|---|---|---|---|
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | 29 | 33094. |
| 30 | Expenses for business use of your home. Attach Form 8829 | 30 | |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | | |
| | • If a profit, enter on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | 31 | 33094. |
| | • If a loss, you must go to line 32. | | |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6). | | |
| | • If you checked 32a, enter the loss on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | 32a ☐ All investment is at risk. | |
| | • If you checked 32b, you must attach Form 6198. Your loss may be limited. | 32b ☐ Some investment is not at risk. | |

LHA  For Paperwork Reduction Act Notice, see page C-8 of the instructions.

Schedule C (Form 1040) 2006

02-1001  11-03-06

5

Schedule C (Form 1040) 2006   **PHILBERT GORICK**                             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  Page **2**

**Part III** | **Cost of Goods Sold** (see page C-7)

| | | | | |
|---|---|---|---|---|
| 33 | Method(s) used to value closing inventory:  a ☐ Cost   b ☐ Lower of cost or market   c ☐ Other (attach explanation) | | | |

| 34 | Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation | ☐ Yes | ☐ No |

| 35 | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | 35 | |
| 36 | Purchases less cost of items withdrawn for personal use | 36 | |
| 37 | Cost of labor. Do not include any amounts paid to yourself | 37 | |
| 38 | Materials and supplies | 38 | 5612. |
| 39 | Other costs | 39 | |
| 40 | Add lines 35 through 39 | 40 | 5612. |
| 41 | Inventory at end of year | 41 | |
| 42 | Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 | 42 | 5612. |

**Part IV** | **Information on Your Vehicle.** Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562.

43   When did you place your vehicle in service for business purposes? (month, day, year)  ▶  / / .

44   Of the total number of miles you drove your vehicle during 2006, enter the number of miles you used your vehicle for:

a  Business _____  b  Commuting _____  c  Other _____

45   Do you (or your spouse) have another vehicle available for personal use? ☐ Yes ☐ No

46   Was your vehicle available for personal use during off-duty hours? ☐ Yes ☐ No

47 a  Do you have evidence to support your deduction? ☐ Yes ☐ No
   b  If "Yes," is the evidence written? ☐ Yes ☐ No

**Part V** | **Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 48 | Total other expenses. Enter here and on page 1, line 27 | 48 | |

63-0002/ 11-03-06                                   Schedule C (Form 1040) 2006

6

JUDGE DANIELS          **07 CV    2529**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

PHILBERT GORRICK,                                    07 Civ.

　　　　　Plaintiff,

　　　- against -                                    COMPLAINT

NEW YORK CITY TRANSIT
AUTHORITY,                                          PLAINTIFF DEMANDS
                                                    TRIAL BY JURY IN
　　　　　Defendant.                                THIS ACTION _____

--------------------------------------------------------X

MAR 2 7 2007

　　　Plaintiff Philbert Gorrick ("Gorrick"), by his attorneys, Schwartz, Lichten & Bright, P.C.,

complains of defendant New York City Transit Authority ("TA"), as follows:

### JURISDICTION AND VENUE

　　　1. This is an action brought to remedy discrimination in employment on the basis of

disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.

§ 12101 et seq. ("ADA"); the New York State Human Rights Law, Executive Law § 290 et seq.

("Human Rights Law"); and the Administrative Code of the City of New York, § 8-101 et seq.

("Administrative Code").

　　　2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1367,

and 42 U.S.C. § 12117(a).

　　　3. Declaratory and injunctive relief, damages, and other appropriate legal and equitable relief

are sought pursuant to 42 U.S.C. § 12117(a). Compensatory damages are sought pursuant to 42

U.S.C. § 1981a; Executive Law § 297(9); and Administrative Code, § 8-502(a). Punitive damages are sought pursuant to 42 U.S.C. § 1981a and Administrative Code, § 8-502(a).

4. Costs and attorney's fees are sought pursuant to 42 U.S.C. § 12117(a) and Administrative Code, § 8-502(f).

5. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), because the unlawful employment practices occurred within this judicial district.

6. Plaintiff filed a charge of discrimination against defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 10, 2006. The United States Department of Justice, on March 22, 2007, issued plaintiff a notice informing him of his right to sue defendant. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

## PARTIES

7. Gorrick has been employed by the TA since July 1991. His initial position was Power Cable Maintainer Helper, followed by Light Maintainer. In 1993, the TA promoted Gorrick to Power Cable Maintainer. He was most recently assigned to the 100 Locust Avenue maintenance center in the Bronx, New York.

8. Defendant is a public authority created under the laws of the State of New York to operate the New York City subway and bus system.

2

## FACTS

9. For several decades, Gorrick has been diagnosed with severe venous stasis disease, with stasis dermatitis and recurrent ulcers in the ankle region. Due to this disability, Gorrick occasionally has difficulty standing and walking, but he always has been able to perform the essential functions of a Power Cable Maintainer.

10. On October 9, 2000, the TA suspended Gorrick because he was not wearing a certain type of boot. Gorrick was wearing the same type of boot he had worn since he first started working as a Power Cable Maintainer Helper in 1991.

11. Gorrick was unable to wear the boot newly required by the TA because of his disability but Gorrick could perform the essential functions of his job without wearing that boot.

12. Over the next six years, Gorrick, his union, Transport Workers Union of America, Local 100, AFL-CIO, and the TA, attempted to arrive at a reasonable accommodation in various forums, including numerous grievance hearings; nine days of arbitration over four years; and many medical examinations.

13. On August 16, 2006, the TA reached its final medical determination that Gorrick was physically unable to perform the duties of a Power Cable Maintainer, due to his inability to wear the boot required for the first time in October 2000.

## FIRST CAUSE OF ACTION

14. The TA has not allowed Gorrick to return to his position as Power Cable Maintainer because Gorrick has a physical impairment that substantially limits at least two of Gorrick's major

life activities, standing and walking. Defendant therefore discriminated against plaintiff because of his disability. By its acts and practices described above, defendant has violated the ADA.

15. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer injury unless and until this Court grants relief. Defendant engaged in these discriminatory practices with malice and with reckless indifference to plaintiff's rights protected under federal law.

## SECOND CAUSE OF ACTION

16. By its acts and practices described above, defendant has violated the Human Rights Law.

17. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief. Defendant willfully and maliciously engaged in these discriminatory practices.

## THIRD CAUSE OF ACTION

18. By its acts and practices described above, defendant has violated the Administrative Code.

19. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief. Defendant willfully and maliciously engaged in these discriminatory practices.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

## ON THE FIRST CAUSE OF ACTION

(a) declaring that the acts and practices complained of herein are in violation of the ADA;

4

(b) enjoining and permanently restraining these violations of the ADA;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendant to place plaintiff in the position he would have continued to occupy but for defendant's discriminatory treatment of him, and make him whole for all earnings he would have received but for defendant's discriminatory treatment, including but not limited to wages, bonuses, pensions, and other lost benefits;

(e) directing defendant to pay plaintiff compensatory and punitive damages and damages for his mental anguish and humiliation;

(f) awarding plaintiff reasonable attorney's fees and the costs of this action;

(g) granting such other and further relief as this Court deems just and proper;

## ON THE SECOND CAUSE OF ACTION

(h) awarding compensatory damages in an amount not yet ascertained;

## ON THE THIRD CAUSE OF ACTION

(i) awarding compensatory and punitive damages in an amount not yet ascertained; and

(j) awarding plaintiff reasonable attorney's fees and costs of this action;

5

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all of the causes of action herein.


Dated:  New York, New York
        March 26, 2007

                                        SCHWARTZ, LICHTEN & BRIGHT, P.C.


                                        _____
                                        By:  Stuart Lichten (SL-1258)
                                        Attorneys for Plaintiff
                                        113 University Place - 11th Floor
                                        New York, New York  10003
                                        (212) 228-6320

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

PHILBERT GORRICK,

                        Plaintiff,

            - against -

NEW YORK CITY TRANSIT AUTHORITY

                        Defendant.

---------------------------------------------------------------- x

**DEFENDANT'S FIRST
INTERROGATORIES
AND REQUEST FOR
PRODUCTION OF
DOCUMENTS**

CV-07-2529 (GBD)

**PLEASE TAKE NOTICE** that pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Civil Rules for the Southern and Eastern Districts of New York, defendant NEW YORK CITY TRANSIT AUTHORITY by its attorney, MARTIN B. SCHNABEL, Vice President and General Counsel, New York City Transit Authority, Ann Burton Goetcheus, Assistant General Counsel, of Counsel, demand that you, within thirty days after service of these interrogatories and document requests, serve upon the undersigned separate and complete answers, sworn to under oath, to each interrogatory set forth, and produce the documents requested.

The interrogatories and request to produce documents shall be deemed to continue beyond the date when you serve the responses upon defendant. You shall supplement the responses to these interrogatories and request to produce documents if any further knowledge, information or documents are acquired by you, your agents, representatives, or attorneys subsequent to the date of the original responses.

## Instructions to Responses

Unless otherwise indicated, the time period covered by these requests is 1998 to the present.

