UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PHILBERT GORRICK,

                Plaintiff,

                                            08 CV 4396 (GBD)

      -against-

NEW YORK CITY TRANSIT AUTHORITY,

                Defendant.

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

MARTIN B. SCHNABEL
Vice President and General Counsel
New York City Transit Authority
130 Livingston Street, 12th Floor
Brooklyn, New York 11201
(718) 694-3889

Ann Burton Goetcheus
Executive Agency Counsel
Gena Usenheimer, of Counsel

2008-10150
#1082680

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

LEGAL STANDARD APPLICABLE TO THIS MOTION ......................................... 2

STATEMENT OF FACTS ........................................................................................... 4

ARGUMENT ............................................................................................................... 7

      POINT ONE...........................................................................................................

         THE TRANSIT AUTHORITY DID NOT VIOLATE THE DPPA ....................... 7

      POINT TWO .................................................................................................... 13

         DEFENDANT'S CLAIM FOR RESTITUTION DOES NOT
         SUPPORT A VIABLE CLAIM OF RETALIATION ........................................ 13

      POINT THREE ................................................................................................. 17

         TRANSIT AUTHORITY IS NOT SUBJECT TO THE
         ADMINISTRATIVE CODE OF THE CITY OF NEW YORK ........................... 17

      POINT FOUR ................................................................................................... 17

         PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST
         THE TRANSIT AUTHORITY ........................................................................ 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                    **Page**

*Allen v. St. Cabrini Nursing Home, Inc.,*
    198 F. Supp 2d 442 (S.D.N.Y. 2002) ...……………………………………………………16

*Bowles v. New York City Transit Authority,*
    2006 U.S.Dist. LEXIS 32914 (S.D.N.Y. May 23, 2006) ......................................17

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ................................................................................3

*Clark County Schl. District v. Breeden,*
    532 U.S. 268 (U.S. 2001) ....................................................................................16

*Harris v. City of New York,*
    186 F.3d 243 (2d Cir. 1999) ................................................................................2

*Hawana v. City of New York,*
    230 F.Supp.2d 518 (S.D.N.Y. 2002) ..................................................................16

*Hollander v. Am Cynamid Co.,*
    895 F. 2d 80 (2d. Cir. 1990) ...............................................................................16

*Hughes v. Derwinski,*
    967 F.2d 1168 (7th Cir. 1992) ............................................................................16

*International Audiotext Network, Inc., v. AT&T Co.,*
    62 F.2d, 69 (2d Cir. 1995) ...................................................................................2

*King v. Simpson,*
    189 F.3d 284 (2d Cir. 1999) ................................................................................2

*Koppel v. 4987 Corp.,*
    167 F.3d 125 (2d Cir. 1999) ................................................................................3

*L'Europeenne de Banque v. La Republica de Venezuela*
    700 F.Supp. 114 (S.D.N.Y. 1988) ......................................................................3

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir. N.Y. 1996) ...........................................................................3

*Majer v. Metropolitan Transportation Authority,*
    1992 U.S.Dist. LEXIS 6239, 1992 WL 110995 (S.D.N.Y. May 7, 1992) ...........................17

**Federal Cases**                                                                                                    **Page**

*Manso v. Santamarina & Associates,*
    2005 U.S.Dist. LEXIS 7316 (S.D.N.Y. 2005) ....................................................7, 8, 9, 10, 12

*Margan v. Niles,*
    250 F.Supp.2d 63 (N.D.N.Y. 2003) ...................................................................................9

*McKennon v. Nashville Banner Public Co.,*
    513 U.S. 352 (1995) ...........................................................................................13, 14, 15

*Mendelson v. University Hospital,*
    178 F.Supp.2d 323 (E.D.N.Y. 2002)..................................................................................3

*Miller v. Image Data LLC,*
    91 Fed. Appx. 122, 12 (10th Cir. 2004)............................................................................7

*Munafo v. Metropolitan Transportation Authority,*
    2003 U.S.Dist. LEXIS 13495, 2003 WL 21799913 (E.D.N.Y. Jan 22, 2003).......................17

*Reno v. Condon,*
    528 U.S. 141 (2000)........................................................................................................8

*Richmond v. Oneok, Inc.,*
    120 F.3d 205 (10th Cir. 1997)........................................................................................16

*Roman v. Cornell University,*
    53 F.Supp.2d 223 (N.D.N.Y. 1999) ............................................................................14, 15

*Rose v. Goldman,*
    163 F.Supp.2d 238 (S.D.N.Y. 2001)..................................................................................3

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000)...............................................................................................3