The responses to the interrogatories shall set forth each question in full before each answer. Separate answers shall be provided in response to each interrogatory, and when an interrogatory has subdivisions, each subdivision shall be answered separately. In accordance with Rule 33 of the Federal Rules of Civil Procedure, you must sign the response to the interrogatories.

You must produce the documents required, or a true, complete and legible copy thereof, at the office of the undersigned if the documents are in the possession, custody or control of you or your attorneys. You are to provide the undersigned with an appropriate release if the documents requested are not in your possession, custody or control.

Consistent with the definitions set forth in Rule 26.3 of the Civil Rules of the Southern and Eastern Districts of New York, the following definitions apply:

The term "document" is used in its customarily broad sense and includes all written, typed, printed, recorded statements, photographs, communications or other matter, however produced or reproduced. Further, the term "document" includes all non-identical copies in whatever form maintained, including but not limited to correspondence, memoranda, notes, journals, diaries, log-books, minutes, audiotapes, computerized files, or electronic mail.

"Communications" includes oral, written, or electronic communications made by or on behalf of the plaintiff.

2

The term "incident" or "incidents" is used to refer to all of the facts and circumstances which provide the basis for this action, including all the facts, events and occurrences that are alleged in your complaint and any amended complaint, and all facts and circumstances directly or indirectly related thereto.

Each request herein extends to all documents in your possession, custody or control or anyone acting on your behalf. A document is deemed to be in your possession, custody or control if it is in the physical custody of any other person and you: (1) own such document in whole or in part; (2) have a right by contract, law or otherwise to use, inspect, examine or copy such document on any terms; (3) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (4) as a practical matter, you have been able to use, inspect, examine, or copy such document when you sought to do so. If any requested document was but no longer is in your control, state the disposition of each such document.

Provide the following information for each document that is withheld on the grounds of privilege or attorney work product:

    a.    Its date;

    b.    Its title;

    c.    Its author;

    d.    Its addressee;

    e.    The identity of each person who received and/or saw the original or copy of it;

    f.    The specific privilege under which it is withheld; and

    g.    A description sufficient to support your contention that the document is privileged.

#959472
2007-9909

If any requested document has been lost or destroyed, set forth a complete statement of the circumstances surrounding such loss or destruction. If any requested document has been destroyed pursuant to a system of retaining or purging documents or files, set forth in detail all aspects of that policy, including but not limited to:

  a. Any memoranda or other documents which memorialize all document retention policies, including the identity of the person who is responsible for such policies; prepared the documents.

  b. The method or means of destruction for documents relevant to this action;

  c. The date of the document's destruction;

  d. The identity of the person responsible for the destruction.

If an objection is made to any request, state the objection and the ground upon which it is made. Unless otherwise stated, the applicable time period is from January 1, 1998 to the present.

## INTERROGATORIES

1. Describe each and every incident that you claim support your claim(s) of discrimination and identify each and every person who, in your opinion, was responsible in any way for any discriminatory or allegedly wrongful acts.

2. Identify each and every individual who witnessed or participated in any part of the events alleged in the complaint, including any allegedly wrongful acts. If you do not know the individual's name, give a detailed physical description of the individual, including approximate age, height, weight, gender, race, complexion, hair color, and clothing worn and the individual's title.

#959472
2007-9909

3.    Identify each and every union representative, official or attorney with whom you have discussed or who otherwise has knowledge of the grievances you have filed against the Transit Authority or its agents.

4.    Identify each and every union representative, official and/or attorney who appeared with or for you at each Step 1, 2, or 3 or arbitration hearings.

5.    Identify all documents provided to or received from the union that represented you.

6.    Identify any and all documents prepared by or for you or by anyone else on your behalf or otherwise which relate to the allegations in the complaint, including but not limited to letters, complaints, grievances, notes, reports, forms, journals, transcripts, calendars, diaries, log-books, witness statements, photographs, audio or video recordings, or electronic mail.

7.    Identify each and every health care provider, including but not limited to hospitals, clinics, physicians, therapists, social workers, psychiatrists and psychologists from whom you have <u>requested or received</u> examination or treatment since 1993, and state the date(s) and nature of such examination or treatment or request for treatment.

8.    If you or your attorney or anyone else on your behalf, including any person employed by, or connected with, your attorney, consulted any person holding him/herself out to be an expert or consultant in any field, including any medical, psychological, or related field, concerning any issues in this case, including the issue of damages, identify each person giving his/her name, address, telephone number, and field of expertise, the name, address, and telephone number of his/her employer, the date of the

5

first contact or consultation with him/her, whether any written or oral report was made by him/her. If any written report was made, please produce a copy of each report, the date of each report, state whether each report was written or oral, if any writing was made, including a written report, please provide a copy of that writing and/or report, and whether you expect to call him/her at trial.

9.     Detail each and every category of damages and expenses sustained by you or anyone else on your behalf as a result of the alleged incident, including but not limited to medical expenses, lost earnings, and out-of-pocket expenses, and any compensation received in reimbursements of these damages or expenses. Identify all documents which in any way tend to substantiate these damages, expenses, and reimbursements, including but not limited to bills, proof of payment thereof, receipts for out-of-pocket expenses, insurance claim forms, pay stubs, and state and federal income tax returns for the past five years.

10.     Identify each and every person who may have knowledge or information relevant to each and every damage amount sought in this action and for each person identified in paragraph "9" provide the address and telephone number of the person and the employer of the person.

11.     Identify each person you intend to call as a witness at trial.

12.     State whether you have ever been a party (plaintiff or defendant) to <u>any</u> civil action or proceeding (other than this action). If so, as to each action or proceeding, identify: the nature of the action or proceeding, its name or caption, index number and the court in which it was brought; its status or disposition. State whether you have ever testified or been a witness in any other action or proceeding.

#959472
2007-9909

13. Identify a.) your physical or mental impairment(s) and b.) the major life activity(ies) substantially limited by the alleged impairment(s), as defined in the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(A).

14. Identify any and all accommodations you requested to enable you to perform the essential functions of your job as a Power Cable Maintainer, the individual(s) to whom each such accommodation request was addressed and the date, time and location of the request(s).

15. Identify each and every job, full time or part time, including self-employment, that you have held from the suspension of your employment by the New York City Transit Authority in October 2000 to the present and, for each, supply:

    a. The name and address of the employer;

    b. The dates of such employment;

    c. Whether such employment was full or part time;

    d. The position you held; and

    e. The wages or remuneration received (either weekly or annually).

## REQUESTS FOR PRODUCTION OF DOCUMENTS

As described in the instructions above, the term "document" includes all written, typed, printed, recorded statements, photographs, communications or other matters, however produced or reproduced. Further, the term "document" includes all non-identical copies in whatever form maintained, including but not limited to correspondence, memoranda, notes, journals, log-books, diaries, minutes, audiotapes, computerized files or electronic.

7

1.    Produce copies of all documents, if any, used in any way when preparing the complaint.

2.    Produce copies of documents identified in response to the interrogatories above or used in responding to interrogatories above.

3.    Produce copies of all grievances and any grievance related documents filed or received by you or on your behalf.

4.    Produce copies of inter-office memoranda, notes, letters or other communications that concern you, or your complaints of discrimination.

5.    Produce copies of documents, reports, memoranda, etc. concerning any promotion for which you applied, including, but not limited to, the job posting notice, your application and transmittal letter and any related correspondence.

6.    Produce copies of documents, reports, memoranda, etc. concerning any charges you filed with the New York State Division of Human Rights, the United States Equal Employment Opportunity Commission or any other entity or person.

7.    Produce copies of documents, reports, memoranda, etc. concerning any claims for unemployment insurance benefits, social security disability benefits, Medicaid, state disability benefits and/or Workers' Compensation benefits filed by you or on your behalf.

8.    Produce copies of documents, reports, memoranda, etc. concerning your damages.

9.    Complete and provide written releases that will permit defendant to contact your employers since your suspension in October 2000 and to receive copies of your employment records. Complete a separate release for each employer.

#959472
2007-9909

10.    Produce copies of medical records dating from 1993 to the present or, if copies are unavailable, complete and provide written releases which would permit defendant to obtain copies of all records relating to the medical and/or psychiatric/psychological examination or treatment identified in responses to the interrogatories above.  Complete a separate release for each medical facility or treating physician, psychiatrist, psychologist, social worker or therapist from whom you have sought treatment or been treated by.  Releases for records from Dr. Jennifer Svahn, Elmhurst Hospital, Beth Israel Hospital, Queens Medical Care, Hillside Focus Care, Mary Immaculate Hospital, Lenox Hill Hospital and Boro Medical, P.C. are attached for your authorization.

11.    Provide a copy of your federal and state tax returns and supporting documents for each of the following tax years:  1999 to the present.

Dated:  Brooklyn, New York
        May 25, 2007

**MARTIN B. SCHNABEL**
Vice President and General Counsel
NEW YORK CITY TRANSIT AUTHORITY
Attorney for Defendant
130 Livingston Street, Room 1243
Brooklyn, NY 11201
(718) 694-3889

By:    **Ann Burton Goetcheus (ABG-7265)**
       Assistant General Counsel

To:    Stuart Lichten, Esq. (SL-1258)
       Schwartz, Lichten & Bright, P.C.
       113 University Place -11th Floor
       New York, NY 10003
       (212) 228-6320

9

#959472
2007-9909

## AUTHORIZATION FOR RELEASE OF RECORDS

**TO:** _____

_____

_____

**YOU ARE HEREBY AUTHORIZED** to permit the New York City

Transit Authority, through its authorized representative, to gain access to and make or

receive copies of any and all employment records, including all records from informal,

sealed or any other files, however maintained or designated.