*Sergilus v. Covenant House,*
    1999 U.S.Dist. LEXIS 14254 (S.D.N.Y. Sept. 15, 1999) .......................................................15

*Stoianoff v. Commissioner of Motor Vehicles,*
    107 F.Supp.2d 439 (S.D.N.Y. 2000)..................................................................................7

**Federal Cases**                                                                                                          **Page**

*Strougo v. Bassini*,
  282 F.3d 162 (2d Cir. 2002) ............................................................................2

*Tappe v. Alliance Capital Mat.*,
  177 F.Supp.2d 176 (S.D.N.Y. 2001) ...............................................................3

*Thomas v. George, Hartz, Lundeen, et al.*,
  2008 U.S.App. LEXIS 8844 (11th Cir. 2008) .......................................7, 8

*United States v. New York City Transit Authority*,
  97 F.3d 672 (1996)..................................................................................14, 15

*Villager Pond, Inc. v. Town of Darien*,
  56 F.3d 375 (2d Cir. 1995), *cert. denied,* 519 U.S. 808 (1995) ...................3

*Whalley v. Reliance Group Holdings, Inc.*,
  2001 U.S.Dist. LEXIS 427 (S.D.N.Y. Jan 22, 2001) ........................................15

**State Cases**

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  70 N.Y.2d 382, 516 N.E.2d 190, [521 N.Y.S.2d 653] (1987) ..................17

*Karoon v. New York City Transit Authority*,
  241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dept. 1997)..............................17

**Federal Statutes**

8 U.S.C. § 2721 (b) ...........................................................................................7

8 U.S.C. § 2721 (b) ...........................................................................................7

18 U.S.C. § 2725...........................................................................................7,8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

PHILBERT GORRICK,

                        Plaintiff,

                                                       08 CV 4396 (GBD)

       -against-

NEW YORK CITY TRANSIT AUTHORITY,

                        Defendant.

----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

**<u>PRELIMINARY STATEMENT</u>**

        The New York City Transit Authority (hereinafter "Defendant" or the "Transit

Authority") moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief

can be granted for the following reasons: 1) Plaintiff's claims under the Driver's Privacy

Protection Act ("DPPA") are without foundation based upon the plain meaning of the statutory

exemptions as well as applicable case law; and 2) Plaintiff's allegations that the Transit

Authority's suit for restitution constitutes illegal retaliation under the Americans with

Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and/or the New

York City Human Rights Law ("NYCHRL") fail as a matter of law because Plaintiff is not

insulated from the legal consequences of his fraudulent conduct by virtue of his protected

activity in filing claims under federal, state and local disability discrimination law.  While

Defendant does not dispute that it learned of Plaintiff's fraud in submitting a false affidavit in

order to receive $108,820.20 in back pay from Defendant during discovery in Plaintiff's 2007

federal lawsuit, *Gorrick v. New York City Transit Authority*, 07-CV-2529 (GBD)(AJP), [1] its

effort to obtain restitution from Plaintiff of this payment from the public fisc,[2] constitutes a good

faith legal position that advances the public interest in recovery of public funds obtained by fraud

and does not violate federal, New York State, or City anti-retaliation laws.  Additionally, the

New York City Administrative Code is not applicable to Defendant pursuant to a 2000

amendment to Public Authorities Law § 1266(8).  Finally, under New York State law, punitive

damages, otherwise available under the DPPA and NYCHRL, cannot be assessed against a

public benefit corporation, such as the Transit Authority. Further, should this Court not dismiss

Plaintiff's retaliation claims in part or in whole, Defendant requests that the Court order Plaintiff

to particularize his allegations that it has "used this information to attempt to discredit and

defame Gorrick on several occasions since November 2, 2007."  Goetcheus Declaration,

Plaintiff's 2008 Complaint, attached as Exh. 1, ¶ 12.

## **LEGAL STANDARD APPLICABLE TO THIS MOTION**

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure is proper when "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim that would entitle him to relief."  *Harris v. City of*

*New York,* 186 F.3d 243, 247 (2d Cir. 1999); *see also, Strougo v. Bassini,* 282 F.3d 162, 167 (2d

Cir. 2002); *King v. Simpson,* 189 F.3d 284, 286-87 (2d Cir. 1999); *International Audiotext*

*Network, Inc., v. AT&T Co.*, 62 F.2d, 69, 71 (2d Cir. 1995).  A district court must accept all

factual allegations in the counterclaim as true and draw all reasonable inferences in favor of the

---

[1] At this time, Defendant's Motion for Summary Judgment in 07 cv 2529 is *sub judice* before this Court.
[2] The Transit Authority's Motion to Amend its Answer to Add Counterclaims for restitution as part of Plaintiff's original discrimination action was denied by this Court on February 5, 2008 based upon the forum court's lack of subject matter jurisdiction.  This Court did not address the merits of the proposed counterclaims and thus Defendant filed and served a lawsuit against Plaintiff in New York County Supreme Court, Index. No.: 400672/2008 in or about March 2008.   Defendant's Verified Complaint against Plaintiff is attached to the Goetcheus Dec. as Exh. 2.