_____

Philbert Gorrick SS#: 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

STATE OF NEW YORK    )
                     )ss:
COUNTY OF            )

On this \_\_\_\_ day of _____, 2007, before me personally came and
appeared before me Philbert Gorrick to me known and known to me to be the individual
described in and who executed the foregoing release and who duly acknowledged to me
that he executed the same.

_____

NOTARY PUBLIC

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed:* a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to the physical evaluations performed on or about March 14, 2000 and October 2, 2001. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure:*
Elmhurst Hospital Center – Renee Spiegel, M.D.
79-01 Broadway
Elmhurst, N.Y. 11373
(718) 334-4000

*Persons to Whom the Disclosure May be Made:* Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure:* litigation

*Expiration Date or Event of the Authorization:*
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____     Date: _____
    [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable):* [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to physical evaluations on or about May 22, 2002; June 9, 2004; and August 31, 2006.. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:
Beth Israel Hospital – Medical Records Correspondence
First Avenue & 16th Street
Room L 30
New York, N.Y. 10003
(212) 420-2665

*Persons to Whom the Disclosure May be Made*: Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*: litigation

*Expiration Date or Event of the Authorization*:
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____    Date: _____
      [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed:* : a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to the physical evaluations on or about November 8, 1999; January 24, 2000; March 7, 2000 and April 14, 2000. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure:*
Queens Medical Care – Naheed Sultana, M.D.
70-05 Highland Avenue
Jamaica Estate, N.Y. 11432
(718) 206-2222

*Persons to Whom the Disclosure May be Made:* Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure:* litigation

*Expiration Date or Event of the Authorization:*
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____    Date: _____
[Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable):* [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations including but not limited to the physical evaluations on or about January 11, 1999; April 21, 1999 and August 12, 1999. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:
Hillside Focus Care – Olayiwola Ola, M.D.
170-06 Hillside Avenue
Jamaica, N.Y. 11432
(718) 206-3915

*Persons to Whom the Disclosure May be Made*: Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*: litigation

*Expiration Date or Event of the Authorization*:
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____    Date: _____
    [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to the physical evaluations on or about August 31, 1999 and April 5, 1999. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:
St. Vincent – Mary Immaculate Hospital
152-11 89th Avenue
Jamaica, N.Y. 11432
(718) 558-2000

*Persons to Whom the Disclosure May be Made*:  Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*:  litigation

*Expiration Date or Event of the Authorization*:
I understand that:  (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____          Date: _____
　　　　[Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*:  a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to the physical evaluations on or about August 17, 1994.  Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:
Lenox Hill Hospital – Department of Medical Records
100 East 77th Street
New York, N.Y. 10021
(212) 434-2420

*Persons to Whom the Disclosure May be Made*:  Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*:  litigation

*Expiration Date or Event of the Authorization*:
I understand that:  (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____          Date: _____
    [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to the physical evaluations on or about March 30, 1998; May 25, 2000 and June 1, 2000. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:
Boro Medical, P.C.
164-01 Goethals Avenue
Jamaica, N.Y. 11432
(718) 820-9365

*Persons to Whom the Disclosure May be Made*:  Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*:  litigation

*Expiration Date or Event of the Authorization*:
I understand that:  (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____          Date: _____
            [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations, including but not limited to the evaluations conducted in or about May 2002 and in August 2006. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:
Dr. Jennifer Svahn, MD, FACS
Beth Israel Medical Center
Milton and Carol Petrie Division
First Avenue at 16th Street
New York, N.Y. 10003

*Persons to Whom the Disclosure May be Made*: Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*: litigation

*Expiration Date or Event of the Authorization*:
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____     Date: _____
       [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:

*Persons to Whom the Disclosure May be Made*: Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*: litigation

*Expiration Date or Event of the Authorization*:
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____     Date: _____
     [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

## AUTHORIZATION FOR THE USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

I hereby authorize the use and disclosure of my protected health information as follows:

*Information to be Used or Disclosed*: a copy of any and all records of the examination or treatment of Philbert Gorrick, including but not limited to reports, charts, diagnoses, test results, psychiatric/psychological records, psychological test instruments, prescriptions and invoices relating to psychiatric and other evaluations. Philbert Gorrick, was born 11/28/54, Social Security No. 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, of Jamaica, New York.

*Persons Authorized to Make Requested Disclosure*:

*Persons to Whom the Disclosure May be Made*: Ann Burton Goetcheus, Esq., Executive Agency Counsel, New York City Transit Authority, 130 Livingston Street, 12th floor, Brooklyn, NY 11201.

*Purposes of the Use or Disclosure*: litigation

*Expiration Date or Event of the Authorization*:
I understand that: (1) I may revoke this authorization in writing at any time except to the extent that the disclosing party has taken action in reliance on this authorization; (2) the disclosing party may not condition treatment, payment, enrollment or eligibility for benefits on my willingness to sign this authorization; and (3) any information disclosed under this authorization may be subject to redisclosure by the recipient and may no longer be protected by law.

By: _____    Date: _____
    [Name of Individual or Personal Representative]

*Basis of Personal Representative's Authority (if Applicable)*: [If authorization signed by personal representative, state nature of representation, e.g., parent, lawful guardian, etc.]

#971558
2007-9909

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PHILBERT GORRICK,

Plaintiff,

-against-

NEW YORK CITY TRANSIT AUTHORITY,

Defendant.

------------------------------------------------------------x

Index No.:  CV-07-2529 (GBD)

AFFIDAVIT OF SERVICE
BY MAIL

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF KINGS)

NURY AROCA being duly sworn deposes and says:

I am an employee of the New York City Transit Authority, in the office of Martin B. Schnabel, Attorney for defendant.  I am over the age of 18 years and am not a party to this action.  On the 25th day of May 2007, I served the annexed **Defendant's First Interrogatories and Request for Production of Documents**, upon:

Stuart Lichten, Esq.
Schwartz, Lichten & Bright, P.C.
113 University Place – 11th Floor
New York, N.Y. 10003

by delivering a true copy of the same securely enclosed in a post-paid wrapper in a Post Office Box regularly maintained by the United States Government at 130 Livingston Street, Brooklyn, New York 11201, properly addressed to said attorney(s) at said address within the state.  This address had been previously designated by said attorney(s) for that purpose, upon the preceding papers in this action.

NURY AROCA

Sworn to before me this
25th day of May, 2007

NOTARY PUBLIC

SHAREE D. GILFORD
Notary Public, State of New York
No. 01GI4945081
Qualified in Bronx County
#97284   Commission Expires December 12, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

PHILBERT GORRICK,                                    :

                          Plaintiff,            :           Index No. CV-07-2529 (GBD)

        - against -                               :

NEW YORK CITY TRANSIT AUTHORITY,          :

                      Defendant.         :

-------------------------------------------------------------------- X

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## FIRST SET OF INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff responds to Defendant's First Set of Interrogatories and Request for Production

of Documents as follows:

## INTERROGATORIES

**Interrogatory No. 1**

Describe each and every incident that you claim support your claim(s) of
discrimination and identify each and every person who, in your opinion, was
responsible in any way for any discriminatory or allegedly wrongful acts.

**Response:**

Plaintiff objects to Interrogatory No. 1 on the grounds that it is vague and overbroad, and

exceeds the scope of Local Civil Rule 33.3. Without waiver of the foregoing objections, plaintiff

responds:  Gustave Rivera, Cassandra Tillman, Vincent Valenti, Norman Blumstein, Ralph Dill,

Patrick McGreal, Kevin Fonseca, John Campbell, J. Lee, O. Turner, Joseph Rozas, Richard

Gayle, Michelle Alexander, M.D., Edward Isenberg, M.D, and Joan Cox.

**Interrogatory No. 2**

> Identify each and every individual who witnessed or participated in any part of the events alleged in the complaint, including any allegedly wrongful acts. If you do not know the individual's name, give a detailed physical description of the individual, including approximate age, height, weight, gender, race, complexion, hair color, and clothing worn and the individual's title.

**Response:**

Plaintiff objects to Interrogatory No. 2 on the grounds that it is vague, confusing, and

overbroad.

**Interrogatory No. 3**

> Identify each and every union representative, official or attorney with whom you have discussed or who otherwise has knowledge of the grievances you have filed against the Transit Authority or its agents.

**Response:**

Plaintiff objects to Interrogatory No. 3 on the grounds that it is speculative, confusing,

and overbroad, and requests privileged communications. Without waiver of the foregoing

objections, plaintiff responds: Anthony Utano, Donovan Smith, Kenneth Page, Eileen Sullivan,

Andrea Lazarow, Rick Figueroa, Julio Rivera, and Milton Ramos.