2008-10150
#1082680

non moving party; however a court need not accept unreasonable or unsupported inferences or conclusions of law.  *See, e.g., Koppel v. 4987 Corp*., 167 F.3d 125, 130 (2d Cir. 1999); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *see also, L'Europeenne de Banque v. La Republica de Venezuela*, 700 F. Supp. 114, 122 (S.D.N.Y. 1988).  The issue, of course, is not whether plaintiff will ultimately prevail but whether plaintiff is entitled to offer evidence to support their claims. *See, e.g., Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied,* 519 U.S. 808 (1996).

Despite the liberal pleading standard, facts and not conclusions must be contained in a complaint.  To survive dismissal, plaintiff must advance non-conclusory allegations which support each purported claim.  *Mendelson v. University Hospital,* 178 F. Supp.2d 323, 328 (E.D.N.Y. 2002); *Tappe v. Alliance Capital Mat.*, 177 F. Supp.2d 176 (S.D.N.Y. 2001); *Rose v. Goldman,* 163 F. Supp.2d 238 (S.D.N.Y. 2001).  Thus, on a motion to dismiss, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness," 2A Moore's Federal Practice ¶12.07 [2-5] at 12-84 to 12-85 (2d. ed. 1995) (footnote omitted).

On this motion to dismiss, this Court may consider any document referenced in the pleadings, so long as the document is integral to the pleadings.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153-54 (2d Cir. 2002).  In this context, a pleading is deemed to "include. . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  Further, F.R.C.P 12(c) provides, where matters outside the pleading are presented to, and not excluded by, the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,

and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.  Plaintiff has referenced but failed to attach the November 2, 2007 "disclosure" referenced in Exh. 1, ¶ 12, and Defendant's State Complaint, referenced in Exh. 1, ¶ 15.  Defendant has provided them as Exhibits 4 and 2 respectively to the Goetcheus Declaration.  Here particularly where there have been extensive proceedings and substantial documentary evidence is already before the Court, Rule 12(c) appears particularly apt, and thus Defendant has provided such documentary materials as attachments to the Goetcheus Declaration.

Plaintiff's complaint cannot withstand a motion pursuant to Rule 12(b)(6) and should be dismissed.

### STATEMENT OF FACTS

The Defendant, while accepting the facts as pled in the Complaint as is required on a motion to dismiss, does so solely for the purposes of this motion.  Plaintiff was employed by the Transit Authority from July 1991 until June 4, 2007, most recently as a Power Cable Maintainer.  Plaintiff's 2008 federal Complaint, attached to the Goetcheus Declaration as Exh. 1, ¶ 7.[3]  As a Power Cable Maintainer Plaintiff was required to comply with Transit Authority safety requirements, as mandated by OSHA, made applicable to the Transit Authority by N.Y. Lab. L. 27-a, and which are necessary to protect employees who work in hazardous locations.  Plaintiff was suspended in October 2000 for non compliance with Defendant's safety footwear requirement and has not worked for Defendant since that date.  Two prolonged arbitrations were undertaken on Plaintiff's behalf by his union, the TWU-Local 100.  In July 2006, the Arbitration panel awarded Plaintiff backpay for about half the disputed time since the 2002 Award, for the period from May 22, 2002 to June 9, 2004, and directed that Defendant's medical department

---

[3]    All exhibits referenced herein, unless otherwise specified, are attached to the Goetcheus Declaration.

determine "whether the Grievant has a physical disability within the meaning of Section 2.16 [of the TWU Collective Bargaining Agreement with Defendant] and/or the Policy/Instruction for Reasonable Accommodations making him eligible for light or modified duty in his own title or reclassification to another title in which he could perform duties within his medical limitations." There was no work available within Plaintiff's civil service title of Power Cable Maintainer which did not require protective footwear and he was referred to the Medical Department for consideration for reclassification to another civil service title.  After delays relating to difficulties in effectuating delivery of notices to Plaintiff, Plaintiff was examined by Defendant's medical department, found eligible for reclassification to the civil service title of Transit Property Protection Agent ("TPPA"), a position that did not require him to wear protective footwear. Plaintiff subsequently refused Defendant's offer of a TPPA position and his employment was terminated in or about June 2007.