**Interrogatory No. 4**

> Identify each and every union representative, official and/or attorney who appeared with or for you at each Step 1, 2, or 3 or arbitration hearings.

2

**Response:**

<u>See</u>, Response to Interrogatory No. 3.

**Interrogatory No. 5**

Identify all documents provided to or received from the union that represented you.

**Response:**

Plaintiff objects to Interrogatory No. 5 on the ground that it requests privileged communications and is overbroad. Without waiver of the foregoing objections, <u>see</u>, Document Nos. 322, 361-62, 394-97, 399-431, 441-72, 482-93, and 504-23.

**Interrogatory No. 6**

Identify any and all documents prepared by or for you or by anyone else on your behalf or otherwise which relate to the allegations in the complaint, including but not limited to letters, complaints, grievances, notes, reports, forms, journals, transcripts, calendars, diaries, log-books, witness statements, photographs, audio or video recordings, or electronic mail.

**Response:**

Plaintiff objects to Interrogatory No. 6 on the grounds that it is vague, overbroad, and confusing.

**Interrogatory No. 7**

Identify each and every health care provider, including but not limited to hospitals, clinics, physicians, therapists, social workers, psychiatrists and psychologists from whom you have requested or received examination or treatment since 1993, and state the date(s) and nature of such examination or treatment or request for treatment.

**Response:**

Plaintiff objects to Interrogatory No. 7 on the ground that it exceeds the scope of Local

Civil Rule 33.3. Without waiver of the foregoing objection, plaintiff responds: Gary

Gwertzman, M.D., Harold Libatter, M.D., Alfred Ernst, M.D., V. Sivaprakasapillai, M.D.,

Michael Katz, M.D., Michelle Alexander, M.D., Naheed Sultana, M.D., Renee Spiegel, M.D.,

Edward Isenberg, M.D., Mitchell Bruce, M.D., Jennifer Svahn, M.D., Arezu Izad, D.P.M., A.

Genser, M.D., Harriet Dickenson, M.D., and Olayiwola Ola, M.D.

**Interrogatory No. 8**

> If you or your attorney or anyone else on your behalf, including any person
> employed by, or connected with, your attorney, consulted any person holding
> him/herself out to be an expert or consultant in any field, including any medical,
> psychological, or related field, concerning any issues in this case, including the
> issue of damages, identify each person giving his/her name, address, telephone
> number, and field of expertise, the name, address, and telephone number of
> his/her employer, the date of the first contact or consultation with him/her,
> whether any written or oral report was made by him/her. If any written report was
> made, please produce a copy of each report, the date of each report, state whether
> each report was written or oral, if any writing was made, including a written
> report, please provide a copy of that writing and/or report, and whether you expect
> to call him/her at trial.

**Response:**

Plaintiff objects to Interrogatory No. 8 on the ground that it is beyond the scope of Local

Civil Rule 33.3. Without waiver of the foregoing objection, plaintiff responds that he has not yet

retained any experts.

**Interrogatory No. 9**

> Detail each and every category of damages and expenses sustained by you or
> anyone else on your behalf as a result of the alleged incident, including but not

4

limited to medical expenses, lost earnings, and out-of-pocket expenses, and any compensation received in reimbursements of these damages or expenses. Identify all documents which in any way tend to substantiate these damages, expenses, and reimbursements, including but not limited to bills, proof of payment thereof, receipts for out-of-pocket expenses, insurance claim forms, pay stubs, and state and federal income tax returns for the past five years.

**Response:**

Plaintiff objects to Interrogatory No. 9 on the grounds that it is overbroad, beyond the scope of Local Civil Rule 33.3, and not likely to lead to the discovery of admissible evidence. Without waiver of the foregoing objections, plaintiff responds:  approximately $52,000 in back pay as of July 2007, an undetermined amount in emotional distress damages, attorney's fees, costs, and disbursements.

**Interrogatory No.  10**

Identify each and every person who may have knowledge or information relevant to each and every damage amount sought in this action and for each person identified in paragraph "9" provide the address and telephone number of the person and the employer of the person.

**Response:**

Plaintiff objects to Interrogatory No. 10 on the grounds that it is overbroad, vague, and confusing.

**Interrogatory No.  11**

Identify each person you intend to call as a witness at trial.

**Response:**

Plaintiff objects to Interrogatory No. 11 on the ground that it exceeds the scope of Local Civil Rule 33.3.

5

**Interrogatory No. 12**

State whether you have ever been a party (plaintiff or defendant) to any civil action or proceeding (other than this action). .If so, as to each action or proceeding, identify: the nature of the action or proceeding, its name or caption, index number and the court in which it was brought; its status or disposition. State whether you have ever testified or been a witness in any other action or proceeding.

**Response:**

Plaintiff objects to Interrogatory No. 12 on the ground that it exceeds the scope of Local Civil Rule 33.3.

**Interrogatory No. 13**

Identify a.) your physical or mental impairment(s) and b.) the major life activity(ies) substantially limited by the alleged impairment(s), as defined in the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(A).

**Response:**

Plaintiff objects to Interrogatory No. 13 on the ground that it exceeds the scope of Local Civil Rule 33.3.

**Interrogatory No. 14**

Identify any and all accommodations you requested to enable you to perform the essential functions of your job as a Power Cable Maintainer, the individuals) to whom each such accommodation request was addressed and the date, time and location of the request(s).

6

**Response:**

Plaintiff objects to Interrogatory No. 14 on the ground that it exceeds the scope of Local

Civil Rule 33.3.

**Interrogatory No. 15**

Identify each and every job, full time or part time, including self employment, that
you have held from the suspension of your employment by the New York City
Transit Authority in October 2000 to the present and, for each, supply:

a.    The name and address of the employer;
b.    The dates of such employment;
c.    Whether such employment was full or part time;
d.    The position you held; and
e.    The wages or remuneration received (either weekly or annually).

**Response:**

Plaintiff objects to Interrogatory No. 15 on the ground that it exceeds the scope of Local

Civil Rule 33.3.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Document Request No. 1**

Produce copies of all documents, if any, used in any way when preparing the
complaint.

**Response:**

See, Document Nos. 1-523.

7

**Document Request No. 2**

Produce copies of documents identified in response to the interrogatories above or used in responding to interrogatories above.

**Response:**

See, Responses to Interrogatories.

**Document Request No. 3**

Produce copies of all grievances and any grievance related documents filed or received by you or on your behalf.

**Response:**

See, Document Nos. 322, 361-62, 394-97, 399-431, 441-72, 482-93, and 504-23.

**Document Request No. 4**

Produce copies of inter-office memoranda, notes, letters or other communications that concern you, or your complaints of discrimination.

**Response:**

See, Document Nos. 322, 361-62, 394-97, 399-431, 441-72, 482-93, and 504-23.

**Document Request No. 5**

Produce copies of documents, reports, memoranda, etc. concerning any promotion for which you applied, including, but not limited to, the job posting notice, your application and transmittal letter and any related correspondence.

**Response:**

Plaintiff does not possess documents responsive to Request No. 5.

**Document Request No. 6**

Produce copies of documents, reports, memoranda, etc. concerning any charges you filed with the New York State Division of Human Rights, the United States Equal Employment Opportunity Commission or any other entity or person.

**Response:**

See, Document Nos. 524-34.

**Document Request No. 7**

Produce copies of documents, reports, memoranda, etc. concerning any claims for unemployment insurance benefits, social security disability benefits, Medicaid, state disability benefits and/or Workers' Compensation benefits filed by you or on your behalf.

**Response:**

Plaintiff possesses no documents responsive to Request No. 7.

**Document Request No. 8**

Produce copies of documents, reports, memoranda, etc. concerning your damages.

**Response:**

Plaintiff objects to Request No. 8 on the grounds that it is vague and confusing.

**Document Request No. 9**

Complete and provide written releases that will permit defendant to contact your employers since your suspension in October 2000 and to receive copies of your employment records. Complete a separate release for each employer.

**Response:**

See, documents previously provided.

**Document Request No. 10**

Produce copies of medical records dating from 1993 to the present or, if copies are unavailable, complete and provide written releases which would permit defendant to obtain copies of all records relating to the medical and/or psychiatric/psychological examination or treatment identified in responses to the interrogatories above. Complete a separate release for each medical facility or treating physician, psychiatrist, psychologist, social worker or therapist from whom you have sought treatment or been treated by. Releases for records from Dr. Jennifer Svahn, Elmhurst Hospital, Beth Israel Hospital, Queens Medical Care, Hillside Focus Care, Mary Immaculate Hospital, Lenox Hill Hospital and Boro Medical, P.C. are attached for your authorization.

**Response:**

See, Document Nos. 1-321, 323-60, 363-93, 398.

**Document Request No. 11**

Provide a copy of your federal and state tax returns and supporting documents for each of the following tax years: 1999 to the present.

**Response:**

Plaintiff objects to Request No. 11 on the ground that it is not likely to lead to the

discovery of admissible evidence.