In August of 2006 Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") advancing claims of discrimination based upon his purported disability. After receiving a right to sue letter, Plaintiff filed an action against the Transit Authority that is currently before this Court, alleging that the Transit Authority discriminated against him due to his alleged disability on March 27, 2007 ("2007 lawsuit").  Exh. 1 ¶ 9.  In the course of the 2007 lawsuit, in September of 2007, Defendant obtained personal information regarding Plaintiff from motor vehicle records, both indirectly via LEXIS and directly from the New York State Division of Motor Vehicles ("DMV"), including his residential address, and the year, model and registration expiration dates of vehicles then and formerly owned by Plaintiff.  Exh. 1 ¶ 10. Defendant disclosed this information to the Court on November 2, 2007 in a letter to the Court responding to Plaintiff's motion to quash a subpoena issued by Defendant to Concord Family

Services, the entity that employs Plaintiff as an information systems consultant.  Exh. 1 ¶ 11; Goetcheus Dec. ¶ 10, attaching Defendant's November 2, 2007 letter to the Court as Exh. 4. Plaintiff's DMV information is attached to Exh. 4 as Exh. G.

On or about December 12, 2007, Defendant filed a Motion to Amend its Answer to assert counterclaims against Plaintiff for fraud.  This Court denied that motion on or about February 5, 2008, finding a lack of common nucleus of operative fact between the counterclaims and Plaintiff's disability claims.

On or about March 31, 2008, the Transit Authority commenced an action against Plaintiff in Supreme Court of the State of New York, New York County alleging that Plaintiff committed fraud by filing a false affidavit in order to receive back pay totaling $108,820.20 in public funds. Exh. 1 ¶ 15.  This affidavit stated Plaintiff earned no income from any source other than the Transit Authority from 2002 to 2004.  In fact, Defendant learned in discovery that Plaintiff earned in excess of $100,000.00 in each of those three years performing information technology consulting services for Concord Family Services.[4]  Defendant's Complaint against Plaintiff for restitution is attached as Exh. 2 to the Goetcheus Declaration, with Plaintiff's affidavit attached as Exh. A thereto.

The Transit Authority has disclosed Plaintiff's DMV information solely to this Court in connection with the litigation of his 2007 lawsuit and in March 2008, to the Defendant's process server, to assist in effectuating personal service of process of the March 2008 State Complaint. Goetcheus Dec. ¶ 10, 30-31, Exh. 4.

---

[4]     Defendant's earlier Motion to Amend its Answer to the 2007 Lawsuit was to add a counter-claim to the same effect.  That motion was denied by this Court and subsequently Defendant filed that claim in state court.

**ARGUMENT**

**POINT ONE**

**THE TRANSIT AUTHORITY DID NOT VIOLATE THE DPPA**

Plaintiff's claim that the Transit Authority violated the DPPA by knowingly obtaining and disclosing personal information from a motor vehicle record for an "impermissible purpose" fails as a matter of law.  First, the DPPA exempts government agencies from restrictions on use of personal information from a motor vehicle record in carrying out their functions. 18 U.S.C. § 2721 (b)(1).  Defense of a governmental agency by its legal department against an employee's discrimination claim for damages is within its "functions" under the DPPA.  Second, the Transit Authority utilized personal information from Plaintiff's motor vehicle records only in connection with Plaintiff's 2007 federal lawsuit and in effectuating service of Defendant's 2008 state lawsuit on Plaintiff, in conformity with the clear language of the statute allowing receipt and disclosure of personal information by any entity, private or governmental, when "in connection with any civil. . . proceeding in any Federal, State or local court or agency," even where the information sought bears only peripheral relevance to the subject matter of the litigation.  18 U.S.C. § 2721 (b)(4); *Manso v. Santamarina & Associates*, 2005 U.S. Dist. LEXIS 7316, *15 (S.D.N.Y. 2005).