Dated: August 15, 2007
       New York, New York




                                   SCHWARTZ, LICHTEN & BRIGHT, P.C.
                                   Attorneys for Plaintiff


                              By: _____
                                   Stuart Lichten
                                   275 Seventh Avenue, 17th Floor
                                   New York, New York  10001
                                   (212) 228-6320



TO:     MARTIN B. SCHNABEL
        Vice President and General Counsel
        New York City Transit Authority
        Attorney for Defendant
        130 Livingston Street, Room 1243
        Brooklyn, New York  11201
        Of Counsel:  Ann Burton Goetcheus, Esq.


11



## New York City Transit

718 694-3889

September 5, 2007

**BY FAX and Mail**

Stuart Lichten, Esq.
Schwartz, Lichten & Bright, P.C.
Attorneys at Law
275 Seventh Avenue, Suite 1700
New York, N.Y. 10001

Re: Philbert Gorrick v. NYCTA  2007 cv 2529 (GBD)

Dear Mr. Lichten:

     In an effort to resolve the dispute regarding Plaintiff's tax returns without recourse to the Court, Defendant proposes, as an alternative to production of his 2000-2005 tax returns as a source for information concerning his employment and earnings in the period from 2000 to 2005, that Plaintiff, in addition to producing his 2006 tax returns, execute a release for the records of his application to JP Morgan Chase (or predecessor) for financing for his automobile, apparently purchased in 2005. I attach a release for the JP Morgan Chase records for your convenience.

     I am also writing to amend Defendants' Document Production. After sending the documents last week I discovered that there had been an error in numbering with the result that two sets of documents had been numbered D00340-399. I hereby attach a replacement set of documents formerly labeled D00340-399, relabeled D0400A to D0460A (one two-sided document was numbered on only one side originally) to place them where they should have been in the production. The former numbers are preserved but crossed-out to attempt to minimize confusion in the future. My apologies for the error which was, of course, unintentional.

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman

58-01-5504 4/07

-#1002277
2007-9909

The documents were generally produced in the manner in which they were maintained in the ordinary course of business:

| Bates numbers | Record category |
|---|---|
| D001-309 | Occupational Health Services file |
| D0310-386, 437A-460A (previously numbered D0376-399), 400-490 | Labor Relations file |
| D0387-94 | Pay History |
| D0395-399-400A-436A (the latter previously numbered D0340-375) | EEOC Correspondence |
| D0491-507 | Reclassification file |
| D0508- | Plaintiff Job Details listing from Employee Information System |
| D0512-1143 | Departmental personnel file |
| D01144-47 | TWU CBA Reclassification section |
| D01148-52 | Job Descriptions for titles held by Plaintiff |
| D01153-56 | Reclassification |
| D01157-59 | WCIS history |
| D01160-78 | MOW Organization charts |
| D01179-1203 | Policy Instructions on Restricted Work and Reasonable Accommodation |
| D01204-27 | Board of Inquiry Report |
| D1228-64 | Blank |
| D01265-1448 | Fonseca and Rivera files |

Sincerely yours,

Ann Burton Goetcheus
Executive Agency Counsel

Attachment-mail only

2

## AUTHORIZATION FOR RELEASE OF RECORDS

**TO:**        **J.P. Morgan Chase Bank NA**
                **PO Box 901033**
                **Fort Worth, Texas 76101-2033**


**YOU ARE HEREBY AUTHORIZED** to permit the New York City

Transit Authority, through its authorized representative, Ann Burton Goetcheus,

Esq., NYCT Department of Law, 130 Livingston St. – 1233p, Brooklyn, NY

11201, (718) 694-3889; fax: (718) 694-4020, to gain access to and make or

receive copies of any and all of my records, including but not limited to the

application and payment record of financing for a vehicle with VIN:

WBAHN83596DT25853, including all records from informal, sealed or any

other files, however maintained or designated.


_____
Philbert Gorrick,
DOB 11/28/54, SS # 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
Jamaica, New York

STATE OF NEW YORK    )
                         )ss:
COUNTY OF            )

        On this ____ day of _____, 2007, before me personally came
and appeared before me Philbert Gorrick to me known and known to me to be the
individual described in and who executed the foregoing release and who duly
acknowledged to me that he executed the same.


_____
NOTARY PUBLIC


#1002351
2007-9909

```
┌─────────────────────────────────────────────┐
│     TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────────┘

                            TIME  : 09/05/2007 09:58
                            NAME  : GEN LAW
                            FAX   : 718-694-4020
                            TEL   :
                            SER.# : 000L5J590222

┌──────────────────────────────────────────────────────────────┐
│   DATE,TIME            09/05  09:57                            │
│   FAX NO./NAME         912123581353                           │
│   DURATION            00:00:53                                │
│   PAGE(S)             04                                      │
│   RESULT              OK                                      │
│   MODE                STANDARD                                │
│                       ECM                                     │
└──────────────────────────────────────────────────────────────┘
```

**New York City Transit**

**Office of the General Counsel**
**General Law & Contracts**
**130 Livingston Street**
**Brooklyn, New York 11201**

**Facsimile #: (718) 694-5727**
**(718) 694-4020**

**This is the cover page of a legal department facsimile. If you have any difficulty, or if the transmission of this facsimile was incomplete, please call (718) 694-3889.**

| | | | |
|---|---|---|---|
| *To:* | Stuart Lichten, Esq | *From:* | Ann B. Goetcheus |
| *Fax:* | (212) 358-1353 | *Pages:* | 4  (incl. cover letter) |
| *Phone:* | | *Date:* | September 5, 2007 |
| *Re:* | Gorrick v. NYCTA | *CC:* | |

**Urgent      For Review      Please Comment        Please Reply        Please Recycle**

**Comments:**

 **New York City Transit**

718 694-3889

August 30, 2007

**BY FAX and Mail**

Stuart Lichten, Esq.
Schwartz, Lichten & Bright, P.C.
Attorneys at Law
275 Seventh Avenue, Suite 1700
New York, N.Y. 10001

Re: Philbert Gorrick v. NYCTA  2007 cv 2529 (GBD)

Dear Mr. Lichten:

I am responding to your letter dated August 27, 2007 with respect to deposition scheduling and discovery. Without prejudice to outstanding discovery issues, I propose that Defendant depose Plaintiff on September 25, 2007 at 10:00 a.m. here at 130 Livingston Street and we will make Gustave Rivera available for deposition on Friday, September 28, 2007. These dates are, however, conditioned upon Mr. Gorrick providing at least his 2006 tax returns by September 12, 2007, as you have represented.

Defendant does not, however, concede that this offered partial disclosure of financial information fulfills Plaintiff's disclosure requirements, and will seek a ruling from Magistrate Judge Peck concerning the matter unless Plaintiff promptly agrees to provide either tax returns from 2000 through 2006 or, if Plaintiff (or his tax-preparer) does not have the tax returns in his possession, agrees to provide releases to permit Defendant to obtain the information from IRS and the New York State Tax authorities.

Plaintiff's earnings – whether as employee or as an independent contractor – are material to issues in this action – specifically, as to whether he is or has been disabled in the life activity of working within the meaning of the ADA, either currently or at any point in his employment by New York City Transit, the extent of any damages, whether he made efforts to mitigate his damages, and to his credibility, in view of representations he has made concerning employment or lack thereof, including his affidavit provided to New York City Transit prior to payment of the back-pay awarded by the second arbitration.

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman

58-01-6504 4/07

#1001306
2007-9909

Plaintiff's effort to circumscribe his own disclosure to an artificially isolated recent period is merely an attempt to deny Defendant information it needs to disprove his claims by obscuring his non-Transit employment and other activities.

Sincerely yours,

Ann Burton Goetcheus
Executive Agency Counsel

2

```
┌─────────────────────────────────────────┐
│    TRANSMISSION VERIFICATION REPORT      │
└─────────────────────────────────────────┘
```

```
                              TIME  : 08/30/2007 12:41
                              NAME  : GEN LAW
                              FAX   : 718-694-4020
                              TEL   :
                              SER.# : 000L5J590222
```

```
┌──────────────────────────────────────────────────────────┐
│   DATE,TIME              08/30  12:40                       │
│   FAX NO./NAME           912123581353                      │
│   DURATION               00:00:40                          │
│   PAGE(S)                03                                 │
│   RESULT                 OK                                 │
│   MODE                   STANDARD                          │
│                          ECM                               │
└──────────────────────────────────────────────────────────┘
```



**New York City Transit**

**Office of the General Counsel**
**General Law & Contracts**
**130 Livingston Street**
**Brooklyn, New York 11201**

**Facsimile #: (718) 694-5727**
**(718) 694-4020**

**This is the cover page of a legal department facsimile. If you have any difficulty, or if the transmission of this facsimile was incomplete, please call (718) 694-3889.**

*To:* Stuart Lichten, Esq        *From:* Ann B. Goetcheus

*Fax:* (212) 358-1353            *Pages:* 3 (incl. cover letter)