Section 2721(b)(1) of the DPPA provides that personal information (information identifying an individual, such as: name, address, telephone number, etc.) obtained from a DMV record may be disclosed "by any government agency. . . in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."  8 U.S.C. § 2721 (b)(1); *Reno v. Condon*, 528 U.S. 141, 145  n.1 (2000); *Stoianoff v. Comm'r of Motor Vehicles*, 107 F. Supp. 2d 439, 444 n.2 (S.D.N.Y. 2000); *see also, Thomas v. George, Hartz, Lundeen, et al.*, 2008 U.S. App. LEXIS 8844, *7 (11th Cir. 2008); *Miller v.*

*Image Data LLC*, 91 Fed. Appx. 122, *12 (10th Cir. 2004)(holding a government agency in carrying out its functions may sell driver's license information under the DPPA). There is no qualification on the face of the statute limiting this exception for governmental agencies. Plaintiff's complaint recognizes Defendant is a public benefit corporation, organized and existing pursuant to the Public Authorities Law § 1200 et seq., and mandated to operate the public bus and subway system in New York City. Exh. 1 ¶ 7. In order to successfully carry out its governmental functions, the Transit Authority must be able to effectively defend itself against lawsuits. Plaintiff's apparent premise that Defendant's "functions" as a government agency under the DPPA only include operation to the subways and buses is without authority. New York statutes establishing the Transit Authority include detailed provisions regarding Transit "functions" relating to legal defense against claims. *See e.g.,* Public Authority Law § 1212.

Moreover, the plain language of the DPPA also provides that otherwise protected personal information from DMV records may be disclosed by *any* entity, public or private, "in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency. . ., including service of process, investigation in anticipation of litigation. . ." 18 U.S.C. § 2721 (b)(4); 18 U.S.C. § 2725 (3); *see also*, *Manso v. Santamarina & Associates*, 2005 U.S. Dist. LEXIS 7316, *11 (S.D.N.Y. 2005); *Thomas v. Hartz, et al.,* 2008 U.S. App. LEXIS 8844 *3 (11th Cir. 2008). Thus, the DPPA specifically allows for public disclosure of otherwise protected personal information where such information is obtained "in connection with" civil litigation, even if the information is ascertained in "anticipation of litigation" or relates only to a point peripheral to the litigation. *Manso*, 2005 U.S. Dist. LEXIS 7316, *11.

2008-10150
#1082680

The DPPA legislative history reveals that DPPA was designed to prevent crime, specifically, stalkers and other would-be criminals from obtaining and using personal information from motor vehicle records to attack, stalk or otherwise criminally harass victims. *Margan v. Niles*, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003), *citing*, 145 Cong. Rec. S14533-02, S14538 ("The murder of Rebecca Schaeffer led to the [DPPA]."); 141 Cong. Rec. H416-06, H447 (1995)(statement of Rep. Dingell) ("Last year, as part of the crime bill, Congress heard the concerns of women who were being stalked because of easy access to motor vehicle records that reveal … addresses. To address this problem, Congress enacted the [DPPA]."); 140 Cong. Rec. H2518,01, H2527 (1994) (statement of Rep. Goss) ("The intent of this bill is simple and straightforward: We want to stop stalkers from obtaining the name and address of their prey before another tragedy occurs … The [DPPA] … is a reasonable and practical crime fighting measure."). *Id.* at 69. Thus the DPPA was not intended to prevent a governmental entity from recovering payments when fraud is discovered, nor to prevent governmental and other entities from investigations in support of defense to claims.

Judge Sand's decision in *Manso* is directly on point with the circumstances presented here. *Manso* held that inclusion of personal DMV information in court papers by private party defendants was a permissible use under the DPPA where such information was used to establish plaintiff's dishonesty in an affidavit. *Manso*, 2005 U.S. Dist. LEXIS at *11. The *Manso* plaintiff submitted an affidavit to Housing Court that the apartment he was living in was his "primary residence." *Id*. at *6. In response, defendants obtained information stemming from DMV records revealing that the plaintiff did not, in fact, primarily reside at the address he provided in the affidavit. *Id*. at *6–8. Though the *Manso* plaintiff contended that his primary residence had no relevance to the issues before the housing court, and although plaintiff's

address as well as the rest of the DMV-supplied information in the report became publicly available upon filing with the housing court, the District Court ruled that this was a permissible use of the DMV information under the DPPA, as the information was relevant to a point related (even if peripherally) to the litigation (either as to establish plaintiff's primary residence or "as bearing on the respondent-affiant's willingness to swear falsely"). *Id*. at *9, 11, 15. In so holding the *Manso* court rejected plaintiff's argument that information used in connection with litigation must be "reasonably in relation to the focus of the litigation," and explicitly held that use of DMV information to raise questions as to the truth of a sworn statement by a plaintiff – whether the affidavit directly relates to the subject matter of the litigation or not – is a permissible use under the DPPA.