*Phone:* _____          *Date:* August 30, 2007

*Re:* Gorrick v. NYCTA           *CC:*

**Urgent    For Review    Please Comment        Please Reply        Please Recycle**

**Comments:**

```
       *** REGISTRATION RECORD EXPANSION ***      TODAY'S DATE IS 09/07/07
LATE: CZU6134   TYPE: PASSENGER          REGISTRANT INFORMATION:
IN#: WBAHN83596DT25853          GORRICK,PHILBERT,T        DOB: 11/28/54
5 BMW    BLACK  4DSD WEIGHT:004552                        SEX: M
JEL: GAS       CYL: 08            166-05 HIGHLAND AV6M     COUNTY: QUEE
KPIRES: 11/30/08  VALID: 12/07/06  JAMAICA NY             ZIP: 11432
JS:                               MI#: G15682 11839 837494-54

===== PREVIOUS VEHICLES/PLATES/INSURANCE INFO ASSOCIATED WITH THIS RECORD ====
2 BMW   GREEN  4DSD WEIGHT:004464 FUEL: GAS      CYL 08 VIN# WBAGN634X2DR01161
KPIRES: 11/30/06  VALID: 12/01/04
```

```
* ENTER NEXT FUNCTION CODE MENU   ***
```

```
       *** REGISTRATION RECORD EXPANSION ***      TODAY'S DATE IS 09/07/07
LATE: DM176E    TYPE: PASSENGER           REGISTRANT INFORMATION:
IN#: 1GYEK13R6YR134190            GORRICK,PHILBERT,T      DOB: 11/28/54
0 CADIL BLACK  2DSD WEIGHT:005299                        SEX: M
UEL: GAS      CYL: 08             164-20 HIGHLAND A 1R    COUNTY: QUEE
XPIRES: 10/15/02  VALID: 10/16/00  JAMAICA       NY       ZIP: 11432
NS:                               MI#: G15682 11839 837494-54

----- PREVIOUS VEHICLES/PLATES/INSURANCE INFO ASSOCIATED WITH THIS RECORD ----

DLUNTARY PLATE SURRENDER ON: 08/12/02
------------------------- REGISTRATION ACTIVITIES -------------------------
EG SUSPENDED ON: 06/16/02 FOR 121 DAYS - REASON: INSURANCE LAPSE
DMPLIANCE DATE: 08/12/02    CLEARED ON: 12/12/02
```

```
* ENTER NEXT FUNCTION CODE MENU   ***
```

```
        *** REGISTRATION RECORD EXPANSION ***      TODAY'S DATE IS 09/07/07
LATE: L288PL     TYPE: PASSENGER          REGISTRANT INFORMATION:
IN#: 1GKFK16RXVJ755114            GORRICK,PHILBERT,T        DOB: 11/28/54
7 GMC    GY/BL   SUBN WEIGHT:005669                          SEX: M
JEL: GAS      CYL: 08            166-40 89 AVE 2G           COUNTY: QUEE
KPIRES: 04/14/02  VALID: 02/05/01  JAMAICA NY              ZIP: 11432
JS:                              MI#: G15682 11839 837494-54

----- PREVIOUS VEHICLES/PLATES/INSURANCE INFO ASSOCIATED WITH THIS RECORD ----

JLUNTARY PLATE SURRENDER ON: 02/19/02
                              4 door sedan
3 CHEVR GREEN  4DSD WEIGHT:005284 FUEL: GAS      CYL 08 VIN# 1GNEK13R7WJ325951
KPIRES: 04/14/02  VALID: 04/20/00   INS: 682 - HOMELAND INS CO OF NY
============================= REGISTRATION ACTIVITIES =========================
:G SUSPENDED ON: 08/16/99 FOR 000 DAYS - REASON: INS. NOT IN EFFECT
)MPLIANCE DATE: 09/03/99      RESCINDED ON: 08/16/99




* ENTER NEXT FUNCTION CODE MENU  ***
```

STATE OF NEW YORK
                        SS:
COUNTY OF KINGS


I   Philbert Gorrick _____ Pass No. 330899

being duly sworn deposes and says:


I was suspended from my position of _Power Cable Maintainer_____

on _October 9, 2000_____. The suspension

arose out of disciplinary charges then pending against me.  I have not ~~was~~

been restored to duty ~~on~~_____.


During a portion of the aforesaid suspension, from:

_____2000_____ to ____2004_____

I was not employed elsewhere in any capacity and did not derive

any earnings from any other employment, by self or otherwise, nor

did I perform any work or services for which I was entitled to be

paid now or at any future date, nor did I receive any

unemployment insurance benefits, or public assistance.


                                    the Award dated July 19, 2006, which
I make this affidavit in connection with ~~my request to be~~

directed that I be
            reimbursed for the period of my suspension

from _May 22, 2002_____ to ___June 9, 2004___

in order to induce the Transit Authority to make such payment,

knowing that the Authority will rely thereon.


Sworn to before me this

_____24th_____ day of _October_____ of 2006


                              _____
                              Employee's Signature


                              _____
                              Notary Signature
                              STUART LICHTEN
                              NOTARY PUBLIC, STATE OF NEW YORK
                              No. 02LI4941219
                              QUALIFIED IN NEW YORK COUNTY
                              CERTIFICATE FILED IN NEW YORK COUNTY
                              COMMISSION EXPIRES JULY 25, 20_10_

1 of 2 DOCUMENTS

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

QUEENS COUNTY, NEW YORK, ASSUMED BUSINESS NAMES

**DBA Name:** CONTEMPORARY TECHNOLOGIES COMPANY

**Business Address:**
16640 89 AV
JAMAICA, NY 11432

**Filing Date:** 8/20/1999

**Owner(s):**
PHILBERT GORRICK
16640 89 AV
JAMAICA, NY 11432

**Filing Number:** 58071

2 of 2 DOCUMENTS

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

NEW YORK FICTITIOUS BUSINESS NAMES

**DBA Name:** CONTEMPORARY TECHNOLOGIES CO

**Business Address:**
16640 89TH AVE
JAMAICA, NY 11432-4265

**Telephone:** (718) 523-5301

**Filing Date:** 8/20/1999

**County:** QUEENS

**Business Description:** NONCLASSIFIED ESTABLISHMENTS

**Contact Name:** PHILBERT GORRICK

**Industry Classification Code:** 999977



**Chase Auto Finance**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Ann B. Goecheus | **From:** | Hortencia Cervantes |
| **Fax:** | 718-694-4020 | **Pages:** | 3 |
| **Phone:** | | **Date:** | 07/06/07 |
| **Re:** | | **CC:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments** Here is the copy of information that dealership send to.

The information contained in this facsimile message is confidential information intended only for the use of the individual or entity above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal Service. Thank you.

© 2005 JPMorgan Chase Bank, N.A.

Page: 1 Document Name: untitled

```
QQDE     9AF5                Quick Data Entry        U246931   09/27/07 10:33
051811555051    Nfn INQ      Dsp QDE    Next 051811555051        Loc 00000000000
Loc 10 10 10 00543 Dealer: # 04729 Name BMW OF MANHATTAN INC.
Pri PHILBERT_____ _ BORRICK_____ _ DB 11 28 54 SS 072 76 8370  Pri 5
Sec _____ _ DB 00 00 00 SS ___ __ ___  MS
Adr: 16605_ St HIGHLAND_____ Tp DR_      Apt 6M___ RR _____ PO ___  #DP __
  City JAMAICA_____ St NY Zip 11432___ T/R _2 _6 O/R R Ph 718 523 4045
Curr Empl PHILBERT CORP_____ Phone 718 523 4045 Yr/Mo 10 __
Occup    OTHR IT CONSULTANT/OWNER_____ City/St _____
Prev Empl _____ Phone ___ __ ____ Yr/Mo __ __
Occup    _____ City/St _____
SApp Empl _____ Phone ___ __ ____ Yr/Mo __ __
Occup    _____ City/St _____
I:App _85900.00 Y SApp _____ Y Oth _____ M Sc Oth _____
Asset:Ty ____ Des _____ Acct# _____ AMERICREDIT Y/N N
Lia:Ty RENT Dsc _____ Pym _750 Ty ADJT Dsc _____ Pym _-537
Prod: BLN10 Req Amt __31635.00 Appl Type I Term _48 Rel App _____
Collat: N/U N Yr _6 Mke BMW_____ Model 750_____ Mileage ___25 MSRP __79885
Inv/Whs __79885  Trade: N/U U Yr _2 Mke BMW_____ Mdl 7 SERIES__ GID _____
AC/C Pr _84500.00 C Dw _15000.00 Tr 43000.00 Ow _____ Ins _____ GID/OVRD N
Misc: Rcvd Date 06/30/05 Rcvd Time 15:55  Orig 00000 Prefill _____
09/27 10:33 U246931
08/06 01:19        DS     I01
PFKEYS: 1-HELP 2-MEN 3-WKS 4-FBR 5-CUS 6-HIS 7-HTX 8-SUM 9-EMP 10-Next 11-VER
```