Thus, Defendant's use of Plaintiff's DMV information was proper under the litigation exception of the DPPA, as well as under the government agency exception. Plaintiff's Complaint itself establishes that that the Transit Authority disclosed the DMV related information on November 2, 2007 to this Court, in the course of a discovery dispute in Plaintiff's 2007 lawsuit. Exh. 1 at ¶ 12; Goetcheus Dec. at ¶ 10; *see generally, Manso*, 2005 U.S. Dist. LEXIS 7316, *11-12 (S.D.N.Y. 2005). The discovery dispute stemmed from Plaintiff's effort to quash a subpoena directed at his employer, Concord Family Services, for information relating to his employment as an information systems contractor. Goetcheus Dec. at ¶ 6.

Defendant issued the subpoena on Concord Family Services in an effort to overcome Plaintiff's refusal to provide information concerning his income and employment through the period from 2000 to 2006 that was reasonably believed to be highly relevant to issues in the 2007 lawsuit: specifically, first, it was relevant evidence as to whether he is or has been "substantially impaired" in *any* major life activity, second, it is relevant to impeachment of his claims to have

sought "reasonable accommodation" during the period in order to return to work at Transit, and

third, it is relevant to whether and to what extent Plaintiff mitigated his damages in that period.

Goetcheus Dec. at ¶ 18-20, *see also* exchange of letters between Plaintiff's counsel and Ann

Goetcheus attached as Exhs. 5 and 6 to the Goetcheus Declaration.  This issue was not mooted

by any purported restriction of damages to a recent period (as Plaintiff's counsel claimed) – a

restriction, moreover, that does not appear in Plaintiff's 2007 Complaint and is contrary to

Plaintiff's claims at his deposition.  *Id.*

Plaintiff's counsel acknowledged that Plaintiff's tax returns (and income) were relevant

to the main claims in the 2007 lawsuit at a discovery hearing before Magistrate Judge Peck on

January 31, 2008, Goetcheus Dec. at ¶ 7, 1/31/2008 Tr. at 7:6-7, attached as Exh. 7.  This

information was reasonably believed to be relevant to Defendant's defenses to Plaintiff's claims

of alleged employment disability discrimination and damages.  Goetcheus Dec. at ¶ 18-20.

Plaintiff's DMV information was used to support Defendant's argument regarding discovery and

Plaintiff raised on objection to that use to the Court during the proceedings on the discovery

dispute.  *Id.* at ¶ 10, 12-14.

As Exh. 4, Defendant's November 2007 filing, maintained, Plaintiff's DMV records

demonstrated that, during the period from 2000 to 2006 while he was not working for Defendant

and had sworn he had no earnings, he had owned a succession of late-model luxury automobiles,

giving rise to the reasonable suspicion that he had had a source of income.  Goetcheus Dec. ¶ 9.

This record cast doubt on the validity of the sworn affidavit he had submitted to Defendant that

he had no earnings and on the credibility of his claim that he wished reinstatement to

employment at Defendant.  *Id.* at ¶ 16, 18-20.  In addition, as a result, information from Concord

Family Services requested by the subpoena at issue was also relevant to issues concerning

Plaintiff's credibility – a highly relevant consideration in the defense against claims made by Plaintiff – where, in prior, sworn testimony and in a sworn affidavit (notarized by Plaintiff's current counsel), Plaintiff had made representations regarding his lack of earnings, as well as submitting a sworn charge of disability discrimination to the EEOC.  *Id.*  The fact of his remunerative employment with Concord Family Services casts doubt on the genuineness of Plaintiff's claims to wish reinstatement as a Power Cable Maintainer or in other Transit employment and is relevant to all aspects of his probity in connection with the 2007 lawsuit.

Defendant explicitly relied on Plaintiff's affidavit in paying him a back-pay award of $108,820.20 in or about November 2006.  Goetcheus Dec. ¶ 21, Exhs. 2, 2-A and 4.  Plaintiff's DMV records also cast doubt on the accuracy of his sworn testimony at arbitration in 2003 that he was homeless and thus unable to receive mail anywhere other than the union hall because he was not receiving pay from Defendant, testimony that was critical to the arbitrator's determination reinstating an otherwise untimely grievance.  *Id.*  Moreover, the personal information from Plaintiff's motor vehicle records has only been disclosed in the course of litigation between Plaintiff and Defendant, including its use in 2008 to assist in effectuating service of process of Defendant's 2008 State complaint against Plaintiff for restitution. Goetcheus Dec. ¶ 30.

Plaintiff's personal information obtained by Defendant is far more relevant to the central issues pending in his 2007 lawsuit than was the information obtained by the *Manso* defendants. Nevertheless, even if the Plaintiff's personal information was relevant on the sole, and as Plaintiff contends, peripheral, issue of Plaintiff's honesty in his 2006 affidavit, the very clear holding from *Manso* is that such use is permissible under the DPPA, *even for a private party*.