Date: 9/27/2007 Time: 9:33:17 AM

Page: 1 Document Name: untitled

```
QHIS    9AF5                        History Inquiry    U246931  09/27/07 10:33
 051811555051    Nfn INQ    Dsp HIS   Next 051811555051          Loc 00000000000
BORRICK, PHILBERT                                          NEWYORKR 08/06/05
 16605 HIGHLAND DR # 6M            *080*BMW OF MANHATTAN
JAMAICA, NY 11432                  212-586-2269 RET10 $     30108    CBR01 BK

Date  Time  User    AC Ltr  Rte Comments
06/30 15:55          CS      V10 Y38 Y13 940 955
06/30 15:55          CS      V10    /+157                        007
06/30 15:55          RI      V10 BUY RATE IS:13.690           6/25MNYNEW
06/30 15:55          CS      V10 Y38 Y13 940 955
06/30 15:55          CS      V10    /+157                        007
06/30 15:55          CB      V10 TU  06/30 15:55 RPTS ~  :01
06/30 15:55          CR      V10    PRI:   RQST#0050630015550508930
06/30 15:55 CAFWEB   SP      V10 ACTION BASED ON: PRE-CREDIT BUREAU ROUTE
06/30 15:55 CAFWEB   DC      E10 WEB
06/30 15:55 CAFWEB   DE      E10                                          *
            CLIENT IS TRADING IN 2002 7 FOR 2006 750LI HE IS ALSO PUTTING 10K C
            ASH DOWN
06/30 15:55 CAFWEB   EN      E10
            WEB                                                          *
```

PFKEYS: 1-HELP 2-MEN 3-WKS 4-FBR 5-CUS 6-HIS 7-HTX 8-SUM 9-EMP 10-Next 11-VER

Web  Images  Video  News  Maps  Gmail  more ▾                                    Sign in

# Google
**PhoneBook** | 718 523-4045 |          Search PhoneBook    Search the Web

---

**Residential Phonebook**                    Results **1** - **1** of **1** for **718 523-4045**. (0.11 seconds)

| Joseph Wilson | **(718) 523-4045** | 16605 Highland Ave, Jamaica, NY 11432 | Map |

Request to have your name removed from this list

---

| 718 523-4045 |          Search

---

©2007 Google - Google Home - Advertising Programs - Business Solutions - About Google

11/1/2007



# SCHWARTZ, LICHTEN & BRIGHT PC
### Attorneys at Law

275 Seventh Avenue  Suite 1700
New York, New York 10001
Phone 212 228 6320  Facsimile 212 358 1353

Arthur Z Schwartz*
Stuart Lichten
Daniel R Bright
*Also admitted in Pennsylvania

November 6, 2007

**BY FAX AND U.S. MAIL**

Ann Burton Goetcheus, Esq.
Executive Agency Counsel
N.Y.C. Transit Authority
130 Livingston Street - Room 1233
New York, New York  11201

Dear Ms. Goetcheus:

As you are aware, this firm represents Philbert Gorrick in a pending action.  I am writing because it appears that you have violated Mr. Gorrick's rights pursuant to the Driver's Privacy Protection Act.

Federal law provides, "A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."  18 U.S.C. § 2724(a).  In your November 2, 2007, letter to the Court, you attach at Exhibit G what you describe as "DMV records," containing Mr. Gorrick's name, driver identification number, address, and other information defined as "personal" under the law.  These records appear to have been obtained on September 7, 2007, months after Mr. Gorrick's discharge from the Transit Authority.

Please advise how you came into possession of these records, and provide a legal justification for your use and disclosure of this information.  If I do not receive a satisfactory response within a reasonable time, Mr. Gorrick will take whatever actions are necessary to protect his interests.

Very truly yours,

Stuart Lichten

# SCHWARTZ, LICHTEN & BRIGHT, PC
## Attorneys at Law

275 Seventh Avenue, 17th Floor
New York, New York 10001
tel: 212 228 6320
fax: 212 358 1353

**Arthur Z. Schwartz***
**Stuart Lichten**
**Daniel R. Bright**
*Also admitted in Pennsylvania

## Facsimile transmission

DATE: _____ 11/6/07 _____

TO: _____ Ann Burke Costello, Esq. _____

FAX No: _____ (718) 694-5727 _____

FROM: _____ Arthur Z. Schwartz, Esq.

_✓_ Stuart Lichten, Esq.

_____ Daniel R. Bright, Esq.

Number of pages (including cover): 2

Hard copy _✓_ will _____ will not follow.

COMMENTS: _____

_____

_____

_____

_____

_____

The information contained in this fax message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. Thank you.

 **New York City Transit**

718 694-3889

November 7, 2007

**VIA FACSIMILE** ✝ *MAIL*

Stuart Lichten, Esq.
Schwartz, Lichten & Bright, P.C.
Attorneys at Law
275 Seventh Avenue, Suite 1700
New York, N.Y. 10001

Re: Philbert Gorrick v. NYCTA 2007 cv 2529 (GBD)

Dear Mr. Lichten:

    I am writing in reply to your letter dated November 6, 2007 concerning the inclusion of
DMV records in Defendant's response to your letter discovery motion. Specific provisions of
the Driver's Privacy Protection Act of 1994 permit the use that Defendant has made of Mr.
Gorrick's vehicle registration information, namely 18 U.S.C. § 2721(b)(1) and (4). The use of
the DMV records by the Transit Authority is permitted under this statute both because NYCTA
is indisputably a government agency and also because the information has been used in
connection with civil proceedings in Federal and state courts.

    In *Manso v. Santamarina & Assoc.*, 2005 U.S. Dist. LEXIS 7316, *9-19 (S.D.N.Y. Apr.
26, 2005), Judge Sands upheld the use of information from a motor vehicle record by a private
party for purposes similar to those in the filing with the court – to raise questions as to the truth
of a sworn statement by the Plaintiff.

Sincerely yours,

*Ann Burton Goetcheus*
Ann Burton Goetcheus
Executive Agency Counsel

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman

56-01-5504 4/07

2007-9909
#1022185

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 11/07/2007 17:15
                                    NAME  :
                                    FAX   : 17186945727
                                    TEL   :
                                    SER.# : 000A5J417451
```

```
DATE,TIME            11/07  17:15
FAX NO./NAME         912123581353
DURATION             00:00:33
PAGE(S)              02
RESULT               OK
MODE                 STANDARD
                     ECM
```

 **New York City Transit**

**Office of the General Counsel**
**General Law & Contracts**
**130 Livingston Street**                        **Facsimile #: (718) 694-5727**
**Brooklyn, New York 11201**                                  **(718) 694-4020**

This is the cover page of a legal department facsimile. If you have any difficulty, or if the
transmission of this facsimile was incomplete, please call (718) 694-3889.

| | | | |
|---|---|---|---|
| *To:* | Stuart Lichten, Esq. | *From:* | Ann B. Goetcheus |
| *Fax:* | (212) 358-1353 | *Pages:* | (incl. fax cover sheet) |
| *Phone:* | | *Date:* | November 7, 2007 |
| *Re:* | Gorrick v. NYCTA | *CC:* | |

**Urgent      For Review      Please Comment      Please Reply      Please Recycle**

**Comments:**

1

```
          81v6gorc
  1   UNITED STATES DISTRICT COURT
  1   SOUTHERN DISTRICT OF NEW YORK
  2   ------------------------------x
  2
  3   PHILBERT GORRICK,
  3
  4                Plaintiff,
  4
  5           v.                         07 CR 2529(AJP)
  5
  6   NEW YORK CITY TRANSIT
  6   AUTHORITY,
  7
  7                Defendant.
  8
  8   ------------------------------x
  9                                    New York, N.Y.
  9                                    January 31, 2008
 10                                    11:10 a.m.
 10
 11   Before:
 11
 12                  HON. ANDREW J. PECK,
 12
 13                                   Magistrate Judge
 13
 14                      APPEARANCES
 14
 15   SCHWARTZ, LICHTEN & BRIGHT, P.C.
 15        Attorneys for Plaintiff
 16   BY:  STUART L. LICHTEN, ESQ. (via telephone)
 16
 17   NEW YORK CITY TRANSIT AUTHORITY
 17   TRANSIT LAW DEPARTMENT
 18        Attorney for Defendant
 18   BY:  ANN BURTON GOETCHEUS  (via telephone)
 19        GENA USENHEIMER (via telephone)
 19
 20
 21
 22
 23
 24
 25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

81v6gorc

```
 1                (Case called; in chambers)
 2                THE COURT:  This is Judge Peck.
 3                Counsel, please state your names for the court
 4     reporter's record, and each time you speak start with your
 5     name.
 6                MR. LICHTEN:  For the plaintiff Stuart Lichten,
 7     Schwartz Lichten & Bright.
 8                MS. GOETCHEUS:  For the defendant New York City
 9     Transit Authority, Ann Goetcheus and Gena Usenheimer of the
10     Transit Law Department.
11                THE COURT:  Mr. Lichten, have you had a chance to read
12     Ms. Goetcheus' letter of last night?
13                MR. LICHTEN:  Yes.
14                THE COURT:  What is your position on the tax returns?
15                MR. LICHTEN:  Our position is first of all there was
16     an agreement between the parties on September 5th and September
17     10th in writing that Mr. Gorrick would turn over or at least
18     authorize the Transit Authority to obtain records of a loan
19     application at a bank which had a lot of personal and financial
20     information in it and in return the Transit Authority would
21     drop their request for his their 2000 to 2005 tax return.
22                This agreement was raised before your Honor on
23     November 14th and your Honor denied the Transit Authority's
24     request for the returns based on that agreement.  I don't see
25     why the agreement should not still stand.  There really are not
```