2008-10150
#1082680

Defendant informed Plaintiff of its legal position regarding use of DMV information in a November 7, 2007 letter, citing *Manso.*   Goetcheus Dec. ¶ 13, Exhs. 5 and 6, respectively, Lichten letter to Goetcheus, dated Nov. 6, 2007 and Goetcheus reply, dated Nov. 7, 2007. Significantly, Plaintiff did not raise any objection to Defendant's use of DMV records before Magistrate Judge Peck in the discovery hearing on November 14, 2007, only a week later, nor at any time thereafter in the proceedings in the 2007 lawsuit.  Plaintiff's cause of action under the DPPA should be summarily dismissed by the Court as without foundation in the statute.  Should the Court deny this motion to dismiss the Plaintiff's first cause of action, Defendant respectfully requests the Court to order Plaintiff to particularize the referenced occasions in his claim that Defendant has "used this information to attempt to discredit and defame Gorrick on several occasions since November 2, 2007."  Exh. 1, ¶ 12.

## POINT TWO

### DEFENDANT'S CLAIM FOR RESTITUTION DOES NOT SUPPORT A VIABLE CLAIM OF RETALIATION

Plaintiff's further claim that Defendant illegally retaliated against him (for his August 2006 EEOC Charge and 2007 federal lawsuit alleging disability discrimination) by seeking, in its state lawsuit filed in March of 2008, to recover the $108,820.20 of public funds Plaintiff fraudulently obtained from Defendant, also fails to state a claim.  The Supreme Court has held that once an employer learns about employee wrongdoing, the employer is not required to ignore the information, "even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit."  *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352 (1995)(holding that after-acquired evidence could be used to mitigate or eliminate certain types of damages).

2008-10150
#1082680

Further, it is well established law in this Circuit that "[r]easonable defensive measures do not violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee," and may involve reasonable legal positions adverse to an employee. *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 245-46 (N.D.N.Y. 1999), *citing United States v. New York City Transit Auth*., 97 F.3d 672, 677 (2d Cir. 1996). The fact that Plaintiff's fraud was discovered in the course of his federal litigation does not establish retaliatory animus on Defendant's behalf, nor do his protected activities immunize Plaintiff from responsibility for his fraud.

It is not disputed that Plaintiff engaged in protected activity in filing his EEOC Charge in August 2006 and his federal lawsuit in or about April 2007. It was only in the course of Plaintiff's 2007 lawsuit that Defendant discovered his fraud in submitting the November 2006 affidavit of no earnings. Plaintiff's affidavit was instrumental to Defendant's remittance of $108,820.20 to Plaintiff in back pay. In his motion to dismiss Defendant's lawsuit against him, Plaintiff does not even claim that his affidavit was true. *See* Exh. 3, Plaintiff's Motion to Dismiss Defendant's State Complaint. At his deposition he admitted his affidavit was false. Goetcheus Decl. ¶ 24, Exh. 2 D, Plaintiff's Tr. 130:10-16.

Upon discovery of Plaintiff's fraud, in or about December 2007, Defendant sought restitution from Plaintiff for the public monies he fraudulently obtained. The Transit Authority is a public benefit corporation, and as such is obligated by public policy to safeguard public funds. The Supreme Court has held that once an employer learns about employee wrongdoing, the employer is not required to ignore the information, "even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995).

14

*McKennon* establishes that an employer is not barred from taking adverse action against an employee based on after-acquired evidence of an employee's wrong-doing.  In this case, the after-acquired evidence supports a claim against Plaintiff for fraud.  "In determining appropriate remedial action [where an employer has been found to discriminate – a matter still at issue in the 2007 lawsuit], the employee's wrongdoing becomes relevant not to punish the employee, or out of concern for the relative moral worth of the parties, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing."  *McKennon,* 513 U.S. at 363.  Plaintiff did not obtain immunity for fraudulent acts by virtue of his protected activity nor did that activity deprive Defendant of its lawful prerogatives, including the right to seek restitution for public moneys wrongfully paid pursuant to a fraudulent representation by Plaintiff.

Further, the Second Circuit has held, "[r]easonable defensive measures do not violate the anti-retaliation provision of Title VII, even though such steps are adverse to the charging employee and result in differential treatment."  *United States v. New York City Transit Authority*, 97 F.3d 672, 677 (1996).  An employer may take reasonable legal positions adverse to an employee without violating the federal anti-retaliation provisions.  *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 245-46 (N.D.N.Y. 1999), *citing United States v. New York City Transit Auth.*, at 677; *see also Whalley v. Reliance Group Holdings, Inc.*, 2001 U.S. Dist. LEXIS 427, *34-35 (S.D.N.Y. Jan. 22, 2001); *Sergilus v. Covenant House*, 1999 U.S. Dist LEXIS 14254, *11 (S.D.N.Y. Sept. 15, 1999).