3

81v6gorc
1   any changed circumstances.
2            If Judge Daniels grants the motion to amend, we will
3   turn over the tax returns; but as of right now, there are no
4   counterclaims that the returns are relevant to because those
5   counterclaims haven't been -- the Transit Authority hasn't been
6   granted leave to accept those.
7            THE COURT:  Except that I gave them discovery on the
8   counterclaims.
9            MR. LICHTEN:  Well, I thought your Honor gave them an
10  extra week to do discovery.  I didn't know there -- some of the
11  discovery did have to do with the counterclaims and we didn't
12  object to it.  I don't know there was a specific order that the
13  tax returns had to be turned over.
14           THE COURT:  That there wasn't.  But if you are telling
15  me that you agree they are relevant to the counterclaims, but
16  that the counterclaims aren't in the case yet, I specifically
17  allowed the parties to have discovery on the counterclaims so
18  that if Judge Daniels grants them, we don't have to reopen
19  discovery.
20           MR. LICHTEN:  I am sorry, that is not how I understood
21  it.  The order says, One week extention of discovery approved.
22  There would have to be a lot more discovery.  Plaintiff is
23  entitled to discovery, too.
24           THE COURT:  Well, your time for that has gone.  We
25  will worry about whether I grant you any further relief if and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

4

81v6gorc
1    when Judge Daniels allows the counterclaim in.  I am pulling
2    out my file now.  I don't think the order could be any clearer.
3              MR. LICHTEN:  It is 12-18-07.  It says, One week
4    extention of discovery approved.  The motion to amend will be
5    decided by Judge Daniels once it is fully briefed, but the
6    Court will allow the additional discovery at this time.
7              MS. GOETCHEUS:  For Transit that the order was in
8    response to Magistrate Judge Peck's request for our -- how much
9    longer it would take to complete discovery with respect to the
10   counterclaims.  That was how I understood it and that is why I
11   issued the second document request and obtained the deposition
12   of the Concord family services director.
13             THE COURT:  What I don't you understand,
14   Ms. Goetcheus, is you were here a week ago, why wasn't this
15   raised at January 24th telephone conference?
16             MS. GOETCHEUS:  Because I did not have the response
17   from the plaintiff.
18             THE COURT:  I see.
19             MS. GOETCHEUS:  I still haven't received the mailed
20   response.  On the 28th I called Mr. Lichten and asked him to
21   fax it to me because I understood he submitted it but I hadn't
22   received it.
23             THE COURT:  Mr. Lichten, the only issue on relevance
24   is this:  Based on their counterclaim there is a certain amount
25   of gross income, less taxes that Mr. Gorrick received from
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

81v6gorc
1    Concord, if you are not going to claim any offset to that with
2    respect to the counterclaim -- in other words, the affidavit he
3    put in this connection with the arbitration said he didn't earn
4    any income -- I am loosely paraphrasing everything -- he didn't
5    earn any income during the period he was suspended and that is
6    why he was getting some essence backpay from the Transit
7    Authority, obviously he received money from Concord, you have
8    your arguments, they have theirs -- if the only issue is did he
9    receive any compensation from Concord and not that that may
10   have been partially reduced in terms of net income by certain
11   expenses he had to incur, although as I understand it he was a
12   computer consultant so I would think any expenses other than
13   his time was negligible, we don't have to go into the tax
14   returns.
15           MR. LICHTEN:  No.  If the counterclaims are going to
16   go forward, we certainly have to go into the tax returns.
17           THE COURT:  Produce the tax returns.
18           MR. LICHTEN:  He only has the 2004.
19           THE COURT:  I thought he also had 2000?
20           MR. LICHTEN:  Well, I said in the transcript I think
21   he had the 2000.  I was wrong when I went back to the office
22   and checked.
23           THE COURT:  Who is his tax preparer?
24           MR. LICHTEN:  His tax preparer.  Can you hold on a
25   second?

6

81v6gorc

1          THE COURT:  Yep.

2          MR. LICHTEN:  John Torres Enterprises, Inc.

3          THE COURT:  Located were?

4          MR. LICHTEN:  4713 Avenue n, as in Nancy, Brooklyn,

5  New York 11134.

6          THE COURT:  Have you contacted or has Mr. Gorrick

7  contacted the tax preparer?

8          MR. LICHTEN:  Yes, I think so.

9          THE COURT:  Does the tax preparer have copies?

10         MR. LICHTEN:  I don't think so.

11         THE COURT:  Isn't he required to under IRS regulations

12  or not?

13         MR. LICHTEN:  Well, I don't know if he prepared in

14  those years.  That is his tax preparer now.

15         THE COURT:  Have you asked Mr. Gorrick who prepared

16  his tax returns for 2000 through 2003?

17         MR. LICHTEN:  No.

18         THE COURT:  You are to produce the tax return you

19  have.  You are to determine from your client who prepared the

20  missing tax returns.  You are to have your client ask those tax

21  prepares for such copies and do whatever you need to to get

22  them.  If all else fails, you are to fill out the appropriate

23  IRS release form so that the tax returns can be provided to the

24  Transit Authority.  All of that is to get done by Monday.

25         MR. LICHTEN:  Your Honor, with regard first of all to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

7

81v6gorc
1    the agreement, is that rescinded?  I mean, does Transit
2    Authority still have the right to look at his loan application?
3              THE COURT:  Counsel, you just told me that the tax
4    returns are relevant to the counterclaim.
5              MR. LICHTEN:  They are relevant, but there was an
6    agreement.  They would have been relevant to the main claim,
7    too.
8              THE COURT:  I am not revisiting the issue.  I have
9    ordered you to produce the tax returns, period.
10             Anything else from either side?
11             MS. GOETCHEUS:  No, your Honor, not from us.
12             MR. LICHTEN:  Is your Honor's -- if I make an appeal
13   to Judge Daniels, is it stayed?
14             THE COURT:  Not unless you get a stay from Judge
15   Daniels.  If I am wrong, it will be returned.  No big deal.
16   You have admitted it is relevant.  I understand the issue about
17   the prior agreement, which was before there was inklings of
18   counterclaims to come.  That is a sufficient changed
19   circumstance.  You have conceded today that if the
20   counterclaims are approved that the tax returns are relevant to
21   the issue.
22             I had previously ordered, whether you understood it or
23   not, that the parties and certainly the defendant could have
24   discovery on the counterclaim.  So therefore it is an
25   appropriate time to produce them now, not as you have suggested

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

81v6gorc

1    waiting and producing them after Judge Daniels rules on the
2    counterclaim issue if Judge Daniels approves the counterclaim.
3         However, in fairness to you I will preclude the
4    Transit Authority from relying on the tax returns in any
5    present summary judgment motion that is not aimed at the
6    counterclaims.
7         MR. LICHTEN:  Okay.
8         THE COURT:  Final question, because I hope this is our
9    last conference, we left it at the last conference that
10   defendant would advise me if they wanted to have the settlement
11   conference.  I don't think I have heard from defense counsel on
12   that subject.
13        Do the parties want a settlement conference?
14        MS. GOETCHEUS:  No, your Honor.
15        THE COURT:  Let me ask you this:  Would you want a
16   settlement conference that left open, if plaintiff was
17   amenable, the subject of the counterclaims?  In other words,
18   settle plaintiff's claim and whatever Judge Daniels does or
19   perhaps at that point with this case in abeyance -- or over
20   rather -- the counterclaim would be best put in front of the
21   Transit Authority mediator who dealt with the prior issue or a
22   successor, mediator if that person is no longer on the list?
23        MS. GOETCHEUS:  Well, the arbitrator has no
24   jurisdiction over Mr. Gorrick who is not an employee.
25        Anyway, I don't think our answer would be different.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

81v6gorc
1    I will explore that with my superiors, but I do not believe
2    that our answer will be different.  I will contact the Court if
3    there would be a difference.
4                THE COURT:  Your summary judgment motion remains due
5    February 19th regardless, unless we settle the case before
6    then.
7                MS. GOETCHEUS:  I understand.
8                THE COURT:  Anything else, folks?
9                MS. GOETCHEUS:  Not from me.
10               MR. LICHTEN:  Can someone fax me the order form for
11   the reporter?
12               THE COURT:  The reporter will do that.
13               I will officially adjourn us now other than to say
14   that both sides are required to purchase the transcript.  I
15   will warn both sides, particularly plaintiff, that pursuant to
16   28, U.S. Code, Section 636 and the Federal Rules of Civil
17   Procedure 6 and 72, each party has 10 business days from this
18   conference to file any objections with Judge Daniels.  The 10
19   business days starts running immediately regardless of when you
20   get the transcript from the court reporter.  Failure to file
21   objections, of course, constitutes a waiver for all further
22   purposes.
23               To reiterate there is no stay of my order and the tax
24   returns must be produced or the appropriate releases given to
25   defense counsel by Monday.

81v6gorc

1          With that we are a officially adjourned, but I will
2   let you talk to the court reporter to deal with ordering
3   issuing.
4          MS. GOETCHEUS:   Thank you, your Honor.
5                          o0o
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300