Moreover, even assuming the facts in Plaintiff's 2008 Complaint are true as required in a motion to dismiss, Plaintiff's pleading does not establish that Defendant's actions upon acquiring evidence that Plaintiff committed fraud in order to obtain payment of more than $108,000 in

back pay in 2006 constitute a prima facie case of retaliation.  Defendant vigorously disputes any

basis for a causal inference that retaliation motivated its assertion of claims for restitution some

sixteen (16) months after the Plaintiff first asserted a claim of discrimination against it at the

EEOC in August of 2006, and eight months after the Charging Party filed his discrimination

claim in federal court in March 2007.  Periods far shorter than the sixteen months at issue here

between the instigation of a protected activity and an alleged retaliatory act have been held

insufficient to support an inference of retaliation.  In *Clark County Schl. Dist. v. Breeden*, 532

U.S. 268, 273-274 (U.S. 2001), the Supreme Court stated, "[t]he cases that accept mere temporal

proximity between an employer's knowledge of protected activity and an adverse employment

action as sufficient evidence of causality to establish a prima facie case uniformly hold that the

temporal proximity must be "very close."  *See e.g., Hollander v. Am. Cyanamid Co.*, 895 F.2d

80, 85 (2d Cir. 1990)(three-month gap insufficient to support inference of retaliation); *Allen v. St.

Cabrini Nursing Home, Inc.,* 198 F.Supp.2d 442, 450 (S.D.N.Y. 2002)("Claims of retaliation are

routinely dismissed when as few as three months elapse between protected activity and alleged

act of retaliation."); *Hawana v. City of New York*, 230 F. Supp. 2d 518, 530 (S.D.N.Y.

2002)(recognizing that in a "causation analysis, the Court must look to when the defendant first

became aware of the plaintiff's protected behavior" and holding that a complaint filed almost two

years before the alleged retaliation is "too attenuated to suggest any causal relationship")(internal

citations omitted); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period

insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992)(4-month period

insufficient).  Summary judgment is warranted on Plaintiff's retaliation claims, for this reason as

well.

2008-10150
#1082680

## **POINT THREE**

### **TRANSIT AUTHORITY IS NOT SUBJECT TO THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK**

We refer the Court to the reasoning concerning the inapplicability of the New York City

Administrative Code found in Defendant's moving and reply memoranda of law in support of its

motion for summary judgment in *Gorrick,* 2007 cv 2529, currently pending before this Court.

## **POINT FOUR**

### **PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST THE TRANSIT AUTHORITY**

As this Court found and Plaintiff acknowledged in this Court's ruling on Defendant's

motion to dismiss Plaintiff's 2007 lawsuit, Plaintiff's claims for punitive damages are not

available against the Transit Authority, as it is a public benefit corporation. *See,*

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 386-87, 516 N.E.2d 190, 521

N.Y.S.2d 653 (1987); *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 325, 659

N.Y.S.2d 27 (1st Dep't 1997); *Bowles v. New York City Transit Auth.*, 2006 U.S. Dist. LEXIS

32914, at *25 n.14 (S.D.N.Y. 2006);  *Munafo v. Metropolitan Transportation Auth.*, 2003 U.S.

Dist. LEXIS 13495, at *67-68, 2003 WL 21799913 (E.D.N.Y. 2003);  *Majer v. Metropolitan*

*Transportation Auth.*, 1992 U.S. Dist. LEXIS 6239, at *13, 1992 WL 110995, at *3 (S.D.N.Y.

May 7, 1992).  Accordingly, plaintiff's claims for punitive damages must be dismissed.

2008-10150
#1082680

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that defendant's motion to dismiss the complaint be granted, in whole or in part, and that such other and further relief as may be deemed just and proper be granted.

Dated: Brooklyn, New York
      June 11, 2008

Respectfully submitted,
MARTIN B. SCHNABEL, General Counsel
Attorney for Defendant
130 Livingston Street, 12th Floor
Brooklyn, New York 11201
(718) 694-3889
By:    <u>/s/ Ann Burton Goetcheus</u>
       ANN BURTON GOETCHEUS
       Executive Agency Counsel,
Of Counsel
Gena Usenheimer, Agency Attorney

2008-10150
#1082680